IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:17-cr-126 |
| | ) | Criminal No. 2:19-cr-47 |
| KENT MAERKI, | ) | |
| | ) | |
| DAVID ALCORN, | ) | |
| | ) | |
| AGHEE WILLIAM SMITH II, | ) | |
| | ) | |
| TONY SCOTT SELLERS, | ) | |
| | ) | |
| THOMAS L. BARNETT, | ) | |
| | ) | |
| NORMA JEAN COFFIN | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR JOINDER, OBJECTION TO SEVERANCE, AND MOTION TO CONTINUE**

The United States of America, through its undersigned counsel, respectfully files this response in opposition to defendants' renewed motion for joinder, objection to severance, and motion for continuance.  ECF Nos. 300-302 (Bank) & 135-137 (Maerki).

Defendants collectively seek a single, eight-defendant trial and, with one exception, request a continuance. This position not only defies the practical realities of the coronavirus pandemic, it will postpone—indefinitely—a trial already three years in the making, during which time a number of the defendants' elderly victims have passed away. Defendants should not be permitted to run out the clock on their victims, and the Court's considered proposal to proceed in three phased trials of the eight defendants falls well within the Court's discretion and more than adequately addresses defendants' purported concerns about prejudice.

## PROCEDURAL BACKGROUND

**A.      Proceedings in *United States v. Daryl G. Bank et al.* (the "Bank case")**

On August 23, 2017, a grand jury returned an indictment against Daryl G. Bank ("Bank") and Raeann Gibson ("Gibson") arising from their scheme to defraud hundreds of investors across the country.  At defendants' respective arraignments, the case was designated as complex due to nature of the charges and the voluminous nature of discovery.  The Court initially set the case for trial on April 24, 2018, outside the speedy trial deadline.  On February 7, 2018, Gibson moved to continue the trial date.  ECF No. 52.  The basis for her request for a continuance was the need for additional time to review the voluminous discovery.  *Id.*  Bank did not join in the motion, but did not object to Gibson's request.  The government likewise did not object to Gibson's request.  *Id.* On February 13, 2018, the Court issued an order granting the motion, concluding that the ends of justice served by granting the continuance outweighed the interest of the public and the defendants in a speedy trial.  ECF No. 53.  On February 20, 2018, the Court reset the trial for September 18, 2018.

On April 19, 2018, the grand jury returned a first superseding indictment against Bank, Gibson, and Billy J. Seabolt ("Seabolt").  On May 7, 2018, the Court reset the case for trial on January 15, 2019.  On May 25, 2018, a grand jury returned a second superseding indictment against Bank, Gibson, and Seabolt.  ECF No. 105.  At the arraignments for the second superseding indictment, the Court again made speedy trial findings and set a trial date of January 15, 2019.

On November 5, 2018, Bank and Gibson filed another joint motion to continue the trial. ECF No. 129.  Seabolt did not initially join their motion.  Then, on November 29, 2018, Seabolt filed his own motion to continue the trial.  ECF No. 141.  This was Seabolt's first motion for a

continuance, which he stated was necessary to give his attorney time to review supplemental discovery materials.  Although the government initially opposed defendants' request for another continuance, it ultimately withdrew its opposition to give defense counsel sufficient time to review newly discovered evidence.  The Court then set a new trial date of June 25, 2019, with the trial scheduled to last approximately four weeks.

Leading up to the June trial date, on May 10, 2019, Bank, Gibson, and Seabolt filed the first motion for joinder seeking to join their case with *United States v. Kent Maerki et al.* ("the Maerki case"), 2:19cr47.  While the Bank case was pending, federal investigators continued to unravel the complicated financial trail of additional conspirators involved, in particular with respect to the Dental Support Plus investment and the spectrum investments.  The government's financial analyst spent countless hours tracing fraud proceeds through approximately 100 *additional* bank accounts tied to this second set of conspirators.  Upon completion of the financial investigation, the government—to ensure compliance with the statute of limitations on certain charges—presented an indictment to the grand jury.  On March 21, 2019, the grand jury returned a 19-count indictment against six defendants:  Kent Maerki, David Alcorn, Aghee William Smith, II, Tony Scott Sellers, Thomas L. Barnett, and Norma Jean Coffin.  At the time of the defendants' first motion for joinder, the Maerki case was set for trial on January 21, 2020.  Thus, by requesting this initial joinder, Bank and Seabolt essentially were seeking another continuance of their trial date.

The government objected to the motion for joinder, arguing that it was a motion for a continuance masquerading as a motion for joinder.  ECF No. 189.  The government acknowledged that the Bank defendants and the Maerki defendants were conspirators who each took their own piece of the victims' funds, and so the government in its discretion *could* have

charged them together under Federal Rule of Criminal Procedure 8—assuming that its investigation as to all defendants were complete at the same time, which it was not.  However, the government emphasized that it did not automatically follow that the Court should consolidate two already complex fraud actions into a single, massive fraud trial that would require the government to present, and the jury to comprehend, evidence about interlocking fraud schemes in which investor funds were looted at two levels through different entities controlled by Bank and Maerki respectively.

After filing the initial motion for joinder, on May 21, 2019, Bank filed a Notice of Appeal noting his intent to file an interlocutory appeal of the Court's Order denying his motion to dismiss certain counts of the indictment on double jeopardy grounds.  ECF No. 184.  Bank also filed a motion to stay the proceedings pending the resolution of his interlocutory appeal. ECF No. 186.  The government objected to the stay pending appeal; however, on June 4, 2019, the Court granted Bank's motion to stay the proceedings pending the resolution of his appeal. ECF No. 212.  After the Court continued the trial date by granting the motion to stay, on June 7, 2019, the government filed a supplemental memorandum regarding Bank's motion for joinder and withdrew its objection to Bank's and Seabolt's requests[1] to join the Bank and Maerki cases for trial.  ECF No. 214.  Chief Judge Mark S. Davis ultimately issued an Order denying the first joinder motion.  ECF No. 216.

### B.     The Joinder Of The *Bank* and *Maerki* Cases

While the Bank case was rapidly approaching trial, on May 28, 2019, defendant Aghee William Smith filed a motion for joinder seeking to join the Maerki case with the Bank case.

---

[1] The third defendant, Raeann Gibson, pleaded guilty on May 29, 2019.

ECF No. 72.  In the motion, Smith represented that his co-defendants Tony Scott Sellers and

Thomas L. Barnett joined in the motion and also wanted the cases tried together.  *Id.*  At the

time, defendants Kent Maerki and Norma Coffin objected to the joinder.  ECF Nos. 76, 77.

After the Bank case was stayed pending appeal, the government filed a response to Smith's

motion for joinder stating that it would not object to the request to join the cases.  ECF No. 75.

      While the motion for joinder was pending, the Maerki defendants moved to continue the

January 2020 trial date.  ECF No. 82.  The government did not object to the motion.  The Court

granted the defendants' motion to continue.  ECF No. 83.  This Court then granted defendants'

motion for joinder and consolidated the Bank and Maerki cases for trial.  ECF No. 85.  The

consolidated trial was scheduled to occur on July 7, 2020.  The nation was then hit by the

COVID-19 pandemic.

### C.      The COVID-19 Pandemic

      The COVID-19 pandemic began in March 2020.  In response to the pandemic, the Chief

Judge for the Eastern District of Virginia signed numerous General Orders detailing the

seriousness of the pandemic and its impact on the judicial system. Gen. Order Nos. 2020-01 –

2020-21.  For example, General Orders 2020-02, 06, 07, 12 and 19 cancelled jury trials from

March 16, 2020, through September 14, 2020.

      On April 23, 2020, five of the Maerki defendants filed a second motion to continue the

jury trial set for July 7, 2020, arguing primarily that the COVID-19 pandemic had impacted their

ability to prepare for trial and thus necessitated a continuance.  ECF No. 118 (Maerki).

Defendant David Alcorn did not join in the motion, but did not object to it.  Likewise, on April

24, 2020, Bank also filed a motion to continue the jury trial for the same reasons.  ECF No. 274

(Bank).  The government filed responses in both cases recognizing that the COVID-19 pandemic

likely would impact the July 2020 trial and may justify the continuance.  ECF Nos. 119 (Maerki) & 275 (Bank).  However, the government asked the Court to set a new trial date in the fall of 2020.  *Id.*  The Court granted defendants' motion to continue and set a trial date of November 3, 2020, for all eight defendants.[2]

### D.      Current Status – December 1, 2020 Trial

On August 22, 2020, Defendant Smith requested a status conference.  ECF No. 128 (Maerki).  The government did not object to the request for a status conference.  ECF No. 129 (Maerki).  On September 16, 2020, the Court held a remote video status conference with counsel for all eight remaining defendants in the Bank and Maerki cases.  During the status conference, the Court presented a plan to resolve the two cases by trying the defendants in three groups: (1) Bank, Seabolt and Maerki; (2) Alcorn, Smith, and Coffin; and (3) Barnett and Sellers.  The Court stated that the first trial, involving Bank, Seabolt, and Maerki, would begin on November 3, 2020.

On September 25, 2020, all six Maerki case defendants and the two remaining Bank case defendants filed motions in their respective cases objecting to the severance and seeking fully to re-join the cases.  ECF Nos. 135 & 136 (Maerki), 300 & 301 (Bank).  Smith, Alcorn, Coffin, Barnett, Sellers, Bank, and Seabolt also filed motions to continue the trial date.  ECF No. 137 (Maerki), 302 (Bank).  Maerki, who is the only defendant in pretrial detention, joined in the motions objecting to the severance and requesting joinder, but did not join in the motion to continue the trial date.  The Court subsequently continued the trial date for the Bank, Seabolt, and Maerki trial to December 1, 2020.  In a memorandum order entered on October 6, the Court

---

[2] On July 14, 2020, the Fourth Circuit Court of Appeals issued its opinion affirming the Court's order denying Bank's motion to dismiss on double jeopardy grounds.  As a result, there is no further impediment to Bank's case proceeding to trial.

confirmed its trial plan, with the Bank, Maerki, and Seabolt trial set for December 1.  ECF No.
303 (Bank), 138 (Maerki).

In light of the COVID-19 pandemic and the difficulties arising therefrom, the
government fully supports the Court's plan to try the defendants in three separate groups to
ensure that all parties can participate in a trial in a safe and effective manner.  Therefore, it
supports the Court's severance in this case and opposes the motions for joinder.  The government
agrees with Maerki that the trial should go forward as scheduled on December 1, 2020, and
opposes Bank's and Seabolt's motions to continue.  The government does not oppose the motion
to continue filed by Smith, Alcorn, Coffin, Barnett, and Sellers, and will be prepared to try their
cases at the time set by the Court.

## ANALYSIS

### A.        The Court has discretion to sever cases for trial.

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or
defendants in an indictment, an information, or a consolidation for trial appears to prejudice a
defendant or the government, the court may order separate trials of counts, sever the defendants'
trials, or provide any other relief that justice requires." As the Supreme Court has observed,
"Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to
the sound discretion of the district courts." *Zafiro v. United States*, 506 U.S. 534, 541 (1993).
Here, the Court's decision to stagger the trials of certain subsets of defendants—starting with a
group that includes the lead defendant in each indictment—is a fully reasonable and appropriate
exercise of that discretion.

**1.  Joinder no longer serves judicial efficiency, and severance avoids
prejudice to the government and to the public interest.**

Defendants first argue that there is a presumption of joinder for related offenses,

especially conspiracy charges. *See* Defs. Mot. 4–5. But as defendants' own case citations

demonstrate, this presumption is principally grounded in the "reasons of efficiency and judicial

economy," not in any particular right of defendants to joint trials. *United States v. Ford*, 88 F.3d

1350, 1361 (4th Cir. 1996); *accord United States v. Lawson*, 677 F.3d 629, 639 (4th Cir. 2012)

(quoting *Ford*); *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987) ("[T]he predominant

consideration is whether joinder would serve the goals of trial economy and convenience ….");

*United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir. 1985) (noting joinder is warranted

where "there are substantial economies from a joint trial"). Indeed, historically, the joinder

inquiry has "frequently involve[d] the balancing of conflicting interests: (1) the speed, efficiency

and convenience in the function of the federal judicial machinery; against (2) the right of the

accused to a fair trial, without any substantial prejudice to that right occasioned by the joinder of

offenses and/or defendants." *Cataneo v. United States*, 167 F.2d 820, 823 (4th Cir. 1948).

Therefore, although joint trials often benefit the government and the Court, which would

otherwise be forced to respectively present and hear the same set of evidence one after the other,

it is not true in every case.[3] *See, e.g.*, *United States v. Saltzman*, 153 F. Supp. 3d 245, 251–52

(D.D.C. 2016) (finding that "although courts typically benefit from a denial of severance—since

---

[3] Indeed, the Rules do not seem to contemplate a role for defendants in seeking joinder or their
interests in obtaining joinder. For example, Rule 13 provides only that "the court may order that
separate cases be tried together" if the cases meet the requirements of Rule 8. And Rule 8 refers
only to how the *government* may combine charges and defendants in a single indictment or
information. The first mention of defendants' interests in avoiding prejudice comes solely in
reference to obtaining severance. *See* Fed. R. Crim. P. 14.

one trial is almost always more efficient than two—that would likely not be the case here"). By contrast, whether tried with other defendants or solo, a defendant must defend a case only once.

Thus, in ordinary times, it is uncontroversial that judicial economy is best served by joint proceedings when permitted by Rule 8. But these are not ordinary times. As the Court's order aptly noted, it is physically impossible to conduct an eight-defendant trial while in compliance with the Court's General Orders and the applicable public health guidelines. *See* ECF Nos. 303(Bank) & 138 (Maerki) Oct. 6 Order, at 2. Likewise, the Court correctly found that "estimates for widespread access to a COVID-19 vaccine vary significantly" and thus "there is no guarantee that two, four, six or even eight months from now the court will be able to try all eight defendants at once." *Id.* at 3. In short, the practical result of defendants' demand for a joint trial and continuance—setting aside the internally inconsistent position created by defendant Maerki's affirmative statement that he does *not* join the request for a continuance—is an indefinite postponement of trial. That fact alone rebuts any idea that a joint trial in this instance actually serves the interests of judicial efficiency and economy it is designed to further.

Beyond the absence of the benefits of a joint trial in these circumstances, continued joinder—effectively indefinitely staying any trial—imposes affirmative harms. First, it is not only the defendant who possesses an interest in a prompt trial; the government and the general public also have strong, even compelling, interests in bringing defendants to trial in a timely manner. *See, e.g.*, *United States v. Saltzman*, 984 F.2d 1087, 1091 (10th Cir. 1993) (citing case law and legislative history establishing that defendant may not unilaterally waive Speedy Trial Act provisions because "its primary objective" is "protection of the societal interest in speedy disposition of criminal cases by preventing undue delay in bringing such cases to trial"); *United States v. Carasquillo*, 667 F.2d 382, 389–90 (3d Cir. 1981) (similar). The Supreme Court has

repeatedly observed that individual defendants' interests do not control the public's interest in the prompt administration of criminal trials. *See, e.g.*, *Strunk v. United States*, 412 U.S. 434, 439 n.2 (1973) ("The desires or convenience of individuals cannot be controlling. The public interest in a broad sense, as well as the constitutional guarantee, commands prompt disposition of criminal charges."); *Barker v. Wingo*, 407 U.S. 514, 528 n.28 (1972) ("The trial of a criminal case should not be unreasonably delayed merely because the defendant does not think that it is in his best interest to seek prompt disposition of the charge." (quoting American Bar Association Project on Standards for Criminal Justice, Speedy Trial (Approved Draft 1968))).

Second, the Supreme Court has specifically recognized that undue delay in proceeding to trial threatens "the prosecution's ability to meet its burden of proof," as evidence, witnesses, and testimony are lost or "become[] more easily impeachible," and disrupts the community's "strong collective psychological and moral interest in swiftly bringing the person responsible to justice." *Flanagan v. United States*, 465 U.S. 259, 264–65 (1984). That interest is particularly acute in this case. Defendants are charged with defrauding hundreds of investors, many of them elderly and using funds withdrawn—at defendants' instigation—from retirement accounts. To the government's knowledge, several of these victims have since passed away and so will never have the opportunity to testify against those who stole from them. The first defendants were indicted more than three years ago and, through their pursuit of joinder with later-indicted defendants, have already outlived some of their victims. The human cost to further delay is not hypothetical, and the prejudice to the victims, the public, and the government's case is demonstrably real. The defendants should not be allowed to use a global pandemic to continue to run out the clock on the elderly victims they defrauded.

Defendants suggest that prejudice to them is the only relevant consideration, citing *Zafiro*. *See* Defs. Mot. 4–5. But defendants overread that decision, which dealt solely with a *defendant's* motion to sever his trial.  Rule 14 does not *only* contemplate potential prejudice to the defendant, it also permits severance if joinder "appears to prejudice … the government." Fed. R. Crim. P. 14(a); *see also Zafiro*, 506 U.S. at 538 ("Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government."). While defendants pay nominal lip service to the pandemic, they argue it "does not override the rights of defendants in criminal cases." Fair enough—but defendants have identified no freestanding cognizable right to a joint trial, and their arguments against severance do not warrant reconsideration. Indeed, if defendants' arguments about prejudice were correct, then it would always be the case, in multi-defendant cases, that *the defendants* controlled whether a case was tried jointly or severed.  That is not the law, or close to it.

### 2.   None of the defendants have made a sufficient showing of prejudice.

First, to the extent defendants are concerned with their opportunity to be heard on severance, they have now presented their arguments regarding prejudice to the Court in their renewed motion. As discussed below, the government believes those arguments are unavailing, and they become no stronger simply because the Court's initial decision was sua sponte (as defendants acknowledge the Court is authorized to do, *see* Defs. Mot. 6).

Defendants' principal objection appears to be a claim of prejudice to their ability to present a complete defense based on either their co-defendants' (speculative) reluctance to testify or because of the division of responsibility among the various defense counsel.

First, defendants' citation to *United States v. Parodi*, 703 F.2d 768 (4th Cir. 1983), is inapposite at best. In that case, the defendant *sought* severance because he thought his co-defendant was more likely to waive Fifth Amendment privilege at Parodi's (second-in-time)

11

trial. *See id.* at 778. But in any event, the Fourth Circuit found that the defendant had not shown "a reasonable probability that the proffered testimony would, in fact materialize." *Id.* at 779. Notably, the proffer the Fourth Circuit found insufficient is comparable to the ambiguous speculation defendants make here. While counsel for each defendant has signed the motion, *no defendant* has stated any concrete intention to take the stand (or not) during his or anyone else's trial—or even that it is *probable* they would do so. Instead, defendants state only that they "may" take the stand at their own trials and that they are "more likely" to do so at their own trial than another. Defs. Mot. 10.

In *Parodi*, the defendant proffered that his co-defendant's counsel told him that "it is more likely that [the co-defendant] would testify if there is a severance and if [the co-defendant] is tried before Parodi." *Parodi*, 703 F.2d at 778. The Fourth Circuit found this kind of qualified, relative expression of likelihood insufficient, particularly given that it evinced an attempt by defendants to obtain trial benefits to which they were not otherwise entitled through use of the joinder and severance mechanisms. *Id.* at 781; *see also United States v. Medford*, 661 F.3d 746, 754 (4th Cir. 2011) ("Penland's representation was, at best, equivocal regarding his willingness to waive his Fifth Amendment rights if the trials were severed.").[4] And in *United States v. Becker*, 585 F.2d 703 (4th Cir. 1978), the Fourth Circuit upheld the district court's requirement that the potentially testifying co-defendant "proffer his testimony under oath," both to establish that its content was in fact exculpatory and to demonstrate the concreteness of his decision to

---

[4] In fact, the assurance that the Fourth Circuit found insufficient in *Medford* was far less equivocal than the defendants' collective non-position here. *See* 661 F.3d at 753 ("Penland can provide assurance to the Court that he intends to cooperate with any Subpoena issued by Bobby Lee Medford … [but] obviously, facts and circumstances which may arise during the trial of Medford, or, for that matter, a previous trial of Penland, could alter the landscape sufficiently to cause him, in good faith, to retract his position stated herein …." (emphases and internal alterations omitted)).

waive his Fifth Amendment right and take the stand. *Id.* at 706–07. As the court noted, "[i]t is apparent that if Bruno refused to testify outside the presence of the jury to establish a basis for granting the motion for severance, he would probably refuse to waive his Fifth Amendment right and testify before the jury at Becker and Elskoe's trial if they were tried first." Here too, none of the defendants have indicated a willingness to proffer their testimony under oath to give credence to their intention to waive their Fifth Amendment privilege in a joint trial.

Indeed, this refusal to allow defendants to secure strategic trial advantages through joinder and severance motions runs throughout the Fourth Circuit's case law. *See, e.g.*, *Reavis*, 48 F.3d at 767; *Parodi*, 703 F.2d at 780; *Becker*, 585 F.3d at 706. Here, whether tried separately or together, each defendant retains an identical ability to subpoena any co-defendant to testify. Each defendant, whether at his own trial or under subpoena at a co-defendant's trial, retains the decision whether to waive or invoke his Fifth Amendment rights; no defendant has the ability to force a co-defendant to waive his rights either within the same trial or during a later one.  By seeking initial joinder in this case, the defendants sought to benefit from the purportedly greater *possibility* that their co-defendants would waive the privilege and testify; they now invoke the same speculative possibility of that waiver to attempt to keep their cases joined (and, by extension, to continue trial indefinitely). But, just as when a defendant moves for severance and must demonstrate that he will suffer "actual prejudice"—and not just that a separate trial "would offer a better chance of acquittal"—each defendant here must be required to make the same showing with respect to joinder. *Reavis*, 48 F.3d at 767. None of them has done so.

Second, though they cite *Parodi*, defendants omit any discussion of the four-part test established by that case, which demands far more than the mere possibility of relevant co-defendant testimony. To satisfy the *Parodi* standard, a defendant must show, in addition to the

reasonable probability that a co-defendant will testify, "the bona fide need for the testimony of his co-defendant," "the substance of his co-defendant's testimony," and "the exculpatory nature and effect of such testimony." *Medford*, 661 F.3d at 753. A defendant must establish all four of these requirements to demonstrate prejudice from the purported unavailability of a co-defendant's testimony. *See id.* at 754. Defendants' joint submission asserts only the most general and vague descriptions of substance, like an absence of testimony about "the accounting and books" and "the engineers involved in the ventures," without explaining how why that testimony is necessary and how it is impossible to get without their co-defendants' testimony, which of course none of them can say with any certainty will be available even at a joint trial. Defs. Mot. 9. In other words, what is missing from defendants' submission is any proffer of the specific facts that are both *necessary* and *exculpatory* to present a complete defense. *See Reavis*, 48 F.3d at 768 ("The movant's showing in this regard must be sufficiently definite so that the trial court can evaluate the 'exculpatory nature and effect' of the co-defendant's potential testimony.").

Third, defendants' arguments as to potential prejudice are further undercut by the Court's order setting the sequence of defendants to go to trial.  The Court has, appropriately, set the two lead defendants to be tried first, along with Billy Seabolt, who is the only other remaining defendant in Case No. 2:17-cr-126. Defendants' joint submission blurs the lines between the prejudice resulting to each defendant, and a careful parsing demonstrates that the claimed prejudice is speculative and illusory. For example, the two lead defendants set to go to trial first—Bank and Maerki—are the central players in the criminal conspiracy and have undoubtedly the most comprehensive view of the enterprise; they remain free to take the stand and explain how they understood these investments to operate. At least as to these defendants, along with Seabolt, they cannot colorably argue they are prejudiced by not having the testimony

14

of more minor participants. As to the other defendants, they remain free at their later trials to subpoena the first-tried defendants for their testimony. Whether those defendants testified at their trial or not, it is at least equally, if not more, likely that they will choose to waive and testify in a subsequent trial as they would have in a joint trial. Thus, the second and third sets of defendants have in reality suffered no decrease in the likelihood of obtaining their co-defendants' testimony.

In essence, by combining their prejudice arguments into an undifferentiated mass, each defendant seeks to control the order in which he is tried in order to incentivize his co-defendants to waive privilege and testify in a manner that benefits him.  But Fourth Circuit case law makes clear that defendants cannot satisfy the required prejudice showing when a co-defendant's testimony is contingent on the order in which defendants proceed to trial. *See, e.g.*, *Parodi*, 703 F.2d at 779. By analogy, defendants cannot show prejudice when their testimony purportedly is contingent on proceeding to trial together; this situation presents the same moral hazards by which defendants can bargain amongst themselves for favorable testimony about which *Becker* warned.

Lastly, defendants argue that they are prejudiced because they have relied on the joinder order, and severing the case for trial at this stage would interfere with the presentation of the defense case. But these claims of prejudice are also illusory. First, contrary to defense counsel's collective framing, it is only defense counsel for the first three defendants who are impacted, and they have around eight weeks, considering the additional one-month continuance granted in the Court's October 6 order, to prepare.[5] That is on top of the *more than three years* they have

---

[5] Defense counsel for Bank, Seabolt, and Maerki also oddly complain that they are prejudiced because they, unlike the other defense counsel, will not "have the benefit of a preview of the evidence and argument" (Defs. Mot. 11)—a benefit to which no defendant is entitled and, if anything, prejudices the government, who must prosecute two subsequent trials after having put on its evidence during the first trial.

already had to prepare their defenses in this case. Similarly, defendant Maerki has had well over a year and a half to prepare his defense. Defendants have had more than sufficient time to prepare, and in addition have more than sufficient time between now and the trial date to make whatever strategic adjustments, if any, are required by the smaller trials.

Defendants' complaints about the impact of the severed trials on defense witnesses also do not warrant re-joinder. Again, the first-tried defendants are in no different position as to obtaining the presence of the witnesses who were initially slated to attend trial beginning in early November. Indeed, with the Court's one-month continuance, they have ample time to secure and schedule their attendance. The other defendants claim that they are prejudiced because "the second and third trials do not have trial dates set," so "[w]itnesses are unable to prepare for that travel." Defs. Mot. 11. But the lack of a scheduled trial for the second and third group permits the Court, with the parties' input, to later schedule those trials for convenient dates and in light of the ever-evolving nature of the pandemic and public health restrictions. It bears noting that defendants' purported concerns about uncertainty are in conflict with their simultaneous request for an indefinite continuance, which poses the same future problems regarding scheduling and obtaining the presence of witnesses at an unscheduled future trial.

**B.      The motions to continue should be resolved with appropriate Speedy Trial findings.**

Because of the varied positions of the defendants regarding the motion to continue, the government will separately address each group of defendants.  First, the Court should grant the motion to continue as to Smith, Alcorn, Coffin, Sellers, and Barnett.  The Court has continued their trial date and the government requests that the Court make the requisite speedy trial findings required to support defendants' requested continuance.

Second, Maerki has not requested a continuance.  As such, the government submits that his trial should go forward on December 1, 2020 as scheduled.  Maerki's affirmative decision *not* to join the continuance motion clarifies the literal impossibility of what defendants are asking the Court to do—and also makes clear that the defense motion is not in fact a joint one.

Finally, the government objects to Bank's and Seabolt's motion for yet another continuance in this case.  The Bank case has been pending for over three years, since August 23, 2017.  Bank and Seabolt have requested and obtained multiple continuances.  This case was rapidly approaching trial in June 2019 when Bank filed an interlocutory appeal and requested a stay.  As a result, the case was delayed another full year while the Fourth Circuit considered his appeal of the Court's denial of his motion to dismiss on double jeopardy grounds.  Although the last continuance was caused by the unforeseen COVID-19 pandemic, it is time for this case to be tried and for the victims to have the opportunity to seek justice in a meaningful way.  The Court has developed a plan for this case to proceed in a safe and expeditious manner, and the government believes it should go forward as scheduled on December 1, 2020. The Court's handling of the case falls well within its discretion, especially in light of an unprecedented global pandemic.

At this stage in the pandemic, it is unclear precisely when in the future it will be safe to try an eight-defendant case in a single courtroom.  The Court has established protocols for social distancing, masks, cleaning, and plexiglass barriers that will enable a trial involving three defendants to proceed in a safe manner.  With social distancing requirements of six feet serving as an established norm, there simply is no feasible way to proceed to trial with more than three defendants at a time.  And, at this stage, it certainly appears that social distancing in the federal courthouses in the Eastern District of Virginia will be a requirement for the foreseeable future.

17

The alternative of pushing this more than three-year-old case off until all eight defendants could be tried at the same time is simply not an option.  The victims and the public also have a right to a speedy and expeditious trial, and this case should not be held in limbo until some unknown time in the future when social distancing is no longer required.

As detailed in the indictments, Bank, Seabolt, and Maerki targeted elderly victims in a wide-ranging scheme to defraud.  A number of the elderly victims are in declining health.  While the case has been pending, at least two victims have progressed into the early stages of dementia and so will not be called at trial.  Over the last few months, the government has received notice that three victims recently passed away.  Two of these victims were prepared to testify at the previously scheduled June 2019 trial before Bank filed the interlocutory appeal and the trial was continued.  Given the number of elderly victims involved in this case, and in consideration of the victims' right to proceedings free from unreasonable delay, the government believes that the Court should deny Bank's and Seabolt's motions to continue and proceed to trial on December 1, 2020.[6]

**CONCLUSION**

Based on the foregoing, the government submits that the Court should:  (1) deny defendants' motions for joinder; (2) deny defendants' motions objecting to the severance; (3) grant the motion to continue in favor of Alcorn, Smith, Sellers, Barnett, and Coffin; and (4) deny Bank's and Seabolt's motion to continue.

---

[6] Speedy trial findings as to Bank, Seabolt, and Maerki were made in the Court's October 6 Order.  ECF No. 303 (Bank) & 138 (Maerki).

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:      _____/s/_____
Melissa E. O'Boyle
Virginia State Bar No. 47449
Elizabeth M. Yusi
Virginia State Bar No. 91982
Andrew Bosse
Attorneys for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address - Melissa.OBoyle@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 9, 2020, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all counsel of record.


By: _____/s/_____
Melissa E. O'Boyle
Assistant United States Attorney
Virginia State Bar No. 47449
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address - melissa.oboyle@usdoj.gov