```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - -
                                       )
 5     UNITED STATES OF AMERICA        )
                                       )
 6     v.                              )     CRIMINAL ACTION NO.
                                       )          2:19cr47
 7     KENT MAERKI, et al.,            )
                                       )
 8          Defendants.               )
                                       )
 9   - - - - - - - - - - - - - - - - - -        - AND -
                                       )
10     UNITED STATES OF AMERICA        )
                                       )
11     v.                              )     CRIMINAL ACTION NO.
                                       )          2:17cr126
12     DARYL G. BANK, et al.,          )
                                       )
13          Defendants.               )
                                       )
14                                     )
                                       )
15   - - - - - - - - - - - - - - - - - -

16

17          TRANSCRIPT OF VIDEO TELECONFERENCE PROCEEDINGS
                         (Status Conference)
18
                          Norfolk, Virginia
19
                         September 16, 2020
20

21
     BEFORE:  THE HONORABLE RAYMOND A. JACKSON
22            United States District Judge

23

24

25
```

```
 1   APPEARANCES:  (Via ZoomGov.com)

 2           UNITED STATES ATTORNEY'S OFFICE
            By:  Melissa E. O'Boyle
 3               Elizabeth M. Yusi
                Assistant United States Attorneys
 4               Counsel for the United States

 5           CHRISTIAN L. CONNELL, P.C.
            By:  Christian L. Connell
 6               Counsel for Defendant Kent Maerki

 7           RICHARD S. YAROW LLC
            By:  Richard S. Yarow
 8               Counsel for Defendant David Alcorn

 9           FEDERAL PUBLIC DEFENDER'S OFFICE
            By:  Lindsay McCaslin
10               Keith Kimball
                Assistant Federal Public Defenders
11               Counsel for Defendant Aghee William Smith, II

12           HALLAUER LAW FIRM
            By:  Scott F. Hallauer
13               Counsel for Defendant Tony Scott Sellers

14           AMG LAW, PLC
            By:  Anthony M. Gantous
15               Counsel for Defendant Thomas L. Barnett

16           GREGORY K. MATTHEWS PC
            By:  Gregory K. Matthews
17               Counsel for Defendant Norma Jean Coffin

18           ZOBY & BROCCOLETTI
            By:  James O. Broccoletti
19               Counsel for Defendant Daryl G. Bank

20           EMILY M. MUNN, P.C.
            By:  Emily M. Munn
21               Counsel for Billy J. Seabolt

22

23

24

25
```

```
 1              (Proceedings commenced via ZoomGov.com at 2:34 p.m.)
 2              THE CLERK:  In Case 2:17cr126, United States of
 3   America vs. Daryl G. Bank, et al., and in Case 2:19cr47,
 4   United States of America versus Kent Maerki, et al.
 5              Ms. O'Boyle, Ms. Yusi, is the government ready to
 6   proceed?
 7              MS. O'BOYLE:  The United States is ready.  Good
 8   afternoon.
 9              THE COURT:  Good afternoon, counsel.
10              THE CLERK:  Mr. Broccoletti, are you ready to
11   proceed on behalf of Daryl G. Bank?
12              MR. BROCCOLETTI:  Good afternoon, Your Honor.
13   Present and ready.
14              THE COURT:  Good afternoon.
15              THE CLERK:  Ms. Munn, are you ready to proceed on
16   behalf of Billy J. Seabolt?
17              MS. MUNN:  Good afternoon, Judge.  I'm present and
18   ready to proceed.
19              THE COURT:  Good afternoon.
20              THE CLERK:  Mr. Connell, are you ready to proceed on
21   behalf of Kent Maerki?
22              MR. CONNELL:  Yes, I am ready to proceed.  Good
23   afternoon, Your Honor.
24              THE COURT:  Good afternoon, Mr. Connell.
25              THE CLERK:  Mr. Yarow, are you ready to proceed on
```

```
 1    behalf of David Alcorn?
 2            MR. YAROW:  Good afternoon, Your Honor.  Yes, I am
 3    ready.
 4            THE COURT:  Good afternoon, Mr. Yarow.
 5            THE CLERK:  Ms. McCaslin, Mr. Kimball, are you ready
 6    to proceed on behalf of Aghee William Smith, II?
 7            MS. McCASLIN:  Yes, we are.  Good afternoon, Your
 8    Honor.
 9            THE COURT:  Good afternoon, counsel.
10            MR. KIMBALL:  Good afternoon, Judge.
11            THE CLERK:  Mr. Hallauer, are you ready to proceed
12    on behalf of Tony Scott Sellers?
13            MR. HALLAUER:  Yes, ma'am.
14            Good afternoon, sir.
15            THE COURT:  Good afternoon.
16            THE CLERK:  Mr. Gantous, are you ready to proceed on
17    behalf of Thomas L. Barnett?
18            MR. GANTOUS:  I am ready.  Good afternoon, Your
19    Honor.
20            THE COURT:  Good afternoon.
21            THE CLERK:  And, Mr. Matthews, are you ready to
22    proceed on behalf of Norma Jean Coffin?
23            MR. MATTHEWS:  Good afternoon, Judge.  Here and
24    ready.
25            THE COURT:  Okay, counsel.  I appreciate all of you
```

1    coming on Zoom here for purposes of this conference here.

2    COVID-19 has certainly upset the plans that the Court had.

3    When the Court joined these cases, the Court anticipated that

4    it would try all eight at one time.  After all, last July, I

5    tried a case about four weeks, I think, or more, eight

6    defendants, and it worked very well, but that obviously is

7    not what we can do now.

8         And so the Court, in its view, will have to sever

9    these cases, as you probably figured that out, because we're

10   limited in the number of defendants we can get in the

11   courtroom and to practice social distancing and other

12   precautions that we have had to adopt because of COVID-19.

13        So I have a couple of questions before I indicate

14   exactly what the Court anticipates doing.

15        Before the Court joined these cases, Ms. O'Boyle,

16   how long was it anticipated that it was going to take to try

17   Mr. Seabolt and Mr. Bank?

18        MS. O'BOYLE:  Your Honor, the government estimated

19   that it would take approximately four weeks to try

20   Mr. Seabolt and Mr. Bank together.

21        THE COURT:  Okay.  So when I joined the cases, how

22   long did you anticipate it was going to take?

23        MS. O'BOYLE:  Your Honor, I think with the joinder,

24   I think we expected -- because a lot of the evidence overlaps

25   between the two cases, I basically -- we think we basically

1   expected that it would take six to seven weeks together, with
2   all eight defendants.
3         THE COURT:  All eight defendants.  There's only one
4   defendant incarcerated here, and that's Mr. Maerki.  The
5   Court has to make a determination about how it will sever
6   this case.  I'm sure that the United States and the
7   defendants are probably more conversant on the way the proof
8   is running in this case than the Court is.
9         The Court has simply had the benefit of reading very
10  carefully the indictments to see where the overlap is in
11  these cases.  So it's going to be based on the overlap and
12  certain other considerations that the Court is making a
13  decision about what is going first.
14        First, I will tell you all this:
15        Daryl Bank -- this case was indicted back in 2018,
16  and the Maerki case came along subsequent to that.  So the
17  oldest defendants in here really are Bank and Seabolt.  And
18  the Court would propose to sever Bank and Seabolt in its
19  first series of cases.  The Court believes it has the
20  capacity to try at least three defendants at one time.
21        Now, the question becomes what three?  The Court
22  would propose we try Mr. Seabolt and Mr. Bank and Mr. Maerki,
23  who is incarcerated, all at the same time.  And subsequently,
24  the Court would come back, and the Court would take another
25  three and try them.

1          So that's what the Court is proposing to do here, is

2     to sever Mr. Maerki, who is incarcerated, Mr. Seabolt, and

3     Mr. Bank, who have been waiting to have their trial -- their

4     trial much longer, in the first round.  And then the Court

5     would be able to tell you at some point where we could

6     schedule the next round.

7          There is no precise time that we would finish this

8     first round, so I can't tell you by December 1st or first

9     week in December we can start a second group of cases.  We

10    will be able to tell you that once we get in the middle of

11    the case, and we will then have to schedule the next round of

12    cases.

13         So that's the best thing the Court can tell counsel.

14    I realize you've been waiting a long time to try your

15    clients, but that is the best the Court can do.

16         The Court has looked at the courtroom trying to

17    figure out how to squeeze four.  It will be a challenge to

18    squeeze three, but we're going to squeeze three if someone

19    has to sit beside me.  We're going to do three.  And so

20    that's where we are in terms of the cases.

21         Any questions?

22         MR. YAROW:  Yes, Your Honor.  There's five

23    defendants left if you try the three.  Do you anticipate

24    breaking them up again?

25         THE COURT:  Well, I would still have to break them

1   up again because I can't try five at one time.  And the

2   question is how will I break the five up?  Is that what you

3   want to know?

4           MR. YAROW:  No, not necessarily, but do you

5   anticipate trying the five together or --

6           THE COURT:  No.  I cannot try five together.  If I

7   could try five together, I would do it right now, but I

8   cannot.  So what I'll have to have is, I'll have to do a

9   three and two or a two and three, but I cannot do five, which

10  means that I am pretty confident in the second round I will

11  have Mr. Alcorn and Ms. Coffin.

12          Those two, I'm pretty confident, will be in my

13  second round, and at least one of the other defendants will

14  be in that same round.  I will take Alcorn, Coffin, and

15  probably Mr. Smith in the second round.  And the last two I

16  would do will be Sellers and Barnett.  So that gives you some

17  way you can figure out about where we're going with the case.

18          I would love to have Ms. Coffin in the first round

19  here, given her role here, but I cannot get that done.  So

20  that's my position on that.

21          MS. MUNN:  Judge, this is Emily Munn on behalf of

22  Mr. Seabolt.

23          My issue is that I have another trial that's set to

24  start with Judge Smith on September 29th, and that trial has

25  been delayed now.  We've been given about a week and a half

 1   for jury selection.  So I can say with about 90 percent

 2   confidence that that trial is not going to be finished by

 3   that first week of November now.  I'm not sure what that

 4   means as far as the courtroom setup, but I also -- I would

 5   not personally be available to be in the first trial with

 6   that schedule.

 7             THE COURT:  I wasn't aware.  When did that happen?

 8             MS. MUNN:  We had a pretrial conference last week,

 9   and Judge Smith announced that she'll be doing jury

10   questionnaires September 29th, that whole week, so we're

11   bringing in jurors to do questionnaires.  The jury will be

12   seated either October 6th or October 7th.  And the government

13   has said that the case is five weeks long.

14             THE COURT:  Here's what we're going to have to do,

15   but I talked to Judge Smith, and we hope -- sometimes the

16   government says five weeks, but it's really three-and-a-half

17   weeks with efficiency.

18             MS. MUNN:  Yes, sir.

19             THE COURT:  Like eight weeks go down to six weeks

20   here.  I think all of you-all know that I believe in

21   efficiency.  We might have to run nine-hour days, but we're

22   going to get it done.

23             What I think it might help to do, Ms. Munn, is while

24   I say we'll start November 3rd, we may have to shift down a

25   week, but that also means it has other implications that I

1    may not be able to get to the second group before Christmas

2    at the rate we're going.

3         And I know I have a lot of conflicts in January, but

4    we may have to shift down by a week.  So just be prepared for

5    November 3rd, in case some miracle happens in Judge Smith's

6    case, but we may have to shift down by a week.

7         MS. MUNN:  Yes, sir.

8         THE COURT:  But we're going to trial with

9    Mr. Seabolt, Mr. Maerki, and Mr. Bank in November.

10        MS. MUNN:  I hear you, Judge.  Yes, sir.

11        THE COURT:  We'll just have to work around it.  And

12   then, you know, miracles do happen.

13        MS. MUNN:  I hear you, Judge.  Yes, sir.

14        MR. BROCCOLETTI:  Judge, this is Mr. Broccoletti on

15   behalf of Mr. Bank.

16        I'd respectfully have to object to the Court's

17   severance in having this trial go forward.

18        For the past year or so, we have planned on the

19   joint trial based upon the Court's ruling when it joined the

20   cases.  We had divvied up the responsibilities amongst

21   counsel.  We have divvied up experts and witnesses amongst

22   counsel, and we've prepared for a joint trial in that regard.

23        I understand the Court's concerned about moving the

24   cases and the docket and all the other issues, but it would

25   be very prejudicial to Mr. Bank, at this particular stage, to

1    now sever it and to give us approximately six weeks to be

2    able to prepare for those other areas for which other counsel

3    would have been working on.  And so I'd have to respectfully

4    object to going to trial November 3rd with the severance.

5              THE COURT:  Well, Mr. Broccoletti, the Court hears

6    your position, but I'm sure you understand the Court's

7    position.  There is no way the Court can try eight defendants

8    at one time, and I don't think any appellate court would

9    suggest that the Court can try eight defendants at one time.

10             I'm left with no option but to sever defendants.

11   This is not something we anticipated.  The Court would love

12   to try this case one time and get it over with, but we cannot

13   do it.  I think that counsel will have to make an adjustment,

14   each, of you know what's in your case and be prepared to go.

15             I just have to note your objection and overrule the

16   objection.  We have to go as indicated.  But I think it's

17   appropriate that you put your objection on the record as you

18   have done.

19             MR. BROCCOLETTI:  Yes, sir.

20             MS. McCASLIN:  Your Honor, this is Lindsay McCaslin

21   representing Aghee Smith.

22             I will be making a similar objection.  We do object

23   to the severance because of prejudice.  We have been planning

24   for the past ten months to try this case with the

25   co-defendants.  There are a lot of overlapping witnesses, lay

Carol L. Naughton, Official Court Reporter

1    witnesses, expert witnesses, and also the potential of having

2    the co-defendants testify and the evidence that would be

3    brought forth from the co-defendants in the case, as well, so

4    we will be objecting on those grounds as well.

5            THE COURT:  Okay.  Your objection is noted, and for

6    the same reasons the Court put forth with respect to

7    Mr. Bank, the Court would maintain its overruling of your

8    objection.

9            MR. GANTOUS:  This is Anthony Gantous for

10   Mr. Barnett.

11           Same objections for the same reasons, Your Honor,

12   just to be on the record.

13           THE COURT:  The objection is noted.  The objection

14   is overruled.

15           MS. MUNN:  This is Emily Munn for Mr. Seabolt, and I

16   have the same objection.  I understand the Court's ruling.

17           THE COURT:  Thank you.

18           MR. CONNELL:  Judge, this is Christian Connell for

19   Mr. Maerki, and I would make the same objection for the same

20   reason, but I understand the ruling.

21           THE COURT:  Okay.  Objection is overruled.

22           MR. YAROW:  Your Honor, this is Richard Yarow for

23   David Alcorn with the same objection.

24           THE COURT:  Objection noted and overruled for the

25   reasons first articulated with Mr. Bank.

1          MR. BROCCOLETTI:  Your Honor, may I just bring up
2      one point?  With respect to -- and I'm not trying to step in
3      for Ms. Munn, but I know the Court is optimistic that she is
4      going to be finished.
5          Would the Court consider having another group go
6      first in order to assure that Ms. Munn would be available to
7      be able to go to trial?  Because I'm concerned that as we get
8      closer to that date and if she is still tied up, as well as
9      the ability to prepare for one trial while she is trying
10     another trial, just to be sure so that some cases can go,
11     would the Court consider altering its schedule to have other
12     defendants go first?
13         THE COURT:  I don't think the Court wants to do
14     that.  I think the Court looks at these cases; the Court's
15     read these indictments, and I think that, in this indictment,
16     I find some defendants probably are more culpable than
17     others, and the Court believes that the way it's divided is
18     appropriate.
19         And what the Court has indicated it will do, is the
20     Court is simply going to have to adjust to the fact that
21     Ms. Munn may not be available and we may have to push this
22     case down seven or eight days.  I don't know.  But the Court
23     thinks that the breakdown is the most appropriate and
24     reasonable with respect to the evidence, whatever the Court
25     is able to understand from reading these two indictments.

1          Ms. O'Boyle, what is your view on Mr. Broccoletti's

2    request?  But that's the Court's view.

3          MS. O'BOYLE:  Your Honor, it's the government's

4    position that we should go forward with the three that the

5    Court has noted.

6          I would just state that in terms of trial

7    preparation, Mr. Bank was indicted in August of 2017, and so

8    this case has been around for three years, and so we

9    certainly believe that Mr. Broccoletti is going to be able to

10   be fully prepared and ready to try this case on November 3rd.

11         Ms. Munn is -- her client was indicted in early

12   2018, so it's been over two years for Mr. Seabolt, as well,

13   and she is a very capable counsel and I think will be able to

14   be prepared.

15         And Mr. Maerki, particularly, given that Mr. Maerki

16   is in pretrial detention, we have no doubt that Mr. Connell

17   will be able to be prepared and ready for trial on

18   November 3rd.

19         I think the only other option I think -- the

20   government would actually prefer alternative counsel for

21   Mr. Seabolt and let him go forward with alternative counsel,

22   rather than substitute a different person or a different

23   defendant for Mr. Seabolt.

24         THE COURT:  It's a little late in the day to be

25   talking about giving him alternative counsel.  I mean, he has

1    been working with Ms. Munn, and the Court doesn't see this

2    potential problem as something that's going to stop this case

3    from being tried under reasonable time in the month of

4    November, and so the Court is not prepared to realign trial

5    of these defendants based upon this potential problem.

6         I realize that it works Ms. Munn very hard to go

7    from one trial to the other, but she is able, and I think she

8    will be able to handle it.

9         MS. O'BOYLE:  Your Honor, the only other issue that

10    the government would raise is we would request speedy trial

11    findings be made with respect to the remaining, I guess, five

12    defendants that are not going to be going on November 3rd but

13    will be tried forthwith as soon as is possible.

14         THE COURT:  The Court is very cognizant of that, and

15    the Court will, in fact, do that.

16         I will tell you some other preliminaries.  With

17    respect to trying these cases, it will probably take us at

18    least two days to pick a panel because the Court is not going

19    to bring in very many jurors at one time.  The Court will

20    probably bring in 24 during the morning, 24 during the

21    evening/afternoon, and do the same thing the next day to

22    avoid having too many jurors in courthouse.

23         You're probably aware we are sending out

24    questionnaires to the jurors when they're summonsed to

25    address issues of whether they have any problems with

```
1    COVID-19, whether they are medical professionals, or whether
2    they have childcare problems because the schools are not
3    functioning, and so we're trying to reduce the number of
4    jurors that show up with problems.
5            All jurors basically over the age that they're not
6    required to serve as jurors, we will not be calling those in
7    here.  So we're going to do our best to cut down on the
8    number of jurors that show up that shouldn't be here or we
9    end up having to excuse.
10           MR. MATTHEWS:  Your Honor, I'm sorry, I was kind of
11   bashful earlier.  I'd like to note my objection to severance,
12   the same ruling.  So I understand the Court's ruling on the
13   previous motion for severance.
14           Also, I spoke to my client specifically about speedy
15   trial.  That's not going to be a problem here.  She will
16   waive speedy trial, and I've notified the U.S. Attorney of
17   that.
18           THE COURT:  Okay.  Thank you.
19           MR. MATTHEWS:  It's not going to be a problem.
20           THE COURT:  The Court would never consider you to be
21   bashful, Mr. Matthews.
22           MR. HALLAUER:  Your Honor, if I could, I guess
23   somebody's got to be last.
24           THE COURT:  Wait a minute.  Let me rule on
25   Mr. Matthews' objection.
```

1           Your objection is overruled.

2           MR. MATTHEWS:  Yes, sir.

3           THE COURT:  Who is next?

4           MR. HALLAUER:  It's me, sir.  It's Scott Hallauer

5  for Tony Sellers.

6           I'd also object to the severance.  I think one of

7  the issues that is going to impact everybody is a lot of our

8  witnesses are the same.  A lot of our witnesses on the

9  defense side are out of state.  So we're talking about some

10  of these witnesses now attending court on three separate

11  occasions, on three separate days.

12           In addition, there's an idea that there may be some

13  defense experts that are going to be necessary.  So we're

14  talking about expert witnesses and expert witness fees now

15  that we're going to ask from the government for three

16  separate dates and three separate fees.

17           So I just want to make sure that talking point is

18  heard.  I realize these are unprecedented times and we have

19  to do different things, but there are going to be some real

20  mechanical complications to doing it in this way based on

21  defense witnesses.

22           THE COURT:  Mr. Hallauer, you are exactly right

23  about the cost and the duplication, and the Court has thought

24  about all of that and just cannot figure out a way to get

25  everyone into the same place unless we can all meet outside

1   of this building or something, and then you have safety

2   problems and security problems and all things.

3          So we have to do it the hard way.  And the

4   government is going to have to pay for the cost of witnesses

5   to travel who cannot afford the cost, and probably pay more

6   in counsel fees.  So it's a costly process.  This COVID-19 is

7   having a really adverse effect on everything.  So you're

8   right.  And listening at the same case three times is no easy

9   task.

10          MR. KIMBALL:  Judge, this is Keith Kimball for Aghee

11   Smith, and perhaps the Court has thought about what I'm about

12   to say, but as far as the defense counsel, I'm not quite sure

13   about Mr. Connell, and I don't know how the government feels

14   about it, but I think most of the defense counsel -- why not

15   just move this case to spring, Judge?  That way we try it

16   once, all defendants.

17          I think the Court can make the appropriate findings,

18   and I just think it would make sense and would solve all the

19   issues we're talking about, all the concerns.

20          THE COURT:  Mr. Kimball, that was a thought, too,

21   but spring is no guarantee.  There is no guarantee that we're

22   going to be anywhere come spring on this COVID-19.  We still

23   have people out here doing irresponsible things.  And so --

24   if you listen at the medical professionals, it's not going

25   away, so that's no guarantee.

1             Plus, we have the witnesses who may disappear
2      between now and spring.  We have some aged witnesses in this
3      case, too.  So I don't think spring is a viable option.  I
4      guarantee you I thought about it.  I have other things to do
5      other than this case.
6             MR. KIMBALL:  I know, Judge.  I know.
7             THE COURT:  It would be good to move it, but that's
8      not going to work.
9             MR. YAROW:  Judge, this may be a question for
10     Ms. Cherry, and it may not be able to be answered at this
11     time, but at what point do you think we would be notified
12     when our trial is going to be scheduled if we're in the
13     second or third group?  What is the thought on that?
14            THE COURT:  Okay.  You'd probably get -- my
15     courtroom deputy, Ms. Thompson, is not with me today, but she
16     would be the one that would be notifying you, but what the
17     Court is going to do is, the Court is just trying to get a
18     measure here on where we go.
19            Right now, we're not sure whether we can start
20     November 3rd or November 10th or the 15th.  So I have to get
21     some understanding of where that is, but we'll notify you as
22     soon as possible about the second round on this case here.
23            I understand what your concern is.  You're in limbo.
24            MR. YAROW:  Well, we have to get subpoenas out and
25     so forth.

```
1              THE COURT:  That's true.

2              MR. YAROW:  And I just want to make sure I have

3    sufficient time.

4              THE COURT:  We'll attend to that, too.

5              We will have a status conference with the people --

6    we'll have another status conference with the second round,

7    and the third-round counsel certainly can be present to see

8    where we're going or what we're trying to work out.

9              I just ask for your patience in trying to deal with

10   this rather unusual way of going about handling criminal

11   justice.

12             MR. MATTHEWS:  Your Honor, can I interject?  I want

13   to amplify a little bit on what Mr. Kimball said.

14             I mean, this is a case with a lot of moving parts,

15   and because there are so many defendants, I've literally

16   planned to try this case with all of the other co-defendants,

17   and I don't think it's out of line to say that we are -- I

18   know, kind of, what their defenses are going to be; they

19   certainly know what mine is going to be.

20             And I don't -- we're going to have to change things.

21   I mean, things are going to be different because a lot of

22   defendants are actually leaving this case for the trial, so I

23   know I'm going to have to do things a little bit different.

24             So I just want to make sure the record is clear.  I

25   agree with what Mr. Kimball said.  These cases were joined.
```

```
 1    I know -- and that's how they should be tried.  And that's --
 2    I know you've already ruled.  I don't want to try the Court's
 3    patience, but I just want to make sure the record is clear.
 4            I've discussed it with Ms. Coffin.  And the cases
 5    were joined, and I understand COVID, but all of our
 6    responsibilities are to our people, and I understand that
 7    COVID has made things difficult for the Court system, but our
 8    responsibility is to make sure that our clients get a fair
 9    trial, and by severing them, I think everyone that's been
10    severed is going to have to basically reroute their defense
11    in some way, maybe some more than others.
12            THE COURT:  That's an interesting argument about
13    rerouting your defense if you're separate.  Your defense is
14    your defense.  It should exist whether you're severed or not
15    severed.
16            MR. MATTHEWS:  That's true.  But this case has a lot
17    of moving parts, Your Honor.  So I mean, I just wanted to
18    make sure I don't -- I know you've ruled, and I don't want to
19    try the patience of the Court.
20            THE COURT:  I think all counsel have made their
21    point very clear, and the Court understands your point.  You
22    might not know it, but for years the Court was a defense
23    counsel.  You may know me as a prosecutor, but for years, I
24    was a defense counsel, and I know what it is to be
25    representing a client.  But I just cannot accommodate what
```

1    you want to do.

2         If the Court had any assurance that, by March, we

3    might be able to try eight people, the Court would move it in

4    a heartbeat, but the Court does not believe that we're going

5    to be anywhere near that by March, so let's try it this way.

6         MS. O'BOYLE:  Your Honor, can I raise one other

7    little factor just for the Court to consider?

8         As the government was preparing for the hearing

9    today, it's been a while, but after the second superseding

10   indictment came down, at arraignment, both Mr. Bank and

11   Mr. Seabolt waived a right to a jury trial, and the

12   government at the time objected and wanted the jury.

13        All three defendants -- Ms. Gibson, Mr. Bank, and

14   Mr. Seabolt -- all waived their right to a jury.  But now

15   given where we are with COVID-19, I think the government --

16   I'm not sure what Mr. Seabolt's position is or what

17   Mr. Bank's position is now.

18        I did contact Ms. Munn and Mr. Broccoletti before

19   the hearing to let them know that I was going back through

20   and found the waivers.  I don't know if their clients will

21   continue to stand on those waivers or if they're going to

22   require -- if they want a jury trial now, but I think the

23   government would be amenable to a bench trial with Mr. Bank

24   and Mr. Seabolt if their jury waivers still hold true.

25        THE COURT:  Mr. Broccoletti?

1          MS. O'BOYLE:  It would make -- I think the first

2     indictment, I think that trial, not having to pick a jury in

3     the time of COVID-19, I think makes things far, far simpler

4     on all of the parties.

5          MR. BROCCOLETTI:  Your Honor, I have not spoken to

6     Mr. Bank about that in a year and a half, I would say, and

7     that was prior to any of the joinder and all the other

8     issues.  So I would have to discuss that with him.  I cannot

9     give the Court an answer to that today.

10          THE COURT:  All right.

11          MS. MUNN:  Judge, I'm in the same position.

12     Ms. O'Boyle did call me yesterday afternoon.  I wasn't able

13     to have that discussion with Mr. Seabolt since last night,

14     but a lot has changed on the landscape since we did that

15     waiver.  We were joined, and there are other people involved.

16     I'm not really in a position to say whether he still has that

17     willingness to a bench trial.

18          MR. BROCCOLETTI:  And in addition, Mr. Maerki did

19     not waive trial by jury, as I understand it, and the Court

20     has joined him with us for this trial, so it may be a moot

21     point.

22          THE COURT:  Is that correct, Mr. Connell?

23          MR. CONNELL:  Yeah, Mr. Maerki has not waived his

24     right to a trial by jury.

25          THE COURT:  Either way we go, we still have to

```
 1    select a jury.
 2              MR. BROCCOLETTI:  Correct.
 3              THE COURT:  All right.  Well, you see we still have
 4    moving pieces here.
 5              All right.  Anything else?
 6              MR. BROCCOLETTI:  No, Your Honor.  Thank you.
 7              MR. HALLAUER:  Judge, just for the record purposes,
 8    we never got around to your ruling on Mr. Sellers.  It's the
 9    same motion, but I think we started talking about other
10    issues before you got to it.
11              THE COURT:  I overruled your objection to the
12    severance --
13              MR. HALLAUER:  Yes, sir.
14              THE COURT:  -- for the record.
15              MR. CONNELL:  Your Honor, this is Christian Connell.
16    I just have one other thing.  I'd feel remiss and that I
17    wasn't doing my job if I didn't bring this up.
18              As you know, Mr. Maerki is the only one who is
19    currently being held in pretrial detention at Western
20    Tidewater Regional Jail, and they have now had an outbreak of
21    COVID.
22              What I'm getting from the press and what I get from
23    the website is they have at least 20 reported cases.  From
24    speaking to my client, I understand that it's directly, not
25    in his what they call pod, but it's the pod next to his.
```

1          So I'm just going to raise that issue because I'm

2   concerned about his physical well-being.  He's 77 and has

3   tremendous heart problems.

4          THE COURT:  Okay.  Well, I'll tell you what you do,

5   Mr. Connell; I've been getting updates on a daily basis about

6   the status of COVID-19 in the jail and where it is and

7   et cetera, because I still have other defendants who are

8   either going or situated at Tidewater Regional Jail.

9          You can put your motion in writing, but I assure you

10   the Court is trying to keep up with what's what in terms of

11   where COVID-19 is and who's affected, and the Court is very

12   much aware of his age and his status.  You can put that

13   motion in writing if you wish to do so.

14          I will check with the jail to see specifically

15   what's happening with Mr. Maerki.

16          MR. CONNELL:  Yes, Your Honor.

17          One quick question:  Are you getting that

18   information from the Marshals?  Because I would love to get a

19   call, then, as well, or is it --

20          THE COURT:  Well, no.  The Marshal updates the

21   judges on the issues we have with respect to the jails and

22   where we have people detained.  It comes through the U.S.

23   Marshal to the Court.

24          MR. CONNELL:  Okay.  Thank you, Your Honor.

25          MS. MUNN:  This is Emily Munn for Mr. Seabolt.

1          Can I ask -- I want to make sure that I'm available

2    with input about when I'm going to be free and whether I'll

3    be prepared to try this case.

4          Is it the Court's plan for us to set another status

5    conference between now and November 3rd, or are we picking a

6    new date now?  My concern is that I'm about to be unavailable

7    for hearings during the day for the foreseeable future.

8          THE COURT:  What we should do, Ms. Munn, is, with

9    the three people that we're going forward with, the Court can

10   have another status conference, as necessary.

11         If you want to ask the Court for one on a specific

12   date, fine.  And as the Court sees things unfold, I will make

13   sure that I get back to you to make sure that you understand

14   where we are and see what adjustments we have to make.  Okay?

15   The Court will not leave you hanging.

16         MS. MUNN:  I believe that, Your Honor.  I just want

17   to make sure I'm not going to miss out on anything during the

18   day if I'm in court.

19         THE COURT:  Well, we'll try to make sure that

20   doesn't happen either.

21         Anything else?

22         MR. CONNELL:  No, sir.

23         THE COURT:  All right, then.  The Court will be in

24   touch with you as things unfold here.  As the pieces keep

25   moving, we'll keep moving, but we will survive this.  All

1    right?

2              You may close court.

3              (Off the record at 3:08 p.m.)

4

5                         CERTIFICATION

6

7        I certify that the foregoing is a correct transcript

8    from the record of proceedings in the above-entitled matter.

9

10

11              _____/s/_____

12                      Carol L. Naughton

13                      March 16, 2021

14

15

16

17

18

19

20

21

22

23

24

25