IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.

AGHEE WILLIAM SMITH, II,

Defendant.

Criminal Nos.  2:19-cr-47-3

**DEFENDANT'S MOTION FOR ORDER DIRECTING U.S. MARSHAL TO ARRANGE FOR INDIGENT DEFENDANT'S NONCUSTODIAL TRANSPORTATION TO COURT FOR TRIAL & FOR FUNDING OF LODGING DURING TRIAL**

The defendant, Aghee William Smith, II, respectfully moves for an order directing the United States Marshal to arrange for his noncustodial transportation from his home in Sacramento, California, to Norfolk, Virginia, where his appearance in court is required. The defense also asks the Court to order that Mr. Smith's lodging in a Norfolk hotel during trial be paid. Mr. Smith is indigent and cannot afford to pay his own travel expenses to appear for a trial that is expected to last approximately four weeks.

The Supreme Court "has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985). "This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Id.* "From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law." *Gideon v. Wainwright*,

1

372 U.S. 335, 344 (1963). This "noble ideal cannot be realized if the poor man charged with crime" experiences the disadvantages of his poverty inside the courtroom. *Id.*

These due process and equality principles compel the conclusion that when the government calls an indigent defendant on bond to answer in a federal court some 2,800 miles from his home, the defendant must be provided with transportation to court and some form of non-custodial lodging such that he is not effectively deprived of his ability to participate meaningfully in the judicial proceeding in which his liberty is at stake.

### I. Travel to court and funds for subsistence during travel should be paid by the U.S. Marshal pursuant to 18 U.S.C. § 4285.

This Court has statutory authority to order that Mr. Smith's non-custodial travel be funded by the U.S. Marshal. Federal law provides:

> Any judge or magistrate judge of the United States, when ordering a person released under chapter 207 on a condition of his subsequent appearance before that court … may, when the interests of justice would be served thereby and the United States judge or magistrate judge is satisfied, after appropriate inquiry, that the defendant is financially unable to provide the necessary transportation to appear before the required court on his own, **direct the United States marshal to arrange for that person's means of noncustodial transportation or furnish the fare for such transportation to the place where his appearance is required, and in addition may direct the United States marshal to furnish that person with an amount of money for subsistence expenses to his destination, not to exceed the amount authorized as a per diem allowance for travel under section 5702(a) of title 5, United States Code**. When so ordered, such expenses shall be paid by the marshal out of funds authorized by the Attorney General for such expenses.

18 U.S.C. § 4285 (emphasis added). Other federal courts have held that this statute provides for the relief sought here. For example, the court in *United States v. Gonzales*, held: "The plain language of section 4285, economic realities, and the dictates of the equal protection clause support the finding that, after appropriate financial inquiry, this Court may order the government to pay or arrange for

2

the noncustodial transportation of defendant from Texas to Vermont to [appear in court]." 684 F. Supp. 838, 842 (D. Vt. 1988). Indeed, this Court granted a similar motion earlier this year. *See United States v. Lassiter*, No. 2:21cr51 (E.D. Va. July 12, 2021) (Jackson, J.) (ordering United States Marshal to provide defendant's noncustodial transportation to court).

An "appropriate inquiry" reveals "that the defendant is financially unable to provide the necessary transportation to appear before the required court on his own." *See* § 4285. This Court has already determined that Mr. Smith is indigent, as evidenced by his representation by the Office of the Federal Public Defender. Since his indictment in this matter, Mr. Smith obtained his commercial driver's license, but he had to stop driving because of medical issues that jeopardized his ability to drive safely. Thus, Mr. Smith remains indigent and is without funds to pay for air travel.

Yet Mr. Smith needs to travel to Virginia for trial. His trial is scheduled to begin on November 16, 2021. To ensure that Mr. Smith is present for any pretrial hearings that are held on the eve of trial, the defense asks the Court to order that Mr. Smith's travel arrangments allow him to arrive in Virginia by no later than November 11, 2021.

## II. The Court should ensure that Mr. Smith has acceptable non-custodial lodging during trial.

Mr. Smith will also need lodging in a local hotel for the duration of the trial. Mr. Smith lives just outside Sacremento, California. He has lived in the same area for decades. The government charged Mr. Smith in Virginia and his trial will be held in Virginia. But Mr. Smith lacks the funds to pay for an extended stay at a hotel for the duration of trial, which is expected to last about a month.

Essentially forcing an indigent defendant to be homeless for the duration of his trial would effectively deprive the defendant of his ability to participate meaningfully in the judicial proceeding in which his liberty is at stake. Appreciating this obvious due process concern, many courts have ordered that the costs of lodging during trial be paid but they have differed as to how. As recently as this year,

3

one court suggested that the same statute that requires the U.S. Marhals to fund travel also extends to lodging. *See United States v. Barton*, No. 1:19cr733, 2021 WL 3800171, at \*6 (N.D. Ill. Aug. 26, 2021) (denying motion for change of venue and observing that "if Barton is indigent (as it appears he is, at least for purposes of qualifying for court-appointed counsel), then he may move for travel **and lodging funds** under 18 U.S.C. § 4285") (emphasis added). But the weight of authority suggests that § 4285 does not cover lodging. *See, e.g.*, *United States v. Gundersen*, 978 F.2d 580, 584 (10th Cir. 1992) (collecting cases). Still, this Court could take at least three different approaches to ensuring that Mr. Smith has adequate lodging in Norfolk, Virginia, during trial.

**First**, the Court could follow the approach taken by Judge Gleeson in *United States v. Mendoza*, and order funding through the Criminal Justice Act. 734 F. Supp. 2d 281, 286 (E.D.N.Y. 2010) (Gleeson, J.). Like Mr. Smith, the defendants in *Mendoza* lived in California. But they were charged with a federal crime in Brooklyn, New York. *Id.* at 282. Also like Mr. Smith, the defendants in that case were neither a danger to the community nor a flight risk, so they were released on bail. *Id.* Like Mr. Smith, they had court-appointed lawyers. *Id.* "As their trial neared, they sought funds so that they could stay somewhere in the New York area for the two weeks that the prosecutors estimated the trial was going to last." *Id.*

Judge Gleeson observed that the "CJA requires each district court to operate 'a plan for furnishing representation for any person financially unable to obtain adequate representation.'" *Id.* at 286 (quoting 18 U.S.C. § 3006A). The CJA allows counsel to be reimbursed for expert, investigative, and "other services necessary for an adequate representation." *Id.* The *Mendoza* court held that "the term 'other services' might be read to include lodging for a defendant during trial." *Id.*

"Payment for lodging for a defendant who would otherwise be homeless could be said to be necessary 'for an adequate representation'; a defendant who sleeps on the streets is not going to be fit

4

for a trial the next morning." *Id.* Judge Gleeson "concluded that the only acceptable option in this case was to make use of the judiciary's budget for criminal defense attorneys," so he "asked the defense attorneys to book their clients into a modestly-priced hotel for the duration of the trial, and to pay the hotel bills with their credit cards." *Id.* The court then directed that those expenses be "reimbursed from CJA funds." *Id.* This Court could take the same approach here.

***Second***, the Court could order the government to pay for Mr. Smith's lodging. That was the approach adopted in *United States v. Badalamenti*, No. 84cr236, 1986 WL 8309, at *2 (S.D.N.Y. July 22, 1986). In *Badalamenti*, the defendant – like Mr. Smith in this case – was brought to trial as an alleged member of a large conspiracy and forced to attend a long trial "a thousand miles from his home." *Id.* In such circumstances, the *Badalamenti* court held, "it is not consistent with fundamental fairness or due process that an accused defendant, regardless of the crime, be driven to ruin by the expense of attending trial at a place far from his home, nor that he be required to take refuge in jail because of an inability to meet the expense of attending trial." *Id.* The court "rule[d] that the Government [was] obligated to provide either decent, non-custodial lodging or the cost of obtaining it." *Id.* Thus, direct payment by the government under the *Badalamenti* approach is the second option available to this Court.

***Third***, the Court could direct – pursuant to the All Writs Act – that the costs of Mr. Smith's lodging be paid as they would be under Rule 17(b) for an out-of-town witness who was subpoenaed by Mr. Smith. Federal Rule of Criminal Procedure 17(b) provides that "the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense" and directs that, in such circumstances, the "process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas." Fed. R. Crim. P. 17(b). An out-of-town witness would have

5

the costs of his lodging paid during trial. *See generally* U.S. Marshals Service, *Public Defender's Handbook: Travel, Lodging, Meals and Incidental Expenses*, available at https://www.usmarshals.gov/prisoner/pdhandbookc.htm (last visited Sept. 30, 2021). Thus, when the Court orders a witness to appear in aid of Mr. Smith defense, there is a funding mechanism to ensure that the order to appear can be effectuated. That funding is part of the statutory scheme.

With respect to Mr. Smith's appearance, there are similarities and differences. Like a subpoenaed defense witness, Mr. Smith is required to be present at trial. *See* Fed. R. Crim. P. 43(a)(2) ("[T]he defendant must be present at … every trial stage, including jury impanelment and the return of the verdict…."). Indeed, Mr. Smith has been ordered by the court to "appear on time at all proceedings as required." ECF No. 34, at 4. Like a subpoenaed defense witness, Mr. Smith's appearance is necessary to his defense. Also like a subpoenaed defense witness from out-of-state, Mr. Smith requires lodging to effectuate the order that he appear at the multi-week trial. Unlike for witnesses, however, no statute explicitly provides for the expenditure of funds necessary to ensure that the order can be carried out. Section 4285 creates a statutory mechanism for paying for a defendant's non-custodial travel, but there is a statutory gap when it comes to funding his non-custodial lodging.

This gap in the statutory scheme is well-recognized. "As early as 1993, the Prado Committee noted the lack of any provision for subsistence expenses" and "the Judicial Conference reported to Congress that the present lack of clear statutory authority to pay for [return] travel and subsistence ... has resulted in substantial hardships to certain defendants." *Mendoza*, 734 F. Supp. 2d at 287 (cleaned up). Yet "years later, the gap remains unfilled." *Id.* This is the classic situation in which the All Writs Act may be employed.

As the Supreme Court has explained, courts may "resort to the All Writs Act to fill statutory interstices." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 42 n.7 (1985). The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "Courts generally recognize [the All Writs Act] as a gap-filling measure to issue orders necessary to achieve the rational ends of law." *In re Application of U.S. for an Ord. Authorizing Disclosure of Location Info. of a Specified Wireless Tel.*, 849 F. Supp. 2d 526, 580 (D. Md. 2011) (internal quotation marks omitted).

For example, in *United States v. New York Telephone Co.,* 434 U.S. 159 (1977), the Supreme Court held that the All Writs Act gave a district court authority to compel a third-party telephone company to help the FBI install pen register devices under a warrant that authorized the FBI to employ such devices. "In that case the All Writs Act *filled a gap in federal statutes* by granting the District Court jurisdiction over the only party capable of installing the devices." *Pa. Bureau of Corr.* 474 U.S. at 42 n.7 (emphasis added). Similarly, in *Price v. Johnston,* 334 U.S. 266, 282 (1948), the Supreme Court held that the Court of Appeals could order a prisoner to be brought before it to argue his own appeal, finding that the All Writs Act was a mechanism to achieve the "rational ends of law." The Court held that the All Writs Act was the appropriate mechanism for granting relief because the person needed to be in court, but no statutory mechanism existed for assuring his appearance. *Id.*

Earlier this year, the Sixth Circuit held that "a district court has the authority under the All Writs Act to order [a] state to transport a habeas petitioner for medical imaging in aid of [the federal court's] habeas jurisdiction." *Twyford v. Shoop*, 11 F.4th 518, 525 (6th Cir. 2021). The Sixth Circuit held that ordering the state to transport a federal habeas petitioner for that purpose did "not conflict with habeas statutes or the common law" and was "consistent with congressional intent to provide for

7

counsel for capital defendants." *Id.* The habeas petitioner needed to be transported for the medical imaging for the court to properly analyze his habeas petition, but no statute explicitly contemplated how that should be accomplished. The Sixth Circuit held that an order directing the state to provide the transportation was "'necessary or appropriate' to aid the district court in its adjudication of his habeas petition" and thus was properly ordered under the All Writs Act. *Id.*

That is the situation here. Everyone agrees that Mr. Smith needs to be in court. One statute provides for his travel to court. *See* 18 U.S.C. § 4285. Other provisions recognize the need for the Court to financially assist an indigent defendant by providing lodging for a necessary defense *witness* who must attend a long, out-of-state trial. Fed. R. Crim. P. 17(b). But there is a gap when it comes to providing lodging for the indigent defendant himself who is forced to stand trial for many weeks at a courthouse located thousands of miles from his home. This Court can "resort to the All Writs Act to fill statutory interstices" such as this. *Pa. Bureau of Corr.,* 474 U.S. at 42 n.7. To do so, the Court may order that expenses related to Mr. Smith's lodging be handled as if he were a witness subpoenaed under Rule 17(b).

The defense respectfully asks the Court to enter an order directing the U.S. Marshal to arrange for Mr. Smith's noncustodial transportation, as well as an order directing that he be provided with non-custodial lodging in Norfolk, Virginia, for the duration of trial in this matter.

8

Respectfully submitted,

AGHEE WILLIAM SMITH, II

By:_____/s/_____

Lindsay Jo McCaslin
VSB No. 78800
Assistant Federal Public Defender
Attorney for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email: lindsay_mccaslin@fd.org