IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.

Criminal Nos.  2:19-cr-47-3

DAVID ALCORN,
AGHEE WILLIAM SMITH, II,
THOMAS L. BARNETT,
NORMA JEAN COFFIN,

Defendants.

**DEFENDANT'S MOTION FOR ADDITIONAL PEREMPTORY CHALLENGES**

The defendants David Alcorn, Aghee William Smith, II, Thomas Barnett, and Norma Jean Coffin, respectfully ask this Court to award two additional peremptory challenges to each defendant in this case that shall be controlled solely by that individual defendant. Allowing each defendant to have two challenges to use separately from the co-defendants is justified based on the divergent theories and interests between the co-defendants. And the resulting increase in the total number of defense challenges – from ten to eighteen – is justified by the prejudicial pretrial media coverage in this case to which the United States Attorney's Office has contributed through several press releases.

In a typical felony case involving one defendant, the government has six peremptory challenges and the defendant has ten. *See* Fed. R. Crim. P. 24(b)(2). When a case involves multiple defendants, however, the "court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly." Fed. R. Crim. P. 24(b). Generally, the decision whether to grant additional peremptory challenges in a case involving multiple defendants rests within the discretion of the trial judge.

As this Court has recognized, however, negative pretrial media coverage can justify awarding defendants additional peremptory challenges. Judge Smith of this Court observed, "Prejudicial pretrial

1

media coverage may be a reason to grant additional peremptory challenges to the defendants, while holding the government to a smaller allotment." *United States v. Salad*, No. 2:11CR34, 2013 WL 12203461, at *4 (E.D. Va. Mar. 29, 2013) (citing *United States v. Haldeman*, 559 F.2d 31, 79 (D.C. Cir. 1976)). Here, there has been extensive pretrial media coverage that is prejudicial to the defendants in this case.

As early as March 25, 2019, the Virginian Pilot began writing articles about the government allegations in this case. Exhibit 1 is an article from that date headlined, "Hampton Roads residents swindled by man barred from selling securities in 1980s, feds say." The article attributes federal prosecutors with saying that Kent Maerki "[s]tart[ed] two sham companies to swindle investors with fraudulent securities." Ex. 1, at 2. The article goes on to name Dental Support Plus and Janus Spectrum, two of the entities central to the allegations in this case. Ex. 1, at 3. And the article mentions by name each of the defendants scheduled to stand trial in this Court on November 16, 2021. Ex. 1, at 2 & 5.

The prejudicial press coverage has continued since 2019. Notably, the press coverage has been spurred by press releases from the United States Attorney's Office for the Eastern District of Virginia. Specifically, the government's multiple press releases *about a co-defendant in this same indictment* have clearly contributed to press coverage that could cause prejudice in the upcoming trial. For example, a WAVY10 news article (Ex. 7) cites one of the government's press releases. And a November 5, 2020 article in the Virginian Pilot was published the same day as a USAO press release on the same topic. *Compare* Ex. 6, *with* Ex. 2.

The government's press releases – although focused primarily on defendants who had been found guilty – made factual references about defendants still pending trial. For example, the government knows that it will be undisputed at trial in this case that Mr. Smith and Mr. Barnett acted

2

as salesmen for products created and championed by Kent Maerki, the top defendant on the indictment in which they are charged. Yet a March 15, 2021 USAO press release about Maerki stated that "Maerki and his conspirators controlled numerous entities that sold purported 'franchises' and 'private equity' opportunities *through salesmen* across the country. *Through these salesmen*, the defendants targeted individuals at or near retirement and made numerous material misrepresentations and omissions…." Ex. 3, at 1 (emphasis added). Thus, although the press release was "about" Maerki, it made explicit references to "salesmen." Smith and Barnett were two salesmen who appeared in the same indictment as Maerki and who the government knew were yet to stand trial.

In addition to talking about "these salesmen," the same press release emphasized aspects of the case likely to cause a strong emotional reaction from readers (and prospective jurors). For example, this same press release stated that many of the "victims targeted in this scheme were elderly," referred to "investors who were blind, disabled, or otherwise unable to return to work," and emphasized that the losses to victims "exceeded $23 million." Ex. 3, at 2. The United States Attorney's Office issued several similar press releases since 2020. *See* Ex. 2-5. Awarding additional peremptory challenges is appropriate in light of the extensive negative media coverage that exists about this case.

In addition to the presence of negative media coverage, courts have recognized that additional peremptory challenges are important when there is conflict between defendants due to divergent theories or interests. For example, when a district court refused additional peremptory challenges for fifteen defendants, the Tenth Circuit observed that "in many cases we might hold this to be insufficient"; but the appellate court ultimately declined to find an abuse of discretion because "[a]pparently there was no conflict of interest between the codefendants, they only disagreed over which jurors they thought would be more biased." *United States v. Hueftle*, 687 F.2d 1305, 1309 (10th Cir. 1982); *Accord United States v. Pineda Castro*, 795 F. App'x 635, 648 (11th Cir. 2019) (suggesting

3

additional peremptories are appropriate when there is conflict among defendants); *United States v. Hooper*, 575 F.2d 496, 498 (5th Cir. 1978) (same).

Here, different groups of the defendants appear likely to have differing theories of defense. Mr. Smith's requests an *ex parte* hearing to describe in detail how the defense theories for the different defendants are likely to conflict. But some of the conflict in selecting a jury is likely evident from the indictment. For example, David Alcorn is not alleged to have had any involvement in Dental Support Plus Franchise. Mr. Alcorn and his counsel may not care a wit if a dentist's child or franchise owner sits on the jury. Those defendants alleged to have had involvement in DSPF may have much stronger feelings on the matter. Similarly, Mr. Alcorn may care deeply about how a prospective juror will understand testimony about the intricacies of narrowband spectrum technology. Norma Jean Coffin – Mr. Maerki's spouse – may care little about the presence of an engineer on the jury, putting much greater weight on a prospective juror's view of spousal relations. Mr. Alcorn and Ms. Coffin, who were named executives for these companies, are likely to have different view on jurors than those of Mr. Smith and Mr. Barnett, who were salesmen.

To be sure, the defendants can likely form consensus on areas of general bias. For example, all of the defendants may agree that a juror who has read about this case in the Virginian-Pilot may be an appropriate target for a peremptory strike. But as to case-specific bias, the defendants are likely to be in conflict due to divergent theories and interests. Thus, it would further the interest in a fair trial to award each defendant with two peremptory strikes that he or she alone can control. *See generally United States v. Bailey*, No. 19cr156, 2021 WL 3709712, at *1 (D.D.C. Aug. 20, 2021) (holding that defendants "may exercise one peremptory challenge each and ten peremptory challenges jointly, for a total of twelve peremptory challenges").

Giving each defendant two additional peremptory strikes that he or she exclusively controls will not cause delays in the selection process. In fact, jury selection may move along faster without the need for four defendants to reach consensus as to every strike. If one defendant wants to use a peremptory challenge over a bias or interest that does not affect all of the defendants, the defendants don't have to trade horses or fight over what's fair; the other defendants will suggest that the defendant use his own peremptory challenge on that prospective juror and selection will proceed quickly. More importantly, allowing each defendant to unilaterally remove two prospective jurors from the panel is essential to ensure that each defendant receive a fair jury that is impartial *to him or her specifically*, taking into account his or her specific interests and concerns.

Rule 24(b) gives the Court authority to award additional peremptory challenges to the defense in a multi-defendant trial. Were these cases tried separately, the defendants would collectively receive 40 strikes. Here, we ask only for eighteen: ten to be controlled jointly, and two each to be controlled exclusively by that individual defendant. This approach will advance the Court's and the defendants' interest in seating a fair and impartial jury.

Respectfully submitted,

DAVID ALCORN, AGHEE WILLIAM SMITH, II, THOMAS BARNETT, and NORMA JEAN COFFIN

By:_____/s/_____
Lindsay Jo McCaslin
VSB No. 78800
Assistant Federal Public Defender
Attorney for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email: lindsay_mccaslin@fd.org

Richard Scott Yarow
VSB No. 37807
Attorney for David Alcorn
821 West 21st Street, Suite 208
Norfolk, Virginia 23517
Telephone: 757-337-3963
Telefax: 757-686-0180
Email: RichardYarow@gmail.com

Anthony Michael Gantous
VSB No. 78186
Attorney for Thomas L. Barnett
5101 Cleveland Street, Suite 100
Virginia Beach, VA 23462
Telephone: 757-227-6963
Telefax: 757-227-6963
Email: anthony@anchorlg.com

Gregory K. Matthews, VSB #28314
Gregory K. Matthews, PC
Counsel for Norma Jean Coffin
Post Office Box 5277
Portsmouth, VA 23703
Telephone: 757-356-5744
Telefax: 757-500-2540
gkmatthews@msn.com

6