IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 2:19-cr-47 |
| DAVID ALCORN,<br>AGHEE WILLIAM SMITH II,<br>THOMAS L. BARNETT, and<br>NORMA JEAN COFFIN, | |
| Defendants. | |

GOVERNMENT'S UNOPPOSED MOTION TO TAKE
DEPOSITIONS PURSUANT TO FED. R. CRIM. P. 15

The United States of America, through its attorneys, Jessica D. Aber, United States

Attorney, and Melissa E. O'Boyle, Elizabeth M. Yusi, and Andrew C. Bosse, Assistant United

States Attorneys, hereby moves the Court pursuant to Federal Rule of Criminal Procedure

15(a)(1) for permission to conduct pre-trial videotaped depositions of six witnesses: RC, SB,

VH, KS, PY, and BB.  For the reasons detailed below, the witnesses are unavailable to testify at

trial, their testimony is material to the government's case, and their testimony is necessary to

avoid injustice.

I.      Factual and Procedural Background

On March 21, 2019, the grand jury returned a 19-count indictment against six defendants:

Kent Maerki, David Alcorn, Aghee William Smith, II, Tony Scott Sellers, Thomas L. Barnett,

and Norma Jean Coffin.  The indictment charges the defendants with conspiracy to commit wire

fraud in violation of 18 U.S.C. § 1349, wire fraud in violation of 18 U.S.C. § 1343, conspiracy to

commit money laundering in violation of 18 U.S.C. § 1956, and engaging in unlawful monetary

transactions in violation of 18 U.S.C. § 1957.  ECF No. 1.  Defendant Kent Maerki pleaded

guilty November 5, 2020, to one count of conspiracy to commit wire.  ECF No. 147, 148.  He

was sentenced to 192 months' imprisonment.  ECF No. 165.  Defendant Tony Scott Sellers

pleaded guilty to an information charging him with conspiracy to commit wire fraud.  ECF

Nos. 184, 186.  He is pending sentencing.  The jury trial of the remaining defendants, David

Alcorn, Aghee William Smith, II, Thomas L. Barnett, and Norman Jean Coffin (the defendants)

is scheduled to begin on November 16, 2021.

This case involves two conspiracies involving schemes to defraud primarily elderly

investors in connection with the sale of purported dental franchises and applications for spectrum

licenses.  As alleged in the indictment, Kent Maerki was the founder of DSP LLC, and Norma

Jean Coffin was listed as its Chief Financial Officer. Defendants Smith, Sellers, and Barnett were

insurance salesmen who were part of the sales force used to sell fraudulent investments in Dental

Support Plus Franchise, LLC; Dental Support Plus Group, LLC; Janus Spectrum Group, LLC;

Spectrum 100, LLC; Prime Spectrum, LLC; Xcel Bandwidth; and other spectrum investments.

David Alcorn, along with Kent Maerki, owned and controlled Janus Spectrum, LLC.[1]  Through

this entity, Alcorn and Maerki defrauded numerous investors in the Eastern District of Virginia,

and elsewhere, through the fraudulent sale of spectrum licenses.

These charges arise from a multi-year scheme to defraud investors – almost all of whom

were at or near retirement age – of millions of dollars.  Six of the victims of the alleged scheme

are RC, SB, VH, KS, PY, and BB.  Victim RC and her husband BC[2] invested approximately

$20,000 of their retirement funds into Prime Spectrum through Sellers and over $235,000 in

[1] Maerki and Alcorn created and controlled Janus Spectrum, LLC—a limited liability company located in New Mexico with its principal place of business in Phoenix, Arizona.  Conspirators Daryl Bank and Raeann Gibson created and controlled Janus Spectrum Group, LLC—a limited liability company located in Virginia.

[2] BC has since died since the indictment was returned by the grand jury.

2

another fraudulent spectrum investment controlled by Alcorn.  They are referenced in paragraph 59 of the General Allegations of the indictment.  Victim SB invested approximately $25,000 of her retirement funds into Xcel Bandwidth through Smith.  Victim VH and her husband invested approximately $40,000 of their retirement funds into Dental Support Plus Franchise through Smith.  Victim KS invested approximately $24,000 of his retirement funds into Xcel Bandwidth through Smith.  Victim PY invested approximately $71,000 of his retirement funds into DSPF Group, LLC, through Barnett, and is discussed in paragraphs 31 and 41 of the General Allegations of the indictment.  Victim BB and his wife MB[3] invested approximately $25,000 of their retirement funds into Prime Spectrum through Tony Scott Sellers and are discussed in paragraph 59 of the General Allegations of the indictment.

II.     Applicable Law

Rule 15(a)(1) of the Federal Rules of Criminal Procedure authorizes a court to order the deposition of a prospective trial witness in order to preserve testimony for trial in "exceptional circumstances and in the interest of justice."  FED. R. CRIM. P. 15(a)(1).  The moving party bears the burden of showing the existence of exceptional circumstances justifying the issuance of an order for Rule 15 depositions.  Whether to issue such an order is a matter for the Court's discretion.  *United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993).

Rule 15 does not define either "exceptional circumstances" or "in the interest of justice," but it is well established that a court may grant a party's motion to conduct a deposition "if it appears that (a) the prospective witness will be unable to attend or be prevented from attending the trial, (b) the prospective witness' testimony is material, and (c) the prospective witness' testimony is necessary to prevent a failure of justice."  FED. R. CRIM. P. 15 advisory committee's

---

[3]  Both MB and her husband BB are named in the indictment.  However, MB has advanced Parkinson's disease and is incapable of testifying at a deposition or trial.

n. (1975).  While there is no clear Fourth Circuit authority elucidating Rule 15's "exceptional circumstances" standards, other circuits have consistently read "exceptional circumstances" to require a party seeking a deposition to establish both that the witness will likely be unavailable to testify at trial and that the witness's testimony is material.  *See*, *e.g.*, *United States v. Liner*, 435 F.3d 920, 924 (8th Cir. 2006) (noting that the moving party must show "the witness's unavailability and the materiality of the witness's testimony"); *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001) (same); *United States v. Thomas*, 62 F.3d 1332, 1340-41 (11th Cir. 1995); *United States v. Jefferson*, 594 F. Supp. 2d 655, 664 (E.D. Va. 2009) (citing advisory committee notes related to 1975 amendment to Rule 15).

As noted by the court in *Drogoul*, a witness is unavailable for purposes of Rule 15(a) "whenever a substantial likelihood exists that the proposed deponent will not testify at trial."  1 F.3d at 1553.  This showing need not be conclusive before a deposition can be taken.  *Id.*

III.    Discussion

The United States seeks to depose victims RC, SB, VH, KS, PY, and BB prior to trial. They live outside of Virginia, are senior citizens at increased risk for severe illness should they contract COVID-19, and have a variety of health and other issues that would make it a substantial hardship, or impossible, for them to travel to Virginia to testify at trial.  Moreover, each witness' testimony is material to the resolution of the charges of this case.  As discussed below, the requirements of Rule 15 are satisfied, and their depositions would be appropriate under Rule 15.

A.    The Witnesses Are Unavailable to Testify at Trial.

RC, SB, VH, KS, PY, and BB are victims of the alleged scheme and are unavailable for trial at this time.  They are all older adults who live far outside of Virginia.  As such, each victim

4

would have to travel a significant distance on public transportation to testify at the trial.  Travel during the COVID-19 pandemic is a high risk activity for older adults – particularly those with certain medical conditions, even after having been vaccinated.  "The risk for severe illness with COVID-19 increases with age, with older adults at highest risk."  *See* https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/older-adults.html.  This risk includes the increased chance of hospitalization or dying if they contract COVID-19.  *Id.*  Of course, wearing masks and social distancing can help minimize the risk of contracting COVID-19.  However, for air travel, as the Center for Disease Control and Prevention states, "social distancing is difficult on crowded flights and sitting within 6 feet of others, sometimes for hours, may increase your risk of getting COVID-19."  *See* https://www.cdc.gov/coronavirus/ 2019-ncov/travelers/travel-during-covid19.html.

RC and her deceased husband BC were victims of the alleged scheme.  RC is approximately 85 years old and lives in Idaho Falls, ID, in the District of Idaho.  In order for her to travel to Norfolk for trial, it would require a minimum of 6+ hours of airline travel plus arrival time and a minimum of one airport layover.  There are no direct flights between Idaho Falls, Idaho, and Norfolk, Virginia.  The resulting trip would be well over 8 hours long.  Besides the risk of COVID-19, RC said she is physically incapable of making the trip to Norfolk for trial without an escort.  Chief Judge Davis previously authorized a Rule 15 deposition of RC in the companion case to this one, *United States v. Bank*, Case No. 2:17-cr-126.  ECF No. 177.

SB is another alleged victim of this scheme.  She is 81 years old and lives outside of Sacramento, CA.  She has extreme anxiety that caused an earlier mental breakdown, resulting in her being placed on disability.  Due to COVID-19, her age, the length of the trip, and her extreme anxiety, she is unable to travel to Norfolk for trial.

PY is another victim in this scheme.  He is 62 years old and lives in Northern California. He has severe asthma, and is therefore in the high risk category should he contract COVID-19. He stated that due to this condition and the risk he faces, he is unable to travel to Norfolk for trial.

VH is another victim in this alleged scheme and lives in the Sacramento, CA area.  She is 78 years old and is the sole caretaker of her husband, who is blind and has dementia.  Due to COVID-19, the length of the trip, her age, and her position as sole caretaker of her husband, she is unable to travel to Norfolk for trial.

KS is 62 years old and lives in the Sacramento, CA area.  His wife is currently unable to walk or care for herself due to an accident, and he is her sole caretaker.  KS also suffers from severe vertigo and is unable to fly.  Due to COVID-19, the length of the trip, his position as sole caretaker of his wife, and his severe vertigo, he is unable to travel to Norfolk for trial.

BB lives outside of Salt Lake City, UT.  There are no direct flights to Norfolk from Salt Lake City, and any flight would require at least one layover.  BB is approximately 77 years old and his wife, MB, is 75 years old.  Due to BB's age, he is at increased risk for severe illness should he contract COVID-19.  He is also the sole caretaker of his wife MB, who, as mentioned, has advanced Parkinson's disease.  For these reasons, BB is unable to travel for trial.  This Court previously authorized a Rule 15 deposition of BB in the companion case to this one, *United States v. Bank*, Case No. 2:17-cr-126.  ECF No. 325.

B.      The Witnesses' Testimony is Material to the Prosecution.

Testimony by these witnesses is material to various aspects of the fraud scheme alleged in the indictment.

RC and BC are victims of the conspiracy because they were duped into buying an investment into Prime Spectrum LLC (Prime Spectrum) and Lincoln Spectrum by Tony Scott Sellers.  Alcorn sold directly and caused sales representatives across the country to sell investments into spectrum investments to their clients.  RC and BC invested approximately $20,000 of their retirement funds into Prime Spectrum.  At the time, BC was blind and the couple were in their late 70s.  Upon receipt of RC and BC's money, conspirators siphoned approximately 70% of the invested funds by transferring the funds to two companies that they controlled, and then paid a 30% commission to the salesman, Sellers.  No one ever disclosed to RC and BC that they would lose 70% of their investment funds within weeks of receipt for purposes other than the stated investment.  The evidence that RC's testimony can provide is material to the proof of the offenses charged in Count Two of the indictment.

Victim SB invested approximately $25,000 of her retirement funds into Xcel Bandwidth through Aghee William Smith.  SB knew Smith as a "spiritual friend" for 10 years before she invested with him.  She had retired on disability, which Smith knew.  Smith convinced SB to invest almost 25% of her retirement funds into Xcel Bandwidth.  SB has never received any return on her investment.  The evidence that SB's testimony can provide is material to the proof of the offenses charged in Count Two of the indictment.

Defendant Aghee William Smith sold Dental Support Plus Franchise to victim VH and her husband.  VH invested $40,000 in the "franchise" opportunity, and Smith had told them there would be a big payoff at the end of the investment.  VH did not receive a dime in return for the investment.  The evidence that VH's testimony can provide is material to the proof of the offenses charged in Count One of the indictment.

Victim KS was another victim in the scheme.  After being told he would make a 9% return by Smith, in July 2016, KS invested $24,000 in Xcel Bandwidth.  No one told KS about various regulatory investigations into the investment prior to his investment.  And KS was never told that 58% of his investment would go to conspirators' management companies right off the top.  The evidence that KS' testimony can provide is material to the proof of the offenses charged in Count Two of the indictment.

Thomas L. Barnett sold PY a fraudulent investment in DSPF Group, LLC.  In June 2013, PY decided to invest $30,000 for a franchise, and directed Barnett to maintain approximately $41,000 in his life insurance investment.  Several months later, he learned from Barnett that Dental Support Plus Franchise was bankrupt.  He also learned that, without his permission or authority, Barnett also placed his remaining $41,000 into DSPF Group, LLC.  Of the $41,000, over 30% was taken within days as "fees" paid to conspirators' entities.  The remainder was used to pay back disgruntled earlier investors.  PY lost all of his retirement funds and continues to have to work to this day.  PY's testimony is material to proving the offenses charged in Count One of the indictment against, in particular, defendant Barnett.

Victim BB and his wife MB are victims mentioned in the indictment and invested $25,000 in Prime Spectrum, one of the fraudulent spectrum investments.  In March 2014, salesman Tony Sellers pitched an investment in Prime Spectrum to BB and his wife MB.  BB and MB were in their late 60s when they invested $25,000 in Prime Spectrum from MB's retirement account.  Upon receipt of that money, conspirators siphoned approximately 70% of the invested funds by transferring the funds to two Virginia limited liability companies that they controlled.  Sellers received 30% of BB and MB's money.

The evidence that RC, SB, VH, KS, PY, and BB's testimony can provide is material to the proof, at a minimum, of the offenses charged in Counts One and Two of the indictment.

C.     The Witnesses' Testimony is Necessary to Avoid an Injustice.

Justice in this case necessitates a full exposition of the facts pertinent to the charges against the defendants.  The indictment includes direct allegations about the victimization of RC, PY, and BB, and direct allegations of the fraudulent investments SB, VH, and KS were tricked into buying.  The deposition testimony of the witnesses is necessary to the government's effort to meet its burden of proving the serious charges pending against the defendants.

D.     Defendant's Position

The government has communicated with defense counsel regarding the potential depositions of RC, SB, VH, KS, PY, and BB, and defense counsel for defendants Alcorn, Barnett, and Coffin have no objection.  Counsel for defendant Smith take no position on the motion.  Further, pursuant to FED. R. CRIM. P. 15(c)(1)(A), the defendants who choose not to attend the depositions in person will waive their presence at the depositions or participate via videoconferencing or another reliable method as described below.  If the Court grants this motion, the parties will agree on a mutually available date prior to trial for the depositions.

E.     Other Considerations

The depositions in this case will be taken under circumstances that preserve the defendants' ability to confront directly the witnesses and defend themselves through cross-examination, just as they would be able to do at trial.  Because the defendants are given the opportunity to confront the witnesses against them in person, if they choose to do so, appropriate deposition testimony may be played for the jury at the upcoming trial, subject to the Court's ruling on any objections raised during the depositions.

The government proposes that the depositions be taken at the United States Attorney's Office or U.S. District Court closest to the respective witnesses.  Or, if restrictions due to the pandemic or other logistical problems make these options less than optimal, the parties will agree on another location.  The parties will closely follow the procedures that would be followed at trial in federal court.  *See* FED. R. CRIM. P. 15(e).  A qualified court reporter will be present for the depositions and the proceedings will be videotaped.  The witnesses will be sworn in by the court reporter, who will be authorized to give the oath.  The defendants will be able to participate in the proceedings either by attending in person or by watching a live videoconferencing feed, or via Zoom at the United States District Courthouse in Norfolk or another agreed location, depending on the location of each defendant and his attorney.  The defendants will have a separate telephone line with which to consult with their attorneys during the testimony if they choose to attend the deposition in different locations.  Their attorneys, whether attending in person or by electronic means, will be able to cross-examine the witnesses as they would be able to at trial.  The defendants' rights under the confrontation clause of the Sixth Amendment will be adequately protected in that defendants will be able to hear and see the testimony of the witnesses contemporaneously, and will be able to assist and consult with their attorneys.  Moreover, the testimony will be videotaped.  The government will pay for the cost of the depositions, including the travel costs of defense counsel and defendants.

Based on the manner in which the government proposes to conduct the depositions and the unique circumstances present in this case, the government has demonstrated that exceptional circumstances as contemplated by Rule 15 exist and that it is in the interest of justice to conduct the depositions of RC, SB, VH, KS, PY, and BB at or near their respective locations.

IV.   <u>Conclusion</u>

Therefore, for the reasons outlined above, the United States respectfully submits that RC, SB, VH, KS, PY, and BB are unavailable to testify at trial, their testimony is material to the government's case, and their testimony is necessary to avoid injustice.  For those reasons, it asks the Court to grant the government's motion to conduct pre-trial videotaped depositions of RC, SB, VH, KS, PY, and BB pursuant to the above-described procedures.  A proposed Order is attached.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:          /s/
Elizabeth M. Yusi
Melissa E. O'Boyle
Andrew C. Bosse
Assistant United States Attorneys
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
elizabeth.yusi@usdoj.gov
melissa.oboyle@usdoj.gov
andrew.bosse@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th of October, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to registered counsel.

_____/s/_____
Elizabeth M. Yusi
Assistant United States Attorney

12