IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.

AGHEE WILLIAM SMITH, II
        Defendant.

Criminal Nos.  2:19-cr-47-3

**DEFENDANT SMITH'S MOTION FOR VOIR DIRE OF DARYL BANK
TO ASSESS FIFTH AMENDMENT PRIVILEGE**

The defendant, Aghee William Smith, II, respectfully moves this Court to hold a hearing – after the close of the government's case-in-chief and outside the presence of the jury – wherein Mr. Smith's attorneys can question defense witness Daryl Bank. The purpose of the hearing is to allow this Court to determine on a question-by-question basis the validity of any assertion of the Fifth Amendment privilege by Mr. Bank.

    **I.**    **Mr. Smith intends to call Daryl Bank as a defense witness at trial.**

Mr. Smith intends to call Daryl Bank as a witness at trial. The government charged and tried Mr. Bank separately for his involvement in the events alleged in the indictment in this case. Mr. Bank has already been tried, convicted, and sentenced. *See United States v. Bank*, No. 2:17-cr-126-1 (E.D. Va. Sept. 21, 2021). His case is now pending on appeal. *See United States v. Bank*, (4th Cir. No. 21-4515) (appeal noted Sept. 28, 2021).

Although Mr. Bank's trial has concluded, he is an important player in the case against Mr. Smith. Mr. Bank – referred to as "Conspirator #1" in Mr. Smith's indictment – is alleged to have created and controlled various investments and to have made several oral and written representations about those investments. Mr. Smith is alleged to have sold those investments. For example, the indictment against Mr. Smith alleges that "Conspirator #1 [*i.e.*, Mr. Bank] created three Virginia limited liability companies – Janus Spectrum Group, LLC; Spectrum 100, LLC; and Prime Spectrum, LLC";

1

that "Conspirator #1's Investment Offerings" related to those spectrum investments "contained the numerous false representations"; and that "SMITH, SELLERS, BARNETT, and others, sold these spectrum investments to investors through Conspirator #1's fraudulent investment offerings." ECF No. 1, at 15-16. Just taking that example, it is obvious why Mr. Smith – who is innocent of fraud – might want to call Mr. Bank as a witness. Mr. Smith will ask Mr. Bank about Mr. Bank's creation of those investments, Mr. Bank's representations about those investments, Mr. Bank's recollection as to what was happening with those investments (and how that compared with his representations), and Mr. Bank's communication with Mr. Smith about all of this.

## II. Mr. Bank apparently intends to assert the Fifth Amendment privilege against self-incrimination if called to testify.

Mr. Smith made appropriate arrangements to call Mr. Bank as a witness. This Court issued a writ of habeas corpus ad testificandum as to Mr. Bank and Mr. Bank is being held by the U.S. Marshal Service in local custody. When undersigned counsel asked Mr. Bank's appellate attorney for permission to interview Mr. Bank prior to trial, Mr. Bank's appellate counsel told undersigned counsel, "I understand that [Mr. Bank] is not willing to testify and will invoke the 5th if called to testify." (Email from A. Yamamoto to A. Grindrod, Oct. 15, 2021). Undersigned counsel is notifying the Court of this issue in advance of trial so that the Court can be prepared to address it.

## III. The Court should allow Mr. Smith's attorneys to question Mr. Bank under oath and outside the presence of the jury so the Court can assess any assertion of the Fifth Amendment privilege on a question-by-question basis.

Mr. Bank's conviction and sentence are still pending on appeal and the Fourth Circuit has "held in no uncertain terms that a defendant's right to invoke the Fifth Amendment as to events for which he has been convicted extends to the period during which the conviction is pending appeal." *United States v. Kennedy*, 372 F.3d 686, 691 (4th Cir. 2004). Thus, Mr. Smith acknowledges that Mr. Bank's conviction alone does not eliminate his Fifth Amendment privilege as to the events underlying his conviction. At the same time, however, the Sixth Amendment gives Mr. Smith the right to compel

2

testimony by witnesses in his defense. "When a defendant's right to compel testimony conflicts with a witness' privilege against self-incrimination, [ ] a court must make a proper and particularized inquiry into the legitimacy and scope of the witness' assertion of the privilege." *United States v. Sayles*, 296 F.3d 219, 223 (4th Cir. 2002) (internal quotation marks omitted). "A court can excuse a witness from testifying only if the court finds that the witness could legitimately refuse to answer any and all relevant questions." *Id.* (cleaned up).

The Fourth Circuit has approved of a trial court making this determination through a proceeding in which the witness is questioned by defense counsel outside the presence of the jury. In *United States v. Appiah*, the Fourth Circuit found that "the district court conducted a proper *voir dire* hearing outside the presence of the jury to ascertain the questions defendant's counsel sought to pose and the scope of the privilege sought by the witnesses." 690 F. App'x 807, 809 (4th Cir. 2017). "The district court permitted the witnesses' counsel to stand nearby and to confer, allowing the witnesses to assert the privilege, and the district court to rule, on a question-by-question basis." *Id.* This type of proceeding is necessary because even if Mr. Bank can validly invoke the Fifth Amendment privilege as to some questions, he cannot make a blanket assertion that he is not willing to testify. As the Fourth Circuit has held, "[t]he privilege operates on a question-by-question basis." *United States v. Miller*, 434 F. App'x 287, 293 (4th Cir. 2011).

Questions about the propriety of asserting the Fifth Amendment privilege could be particularly fact-intensive here because the testimony Mr. Smith seeks to elicit in the upcoming trial may be identical – at least in some respects – to that which Mr. Bank already gave at his own trial. "Testifying consistently with his prior testimony would not expose [Mr. Bank] to any further jeopardy beyond that which existed by virtue of prior testimony." *United States v. Allmon*, 594 F.3d 981, 985 (8th Cir. 2010). But even setting aside the case-specific wrinkle related to Mr. Bank's prior testimony, it is a very rare case in which a witness could not answer a single question without incriminating himself.

The Fifth Amendment's "protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – his say-so does not of itself establish the hazard of incrimination." *Id.* "It is for the court to say whether his silence is justified, and to require him to answer if it clearly appears to the court that he is mistaken." *Id.* (internal citation and quotation marks omitted).

For the Court, the "difficulty is in determining whether a truthful answer would be incriminating." Wright & Miller, *Privileges in General—Privilege Against Self-Incrimination*, 2A Fed. Prac. & Proc. Crim. § 407 (4th ed.). "Only the witness knows what the answer would be, and to compel the witness to disclose the answer in support of the claim of privilege would defeat the privilege itself." *Id.* But if the witness's truthful answer to a particular question would ***not*** incriminate him, then he cannot validly invoke the privilege and no attorney could advise him to do so in good faith.

In sum, the Court must first determine – on a question-by-question basis – whether Mr. Bank would assert the privilege to each question put to him by Mr. Smith's attorneys. Second, the Court must determine – for each question to which Mr. Bank asserts the privilege – whether the privilege applies, *i.e.*, whether it is "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486-87.

The Fourth Circuit has approved of making these determinations in the context of *voir dire* held outside the presence of the jury. Because the government's case-in-chief will influence the questions put to Mr. Bank by Mr. Smith's attorneys, it would be most efficient to hold the hearing with Mr. Bank after the government rests. But Mr. Smith's attorneys bring this issue to the Court's attention now so the Court can be aware of this issue in advance of trial.

\*   \*   \*

Mr. Smith respectfully asks the Court to make a question-by-question determination as to the validity of Mr. Bank's planned assertion of the Fifth Amendment privilege at the upcoming trial and moves to compel Mr. Bank's testimony in response to all questions to which he does not validly assert a privilege.

Respectfully submitted,

AGHEE WILLIAM SMITH, II

By:_____/s/_____

Lindsay Jo McCaslin
VSB No. 78800

Andrew W. Grindrod
VSB 83943

Assistant Federal Public Defenders
Attorneys for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email: lindsay_mccaslin@fd.org
andrew_grindrod@fd.org