IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.

Criminal Nos. 2:19-cr-47-3

AGHEE WILLIAM SMITH, II,
           Defendant.

**DEFENDANT SMITH'S MOTION FOR COURTROOM PROCEDURES
THAT CONFORM WITH THE CONSTITUTION**

The defendant Aghee William Smith, II respectfully asks this Court to adopt courtroom procedures that account for the COVID-19 pandemic without denying Mr. Smith important rights guaranteed by the Constitution. Specifically, Mr. Smith objects to three anticipated courtroom procedures that – if adopted – would violate his constitutional rights. ***First***, it would violate due process and the Confrontation Clause if a juror is asked to assess the credibility of adverse witnesses from 50 yards away through multiple layers of plexiglass and a face shield. ***Second***, allowing or requiring members of the *venire* to wear masks during jury selection would infringe on Mr. Smith's right to an impartial jury under the Sixth Amendment. ***Third***, closing the physical courtroom to the public and using – as a substitute – a video feed that does not show the jurors throughout the trial would violate Mr. Smith's right to a public trial under the Sixth Amendment. Mr. Smith invokes his constitutional rights under the Fifth and Sixth Amendments and objects to the anticipated procedures, as explained in this memorandum.

    **I.**    **The combination of distance, plexiglass, and face shields prevent jurors from observing the facial expression of witnesses in violation of the Confrontation Clause and Due Process Clause.**

"An unimpeded opportunity to cross-examine adverse witnesses face-to-face and in full view of the jury is core to the Sixth Amendment right of confrontation." *United States v. Robertson*, No.

17cr2949, 2020 WL 6701874, at *1 (D.N.M. Nov. 13, 2020). As the Supreme Court explained over 125 years ago, the "primary object" of the Confrontation Clause is to guarantee "a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of **compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief**." *Mattox v. United States*, 156 U.S. 237, 242-43 (1895) (emphasis added). The Confrontation Clause thus guarantees a "defendant the opportunity to challenge his accuser in a **face-to-face encounter in front of the trier of fact**." *California v. Green*, 399 U.S. 149, 156 (1970).

The Supreme Court has emphasized that the underlying rationale of the face-to-face requirement is to enhance the truth-seeking process of the trial by allowing the trier-of-fact to assess subtleties in a witness's demeanor during the face-to-face confrontation with the defendant. In *Coy*, the Court explained,

> It is always more difficult to tell a lie about a person "to his face" than "behind his back." **In the former context, even if the lie is told, it will often be told less convincingly.** The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; **he may studiously look elsewhere, but the trier of fact will draw its own conclusions.** Thus the right to face-to-face confrontation serves much the same purpose as a less explicit component of the Confrontation Clause that we have had more frequent occasion to discuss the right to cross-examine the accuser; both ensure the integrity of the fact-finding process.

*Coy v. Iowa*, 487 U.S. 1012, 1019-20 (1988) (emphasis added; cleaned up). Because the jurors' ability to meaningfully assess credibility is foundational to the constitutional right, merely seating the jury in the same room as a prosecution witness does not necessarily provide the face-to-face encounter guaranteed by the Confrontation Clause. Here, Mr. Smith's freedom will turn on a juror's ability to

2

assess the credibility of adverse witnesses from 50 yards away through three layers of plexiglass.[1] In such circumstances, observation of the Confrontation right is illusory.

It is true that the words spoken by the witnesses can be amplified via a microphone so that jurors will be able to hear the witness despite the plexiglass dividers and extreme distance. But "that fact cannot by any stretch of the imagination be considered an adequate substitute for the jurors' ability to view a witness's face, the most expressive part of the body and something that is traditionally regarded as one of the most important factors in assessing credibility." *Romero v. State*, 173 S.W.3d 502, 505-06 (Tex. Crim. App. 2005). The anticipated procedures effectively "remove the 'face' from 'face-to-face confrontation.'" *Id.*

**II.  Jurors wearing masks during jury selection violates Mr. Smith's right to an impartial jury under the Sixth Amendment.**

The United States Department of Justice has already taken the position that requiring jurors to wear masks during jury selection is objectionable and may infringe on a defendant's Sixth Amendment right to an impartial jury. *See United States v. Crittenden*, No. 4:20-cr-7, 2020 WL 4917733, at *8 (M.D. Ga. Aug. 21, 2020) ("The Government objects to the Court's requirement that jurors wear masks during the jury selection process because masks will impair the ability of the Court and counsel to observe the jurors' facial expressions. The Government suggests that this mask requirement may infringe on Defendant's Sixth Amendment right to an impartial jury."). The DOJ's previous position on this issue should be taken seriously, regardless of whether the government flips positions in this case.

---

[1] Mr. Smith simultaneously moves for leave to take photographs of the courtroom layout so that counsel can create a declaration with photographs to develop a record for purposes of appeal. *See* ECF No. 221.

3

"*Voir dire* plays an essential role in guaranteeing a criminal defendant's Sixth Amendment right to an impartial jury." *United States v. Lancaster*, 96 F.3d 734, 738 (4th Cir. 1996). "Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). It is well known that prospective jurors can show bias and impartiality as much in their facial expressions as in their words. As the Eight Circuit observed,

> It is well to note that feelings are not always expressed in words, and, indeed, may be clearly manifested by gestures and facial expressions. A grimace or stare may express hostility or displeasure quite as clearly as words shouted across a room. Much literature may be found on interpreting "body language" as a fundamental and effective practice in the selection of a jury. *See, e.g.*, 1 S. Schweitzer, *Cyclopedia of Trial Practice* § 144 (2d ed. 1970); 5 Am. Jur. Trials § 65 (1966) (valuable information can be obtained by observing a juror's demeanor). It has been noted that the "body language method" of jury selection "looks to a juror's appearance, behavior, and non-verbal responses, since these are viewed as giving a truer picture than verbal answers." T. Mauet, *Fundamentals of Trial Techniques* 32 (2d ed. 1988). It may also be relevant to note "the juror's attitude toward the lawyer." *Id.*

*Reynolds v. Benefield*, 931 F.2d 506, 512 (8th Cir. 1991). As the Supreme Court emphasized in *Skilling v. United States*, an essential function of *voir dire* is to "uncover concealed bias," and to do so effectively requires a "face-to-face opportunity to gauge demeanor and credibility." 561 U.S. 358, 395 (2010). Indeed, the trial court's credibility determinations in the jury selection process are usually accorded substantial deference, but that principle is "based on the concept that the trial judge is intimately involved in the jury selection process and is face-to-face with the participants." *Harris v. Hardy*, 680 F.3d 942, 955 (7th Cir. 2012).

The Supreme Court has long recognized that the Constitution requires that a defendant be brought face-to-face with the *venire* during jury selection. The Court reversed a conviction on this basis at least as early as 1892 in its decision in *Lewis*:

> We do not think that the record affirmatively discloses that the prisoner and the jury were brought face to face at the time the challenges were made, but we think that a fair reading of the record leads to the opposite conclusion, and that the prisoner was not brought face to face with the jury until after the challenges had been made and the selected jurors were brought into the box to be sworn. Thus reading the record, and **holding, as we do**, that making of challenges was an essential part of the trial, and **that it was one of the substantial rights of the prisoner to be brought face to face with the jurors at the time when the challenges were made**, we are brought to the conclusion that the record discloses an error for which the judgment of the court must be reversed.

*Lewis v. United States*, 146 U.S. 370, 375-76 (1892) (emphasis added).

A jury selection process that masks the members of the *venire* deprives a defendant of his substantial rights and violates the Sixth Amendment. To eliminate the need for masking, the Court could conduct *voir dire* by bringing in fewer jurors at a time for group questioning or by conducting only individual *voir dire*. But the full faces of jurors should be visible to Mr. Smith and his counsel during the entire jury selection process.

### III. A video "simulcast" that does not show the jurors during the entire trial would violate Mr. Smith's right to a public trial under the Sixth Amendment.

The Sixth Amendment to the Constitution provides that, in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial." U.S. Const., amend. VI. The Supreme Court held in *Waller v. Georgia* that a courtroom closure is permissible only in limited circumstances: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to

5

support the closure." 467 U.S. 39, 48 (1984). Here, Mr. Smith anticipates the Court will close the physical courtroom to the public to minimize the spread of COVID-19 and simultaneously cast a video and audio feed of the courtroom to a different room in the same courthouse where members of the public can watch the trial by video. The Court used a similar procedure in *United States v. Bank*, 2:17-cr-126 (E.D. Va. Mar. 30, 2021). But, in the *Bank* trial, the video feed did not allow the public to observe the jurors during the trial. Insofar as the Court plans to use the same video system in this trial, Mr. Smith objects and demands that the video feed allow the public to observe the jury during the course of the trial. Because the proposed closure is broader than necessary to protect the interest in maintaining safety during the pandemic and there is a reasonable alternative to the breadth of the anticipated closure, the anticipated procedure would violate the Sixth Amendment.

Courts routinely recognize the importance of the trial judge having the ability to observe the jury *throughout the course of the trial*. In fact, that is the primary reason appellate courts provide for giving deference to the trial judge on questions about jury impartiality, juror misconduct, and the like. *See, e.g.*, *United States v. Gibson*, 353 F.3d 21, 26 (D.C. Cir. 2003) (noting that "district courts, having first-hand observation of jurors and their demeanor … are in the best position to decide whether inappropriate conduct meriting an investigation has occurred"); *United States v. Panebianco*, 543 F.2d 447, 457 (2d Cir. 1976) ("Because of his continuous observation of the jury in court, a trial judge's handling of alleged juror misconduct or bias is only reviewable for abuse of discretion."); *DeHenre v. Mississippi*, No. 1:13cv478, 2014 WL 3735596, at *3 (S.D. Miss. July 28, 2014) ("In evaluating whether members of the jury are in fact biased, there are 'compelling institutional considerations' that favor deference to the trial judge who has observed the jurors and their reactions throughout the trial process."). It is also true that it is essential for a defendant and his attorney to observe the conduct of the jury. Such observations can identify bias or misconduct or at least identify conduct that should

6

lead to further investigation. *See, e.g.*, *Lang v. Bobby*, 889 F.3d 803, 816-17 (6th Cir. 2018) (Moore, J., dissenting) (discussing investigation into juror bias or misconduct that arose from defense counsel's observation that a juror had been "nodding and smiling to individuals in the public gallery").

Similarly, courts have denied claims of juror misconduct based on the lack of evidence. For example, the Sixth Circuit denied a defendant's claim because the defendant adduced "no evidence" that a juror was sleeping or for how long, noting that the defendant "makes only a vague assertion [ ] that the juror was in fact sleeping." *United States v. Sherrill*, 388 F.3d 535, 537 (6th Cir. 2004). To support the claim, the defendant's family or friends or members of the public generally could have been called to testify about alleged juror misconduct. Such misconduct could be reported in the press. Or it could be brought to the attention of the Court or counsel by members of the public.

The open public trial "plays as important a role in the administration of justice today as it did for centuries before our separation from England." *Press-Enterprise v. California*, 464 U.S. 501, 508 (1984). "The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Id.* The Supreme Court has held that the Sixth Amendment right to a public trial in criminal cases "extends to the jury selection phase of trial, and in particular the *voir dire* of prospective jurors." *Presley v. Georgia*, 558 U.S. 209, 212 (2010). Surely, then, the public trial right demands that the public be permitted to observe the jurors as the Court takes evidence in the case. This allows the public to see whether the citizens charged with finding the truth are attentive or are engaged in misconduct. Like counsel, the Court, and the defendant himself, members of the public have a great interest in observing the demeanor and actions of the jury during trial. Not making the jurors observable on the

simulcast video throughout the entirety of trial would deny Mr. Smith his right to a public trial under the Sixth Amendment.

*     *     *

Mr. Smith respectfully requests that the Court adopt courtroom procedures that protect his rights under the Fifth and Sixth Amendments.

Respectfully submitted,

AGHEE WILLIAM SMITH, II

By:_____/s/_____

Lindsay Jo McCaslin
VSB No. 78800

Andrew W. Grindrod
VSB 83943

Assistant Federal Public Defenders
Attorneys for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email:  lindsay_mccaslin@fd.org
            andrew_grindrod@fd.org