IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 2:19-cr-47 |
| v. | ) | |
| | ) | |
| DAVID ALCORN, | ) | |
| | ) | |
| AGHEE WILLIAM SMITH, II, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THOMAS L. BARNETT, | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR COURTROOM PROCEDURES THAT CONFORM WITH THE CONSTITUTION**

The United States, by its undersigned counsel, hereby responds to defendants' motion for courtroom procedures that conform with the Constitution. ECF Nos. 220, 228, 240. The government objects to any suggestion that the Court's procedures instituted for the protection of the parties, courtroom staff, attorneys, and jurors in any way violate the United States Constitution. They are exemplary, and the Court has used them to conduct an extraordinary number of criminal jury trials during a global pandemic. The procedures outlined by the Court are reasonable and just, and they protect all parties' right to a fair trial. Defendants' motion should be denied.[1]

---

[1] Defendants also filed a motion for leave to take photographs of the courtroom layout. ECF No. 221. The Court addressed that motion at the status conference on November 9, 2021, and entered an order granting it earlier today. ECF No. 283.

I.      **The Court's Health and Safety Procedures Do Not Impermissibly Infringe on the Defendants' Constitutional Rights**

The defendants argue that "[t]he combination of distance, plexiglass, and face shields prevent[s] jurors from observing the facial expression of witnesses in violation of the Confrontation Clause and Due Process Clause." (ECF No. 220 at 1.) They are wrong on both the law and the facts, considering the Court's careful safeguarding of defendants' constitutional rights in adopting common sense measures that protect the health of those in the courtroom while allowing the jurors and the public to carefully observe every aspect of the trial.

The only relevant new addition to the courtroom's physical layout is a sheet of plexiglass that has been installed in front of the witness box and around the counsel tables. The plexiglass is crystal clear, and the jury – which is positioned so that each member has a clear line of sight to the witness box – will be able to see straight through it. The defendants fail to explain how a jury looking at a witness through a sheet of clear plexiglass will be unable properly to discharge its duty. Should the plexiglass ever become difficult to see through, the defendants should notify the Court so that remedial steps can be taken. The defendants also do not take into consideration that multiple large video screens placed in the front and on the sides of the courtroom – substantially larger than the screens in the jury box – that allow for a close-up view of documentary and physical evidence, the testifying witness, or a combination of the two.

As to the issue of facemasks, the Court has made it clear that witnesses, and venire panel members during jury selection, will use a clear facemask that will allow each witness's and potential juror's facial expressions to be viewed by everyone in the courtroom. The defendants' motion does not acknowledge the Court's prior practice of using clear facemasks, or that the Court has successfully presided over numerous criminal trials convened during the pandemic. The

defendants' complaints are out of step with the practices the Court has adopted to safeguard exactly the rights he now claims are being violated.

In any event, even if the Court were not already using clear facemasks, courts across the country have rejected arguments similar to those raised here. The measured, but effective, steps that courts have employed to protect jurors from a historically deadly pandemic have still permitted in-person confrontation, with a jury, the witness, the defendant, defense counsel, and the Court all able to be in the same room, observe, and listen during examinations. Just as constitutional speedy trial rights can accommodate measures needed to protect the safety of trial participants during a pandemic, constitutional confrontation rights also can accommodate measures needed to control the pandemic.[2] For example, before the current pandemic, courts rejected Confrontation Clause challenges to witnesses who testified in a partially obscured manner. *See, e.g.*, *United States v. de Jesus-Casteneda*, 705 F.3d 1117, 1119 (9th Cir. 2013) (rejecting argument where witness testified in fake mustache and wig); *Morales v. Artuz*, 281 F.3d 55, 60–62 (2d Cir. 2002) (same, where witness testified in dark sunglasses because the jurors still "had an entirely unimpaired opportunity to assess the [witness's] testimony" and credibility through her demeanor, speech, and body language).

A defendant's right to confront witnesses may be satisfied, even absent a traditional face-to-face confrontation at trial, where (1) "denial of such confrontation is necessary to further an important public policy" and (2) "the reliability of the testimony is otherwise assured." *Maryland v. Craig*, 497 U.S. 836, 850 (1990) (citations omitted); *see also United States v. Abu Ali*, 528 F.3d

---

[2] Courts of appeals have demonstrated this point in applying the Speedy Trial Act during a pandemic or disaster. *See, e.g.*, *United States v. Olsen*, 995 F.3d 683 (9th Cir. 2021); *Furlow v. United States*, 644 F.2d 764 (9th Cir. 1981); *United States v. Richman*, 600 F.2d 286 (1st Cir. 1979); *United States v. Scott*, 245 Fed. App'x 391 (5th Cir. 2007).

210, 240 (4th Cir. 2008).[3] Here, of course, nearly all aspects of a traditional face-to-face confrontation are preserved, making the claimed intrusion on confrontation rights minimal to the extent they exist at all, and the public interests served are as substantial as any could be—preserving the lives of participants in the court proceedings and their families, as well as members of the public who might be infected should an outbreak of a communicable disease occur in the courtroom during trial.

"There is a legitimate state interest in preventing the spread of COVID-19, a deadly contagious disease. This has been recognized by the U.S. Supreme Court." *Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest")).

Unsurprisingly, courts have held that, during the pandemic, ensuring health and safety during a jury trial qualifies as an important public policy for Confrontation Clause purposes. *See United States v. Holder*, No. 18-cr-381 (CMA), 2021 WL 4427254, at *9 (D. Colo. Sept. 27, 2021) ("[T]he mask requirement was 'necessary to further an important public policy: ensuring the safety of everyone in the courtroom in the midst of a unique global pandemic.'" (quoting *United States v. Crittenden*, No. 20-CR-7 (CDL), 2020 WL 4917733, at *6 (M.D. Ga. Aug. 21, 2020))); *United States v. Clemons*, No. 19-cr-438 (RDB), 2020 WL 6485087, at *2 (D. Md. Nov. 4, 2020) (same); *United States v. James*, No. 19-cr-8019001 (DLR), 2020 WL 6081501, at *2 (D. Ariz. Oct. 15, 2020) (same); *see also United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 1225990, at *3 (S.D.N.Y. Mar. 31, 2021); *United States v. Donziger*, No. 11-CV-691 (LAP), 2020 WL 5152162, at *2 (S.D.N.Y. Aug. 31, 2020); *United States v. Shibley*, No. 20-cr-174 (JCC), 2021

---

[3] *Craig* involved a scenario where a court admitted testimony in the absence of the defendant. Of course, that will not be the case here.

WL 4844752, at *1 (W.D. Wash. Oct. 18, 2021); *United States v. Berglund*, No. 20-cr-200 (SRN), 2021 WL 1589548, at *1 (D. Minn. Apr. 23, 2021).

These courts have also held that, even while masked, a witness's reliability can be otherwise assured. *See Holder*, 2021 WL 4427254, at *9 ("[T]he reliability of witness testimony was otherwise assured; jurors were able to observe how witnesses moved, spoke, hesitated, and even cried, and the defense was able to cross-examine witnesses without hinderance."); *Crittenden*, 2020 WL 4917733, at *6 ("[W]itnesses against the Defendant will be physically present in the courtroom, they will testify under oath, and Defendant will be able to have these witnesses cross-examined in the open courtroom in front of the Defendant and the jurors. The Defendant and jury will also be able to observe the witnesses' demeanor, although they will not be able to see their nose and mouth. The Court finds that this restriction does not diminish the face-to-face nature of the confrontation contemplated by the Confrontation Clause."); *James*, 2020 WL 6081501, at *2 ("Because the covering of the nose and mouth does not significantly hinder observation of demeanor, allowing witnesses to testify while wearing masks does not materially diminish the reliability of the witnesses' testimony."); *Clemons*, 2020 WL 6485087, at *2 ("[T]he mask requirement does not significantly obstruct the ability to observe demeanor. A mask will obfuscate two witness traits: movement of the nose and mouth, but as the Crittenden court held and the James court followed, being able to see a witness's nose and mouth is not essential to testing the reliability of testimony."). Here, as noted, the Court is adopting an even less intrusive health measure by requiring witnesses to wear clear masks that allow their face to be visible during testimony. That numerous courts have found opaque masks to be constitutionally permissible makes this an easy question.

Additionally, the Confrontation Clause does not "guarantee[ ]" defendants "the *absolute* right to a face-to-face meeting" with accusatory witnesses. *Craig*, 497 U.S. at 844 (emphasis in original). Rather, "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." *Id*. at 849 (emphasis in original, citation and internal quotation marks omitted). Here, the defendants "imagine a Confrontation Clause that transforms minor inconveniences into constitutional violations. The Confrontation Clause, however, is far less sensitive to perceptual disturbances than is supposed by the defendant[.]" *United States v. Petit*, 496 F. Supp. 3d 825, 829 (S.D.N.Y. 2020) (rejecting argument that "juror sitting 60 or more feet from a witness encased in a plexiglass cube with light reflecting off it and creating a glare likely cannot make an informed assessment of the witness's testimony."). For the reasons explained above, the Court should reject the defendants' exaggeration of the confrontation implications of the anticipated COVID-19 procedures.

## II. The Use of Masks During Jury Selection Does Not Offend the Sixth Amendment, and the Court's Ruling that the Venire Panel Will Wear Clear Masks Cures Any Claimed Harm

The defendants also argue that "[j]urors wearing masks during jury selection violates [the] right to an impartial jury under the Sixth Amendment." (ECF No. 220 at 3.) Although the government does not object to the defendants' proposal to conduct voir dire with fewer jurors at a time, the defendants are wrong to claim that their Sixth Amendment rights will be violated if members of the venire wear masks. In any event, the Court's ruling in its order granting the motion to photograph the courtroom layout puts this issue to rest, as venire panel members will also be wearing clear masks during the voir dire process. ECF No. 283 at 2. As a result, defendants will

have a clear view of the panel members' faces as they make their strikes for cause as well and their peremptory strikes.

Even if the venire panel were fully masked, however, the defendants' rights would not be violated. As numerous jurists have concluded, courts may require members of the venire to wear masks without offending the constitution. *United States v. Thompson*, No. 19-cr-1610 (MV), 2021 WL 2402203, at *5 (D.N.M. June 11, 2021) ("Requiring prospective jurors who have kept their face masks on to remove their masks will therefore create an unacceptable health risk in light of COVID-19. Unlike with the Confrontation Clause issue with masked witnesses, the Court is aware of no authority, nor has Mr. Thompson cited any, holding that the Sixth Amendment right to an impartial jury or Due Process demand that the defendant have unimpeded visual access to prospective jurors' facial expressions during jury selection."); *Tagliaferro*, 2021 WL 1225990, at *3 ("[D]espite the District's mask mandate, Tagliaferro is still free to examine and assess juror credibility in all critical aspects besides the few concealed by the wearing of a mask. Indeed, as another court to have recently addressed the same issue explained, 'Being able to see jurors' noses and mouths is not essential for assessing credibility because demeanor consists of more than those two body parts since it includes the language of the entire body.'" (quoting *United States v. Trimarco*, No. 17-cr-583 (JMA), 2020 WL 5211051, at *5 (E.D.N.Y. Sept. 1, 2020))); *Crittenden*, No. 20-cr-7, 2020 WL 4917733, at *8 ("[D]emeanor includes many aspects of body language which will still be present for evaluation. Of course, under normal circumstances, being able to see a potential juror's full facial expressions may be tactically preferable. But the Court is unconvinced that it is required by the Constitution. Through their review of informative juror questionnaires and questioning during voir dire, the parties should be able to obtain sufficient information to detect bias, disqualify jurors for cause, and exercise peremptory challenges. That is

7

what the Constitution requires."); *United States v. Robertson*, No. 17-cr-2949 (MV), 2020 WL 6701874, at *2 (D.N.M. Nov. 13, 2020) ("The Court believes that Mr. Robertson's continuing ability to ask questions during voir dire, and his ability to see the upper half of prospective jurors' faces, is enough to satisfy his constitutional rights, at least in the middle of a global pandemic."). In sum, the anticipated procedures here do not come close to violating the Sixth Amendment.

### III. The Healthy and Safety Procedures Adopted by the Court Do Not Impede the Public-Trial Right

The defendants' final argument pertains to the anticipated use of a live video and audio feed that will transmit the trial proceedings to another courtroom for public viewing. The defendants assert that any such video transmission that does not also capture the jury violates the Sixth Amendment. (ECF No. 220 at 5–8.) So long as jury safety and privacy is secured—and assuming it is logistically possible—the government does not object to positioning a camera so that an image of the jury may also be transmitted to the public viewing-room. The government also does not oppose opening the courtroom's gallery to the public, to the extent it is possible to do so in conformity with social distancing practices.

Nevertheless, the government does not believe that failure to stream a live video of the jury itself amounts to a violation of the Constitution. No case cited by the defendants establishes the public's right to view the jury to ensure that jurors are "attentive" or to protect against "misconduct."

The public-trial right ensures "that the public may see [the defendant] is fairly dealt with and not unjustly condemned[.]" *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (quoting *In re Oliver*, 333 U.S. 257, 270, n. 25 (1948)). Moreover, "the presence of interested spectators may keep [the defendant's] triers keenly alive to a sense of their responsibility and to the importance of their functions[.]" *Id*. The right also "encourages witnesses to come forward and discourages perjury."

8

*Id*. The public-trial right is rooted in the concept of "openness," which ensures "that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enter. Co. v. Superior Ct. of California, Riverside Cty.*, 464 U.S. 501, 508 (1984). None of these interests will be undermined by the anticipated procedures. The public will be able to view both sets of attorneys, the defendants, witnesses, the evidence, and the judge. Permitting the public to stare at a live image of 12 seated jurors will add nothing to the interests that animate the public-trial right.[4]

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Andrew Bosse
Melissa E. O'Boyle
Virginia State Bar No. 47449
Elizabeth M. Yusi
Virginia State Bar No. 91982
Attorneys for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address – andrew.bosse@usdoj.gov

---

[4] It is worth noting, in this respect, that several courts have sought to comply with public-access rights during the pandemic by livestreaming proceedings via audio, even where there is no video feed. Indeed, the Fourth Circuit has operated this way for months without the suggestion that doing so violates public-access or due-process principles.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 10, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By: _____/s/_____
Andrew Bosse
Assistant United States Attorney