IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.  Criminal Nos.  2:19-cr-47-3

AGHEE WILLIAM SMITH, II,
    Defendant.

**DEFENDANT SMITH'S REPLY IN SUPPORT OF EXCLUDING EVIDENCE RESPECTING THE STATUS OF INVESTMENTS UNDER SECURITIES LAW**

The government doesn't simply want to introduce evidence that investigations into DSPF and spectrum occurred. It wants to introduce evidence that the investments were, in fact, securities; that Mr. Smith knew or should have known that the investments were securities; and that he committed securities fraud as part of the conspiracy – despite none of those being alleged in the Indictment. The Court should prohibit this.

The government (1) says it will not introduce evidence of securities fraud, and then (2) explains why it is necessary to introduce evidence of securities fraud. This is not simply a second trial against Daryl Bank. While some of the witnesses and evidence may overlap, that does not automatically deem all evidence against Mr. Bank relevant against Mr. Smith or the co-defendants in this case. The government chose to indict Mr. Bank with one count of conspiracy to sell unregistered securities and to commit securities fraud, five substantive counts for the sale of unregistered securities, and four substantive counts of securities fraud. *United States v. Bank*, 2:17cr126, ECF No. 105 (E.D. Va. May 25, 2018). Mr. Smith and his co-defendants are charged with none – and they were indicted nearly a year after Mr. Bank's indictment with 10 securities-fraud charges. The government has had plenty of opportunity to charge securities fraud if it so intended; it did not.

There is a significant difference between securities fraud and what the government charged in this case. Securities fraud is not an element of the offenses charged, it is not included in the Indictment,

1

and at the beginning of its response, the government seems to acknowledge this. ECF No. 293, at 1 ("the government does not intent to present expert testimony 'respecting the status of investments under securities law'"). Yet the government spends most of its Response arguing that it should be able to stage a securities-fraud trial, including having a representative from FINRA – an entity that is overseen by the Securities and Exchange Commission (SEC) – testify about the definition and regulation of securities, the purpose of registering securities, and the absence of registering DSPF and spectrum investments. The government is converting this into a securities fraud case when it is not.

This is a case about mail and wire fraud, not securities fraud. Lengthy, complicated, and complex evidence regarding securities regulations and securities fraud – *in a case where securities fraud is not alleged* – is irrelevant, unnecessary, confusing, and unduly prejudicial to Mr. Smith. But it is also a massive waste of time. The government knows it cannot convict Mr. Smith on a securities-fraud theory because that would constructively amend the Indictment. Yet while promising the Court that the government is going to streamline this trial, the government plans to offer multiple witnesses – including agents from various government entities – to talk about securities regulations and securities fraud. Cutting evidence that is entirely irrelevant will streamline the trial. This is a good place to start.

### I.   The Indictment does not support admitting evidence that Mr. Smith committed securities fraud and would violate Mr. Smith's constitutional rights.

Allowing evidence of securities fraud would effectively amend the Indictment in violation of the Fifth Amendment and allow the jury to find guilt of conspiracy for securities fraud, which was not charged or alleged. The Fifth Amendment to the Constitution provides that "no person shall be held to answer for a[n]… infamous crime, unless on a presentment or indictment of a Grandy Jury." U.S. Const. Amend. V.; *see also United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013). "When the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment – sometimes referred to as a fatal variance – occurs." *Id.*

2

(quoting *United States v. Malloy*, 568 F.3d 166, 178 (4th Cir. 2009)). "When a court is considering a constructive amendment claim, 'it is the broadening [of the bases for the defendant's conviction] that is important—nothing more.'" *Id.* (quoting *United States v. Floresca*, 38 F.3d 706, 711 (4th Cir. 1994)). Here, Mr. Smith and the other defendants were charged with Conspiracy to Commit Mail and Wire Fraud. ECF No. 1, Counts 1-2. But the evidence that the government wants to admit will essentially invite the jury to convict on Conspiracy to Commit Securities Fraud. It would broaden the possible bases to convict Mr. Smith and the others, yet they were never indicted on such matters and the issues were never presented to a grand jury.

The conspiracies charged in the Indictment allege that fraud was committed based on marketing materials, prospective returns, client obligations under the agreements, suitability, and with regard to spectrum, the existence of an SEC investigation.[1] Mr. Smith acknowledges that the prior injunctions against others may be admissible. Likewise, some evidence regarding the SEC and the Arizona State Corporation Commission (ACC) investigations into DSPF and spectrum may be relevant and admissible. ECF No. 1 at ¶¶ 65-66 ("conspirators did not disclose the existence of the [SEC] complaint to potential investors"); *see also id.* at Count 2, ¶ 9. However, that does not open the door to all evidence regarding the securities investigations, the conclusions reached, or evidence that Mr. Smith was knowingly or unknowingly selling unregistered securities. This would be a substantial change in the Indictment.

The government incorrectly argues that the Indictment includes sufficient references to securities fraud when, in actuality, the government is attempting to conclude *for* the jury that the defendants committed securities fraud without proving it and where it is irrelevant whether securities

---

[1] As for DSPF, the Indictment only alleges that Mr. Maerki knew about the ACC investigation and failed to disclose it, but not the salesmen. ECF No. 1 ¶ 30 ("At no time, did MAERKI disclose to investors that the Securities Division of the Arizona Corporation Commission was investigating DSPF, nor did he stop selling DSPF 'franchise units.'")

3

were involved at all. To take a closer look at the allegations in the Indictment, it simply states that Mr. Smith, Mr. Sellers, and Mr. Barnett were insurance salesmen and at specific times not licensed to sell securities. ECF No. 1 at ¶¶ 4, 5, 6. It states that there was an investigation into DSPF and spectrum. *Id.* at ¶¶ 29-30, 61-65. *It never alleges that Mr. Smith sold unregistered securities.* It never states that Mr. Smith *knew* he was selling unregistered securities. In fact, the Indictment never claims that these were *actually* securities – it only states that there was an accusation of such.

Yet in trial, the government intends to assume for the jury that these were securities. This is evident from the witnesses that it will and will not call to testify. The government states that it does not intend to call a securities expert or present expert testimony "about the legal definition of these investments as unregistered securities." ECF No. 293 at 2, n.1. But it states that Peter Melley from FINRA will testify to the definition of a security, how securities are regulated, what it means for a security to be registered, and that these investments were not registered. *Id.* at 8, 11-12. By doing so, the government not only asks the jury to assume these were unregistered securities, but to also assume that Mr. Smith knew these were unregistered securities and was committing securities fraud. Such a conclusion or assumption is not appropriate, and it allows the jury to convict for a different conspiracy than the one charged by the grand jury.

The government argues that securities fraud is a necessary piece of its case, despite the fact that it was not important enough to allege in the Indictment either as an aspect of the conspiracy or as a standalone charge. In reality, the theory and charges that the government needs to prove at trial under the Indictment do not depend on either DSPF or spectrum being a security. In its Response, the government states that it intends to present evidence that the defendants sold "DSPF and the spectrum investments to elderly, unsophisticated investors, much less doing so using lies and material misstatements." ECF No. 293, at 7. The marketing materials and statements made about the products require no information about whether the investment was a security, a franchise, or something else.

4

The government states that it intends to present evidence that Mr. Smith sold investments in Dazzle Dental and then sold franchises through DSPF. This requires no evidence or discussion of securities. *Id.*, at 9. The government argues that it intends to show that the defendants did not disclose the existence of the investigations to their clients. Again, whether the product was or was not a true security is immaterial. Fed. R. Evid. 401.

Finally, the government argues that presenting regulatory evidence is not out of the ordinary, but the caselaw it cites does not support its position. The cases all support the proposition that regulatory evidence on securities can be properly admitted when an individual is actually charged with securities fraud – which Mr. Smith, Mr. Alcorn, and Mr. Barnet are not. The government cites four cases. First, in *United State v. Offill*, the Fourth Circuit upheld the trial court's decision to allow testimony regarding "the complex concepts involving securities regulation, registration exemptions, and specific regulatory practices" where the defendant was *charged with securities fraud*. 666 F.3d 168, 175 (4th Cir. 2011). Second, in *United States v. Stefan*, the court allowed evidence of banking regulations where the defendant was charged with a scheme to defraud a bank. 784 F.2d 1093 (11th Cir. 1986). Likewise, the third case, *United States v. Munoz-Franco*, allowed evidence of banking regulations against defendants charged with bank fraud. 487 F.3d 25, 65-66 (1st Cir. 2007). Fourth, in *United States v. Arthur*, the court upheld evidence of healthcare regulations where the defendants were charged with healthcare fraud, stating that it would be hard to "prove that defendants defrauded federal regulators without mention of the regulations these officials are responsible for enforcing." No. 09-20877, 2011 WL 2749609, *6 (5th Cir. 2011). Critically, Mr. Smith is not charged with securities fraud; Count One and Count Two of the Indictment specifically say that the conspiracy was to "mislead investors," not to defraud federal regulators. ECF No. 1, p. 20 ¶ 3, p. 24 ¶ 3.

Securities fraud is not an element of any charged offense. The government's proposed jury instructions don't mention securities or securities fraud. Based on the government's caselaw, whether

these investments were securities is irrelevant. The government cannot simply expand the theory of fraud to include securities fraud when it never charged Mr. Smith or the other defendants in this trial with securities fraud.

## II. Introducing evidence of securities fraud will create undue prejudice, confusion, and unnecessarily prolong the trial.

Evidence about the status of these investments under securities laws or regulations should be excluded under Rule 403. The rule states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. This rule precludes the admission of evidence where the "probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury," or where the evidence is "repetitive… only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (internal quotations omitted); *see also United States v. Gomes*, 177 F.3d 76, 81-82 (1st Cir. 1999).

The government argues that prejudicial evidence is admissible under Rule 403, which is true. However, *unfairly* prejudicial irrelevant evidence is not admissible. For the government or its witnesses to state in conclusory fashion that these investments were securities or to make uncharged accusations of securities fraud during this trial would be unfairly prejudicial. Mr. Smith disputes that he committed securities fraud. If the government suggests that he did, Mr. Smith would have to defend himself against such accusations to prevent the jury from hearing essentially unrebutted evidence of *some* fraud. But the government would put Mr. Smith in a Catch-22, having both to defend against the uncharged allegations of securities fraud and insisting to the jury that whether he committed securities fraud is legally irrelevant. It might be reasonable for a juror to wonder why Mr. Smith is fighting so much against the accusation if the securities fraud issue is truly irrelevant. By creating his specter of securities

6

fraud, the government puts Mr. Smith in a lose-lose situation. It is perhaps a smart litigation strategy for the government not to create a burden for itself by *charging* securities fraud, and instead to merely accuse Mr. Smith of securities fraud in front of the jury. But it is an unfairly prejudicial strategy that relies on improper inferences from irrelevant evidence. Since the government cannot seek convictions based on a theory of securities fraud or conspiracy to commit securities fraud, the probative value of such evidence is minimal and is far outweighed by the danger of unfair prejudice. *United States v. Williams*, 445 F.3d 724, 731 (4th Cir. 2006).

Evidence may also be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. *See United States v. Rodriguez*, 192 F.3d 946, 961 (10th Cir. 1999). Here, the government admits that it "does not intend to present expert testimony" on securities law, but still intends to "reference[] these investments as securities," and have witnesses explain the securities regulations, explain what a security is, and discuss that these investments were not registered – thus assuming they were securities and that the defendants committed the criminal offense of securities fraud. ECF No. 293, at 1, 11. The dangers of this assumption dovetail with the concern of confusing the issues.

The Fourth Circuit has noted that "district court[s] [are] properly concerned about the risk of confusing the jury about the relevant issues … as well as the trial being subsumed by a mini-trial over the nature and propriety of [a defendant's] past acts." *Biers v. Cline*, 724 F. App'x 189, 191-92 (4th Cir. 2018). In its response, the government misconstrues or misunderstands the argument that introducing securities information into the trial would be confusing to the jury. ECF No. 293, at 13-14. The government argues that the information about securities fraud is not too complicated for a jury to understand. In a case where a defendant is charged with securities fraud, that is true. And that is why the jury in the *Bank* trial heard evidence about securities regulations – because Mr. Bank was charged with 10 counts of securities fraud. *Id.* The confusion in this case arises when witnesses testify about

7

securities, the government says that securities fraud was committed without any of the defendants being charged with that crime, and then the jury is told that it is not permitted to rely on securities fraud as a basis for conspiracy. Such an instruction would certainly be confusing and would unfairly prejudice Mr. Smith by assuming guilt for an uncharged offense. That assumption would also provoke an emotional response by the jurors who will embrace the government's assumption that not only did the elderly witnesses lose money, but that Mr. Smith did so by knowingly committing securities fraud, despite the fact that it was never proven alleged, charged, or proven against him.

Lastly, if the government assumes that Mr. Smith knowingly committed securities fraud and suggests that he did in front of the jury, Mr. Smith would need the opportunity to rebut the allegation, which could require additional witnesses. For example, relying on the Indictment, Mr. Smith has not retained experts in securities regulations or law. We ask the Court to decide this issue in advance of trial so that appropriate experts can be identified and retained. But in a trial that is estimated to last four to five weeks, involves over 100 subpoenaed witnesses, and already involves complex technical issues and financial documents, it is unnecessary to hold a trial within a trial to determine whether these were securities or another investment vehicle, as well as whether Mr. Smith knew they were securities when he suggested them. Mr. Smith and the co-defendants aren't charged with or alleged to have committed securities fraud. Thus, the value of evidence about the status of these investments under securities laws or regulations is minimal if it is relevant at all.

\*   \*   \*

To prevent a constructive amendment of the Indictment and to focus the issues to those relevant to the charges, Mr. Smith respectfully asks the Court to preclude the government from offering evidence or argument that DSPF or the spectrum entities were, in fact, securities or that Mr. Smith was knowingly committing the uncharged act of securities fraud. If the Court denies the defense motion, Mr. Smith needs time to properly prepare for a trial that will be markedly more expansive in

scope than the indictment suggested. Thus, Mr. Smith respectfully asks the Court to decide this issue as soon as possible.

          Respectfully submitted,

          AGHEE WILLIAM SMITH, II

          By:_____/s/_____

          Lindsay Jo McCaslin
          VSB No. 78800

          Andrew W. Grindrod
          VSB 83943

          Assistant Federal Public Defenders
          Attorneys for Aghee William Smith, II
          Office of the Federal Public Defender
          150 Boush Street, Suite 403
          Norfolk, Virginia 23510
          Telephone: 757-457-0800
          Telefax: 757-457-0880
          Email: lindsay_mccaslin@fd.org
                  andrew_grindrod@fd.org