IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.                                                                          Criminal Nos.  2:19-cr-47-3

AGHEE WILLIAM SMITH, II,
                        Defendant.

**DEFENDANT SMITH'S REPLY IN SUPPORT OF EXCLUDING EVIDENCE
ABOUT NORTHRIDGE HOLDINGS LTD. AND PENSION FUNDING, LLC**

The government wants to introduce evidence that a client of Aghee Smith lost money through investments with Northridge Holdings Ltd. and Pension Funding LLC, and that those investments were fraudulent. First, neither of those companies appears in the indictment. And even though this whole case concerns whether Mr. Smith engaged in a conspiracy with Kent Maerki and Daryl Bank, the government concedes that Northridge and Pension Funding are "wholly unrelated to Bank and Maerki." ECF No. 296, at 3.

For that reason, the government does not even *claim* that Northridge or Pension Funding were part of the charged conspiracies. Instead, the government's theory is this: "the fact that Smith sold additional fraudulent investments – wholly unrelated to Bank and Maerki – should be admissible to prove knowledge, intent, and absence of mistake." ECF No. 296. Of course, that begs the question. Are Northridge and Pension Funding fraudulent investments? And, if so, did Mr. Smith know that?

When this case was continued in November 2021, the prosecutors repeatedly represented to the Court that they would do everything they could to slim down their case. But now the government proposes conducting a complex mini-trial about whether Northridge Holdings and Pension Funding – companies "wholly unrelated to Bank and Maerki" – were fraudulent. And, if so, whether Mr. Smith knew they were fraudulent. This Court should reject the government's request to radically expand the scope of this already lengthy trial that will occupy multiple courtrooms during a pandemic.

1

Evidence about fraud or losses stemming from investments with Pension Funding and Northridge is not "intrinsic" to the charges because these entities have nothing to do with the conspiracy alleged in the indictment and are wholly unrelated to Bank and Maerki. The government's other suggestion – that it should be permitted to conduct a Rule 404(b) mini-trial about the allegedly fraudulent nature of Pension Funding and Northridge – violates Rule 404(b) and would lead to an extraordinary waste of time under Rule 403. The Court should exclude evidence that is wholly unrelated to this case by granting Mr. Smith's motion *in limine*.

I.  **Northridge Holdings and Pension Funding are not intrinsic to the allegations.**

Evidence about neither Northridge Holdings nor Pension Funding is "intrinsic" to the allegations in the indictment. The government does not even reach so far as to make the argument that they are. Instead, the government argues that "[t]he size of the victims' investment portfolios as well as the types of investments that Smith and Barnett recommended for these clients" is relevant and intrinsic evidence. Fair enough. But the government can elicit that information without getting into A) the details of the other clients' other investments, B) how those investments turned out, or C) whether the government believes those other investments were fraudulent.

For that reason, evidence about CG's investments with Northridge and Pension Funding are not intrinsic to the charges here. Intrinsic evidence has "an established nexus" to the charges. *United States v. Lipford*, 203 F.3d 259, 269 (4th Cir. 2000). For example, the defendants in *Lipford* were charged with a drug conspiracy and 924(c) offenses. During trial, the court admitted into evidence that one of the defendants had fired a gun at the police officers who were attempting to execute a warrant, striking one officer. A government witness also testified that the defendant had warned him that "a bust could come at any time" and that he and another defendant "had to be prepared to take 'em out." *Id.* at 265 (internal quotations removed). Because this shooting proved the existence and scope of the drug conspiracy, and the defendant "demonstrated the extent to which he would defend his drug

conspiracy," it was intrinsic evidence. *Id.* at 268-69.  Unlike *Lipford*, the conspiracies alleged in the indictment against Mr. Smith have no relation to Northridge Holdings or Pension Funding: the principals of the companies are completely different, the types of investments are different, and none of the evidence would support or refute any agreement to conspire between Mr. Smith and the others charged in the Indictment. The Fourth Circuit recently warned in order for so-called "complete-the-story" evidence to be considered intrinsic, the "'evidence must be necessary' to 'complete the story' of the charged offense." *United States v. Brizuela*, 962 F.3d 784, 795 (4th Cir. 2020). "This requires a hard look to ensure that there is a clear link or nexus between the evidence and the story of the charged offense, and that the purpose for which the evidence is offered is actually essential." *Id.* "Otherwise," the court warned, "the 'complete the story' doctrine might be used to disguise the type of propensity evidence that Rule 404(b) is meant to exclude." *Id.* Here, there is no nexus between Northridge/Pension Funding and DSPF or the spectrum entities.

Even if it were somehow shown to be intrinsic, that is not a sufficient reason for its admissibility. The Fourth Circuit has recognized the limits of this claim and has warned against its broad use:

> As pointed out by the D.C. Circuit, it cannot be that all evidence tending to prove the crime is part of the crime. If it were so, Rule 404(b) would be a nullity. Yet, by characterizing evidence as 'intrinsic,' federal courts, including this one, have allowed prosecutors to introduce evidence of uncharged bad acts free from Rule 404(b)'s protections... Fortunately some courts have begun to recognize the harm caused by granting federal prosecutors such unmitigated leeway.

*United States v. Fuertes*, 805 F.3d 485, n.4 (4th Cir. 2015) (internal citations omitted). In accordance with the Fourth Circuit's recent warnings, the Court should be skeptical of the government's specious argument that evidence about entities wholly unrelated to the conspiracy alleged in the indictment should be considered "intrinsic." Almost by definition, it is not.

## II. Evidence about Northridge Holdings and Pension Funding is inadmissible under 404(b).

Before evidence may be admitted under Rule 404(b), it is the "government's … burden to explain each proper purpose for which it [seeks] to introduce the evidence, to support those purposes with propensity-free chains of inferences demonstrating relevance, and to establish that the prior convictions [are] necessary, reliable, and not unduly prejudicial." *United States v. Hall*, 858 F.3d 254, 284–85 (4th Cir. 2017), *as amended* (June 21, 2017).

### A. Any evidence of Northridge Holdings or Pension Funding would be for propensity purposes, which is not allowed.

To evaluate the government's claims, the Court must track – step by inferential step – how these entities create a non-propensity-based chain of inference to make this point. *Hall,* 585 F.3d at 266 (*quoting United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)) (The government must "identify each proper purpose for which it will use the other acts evidence and explain how that evidence 'fits into a chain of inferences—a chain that connects the evidence to [each] proper purpose, no link of which is a forbidden propensity inference.'"). It is not enough for the government to state that it intends to use the evidence for purposes of knowledge, intent, or lack of mistake. "A proponent's incantation of the proper uses of [prior act] evidence… does not magically transform inadmissible evidence into admissible evidence." *United States v. Caldwell*, 760 F.3d 267, 276 (3d. Cir. 2014) (quoting *United States v. Morley*, 199 F.3d 129, 133 (3d. Cir. 1999)) (internal citations removed). The government must do more "than simply pluck[ ] a non-propensity purpose from the list in Rule 404(b)(2)." *United States v. Johnson*, No. 1:16-CR-162, 2017 WL 5135355, at *3 (M.D. Pa. Nov. 6, 2017).

Although talismanic recitation of the theoretically available proper uses is insufficient to support the admission of bad-act evidence under Rule 404(b), that is all the government offers. This is how the government lays out its case for admissibility under Rule 404(b): "That Smith was also pitching multiple other fraudulent investment opportunities, though, goes directly to his motive,

knowledge, and absence of mistake – all permissible uses of such evidence under Rule 404(b)." ECF No. 296, at 3. Admitting evidence on that showing would turn Rule 404(b) litigation to a game of Mad Libs.[1]  The government need only fill in the blank and its conclusory argument can carry the day: "That Defendant _____[insert bad act here]_____ goes directly to his motive, knowledge, and absence of mistake – all permissible uses of such evidence under Rule 404(b)." That is not what the Fourth Circuit meant when it said that the government has a "burden to explain each proper purpose for which it [seeks] to introduce the evidence, [and] to support those purposes with propensity-free chains of inferences demonstrating relevance." *Hall*, 858 F.3d at 284- 85.

Evidence about Northridge and Pension Funding is not probative of Mr. Smith's motive. It is unclear how the government even thinks it might be. And proving knowledge or (relatedly) absence of mistake through this evidence relies on the forbidden propensity inference. The government does not claim that Mr. Smith learned any specific fact through his dealings with Northridge or Pension Funding that it wants the jury to know was in his head to help prove the charged conspiracies. No. The government presumably contends that because Mr. Smith sold clients other investments that he knew were fraudulent, he is more likely to have known that the spectrum and DSPF investments were fraudulent here. That's pure propensity. As discussed below, there are also factual issues with this argument. Critically, Mr. Smith disputes that Northridge or Pension Funding were fraudulent or that he knew they were fraudulent. Hence, the need for a mini-trial. But even accepting as true the claim that these were fraudulent, the government's argument still rests on a pure propensity argument. It cannot be admitted under Rule 404(b).

---

[1] Mad Libs is a game "in which players complete sentences with random words and then read back the results." Regina Wang, *'Mad Libs' Publisher Larry Sloan Dies*, TIME (Oct 18, 2012), *available at* https://newsfeed.time.com/2012/10/18/mad-libs-publisher-larry-sloan-dies/ (last visited Nov. 18, 2021).

B.  Evidence regarding these entities is not necessary for the government's case.

Evidence of Northridge Holdings and Pension Funding is not necessary. As the Fourth Circuit explained, "[t]he necessity prong must be analyzed in 'light of other evidence available to the government.'" *United States v. Lighty*, 616 F.3d 321, 354 (4th Cir. 2010) (quoting *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997)). "[D]istrict courts must analyze the evidence available to the government," and "if the Rule 404(b) evidence is entirely cumulative to other non-Rule 404(b) evidence available to the government, the Rule 404(b) evidence may not meet the necessity prong." *Id.* "Moreover, as the quantum of other non-Rule 404(b) evidence available to prove an issue unrelated to character increases, the need for the Rule 404(b) evidence decreases." *Id.*

The only argument the government makes to support it being "necessary" is that it needs to walk a witness through the investments they made. ECF No. 296 at 2. If said witness made four investments, two of which are directly at issue in this case, it would be very simple for the government to tell the witness beforehand that they are not to discuss Northridge or Pension Funding. There is no reason that cannot be done. Or it could be addressed this way:

Q. In addition to DSPF, you also made some other investments through Mr. Smith, right?

A. Right.

What the government does not *need* to do is get into testimony about those other investments, whether the government or the witness believes they were fraudulent, and how those investments performed. That would be entirely unrelated to government's case, which is supposed to be about DSPF and spectrum.

Furthermore, the government has produced so little documentation on Northridge and Pension Funding that it undercuts any claims of necessity. The government indicted this case in March 2019, and indicted the related case of Mr. Bank in 2017. ECF No. 1; *Bank*, 2:17cr126, ECF No. 4 (E.D Va. Aug. 23, 2017). In the past three years, the government has produced hundreds of thousands

of documents in discovery. Only a small handful mention Northridge Holdings or Pension Funding – and for good reason: they aren't relevant or necessary for this case. The government's Response to this motion is the first information defense counsel received that Northridge Holdings has been placed in receivership. ECF No. 296 at 2. And undersigned counsel has little information about the events leading up to that. None of that was part of this case until the government's response, which was filed six days before trial was scheduled to begin. ECF No. 296, at 2-3 (filed at 10:22PM on Nov. 10, 2021). Even if the government were to produce information about Northridge Holdings in the coming weeks, it doesn't change the fact that in nearly three years, the information wasn't important enough to produce before now, especially considering that all parties expected trial to begin on November 16, 2021. The government should not be permitted to introduce it now.

C. <u>Allegations that Northridge Holdings or Pension Funding are fraudulent are not reliable enough to bring into trial without proof, requiring additional witnesses and the opportunity to defend against such allegations.</u>

The government's allegations that Northridge Holdings and Pension Funding were fraudulent are not reliable. They are just that – allegations; allegations that the government will need to prove against both the companies and Mr. Smith if it intends to introduce such evidence. The government mentions that both have pending lawsuits against them, but it does not state any findings or how those findings would come into the trial without prolonged litigation. The government also does not allege that Mr. Smith made any fraudulent misrepresentations about those entities. Nor does the government even *proffer* any evidence that Mr. Smith knew or should have known about possible wrongdoing related to those two uncharged entities. The government also fails to mention that Northridge Holdings returned the principal with interest to witness CG.

The government cannot just casually mention to the jury other "fraud" that it claims occurred without proof, nor can it make such a prejudicial conclusory statement. If the government intends to introduce this evidence, Mr. Smith has a right to defend against these allegations including by

7

producing witnesses on this matter. Since these matters have no relationship with Mr. Bank, Mr. Maerki, Mr. Alcorn or any of the investments listed in the indictment, such an additional showing of proof and rebuttal will only extend the trial and confuse the jury.

### III.   Introducing evidence of these two entities will create undue prejudice, confusion, and unnecessarily prolong the trial.

The uncharged-acts evidence should be excluded under Rule 403. The rule states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. The Rule 403 analysis is the same whether the evidence is considered intrinsic or extrinsic. The rule precludes the admission of evidence where the "probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury," or where the evidence is "repetitive… only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (internal quotations omitted); *see also United States v. Gomes*, 177 F.3d 76, 81-82 (1st Cir. 1999) (finding that trial court had discretion to exclude evidence of bias that would distract from the main issues and have little practical value to the defense).

### A.   <u>Admitting Northridge Holdings and Pension Funding evidence would be unduly prejudicial.</u>

These two businesses are not linked with any other relevant entity in this case. It is unclear whether they are linked to each other. Whatever minimal probative value this evidence could have is far outweighed by the danger of unfair prejudice. *United States v. Williams*, 445 F.3d 724, 731 (4th Cir. 2006). As the Fourth Circuit has noted:

> The purposeful exclusion of such prior "bad act" evidence is not grounded in its irrelevance. Instead, the general admissibility of such evidence is based on the danger that this type of evidence will overly influence the finders of fact and thereby persuade them "to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge."

*United States v. McBride*, 676 F.3d 385, 395 (4th Cir. 2012) (quoting *Michelson v. United States*, 335 U.S. 469, 475-76 (1948)) (evidence of a prior attempt to manufacture crack cocaine should have been excluded as "unrelated" "and thus was not probative of his intent with regard to the charged [PWID] offenses," and "resulted in unfair prejudice" and confusion). Evidence may also be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. *See United States v. Rodriguez*, 192 F.3d 946, 961 (10th Cir. 1999).

Here, the government intends to present numerous witnesses who lost their investments related to DSPF and spectrum. As the government repeatedly states in its pleadings, the government will be calling witnesses who are "elderly" and "aged victims." The jury will naturally be sympathetic to their losses. However, including detailed testimony about additional, unrelated businesses with little proof other than conclusory accusations of fraud would strongly bolster an emotional response from the jury such that Mr. Smith cannot receive a fair trial. The jury would be more likely to convict simply because of their emotions, not because of any facts introduced about the two entities or even the allegations in the indictment. It would not matter if the witness's principal was returned from the company, or if their other investments performed well. If the jury believes that elderly witnesses suffered additional losses based on recommendations from Mr. Smith beyond those in the indictment, the prejudice would be substantial. Such evidence *invites* the prohibited propensity inference – and for what? The probative value is miniscule if it exists at all.

B. Admitting evidence of Northridge Holdings and Pension Funding would cause confusion and prolong the trial.

This case is inherently complex. It involves a dozen businesses and entities, over 100 subpoenaed witnesses, complex technical issues regarding spectrum and regulatory rules, and voluminous documents including contracts, bank records, and financial information. Trial is anticipated to last four to five weeks, and a case like this is difficult enough for a jury to follow.  The

9

Fourth Circuit has noted that "district court[s] [are] properly concerned about the risk of confusing the jury about the relevant issues … as well as the trial being subsumed by a mini-trial over the nature and propriety of [a defendant's] past acts." *Biers v. Cline*, 724 F. App'x 189, 191-92 (4th Cir. 2018). That is what will occur with the introduction of irrelevant entities such as Northridge Holdings and Pension Funding. The two businesses involve completely different individuals, none related to the indictment or Mr. Bank's indictment. For the government to show fraudulent conduct from each, or to show Mr. Smith's alleged knowledge of any fraudulent misrepresentations of these companies, it would need to introduce additional witnesses and documents at trial to substantiate it.

The government is attempting to backdoor allegations of wrongdoing for the jury to consider against Mr. Smith. As a result, Mr. Smith would need the opportunity to rebut the allegations, which could also require additional witnesses. It would be a trial within a trial. Worse still, the outcome of this mini-trial would have little to no bearing on whether a conspiracy between Mr. Smith, Mr. Bank, Mr. Maerki, or the others existed. It would have little to no bearing on representations made to clients regarding DSPF or spectrum. It would have little to no bearing on any issue in this case.

*       *       *

For these reasons, the Court should preclude the government from offering evidence or argument suggesting that Northridge Holdings Ltd. and Pension Funding LLC were fraudulent investments and from adducing evidence that a client of Mr. Smith lost money through investments with those companies.

Respectfully submitted,

AGHEE WILLIAM SMITH, II

By:_____/s/_____

Lindsay Jo McCaslin
VSB No. 78800

Andrew W. Grindrod
VSB 83943

Assistant Federal Public Defenders
Attorneys for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email:  lindsay_mccaslin@fd.org
            andrew_grindrod@fd.org