IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA,

v.

AGHEE WILLIAM SMITH, II
        Defendant.

Criminal Nos. 2:19-cr-47-3

**DEFENDANT SMITH'S MOTION TO EXCLUDE EVIDENCE UNDER RULE 404(B)**

The defendant, Aghee William Smith, II, objects to the introduction of Rule 404(b) evidence that the government seeks to admit for three reasons. ***First***, the government failed to comply with Rule 404(b)(3)'s notice provision. The government's "notice" fails to identify the permitted purpose for which the prosecutors intend to offer the evidence or the reasoning that supports the purpose. ***Second***, including the categories of evidence identified below would violate Federal Rules of Evidence 401, 403, and 404. There is no proper non-propensity purpose for this evidence. Plus, the admission of this other-acts evidence is unfairly prejudicial to Mr. Smith, essentially accusing him of multiple instances of unrelated fraud in a fraud trial. Mr. Smith will be forced to defend against these uncharged allegations, leading to an enormous waste of time and a trial within a trial. ***Third***, undersigned counsel was explicitly told twice by the Assistant United States Attorneys that Collins Asset Group would not come into this trial and was told once by prosecutors that evidence respecting uncharged entities such as weMonitor Group would not be offered in the government's case-in-chief. By this motion, Mr. Smith seeks to enforce those stipulations.

**I.**     **Legal Standard**

Rule 404(b) limits the government's ability to offer evidence that a defendant did bad things other than those he is charged with here. The government can never offer such evidence to suggest that the defendant is just the kind of person who does things like this. *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order

1

to show that on a particular occasion the person acted in accordance with the character."). But other-acts evidence "may be admissible for another purpose." *See* Rule 404(b)(2).

When the government seeks to introduce 404(b) evidence, it is the "government's … burden to explain each proper purpose for which it [seeks] to introduce the evidence, to support those purposes with propensity-free chains of inferences demonstrating relevance, and to establish that the prior convictions [are] **necessary**, **reliable**, and **not unduly prejudicial**." *United States v. Hall*, 858 F.3d 254, 284–85 (4th Cir. 2017), *as amended* (June 21, 2017) (emphasis added).

Rule 404(b) also includes a notice requirement, which provides:

> (3) **Notice in a Criminal Case**. In a criminal case, the prosecutor must:
> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> (B) <u>articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose</u>; and
> (C) do so in writing before trial--or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3) (underlining added).

## II. The government's Rule 404(b) notice is prejudicially deficient.

Federal Rule of Evidence 404(b)(3)(B) requires the government to provide pretrial notice of its intent to use other-acts evidence and to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose."[1] The

---

[1] Federal Rule of Evidence 404(b) was amended effective December 1, 2020, over a year ago. The relevant Advisory Committee Note explains the reason for the amendment: "The prosecution must not only identify the evidence that it intends to offer pursuant to the rule but also articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose. The earlier requirement that the prosecution provide notice of only the 'general nature' of the evidence was understood by some courts to permit the government to satisfy the notice obligation without describing the specific act that the evidence would tend to prove, and without explaining the relevance of the evidence for a non-propensity purpose. This amendment makes clear what notice is required." Adv. Committee Notes, Fed. R. Evid. 404 (2020).

Committee Notes respecting the notice requirement explain that pretrial notice of the proffered purpose is necessary to "allow the defendant a fair opportunity to meet the evidence," noting that advance notice "is important so that the parties and the court have adequate opportunity to assess the evidence, the purpose for which it is offered, and whether the requirements of Rule 403 have been satisfied." *See* Adv. Committee Notes, Fed. R. Evid. 404.

The government entirely failed to meet the notice requirement here. In its nominal notice, the government says only that it will offer seven different categories of evidence for some unidentified "proper purpose, *i.e.*, to prove motive, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accidence in reference to the offenses charged in the Indictment." Ex. 1. Neither in that introductory paragraph nor elsewhere does the government articulate a specific permitted purpose for which it intends to offer the evidence. And the government likewise fails to articulate any reasoning that would support admission for a proper purpose.

"When confronted with a proffer under Rule 404(b), a district court should not merely inquire of the prosecution what it wishes the evidence to prove. Rather, the court should also require the prosecution to explain exactly how the proffered evidence should work in the mind of a juror to establish the fact the government claims to be trying to prove." *United States v. Brown*, 765 F.3d 278, 294 (3d Cir. 2014) (cleaned up); *see also United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) ("Rule 404(b) is not just concerned with the ultimate conclusion, but also with the chain of reasoning that supports the non-propensity purpose for admitting the evidence."). The government must "articulate the requisite chain of inferences without resort to propensity-based links or attempts to build a bridge too far." *Brown*, 765 F.3d at 294.

Here, the government failed to identify what it seeks to prove by offering other-acts evidence related to Collins Asset Group, Dazzle Dental, weMonitor, insurance license investigations, or anything else. And – because the government does not identify the purpose of this evidence – it also

fails to explain how this evidence materially advances an at-issue proposition through a permissible chain of inferences.

Mr. Smith is prejudiced by the government's deficient notice. How can Mr. Smith respond to a claim that is never made? The rest of this motion guesses as to why the government might want to offer this evidence. But Rule 404(b)(3)'s notice provisions require the government to say what it wants to do so that a defendant whose liberty is at stake does not have to guess about what the powerful government has up its sleeve.

Not only is Mr. Smith prejudiced in his ability to argue against the admission of the evidence in this motion, he is prejudiced by not knowing how he should respond to this evidence if it is offered at trial. Because we don't even know how the government wants to use this evidence, we cannot prepare to rebut the government's point. That Mr. Smith still does not know why the government wants to offer this evidence makes it hard to even articulate with precision the prejudice that will inure to him. The whole point is that if we knew what we should be doing to respond to this proffered evidence, we would be doing it (not articulating it in this motion). By failing to identify a non-propensity purpose and permissible chain of inferences in its Rule 404(b) notice, the government defaulted its ability to present the evidence under Rule 404(b).

Perhaps the government will ask for leave to supplement its notice at this late date. It is worth noting that – although the government charged this case in March 2019 – it did not provide notice of its intent to offer Rule 404(b) evidence until virtually the last minute. Trial was scheduled to begin on November 16, 2021. The government served its notice on November 9, 2021. *See* Ex. 1. Although that technically met the deadline set by this Court, the government no doubt could have provided notice earlier. The case had been pending for over two years and the government finalized its witness list on October 12, 2021. It seems likely that the government knew it planned to offer seven categories of other-acts evidence when it identified its trial witnesses. The government presumably waited until

4

the last minute to serve its bare bones notice as a tactical decision, a conscious move that would make it harder for Mr. Smith to prepare in seven days to rebut this evidence that the government had collected for years and prepared to present for months. The problem is that the notice was plainly deficient. If the government seeks to "correct" or supplement its notice now, the Court should say no. The government tried to play hard ball and waited until the last minute. Any attempts now to show good cause for the blatant deficiency in the government's notice should be judged in that context.

Finally, the government claims in its notice that some of its proposed evidence is "included in the indictment and/or is intrinsic to the charged offenses," suggesting that it may not be subject to the requirements of Rule 404(b). The Fourth Circuit recently emphasized that the government cannot label evidence as intrinsic to escape altogether the requirements of Rule 404(b). *See United States v. Fuertes*, 805 F.3d 485, 494 n.4 (4th Cir. 2015). "As pointed out by the D.C. Circuit, 'it cannot be that all evidence tending to prove the crime is part of the crime. If that were so, Rule 404(b) would be a nullity.'" *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). The Fourth Circuit observed that "by characterizing evidence as 'intrinsic,' federal courts, including this one, have allowed prosecutors to introduce evidence of uncharged bad acts free from Rule 404(b)'s protections, including limiting jury instructions and advanced notice of the government's intent to introduce the evidence." *Id.* The Fourth Circuit emphasized "the harm caused by granting federal prosecutors such unmitigated leeway" and warned courts from letting the government present propensity-style, other-acts evidence under the premise that it is somehow "intrinsic" to the charged offense. *Id.* In any event, much of the information in the government's notice is not included in the indictment. All of the evidence discussed in the "notice" falls within the gamut of Rule 404(b) and should have been properly noticed.

**III.     Evidence related to Collins Asset Group is inadmissible at trial.**

Mr. Smith objects to the admission of evidence regarding Collins Asset Group (hereinafter "Collins") because: (1) the government twice agreed it would not introduce this evidence and the defense relied upon that representation; (2) under Rule 404(b), there is no legitimate, non-propensity purpose for the admission of this evidence, and it is not "necessary" to prove any fact actually in dispute and would cause unnecessary delays as the parties conduct a trial within a trial about this evidence that is unrelated to the charges alleged by the government; and (3) any probative value is outweighed by risk of unfair prejudice to Mr. Smith under Rule 403. Because the government cannot meet its burden here – and because the government already said twice that Collins would not be included in this case – the Court should preclude the government from injecting into this case a separate, complicated matter.

A.   Background on Collins Asset Group

Mr. Smith was indicted on charges related to Dental Support Plus Franchise (DSPF) and entities related to Janus Spectrum. ECF No. 1. These two investment opportunities – DSPF and spectrum – were organized by Kent Maerki, Daryl Bank, and David Alcorn. *See United States v. Bank*, 2:17cr126 (E.D. Va. Sept. 21, 2021). But Bank and Maerki were also involved in many other investment opportunities, such as Collins, that were not alleged in Mr. Smith's indictment. *See* ECF No. 1.

Collins is in the business of buying delinquent debt and helping companies collect on accounts that owe the business money. *Collins Asset Group v. Diversified, et al*, 7:20cv942-CS, ECF No. 11, at 22 (S.D.N.Y. March 3, 2020). At some point, Collins began working with Daryl Bank to acquire capital for Collins. Collins used the money Mr. Bank helped it raise to run its business – *i.e.*, to fund originating loans, provide funding for acquisitions, and so forth. *Collins*, at 22-23. According to Collins's court filings, between 2014 and 2017, Mr. Bank's entities provided approximately $23 million in capital to

Collins. *Id.* at 22, 23. In return, Collins agreed to repay Bank's entities – essentially, Bank's clients – the principal amount plus interest at a contractually determined rate based on its debt collection. *Id.* at 23.

On September 1, 2017, Mr. Bank was arrested on federal charges, rendering his entities defunct. *Id.* at 26; *Bank*, ECF No. 8. Before the entities were shutdown, Collins claimed that it had paid Bank's entities approximately $2.1 million in principal and interest. *Collins*, at 22. By December 31, 2019, Collins held approximately $5.3 million for distribution to Bank's clients, and expected the amount to continue to grow. *Id.* at 24. Unfortunately, Collins only had records of the total amount that it borrowed from Bank's entities; it did not have a list of Bank's clients or how much each client contributed to the total amount. *Id.* at 27. Without knowing who contributed and how much, Collins was unable to distribute the funds to any of Bank's clients; the money just remained in an account, accruing interest. According to court filings, Collins contacted federal authorities to seek assistance on how to move forward with disbursing the money. Collins asserted that it contacted the United States Attorney's Office for the Eastern District of Virginia, the FBI, and the SEC, and did not receive guidance. *Id.* at 26-27. Collins also offered to turn the funds over to the court, plus any future funds that came due, so the court could distribute the funds appropriately. *Id.* at 24. Instead, in June 2021, Collins reached a class-action settlement with the clients to pay nearly $16 million, which will be returned to the clients *pro rata* based on claims submitted by each, plus nearly $4 million for attorney's fees that it did not oppose. *Thaxton and Thaxton v. Collins Asset Group, et al.*, 1:20cv941-ELR, ECF No. 79, at 3, 18 (N.D. Ga. June 21, 2021).

B. <u>Defense counsel relied on verbal representations from the government.</u>

Given the number of entities and level of complexity involved in Mr. Smith's case and the absence of any mention of Collins Asset Group in the indictment, Lindsay McCaslin asked the Assistant United States Attorneys on two separate occasions to clarify which entities would be coming

7

into trial: the first time approximately 1.5 to 2 years ago, and more recently in early 2021. In the first conversation with Ms. Yusi at the courthouse, the government stated that the trial would include any entity related to DSPF or spectrum, including Janus Spectrum and Xcel Bandwidth, as expected. Ms. McCaslin specifically asked about Collins given the complex and unique legal issues that have occurred. Ms. Yusi told Ms. McCaslin that the government was not going to offer evidence about Collins in the trial because "they had to stop the bleeding somewhere," referring presumably to the large number of entities involved. *See* ex. 2 (declaration). The second time, around the time when Daryl Bank was on trial, Ms. McCaslin spoke to Ms. O'Boyle on the phone, and again asked about what entities would be included in Mr. Smith's trial, since Mr. Bank's indictment alleged fraud for entities like PLI and weMonitor, but Mr. Smith's indictment did not. Again, the government affirmatively represented to defense counsel that any entity regarding DSPF or spectrum would be discussed at trial, but that evidence related to PLI and weMonitor would not come in during the government's case-in-chief. Ms. O'Boyle did qualify that statement by noting that if Mr. Smith or other defendants testify, it could open the door. *Id.* However, the government explicitly told defense counsel – again – that Collins would not be part of this trial. *Id.*

"The federal courts have long been cognizant of the responsibility of federal prosecutors meticulously to fulfill their promises." *United States v. Shapiro*, 879 F.2d 468, 471 (9th Cir. 1989) (quoting *United States v. Hudson*, 609 F.2d 1326, 1328 (9th Cir. 1979)). "When the prosecution makes a 'deal' within its authority and the defendant relies on it in good faith, the court will not allow the defendant to be prejudiced as a result of that reliance." *United States v. Shapiro*, 879 F.2d 468, 471 (9th Cir. 1989). For example, in *United States v. Bowen*, the district court excluded evidence when the government had represented that it would not use it at trial "yet approximately one month before trial, with a newly substituted Assistant United States Attorney in charge of the case … reversed its position thereby placing the defense in a position where it had to move to suppress." 857 F.2d 1337, 1342 (9th Cir.

1988). The Ninth Circuit affirmed the district court's decision to exclude this evidence, writing that the "last minute change of position … is beneath the standards we expect of our public prosecutors." *Id.*

Here, the defense relied on the government's representation when preparing for trial. For example, defense counsel and investigators interviewed or attempted to interview many witnesses in preparation for trial, and with nearly 2 million pages of discovery, focused its review on facts most relevant to trial. But based on the government's representation, the defense *did not* interview various witnesses regarding Collins and did not subpoena witnesses related to Collins for trial. If the government had not affirmatively represented that Collins would not be part of this trial, Mr. Smith's attorneys would have made different tactical decisions about what witnesses and evidence to call to show Collins's legitimacy in seeking capital and repaying with interest; Collins's intent to follow through on its obligations to the individual lenders; and Mr. Smith's reasonable belief and trust in Collins as a financial strategy.

To allow the government to offer this evidence now would severely prejudice Mr. Smith's right to a fair trial. There is insufficient time to investigate or subpoena these witnesses. It would be one thing if the government had attempted to reverse course after a couple weeks, but the government never told defense counsel of the change in its position until it received the 404(b) notice. In *United States v. Wingate*, the Seventh Circuit held a criminal defendant to a similar stipulation, noting that "the government stated that it relied on the stipulation in preparing its case; the trial court could properly take into account that reliance." 128 F.3d 1157, 1161 (7th Cir. 1997). Here, the Court should do the same and preclude the government from introducing evidence, even on rebuttal, regarding Collins Asset Group.

### C. Evidence related to Collins Asset Group is inadmissible under Rule 404(b)

Even if the United States Attorney's Office had not explicitly told Mr. Smith's attorney that the government would not offer evidence related to Collins Asset Group, such evidence would be inadmissible under Rule 404(b). In a case that is already complex, already involves numerous entities and people, and will involve evidence presented for a month, introducing evidence about Collins unnecessarily confuses the issues. The factual and legal issues surrounding Collins are complex by themselves, so defending against claims of fraud regarding Collins will create a trial within a trial. The Fourth Circuit recently noted that "district court[s] [are] properly concerned about the risk of confusing the jury about the relevant issues … as well as the trial being subsumed by a mini-trial over the nature and propriety of [a defendant's] past acts." *Biers v. Cline*, 724 F. App'x 189, 191-92 (4th Cir. 2018). More fundamentally, it simply is not relevant. The government decided not to charge Mr. Smith with any crimes related to Collins Asset Group. Yet the government now seeks to include Collins in charts showing money that flowed to Mr. Smith and in its case-in-chief. The government's notice makes no secret that it believes that Collins's promissory notes that Mr. Smith allegedly sold were "fraudulent investment products." So the government intends to accuse Mr. Smith of fraud with this evidence. That is inherently prejudicial. And entirely speculative. It's also entirely irrelevant unless the government offers this evidence for the improper propensity inference. Whether or not Mr. Smith sold a promissory note in connection with Collins and whether or not that investment was fraudulent is neither here nor there. The question is whether Mr. Smith committed fraud when he sold investments in DSPF and spectrum. That is the case the government charged, and it's the case they repeatedly promised to present at trial. The Court should reject the government's late-breaking attempt to dramatically expand the scope of this trial to include unproven allegations that Mr. Smith sold fraudulent investments other than those charged in the indictment.

**IV.      Evidence related to uncharged entities like weMonitor Group is inadmissible at trial.**

The government asserts in its Rule 404(b) notice that Mr. Smith "sold other fraudulent investment products, including but not limited to weMonitor Group, LLC." Ex. 1, at 2. Rule 404(b) requires notice of the government's intent to offer specific evidence. This including-but-not-limited-to catchall phrase does not put Mr. Smith on notice of anything. So Mr. Smith takes this sentence as – at best – notice that the government may seek to offer some evidence related to weMonitor Group, LLC.

The government should be prohibited from offering evidence about weMonitor Group. To start, Ms. O'Boyle specifically told defense counsel that evidence related to weMonitor would not be offered in the government's case-in-chief. Ex. 2. In any event, weMonitor is another Daryl Bank investment that is simply not part of this case.

The government knows how to charge a case alleging fraud related to weMonitor Group. It did that in *United States v. Bank*, Case No. 2:17cr126 (E.D. Va. May 25, 2018) (indictment attached as Exhibit 3). The operative indictment in *Bank* discussed weMonitor on pages 15, 16, 17, 18, 19, 21, 23, 24, 31, 33, 37, 39, and 43. *See* Ex. 3. Fraud related to WeMonitor formed the basis for six different charges in that case, specifically Counts 5, 6, 11, 13, 21, and 23. *Id.* But the government decided at the charging stage that the case against Mr. Smith would *not* allege fraud relating to weMonitor Group. Whereas the *Bank* indictment mentions weMonitor Group (or related entities weMonitor, Inc. and BlueDot, Corp.) some 53 times, the indictment in this case does not mention weMonitor or its related entities once. *Contrast* Ex. 3, *with* ECF No. 1.

As noted above, the government failed to explain how weMonitor evidence is admissible for a proper purpose. But even if it could articulate a proper purpose, the prejudicial nature of such evidence – like evidence about Collins Asset Group – will substantially outweigh any possible probative value. *See* Fed. R. Evid. 403. Essentially, the government wants to accuse Mr. Smith of

committing fraud by selling investments in Collins and weMonitor. Then the government wants to ask the jury to convict Mr. Smith for selling fraudulent investments in DSPF and spectrum. Even the firmest limiting instruction will not prevent the uncharged allegations of unrelated fraud from affecting juror judgments about the charged offenses. It's just too much to ask. Moreover, Mr. Smith will have to defend against the uncharged fraud allegations. So the parties will go back and forth about whether Mr. Smith committed fraud in relation to weMonitor or Collins. It will not only be confusing and a waste of time, but it will be highly prejudicial to Mr. Smith.

The government made deliberate decisions about how it charged this case in March of 2019. Prosecutors could have included weMonitor – as in *Bank* – but chose not to. The government set expectations for the defense and the Court three years ago. It cannot today sneak all this evidence in the backdoor at the last minute under the guise of Rule 404(b) via a deficient notice.

**V.     Evidence that the California Department of Insurance conducted two investigations involving Mr. Smith is inadmissible.**

The government says that it will offer the following evidence for an unidentified proper purpose:

> 5) <u>Insurance license investigations</u>: Both Smith and Barnett were investigated by the California Department of Insurance for their sale of non-approved investment products while working as licensed insurance salesmen.

Ex. 1, at 1-2. As noted above, this notice sheds little light on exactly what evidence the government intends to offer or how it might be relevant for a proper non-propensity purpose.

The documents produced by the government related to the California Department of Insurance (hereafter "CDI") provide also little insight. They appear to relate to two CDI investigations involving Mr. Smith.

The first California Department of Insurance investigation was conducted in 2015 and involved an annuity Mr. Smith sold to Lorraine York. According to the report closing that

investigation, "York said Smith never serviced the annuity and never renegotiated the interest rate, so York has only been earning the minimum rate every year." Ex. 4. There were also some questions about who was named annuitant on the policy. *Id.* But the investigation does not appear to be related to the sale of non-approved investment products. In any event, it was closed in 2015 based on "insufficient evidence." *Id.* So if the government intends to suggest that Mr. Smith did something wrong in relation to the sale of this annuity, its evidence does not support that conclusion. And – even if Mr. Smith had done something wrong related to the sale of this annuity to Ms. York – it is unclear why that is relevant to this case, which does not involve annuities. Moreover, neither the person to whom Mr. Smith sold the annuity (Ms. York) nor the CDI investigators involved (Ms. Goldman and Ms. Placencia) appear on the government's witness list. So it is unclear how the government could offer this irrelevant evidence while complying with the hearsay rules and the Confrontation Clause.

The second California Department of Insurance investigation into Mr. Smith was closed in 2018. That closing report says that in September 2016, the CDI received a referral from another state agency alleging that Carol Groff had been the victim of theft and elder abuse by Mr. Smith. *See* Ex. 5. The CDI closing report makes no findings and notes that the investigation was closed in 2018 because Mr. Smith's insurance license expired in January of that year and he declined to renew it. *Id.* To be clear, Ms. Groff is an expected government witness in the case. And she may have relevant testimony about products sold by Mr. Smith. But the CDI investigation into the same matter is irrelevant. What is more, government attempts to offer this evidence will likely involve attempts to evade the hearsay rules and the protections of the Confrontation Clause because the two state investigators on the closing report and the only ones who appear to have been involved in the CDI investigation (Ms. Placencia and Mr. Ronkovich) do not appear on the government's witness list.

These two investigations by the California Department of Insurance are irrelevant to any material question in this case. The only reason to offer this evidence is to dirty-up Mr. Smith; to make

him look like someone who must be doing something wrong because not only is he being charged here, but he was investigated before. The government failed to spell out its proper purpose for offering this evidence and there isn't one. The Court should exclude it.

**VI.     Evidence from Mr. Smith's bankruptcy is inadmissible under Rules 403 and 404(b).**

The government intends to offer evidence of Mr. Smith's pending bankruptcy in the Eastern District of California. Yet the government is not clear how it intends to use this information and for which "proper purpose" it serves, but the intended scope of evidence is broad:

> 4) Bankruptcy: Smith and his wife filed a Chapter 7 bankruptcy petition in the Eastern District of California in 2019, E.D. Cal. Bankr. Pet. 19-25091. After the proceedings in bankruptcy court, Smith waived his discharge, and the court denied a discharge for his wife. Certain claims, statements, and filings made during the pendency of that bankruptcy are relevant to the claims in this case, including the fact that with knowledge of a criminal investigation and the likelihood of other lawsuits against him, Smith shredded his client files. Smith also went through a previous bankruptcy reorganization in 1989, which he on at least one occasion failed to disclose on paperwork asking about prior bankruptcies.

The government wants to introduce: (1) evidence of the waiver and the judge's denial of discharge, including claims and filings leading up to that, (2) evidence that Mr. Smith shredded his client files, and (3) evidence of a 1989 bankruptcy reorganization. Each will be addressed in turn. To be clear, Mr. Smith is not charged with bankruptcy fraud. Allowing the bankruptcy into trial will have limited relevance yet will violate Mr. Smith's right to have the government prove guilt beyond a reasonable doubt, unnecessarily complicate the case by adding yet another civil case into the mix, and is unfairly prejudicial.

*First*, the indictment charges Mr. Smith with events occurring between 2011 and 2017. ECF No. 1, Counts 1, 2. Mr. Smith filed bankruptcy in 2019, after he was indicted. Thus, the bankruptcy cannot serve as evidence of mens rea *during the alleged conspiracy*. Instead, it sounds as if the government intends to introduce information about the bankruptcy judge's decision to deny discharge and Mr.

14

Smith's waiver of discharge – but that requires an explanation to the jury of what those terms mean and what the standard is for making those decisions. The bankruptcy judge can deny discharge based on potential fraud and send the case to trial, but the bankruptcy trial for those allegations remains pending in order for this case criminal case can be completed first. *Husted v. Smith*, No. 20-02021, Dkt. No. 34 (Bankr. E.D. Cal. Feb. 24, 2020).

Introducing the posture of the bankruptcy case invites the jury to infer guilt based on a federal bankruptcy judge's decision denying discharge. Mr. Smith would need the opportunity to defend his decision regarding waiver, likely requiring a bankruptcy expert for the defense to explain the process, terminology, and what each stage of bankruptcy means. Furthermore, to explain the bankruptcy, Mr. Smith would need to discuss the past civil suits against him, unnecessarily extending trial. More importantly, both the civil suits and the bankruptcy would tempt the jury to assume guilt on a civil standard (even if no such admissions were made) instead of making the government prove guilt beyond a reasonable doubt. It is too dangerous to allow the jury to use bankruptcy findings as criminal findings.

Introducing evidence about the bankruptcy also creates an unfair prejudice, and the jury would need to be questioned during *voir dire* on the issue. Filing bankruptcy carries a stigma. It is well documented that "individuals who file for bankruptcy protection have been viewed harshly by society." *See generally* Rafael Efrat, *The Evolution of Bankruptcy Stigma*, 7 Theoretical Inquiries L. 365, 366 (2006). Historically, bankruptcy has led to punitive treatment, "which included at times forfeiture of all property, relinquishment of spousal consortium, revocation of citizenship, surrendering children as slaves, prohibition from holding public office, imprisonment, and death." *Id.* "Aside from these severe punishments, bankruptcy petitioners were routinely degraded and humiliated in public." *Id.* "Degradation and humiliation of bankrupts were reinforced through official contemptuous discourse, which labeled bankrupts as 'deceivers,' 'frauds,' 'offenders,' 'cheaters,' and 'squanderers.'" *Id.* Congress

has recognized that there is an "entrenched stigma associated with the process," "public polls during the 1980s and 1990s suggested that the majority of the population would be hesitant to vote into office or do business with anyone who had filed for bankruptcy," and "writings from academia and the mass media [have] emphasized the shame and embarrassment associated with bankruptcy filing." *Id.* at 377.

Here, jurors will assume that Mr. Smith is a person who cannot pay his debts (alone unflattering and irrelevant). But they will also assume that Mr. Smith is the kind of person who did not intend to pay or is not taking responsibility for financial decisions. They will recognize him as a member of the class of persons who have historically and consistently been seen as cheaters, fraudsters, and offenders. Use of the bankruptcy filings and proceedings will lead the jury to draw unfair prejudicial conclusions about Mr. Smith's character, which have no basis in fact and violate both Rules 403 and 404(a). The focus of the trial should be on the facts of the case alleged in the indictment rather than civil cases that introduce improper character evidence and error into a trial where the government did not charge bankruptcy fraud.

***Second***, the government seeks to introduce evidence that Mr. Smith shredded his files after not renewing his license and ceasing to be a financial advisor. But the government does not provide a basis or purpose, other than a generic recitation of possible permitted uses as stated in Rule 404(b)(2). Considering that all client contracts and paperwork were kept by the investment provider (*i.e.*, Kent Maerki for DSPF, David Alcorn or Daryl Bank for spectrum offerings), it is unclear what evidence the government is claiming is lost. The United States Attorney's Office made no effort to subpoena records from Mr. Smith, and upon arresting Mr. Smith, law enforcement did not even attempt to seize his computers or any paperwork from his residence. The government clearly was not interested in information he may have had, so it is unclear what the relevance is of the government's proffered evidence. After all, if the government is trying to show deception or dishonesty, then it is relying on

16

character evidence to seek a conviction, which is not permitted. Fed. R. Evid. 404(a)(1); U.S. Const. amend VI.

*Third*, the danger of unfair prejudice from this character evidence is compounded by the government's intent to introduce evidence of a bankruptcy reorganization from 1989, which has not been produced to the defense. Based on the limited information in the government's notice, much remains unclear, such as what relationship a reorganization in 1989 has to this case or its allegations; what needed to be included in the bankruptcy petition; whether there is a limitation on timing (*i.e.*, within the last 8 years); whether there is a limitation on the type of bankruptcy (chapter 11 versus chapter 7); and most importantly, what relevance does any of this have to DSPF or spectrum? For a case that does not include any alleged bankruptcy fraud, Mr. Smith would need to spend ample time defending uncharged allegations of such during trial, including arguing the ins and outs of bankruptcy law.

## VII. The government's new allegations of fraudulent conduct, without proof or relevance, are inadmissible.

The government intends to introduce evidence that Mr. Smith "attempted to convey his house to a trust shortly before filing bankruptcy in order to protect it from potential creditors." Ex. 1. Yet the government fails to explain how this allegation falls under "permitted uses" under Rule 404(b)(2). Again, the government's failure to provide proper notice prejudices Mr. Smith because he does not even know how to respond to the notice.

That said, placing property such as a home in a trust is a common part of estate planning. After the person's death, a trust "enables the assets to be privately and quickly distributed without going through the time and expense of the probate process."[2] Although the government has not

---

[2] Fidelity Viewpoints, *Leaving your house to your loved ones*, Fidelity, Sept. 14, 2020, available at: https://www.fidelity.com/learning-center/personal-finance/estate-planning; see also Tanisha A. Sykes, *How estate planning can help you pass down a house to your kids and give them a financial leg up*, USA Today, Dec. 3, 2021, available at: https://www.usatoday.com/story/money/at-

17

provided documentation on this matter, it both alleges and concludes that this was an attempted fraudulent conveyance and concealment related to real estate. The government essentially seeks to allege a separate fraud allegation without charging Mr. Smith with anything new and without fulfilling their burden of proof on a new fraud allegation. The government is trying to introduce unrelated and uncharged "fraudulent conduct" to prove the alleged fraudulent conduct in the indictment. That is propensity and it is forbidden.

It is also irrelevant and wastes time in a case that is already lengthy. Mr. Smith and his wife bought their home in 2000, well before these allegations began. The government has not alleged that the home was in any way related to the charged conspiracy. The government has not alleged that Mr. Smith attempted to put his house into a trust a decade ago in anticipation of joining a fraudulent conspiracy. This is simply a home that Mr. Smith has lived in for over two decades. But the government here is trying to deflect from the issues in the indictment, and instead conduct a mini-trial to prove whether this was an "attempted fraudulent conveyance." And for what purpose? In no way does it support or refute the existence of the alleged conspiracies in the indictment. Just because the government says something is relevant (or true) doesn't make it so. And the government cannot meet its burden by having the jury *infer* that Mr. Smith *may have* committed one unproven attempted fraud, so he must be guilty of the charges in the indictment. That would simply be propensity. The government's plan would introduce irrelevant and unfairly prejudicial evidence at trial, in violation of Rule 403 and Mr. Smith's Sixth Amendment right to have the case proven beyond a reasonable doubt.

\*     \*     \*

The Court should keep this trial focused on relevant evidence material to the charged offenses. The reasons to exclude the government's proffered other-acts evidence are abundant. The

---

home/2021/12/03/inheritance-of-homes-requires-estate-planning-trusts/8834817002/ ("Placing a house into a trust avoids probate court and saves on estate taxes.")

government failed to comply with Rule 404(b)(3)'s notice provision and should not be rewarded for its failure to follow the rules designed to protect Mr. Smith's ability to present a defense. The government separately represented that it was not going to offer some of this evidence and prosecutors should be held to their word, especially when defendants rely on it. And finally – even if the government had served a proper notice and was not trying to break representations already made – the evidence in question is simply not necessary to prove some still-unidentified non-propensity purpose. And it fails under 403-balancing because it will lead to a significant waste of time litigating side issues during a pandemic and will unfairly prejudice Mr. Smith in the eyes of the jury. This motion to exclude the government's proffered other-acts evidence should be granted.

Respectfully submitted,

AGHEE WILLIAM SMITH, II

By:_____/s/_____

Lindsay Jo McCaslin
VSB No. 78800

Andrew W. Grindrod
VSB 83943

Assistant Federal Public Defenders
Attorneys for Aghee William Smith, II
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
Telephone: 757-457-0800
Telefax: 757-457-0880
Email:  lindsay_mccaslin@fd.org
           andrew_grindrod@fd.org