**CALIFORNIA DEPARTMENT OF INSURANCE**
ENFORCEMENT BRANCH
INVESTIGATION DIVISION

## Investigation Closing Report

**Case Number**
SC201500077

**Case Investigator**
Nichole Goldman

| Subject Name | Primary License Number |
|---|---|
| Smith, Aghee | 0786649 |

**Closure:** INSUFFICIENT EVIDENCE

### Narrative:

On **04/27/15**, I interviewed the victim, Lorraine York (York). York said she purchased an annuity in 2009. York said she told the subject Aghee Smith (Smith) she wanted her son Bill Willetts (Willetts) to be the annuitant, and Smith told her since Willetts was the beneficiary he couldn't be the annuitant as well. Smith told her he knew someone who could be the annuitant on the policy, Vicki Richards (Richards).

York said Smith explained for the first two years, she'd be guaranteed 7-8% and after that, she could earn up to 36%, but the interest rate would have to be renegotiated. York said Smith never serviced the annuity and never renegotiated the interest rate, so York has only been earning the minimum rate every year. York said she complained to The Lincoln National Life Insurance Company (Lincoln) that Smith was not servicing her policy, and they assigned her a different agent. York also said she spoke to an attorney at Lincoln, who informed her that what Smith had done was fraud.

York said she wants to be compensation for the money she lost since Smith failed to renegotiate the interest rate. York also said she wants out of the annuity contract with no penalties.

On **04/29/15**, I spoke to Lisa Jones (Jones) with Lincoln. I asked Jones if it was common practice for a policy owner to not know the annuitant, and Jones said, "No it is not."

On **05/01/15**, I informed Jones that York believes she is entitled to compensation for the loss she incurred when Smith failed to service her policy. Jones replied that York was given 3 options: 1. Change the annuitant, 2. Make no changes to the policy, 3. Surrender or internally transfer the policy with no fees being waived. According to Jones, because York made the decision to change the annuitant, Lincoln is now unable to determine if York lost any money, and they are not allowing her to surrender her policy without assessing penalties for early withdrawal.

On **06/24/15**, Investigator Daniel Rivera #238 (Rivera) interviewed Richards. Rivera showed Richards a copy of York's annuity application. Richards said Smith asked her to sign the document as a witness. Richards said Smith didn't explain anything to her concerning the application and she only signed the form as a witness to the application. Richards said Smith gave her a $100.00 check after she signed the form.

On **08/31/15**, I interviewed Smith. Smith said he contacted the Marketing Department of Lincoln several times to discuss York's policy, and was informed due to York's age, a co-signer was needed on the policy. Smith said he recommended York use her son or another family member as the annuitant on the policy. According to Smith, York said she didn't want her son or husband to know what she was doing with her money or how much money she had lost in the stock market. Smith said he informed York that he knew someone, Richards, who could sign as the annuitant. Smith said he contacted Lincoln to inform them he could use a third-party as the annuitant and Lincoln approved it prior to submitting the annuity application.

I informed Smith that another concern of York's was that she believed Smith had guaranteed her to earn 7-8% on the annuity for the first two years and thereafter she could earn up to 36% if Smith renegotiated the policy. Smith said he never guarantees earnings to his clients or renegotiates a policy.

I informed Smith that York was also unhappy with how much money she had earned on the OM Financial policy. Smith said he put York's money into the highest earning contract she could get.

On **09/01/15**, I requested phone logs from Jones to find out if Smith discussed the annuitant issue with Marketing and if he was given approval to use a third-party as the annuitant on York's annuity.

On **09/09/15**, I asked Jones how much interest York would earn on her annuity and whether or not Smith was required to renegotiate the policy in order for York to earn more interest. Jones said the agent doesn't have to negotiate, but it's recommended in assisting the client in making an annual reallocation decision. "The client has a choice between a fixed account earning a fixed interest rate and a variety of indexed accounts that are guaranteed to not lose money, but whose performance is based off the S&P 500 index."

I asked Jones if the annuitant and beneficiary could be the same person on an annuity. Jones responded, "When the owner and annuitant are different, the annuitant and beneficiary can be the same person."

On **09/30/15**, I contacted Smith to find out an approximate date when he called Lincoln to discuss the annuitant issue. Smith said he typically calls the Marketing Department a couple weeks prior to having the client sign paperwork, so a couple weeks prior to 09/25/09.

Smith also said because York was over the age of 85, there is an IRS requirement that she spend the principle on her OM Financial account, and therefore, she wasn't earning much money on the account.

On **10/06/15**, I received an e-mail from Jane Kerr (Kerr) with Fidelity & Guaranty Life regarding York's OM Financial account. I asked Kerr if it was true that York was required to withdrawal the principle. Kerr responded that according to the Request for Disbursement Forms, York entered a specific dollar amount rather than choosing interest only payments.

On **10/08/15**, Jones sent me an e-mail which contained three recorded phone calls made from Smith to Lincoln two weeks prior to the application being signed by York. None of the phone calls Smith made were in reference to using a third-party as the annuitant on York's policy.

Based on my investigation, I recommend this case be closed without further activity at this time.

## Case Closing Actions:

Closing Letter Sent: [ x ]　　　　　　　　　　　　Reporting Party Notified: [ x ]
Evidence Disposition Completed: [　]　　　　　　Other: [　]

| **Reporting Investigator** | **Badge Number** | **Supervisor Approving** | **Badge Number** |
|---|---|---|---|
| Nichole Goldman | 241 | Phyllis Placencia | 187 |

| **Signature** | **Date** | **Signature** | **Date** |
|---|---|---|---|
| *Nichole Goldman* | 10/28/2015 | *P. Placencia* | 10/28/2015 |