

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**UNITED STATES OF AMERICA,**

v.                                                                    **CRIMINAL ACTION NO. 2:19-cr-47**

**DAVID ALCORN &
AGHEE WILLIAM SMITH, II,**

**Defendants.**

*MEMORANDUM ORDER*

Before the Court is Defendant Aghee William Smith's and Defendant David Alcorn's

(collectively, "Defendants") Motion for Courtroom Procedures that Conform with the

Constitution.[1] Defs.' Mot. Court. P. Conform Const., ECF No. 220 ("Defs.' Mot."). The

Government filed a response in opposition. Gov't Mem. Opp. Defs.' Mot. Court. P. Conform

Const., ECF No. 295 ("Gov't Mem. Opp."). Defendants did not reply. The Court has

considered the memoranda of both parties and finds that a hearing on this matter is not

necessary. *See* E.D. VA. LOCAL CRIM. R. 47(J). Accordingly, this matter is ripe for judicial

determination. For the reasons stated below, Defendants' Motion is **DENIED**.

### I.   PROCEDURAL AND FACTUAL HISTORY

Defendants are named in a nineteen-count Indictment. Indictment, ECF No. 2. Both

Defendants are charged with Conspiracy to Commit Mail and Wire Fraud, in violation of 18

U.S.C. § 1349, and Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2. *Id.* Alcorn is also

---

[1] Smith originally filed this Motion individually on October 27, 2021. *See* Defs.' Mot. On October 28, 2021, Alcorn filed a Motion to Adopt. Def.'s Mot. Adopt Co-Def.'s Mot. Court. P. Conform Const., ECF No. 228. On January 25, 2022, the Court granted Alcorn's Motion to Adopt. Order Grant. Def.'s Mot. Adopt Court. P. Conform Const., ECF No. 355. Accordingly, both Defendants bring the instant Motion.

charged with Unlawful Monetary Transactions, in violation of 18 U.S.C. § 1957. *Id.* A jury trial in this case is scheduled to begin on February 1, 2022 and last for approximately four weeks.

In advance of trial, Defendants filed the instant Motion objecting to three anticipated courtroom procedures they allege would violate their constitutional rights: (1) "it would violate due process[2] and the Confrontation Clause if a juror is asked to assess the credibility of adverse witnesses from 50 yards away through multiple layers of plexiglass and a face shield"; (2) "allowing or requiring members of the *venire* to wear masks during jury selection would infringe on [Defendants'] right to an impartial jury under the Sixth Amendment"; and (3) "closing the physical courtroom to the public and using – as a substitute – a video feed that does not show the jurors throughout the trial would violate [Defendants'] right to a public trial under the Sixth Amendment." Defs.' Mot. at 1. The Government argues these objections have either already been resolved or are permissible but not constitutionally required. *See* Gov't's Mem. Opp.

## II.   DISCUSSION

The Sixth Amendment to the Constitution provides, in relevant part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . [and] to be confronted with the witnesses against him." U.S. Const. amend. VI. Defendants argue that the courtroom proceedings violate their rights to the Confrontation Clause, an impartial jury, and a public trial, respectively.

A.   The Courtroom Procedures Do Not Violate the Confrontation Clause

The Confrontation Clause "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a

---

[2] The Court notes that although Defendants claim to ground this Motion in the Fifth and Sixth Amendments, they provide no legal authority nor discussion on the Fifth Amendment basis. Therefore, the Court will limit its discussion to the Sixth Amendment.

criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The four elements of confrontation are "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Id.* at 846. The Supreme Court "ha[s] never held, however, that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Id.* at 844 (emphasis in original). Rather, "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial" *Id.* at 849 (quoting *Ohio v. Roberts*, 448 U.S. 56, 63 (1980), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004)); *see also Mattox v. United States*, 156 U.S. 237, 243 (1895). "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850.

Defendants challenge the procedures the Court has put in place to allow court proceedings to continue in person while simultaneously attempting to prevent the spread of COVID-19. This Court has already issued an Order that witnesses at trial will wear clear face shields when testifying and jurors will wear clear face shields during *voir dire*. *See* Order (Nov. 10, 2021), ECF No. 283. The Court also ensured the jurors will be able to view the presentation of exhibits and witness testimony on two large video screens placed directly in front of the public gallery seating, where the jury will sit. *Id.* Together, the Court finds these measures assure the reliability of witness testimony and will adequately allow all members of the jury to observe the witness' demeanor in order to assess credibility. *Maryland*, 497 U.S. at 852. Moreover, "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Cath.*

3

*Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). Therefore, the Court also finds that these measures are necessary to further an important public policy. *Maryland*, 497 U.S. at 850.

The Court notes, however, that the procedures it has taken go beyond what is necessary to protect Defendants' rights under the Confrontation Clause. Indeed, even if the Court required witnesses to wear non-clear face masks while testifying, that would still not infringe on Defendants' rights under the Confrontation Clause. *See, e.g., United States v. Clemons*, No. 19-cr-438 (RDB), 2020 WL 6485087, at *2 (D. Md. Nov. 4, 2020) ("[T]he mask requirement does not significantly obstruct the ability to observe demeanor. A mask will obfuscate two witness traits: movement of the nose and mouth, but as the *Crittenden* court held and the *James* court followed, being able to see a witness's nose and mouth is not essential to testing the reliability of testimony.").

B. The Courtroom Procedures Do Not Violate the Right to an Impartial Jury

"Th[e] face-to-face opportunity to gauge demeanor and credibility, coupled with information from the questionnaires regarding jurors' backgrounds, opinions, and sources of news, [give] the court a sturdy foundation to assess fitness for jury service." *Skilling v. United States*, 561 U.S. 358, 395 (2010). During the COVID-19 pandemic, courts across the country have found that the Sixth Amendment is still satisfied when jurors wear masks during *voir dire* because "informative juror questionnaires and questioning during *voir dire* . . . [allows the parties] to obtain sufficient information to detect bias, disqualify jurors for cause, and exercise peremptory challenges." *United States v. Crittenden*, No. 20-CR-7 (CDL), 2020 WL 4917733, at *6 (M.D. Ga. Aug. 21, 2020); *see also United States v. Trimarco*, No. 17-cr-583 (JMA), 2020 WL 5211051, at *5 (E.D.N.Y. Sept. 1, 2020) ("Being able to see jurors' noses and mouths 'is not

essential' for assessing credibility because '[d]emeanor consists of more than those two body parts' since it 'includes the language of the entire body.'") (quoting *Crittenden* at *7).

Defendants' argument that "the full faces of jurors should be visible to [Defendants] and [their] counsel during the entire jury selection process" is already resolved by the Court's aforementioned Order. Defs.' Mot. at 5. The Court will not, however, adhere to Defendants' suggestion that the Court conduct *voir dire* on an individual or small group basis "[t]o eliminate the need for masking." *Id.* The Court does not find this to be necessary, especially in light of the fact that it is not constitutionally necessary for the Court to require jurors to wear clear face shields during *voir dire* in the first place. *See Crittenden*, No. 20-cr-7, 2020 WL 4917733, at *8 ("[D]emeanor includes many aspects of body language which will still be present for evaluation. Of course, under normal circumstances, being able to see a potential juror's full facial expressions may be tactically preferable. But the Court is unconvinced that it is required by the Constitution. Through their review of informative juror questionnaires and questioning during *voir dire*, the parties should be able to obtain sufficient information to detect bias, disqualify jurors for cause, and exercise peremptory challenges. That is what the Constitution requires."). Moreover, Defendants' suggestion would cause unnecessary delay during an already-lengthy trial. Accordingly, the Court will not adopt it.[3]

## C. The Courtroom Procedures Do Not Violate the Right to a Public Trial

The right to a public trial "is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may

---

[3] This decision is within the Court's discretion. *See* E.D. Va. Gen. Order No. 2021-11, at 4, n. 3 (Jul. 30, 2021) ("Regardless of vaccination status, all individuals . . . shall be required to wear a mask in all indoor public areas and public-facing areas in our Courthouses/facilities . . . A presiding judge may continue to exercise his or her discretion to allow jurors/prospective jurors, witnesses, parties, attorneys, and anyone else that needs to speak as part of the proceeding to remove his or her mask for the purpose of facilitating the hearing or otherwise promoting the functioning and effective operation of the Court. All efforts should be made to ensure that individuals permitted to remove their masks generally stay at least six feet apart from other individuals.").

keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *In re Oliver*, 333 U.S. 257, 271 n. 25 (1948). The Supreme Court "has made clear that the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Ct. of California, Riverside Cty.*, 464 U.S. 501, 510 (1984). The burden is on "the party seeking to close the hearing" to "advance an overriding interest that is likely to be prejudiced." *Waller*, 467 U.S. at 48. Where only a "partial closure" occurs, however, "there must only be a 'substantial reason,' rather than an 'overriding interest' justifying the closure." *United States v. Smith*, 426 F.3d 567, 571 (2d Cir. 2005) (collecting cases); *see also Bell v. Jarvis*, 236 F.3d 149, 168, n. 11 (4th Cir. 2000) (recognizing some sister circuits have relaxed the first *Waller* requirement for a temporary or partial closure, but declining to consider whether to adopt it). Moreover, "the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Id.*

Defendants argue that a video "simulcast" that does not show the jurors during the entire trial would violate their right to a public trial under the Sixth Amendment. Defs.' Mot. at 5. Defendants "demand[] that the video feed allow the public to observe the jury during the course of the trial" because "the proposed closure is broader than necessary to protect the interest in maintaining safety during the pandemic and there is a reasonable alternative to the breadth of the anticipated closure." *Id.* at 6.

6

As a preliminary matter, Defendants fail to cite to any authority indicating that the
current procedures[4] strictly constitute a "closure" as it is understood under the Sixth Amendment.
Instead, their argument relies on the premise that the current set up is a "closure," rather than a
"reasonable alternative" to closing the proceedings. *See Waller*, 467 U.S. at 49 (holding a
defendant's public trial right was violated when "the court ordered the suppression hearing
closed to all persons other than witnesses, court personnel, the parties, and the lawyers" because
"the closure was far more extensive than necessary"); *cf. United States v. Barrow*, No. CR 20-
127 (CKK), 2021 WL 3602859, at *9 (D.D.C. Aug. 13, 2021) ("But by asking the Court to apply
the *Waller* standard, Defendant has omitted a crucial initial step. He must first demonstrate that a
'complete closure' of the trial occurred.") (quoting *United States v. Perry*, 479 F.3d 885, 889-90
(D.C. Cir. 2007)); *United States v. Huling*, 542 F. Supp. 3d 144 (D.R.I. 2021) (finding both that
similar courtroom procedures "narrowly constitute reasonable alternatives to total or partial
closure, [and] are necessary to reduce the risk of COVID-19 spread and to provide the defendant
a fair trial," and that "[p]ublic access to the trial in this matter will be equal to, or even greater
than, public access in non-pandemic times.").

Defendants have "failed to establish as a factual matter that there [will be] any 'complete
closure' of the proceedings triggering analysis of the *Waller* factors." *Barrow*, No. CR 20-127

---

[4] During jury trials, the Court has closed the physical courtroom to the public to allow for social distancing
and to help prevent the spread of COVID-19. Specifically, the Court has set up the courtroom so that the jury sits
socially distanced in the gallery instead of the jury box, where social distancing is not possible with the requisite
number of jurors. Since social distancing requires the jury to take up the majority, if not the entirety, of the gallery,
the Court has set up a public-viewing courtroom in the same courthouse whereby members of the public may
observe trial through video and audio stream. Another courtroom is reserved as a jury room since standard jury
rooms do not allow for social distancing. Thus, in total, every trial requires the use of three courtrooms at a time. *See*
E.D. Va. Gen. Order No. 2021-04, at 4-5 (March 18, 2021) ("[I]n order to safely conduct a mid-pandemic jury trial
(civil or criminal), the Court must utilize a specially retrofitted courtroom, often repurposing the entire gallery as a
socially distanced jury box. Such procedure generally requires the use of two <u>additional</u> courtrooms, one to act as a
jury room, and one to allow members of the public to watch a live video-feed of the trial courtroom . . . Further
considering the lessons learned through the resumption of criminal jury trials . . . the coordinated criminal/civil jury
trial calendars in each Division shall be designated to ensure that <u>no more than one jury selection process</u> occur each
day in each respective Division . . . [because of] how cumbersome it is for the jury staff to move prospective jurors
around our Courthouse while maintaining social distancing.") (emphasis in original).

(CKK), 2021 WL 3602859, at *9. At most, although Defendants fail to establish this either, the courtroom procedures arguably constitute a "partial closure." *See, e.g., Smith*, 426 F.3d at 571-72 (finding post 9/11 security measures, including ID checks at courthouse doors, "effected at most a partial closure" because "the security measures '(1) barred only those would-be spectators who opted not to submit written identification, and (2) presumably may have 'chilled' attendance by some potential spectators who opted not to present themselves at the courthouse'"). Here, however, the Court is not convinced that the current procedures constitute a complete or partial closure under the Sixth Amendment. In particular, there is a noticeable distinction from *Smith* because there is no barrier to entry other than wearing a mask – which courthouse personnel provide at no cost if an individual does not have one – and exposure to, symptoms of, or a diagnosis of COVID-19. Further, the risk of chilling attendance is minimal, if existent, because the courthouse procedures are similar to prevention and social distancing procedures that have been and continue to be adopted by many public businesses and institutions. Thus, if at all, these procedures are no more chilling to public entry than that of any other publicly accessible building following COVID-19 protocols and any effect is "objectively reasonable." *Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011) (quoting *Zanders v. Swanson*, 573 F.3d 591, 593-94 (8th Cir. 2009)).

Even assuming *arguendo* that these procedures effected, at most, a partial closure, they would still satisfy the *Waller* standard. First, the Court finds the procedures satisfy the first prong under both the "overriding interest" and "substantial reason" standards. *Waller*, 467 U.S. at 48; *Smith*, 426 F.3d at 571. Indeed, the "presumption of openness" is overcome by an "overriding interest" in stemming the spread of COVID-19 and protecting public health. *Press-Enter*, 464 U.S. at 510; *see also Roman Cath. Diocese*, 141 S. Ct. at 67 ("Stemming the spread of COVID-

8

19 is unquestionably a compelling interest."). Since this interest or reason is "compelling," it also unquestionably meets the lower "substantial" threshold. This interest is "likely to be prejudiced" because stemming the spread and protecting public health depend, by its very name, on adopting public health protection measures. *Waller*, 467 U.S. at 48.

Second, the Court finds that the procedures outlined in footnote four of this Memorandum Order are "no broader than necessary to protect that interest." *Id.* All courthouse personnel have gone to extraordinary lengths to preserve a defendant's constitutional rights amidst a highly contagious, potentially lethal, and perpetually fluctuating pandemic. The IT Department, in particular, has equipped our "retrofitted courtrooms" with cameras at several critical angles to feature the Court, lectern, witness box, and exhibits. Defendants contend that the current procedures are broader than necessary and demand the video stream feature members of the jury, yet they "cite[] no legal authority indicating that the Sixth Amendment requires every spectator to have a view of every angle of the Courtroom." *Barrow*, No. CR 20-127 (CKK), 2021 WL 3602859, at *11. Rather, the case law Defendants cite only supports the importance of jury observation by the trial judge, defendants, and defense counsel. *See* Defs.' Mot. at 6-7 (citing *United States v. Gibson*, 353 F.3d 21, 26 (D.C. Cir. 2003); *United States v. Panebianco*, 543 F.2d 447, 457 (2d Cir. 1976); *DeHenre v. Mississippi*, No. 1:13-cv-478, 2014 WL 3735596, at *3 (S.D. Miss. July 28, 2014); *Lang v. Bobby*, 889 F.3d 803, 816-17 (6th Cir. 2018)).

"As a practical matter, a spectator viewing a trial from the courtroom gallery would not have a perfect sight line of each angle of the courtroom—let alone each individual juror." *Barrow*, No. CR 20-127 (CKK), 2021 WL 3602859, at *11. In fact, according to Defendants' case law, the current set up may in fact better preserve their constitutional rights because defendants, lawyers, court staff, and the Court all have a direct line of vision to the gallery. The

jury will also be sitting closer to the parties than in pre-pandemic times, thus making it easier for the parties to observe any hints of bias or misconduct. Further, even if the public were allowed in, they would be required sit behind the jury and would not necessarily be able to observe, let alone later testify to, Defendants' hypothetical of a sleeping juror. Defs.' Mot. at 7 (citing *United States v. Sherrill*, 388 F.3d 535, 537 (6th Cir. 2004)).

Third and finally, the Court has considered and finds that the current procedures themselves constitute a "reasonable alternative[] to closing the proceeding." *Waller*, 467 U.S. at 48. Moreover, Defendants' "demand" that the video feed features the jury would require a reconfiguration of the system that the Court has used successfully for months. Ultimately, though, it is not required nor even preferred under the Sixth Amendment.

### III.   CONCLUSION

The Court has implemented more measures than necessary to preserve Defendants' constitutional rights so that this case can go to trial. While Defendants constitutional rights are unquestionably fundamental, they are not absolute. The Court will not adhere to an "absolute standard" at the cost of endangering public health.

Accordingly, Defendants' Motion for Courtroom Procedures that Conform with the Constitution is **DENIED**. The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Order to all parties.

**IT IS SO ORDERED.**

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
January 28, 2022

UNITED STATES DISTRICT JUDGE

10