```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF VIRGINIA
 2                              Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - -
                                        )
 5     UNITED STATES OF AMERICA         )
                                        )
 6     v.                               )    CRIMINAL ACTION NO.
                                        )         2:19cr47
 7     DAVID ALCORN and                 )
       AGHEE WILLIAM SMITH II,          )
 8                                      )
              Defendants.               )
 9   - - - - - - - - - - - - - - - - - -

10                       ** Jury Trial - Day 1 **

11                       TRANSCRIPT OF PROCEEDINGS

12                            Norfolk, Virginia

13                            February 1, 2022

14

15   BEFORE:  THE HONORABLE RAYMOND A. JACKSON
                United States District Judge, and a jury
16

17   APPEARANCES:

18            UNITED STATES ATTORNEY'S OFFICE
              By:  Andrew C. Bosse
19                 Melissa E. O'Boyle
                   Elizabeth M. Yusi
20                 Assistant United States Attorneys
                   Counsel for the United States
21
              RICHARD S. YAROW LLC
22            By:  Richard S. Yarow
                   Counsel for Defendant David Alcorn
23
              FEDERAL PUBLIC DEFENDER'S OFFICE
24            By:  Andrew W. Grindrod
                   Lindsay Jo McCaslin
25                 Assistant Federal Public Defenders
                   Counsel for Defendant Aghee William Smith II
```

```
 1              (Proceedings commenced at 10:19 a.m.)
 2              THE CLERK:  United States of America vs. David
 3   Alcorn and Aghee William Smith II, in Criminal Action
 4   Number 2:19cr47.
 5              Ms. Yusi, is the government ready to proceed?
 6              MS. YUSI:  We are.  Good morning, Your Honor.
 7              THE COURT:  Good morning.
 8              THE CLERK:  Mr. Yarow, is Mr. Alcorn ready to
 9   proceed?
10              MR. YAROW:  We are ready, Your Honor.  Good morning.
11              THE COURT:  Good morning.
12              THE CLERK:  Ms. McCaslin, is Mr. Smith ready to
13   proceed?
14              MS. McCASLIN:  We are.  Good morning, Your Honor.
15              THE COURT:  Good morning.
16              Will you please stand, Mr. Alcorn.
17              Mr. Alcorn, have you had sufficient time to confer
18   with your counsel to prepare for the hearing this morning?
19              DEFENDANT ALCORN:  I have, Your Honor.
20              THE COURT:  Are you satisfied with the advice and
21   counsel you're receiving?
22              DEFENDANT ALCORN:  I am, Your Honor.
23              THE COURT:  Okay.  Mr. Alcorn, this is your first
24   appearance before the Court.  The Court wants to inform you
25   that back in 2020, the United States Congress passed
```

1    something called the Due Process Protection Act.  And the

2    purpose of that act was to be sure that the United States

3    adhered to its obligation to disclose certain evidence to you

4    concerning matters that may be favorable to you in sentencing

5    or during trial in accordance with a case called *Brady vs.*

6    *Maryland*.

7         It informs that the failure to adhere to this

8    requirement may result in serious consequences, including but

9    not limited to exclusion of evidence, adverse jury

10   instructions, dismissal of charges, contempt proceedings,

11   vacating a conviction, or initiation of a disciplinary action

12   against the prosecutor.  It doesn't matter whether the

13   prosecutor acted in good faith or in bad faith.

14        What the Court wishes to inquire is whether the

15   United States has adhered to the requirements of *Brady vs.*

16   *Maryland*.  Is that the case, Mr. Yarow?

17             MR. YAROW:  Yes, sir.

18             THE COURT:  Does the United States concur that you

19   have provided Mr. Alcorn everything he was entitled to

20   receive?

21             MS. YUSI:  We have, Your Honor.

22             THE COURT:  All right.  That being the case, the

23   Court will enter the Due Process Protection Act order.

24             All right.  If you would please stand, Mr. Smith.

25             Mr. Smith, have you had adequate opportunity to

1    consult with your counsel to prepare for the hearing this

2    morning?

3              DEFENDANT SMITH:  Yes, Your Honor.

4              THE COURT:  Are you satisfied with the advice and

5    counsel you are receiving?

6              THE DEFENDANT:  I am, Your Honor.

7              THE COURT:  I'll give you the same advice that I

8    gave to Mr. Alcorn.  The United States is required to comply

9    with the Due Process Protection Act, and of course, as I

10   indicated, that act is to ensure that you received all

11   information that would be favorable to you in either

12   sentencing or in the prosecution or trial of the case.

13             And, again, the failure of the United States to

14   adhere to this requirement has certain consequences,

15   including exclusion of any evidence that may be raised

16   against you or adverse jury instruction, dismissal of

17   charges, contempt proceedings, vacating a conviction, or

18   initiation of disciplinary proceedings against the

19   prosecution.

20             So I inquire of your counsel, have you received all

21   things that you believe you are entitled to receive under

22   *Brady vs. Maryland* in this case?

23             MS. McCASLIN:  Your Honor, we have received

24   voluminous discovery.  Obviously, it kind of depends on what

25   the government decides to turn over.  We have received plenty

1   of information, but we wouldn't know if anything else was

2   outstanding.

3          THE COURT:  To your knowledge, has the government

4   excluded or refused to turn over anything to you?

5          MS. McCASLIN:  No, Your Honor.

6          THE COURT:  All right.  Ms. Yusi, has the

7   United States provided everything that you have found they

8   are entitled to receive under *Brady vs. Maryland*?

9          MS. YUSI:  We have, Your Honor.

10         THE COURT:  So you are aware of the provisions of

11  *Brady vs. Maryland*?

12         MS. YUSI:  We are.

13         THE COURT:  Thank you very much.

14         You may have a seat, Mr. Smith.

15         Now we come back to the question of what plea

16  negotiations have occurred in this case and whether any plea

17  offers were made to Mr. Alcorn.

18         Will the United States please address that question.

19         MS. O'BOYLE:  Yes, Your Honor.  On July 23, 2020,

20  the government made an offer to Mr. Alcorn to plead to

21  Count 19, which is the unlawful monetary transaction, and

22  gave Mr. Alcorn a deadline of August 7, 2020, to accept that

23  offer.

24         After this offer was made, the government met with

25  Mr. Alcorn and his defense counsel and gave a reverse plea

1   offer -- a reverse proffer of the evidence.  On August 19,

2   2020, Mr. Alcorn rejected that offer.

3          In May of 2021, the government asked -- this was

4   after the trial in United States versus Daryl Bank and Billy

5   Seabolt.  The government asked whether Mr. Alcorn was

6   interested in reopening plea negotiations.  On May 27, 2021,

7   Mr. Alcorn, through counsel, stated that he was not

8   interested in reopening plea negotiations.

9          And most recently on January 17, 2022, due to the

10  COVID pandemic, the government offered a -- offered

11  Mr. Alcorn to plead to a 371 conspiracy charge, which would

12  have capped his exposure at five years.  And the next day, on

13  January 18, 2022, Mr. Alcorn rejected that offer and informed

14  the government that he was going to go to trial.

15         THE COURT:  Thank you.

16         All right.  Mr. Yarow, you've heard the statement by

17  the United States Attorney; is that correct?

18         MR. YAROW:  May I just stay here?

19         THE COURT:  You can stay right there.

20         MR. YAROW:  Yes, sir.  Everything the government

21  just recited was correct.

22         THE COURT:  If you would stand up, please, and the

23  Court is going to have you take an oath right where you are,

24  Mr. Alcorn.  Raise your right hand.

25         (Defendant Alcorn was duly sworn.)

```
 1              THE COURT:  Mr. Alcorn, you heard the statement made
 2    by the United States Attorney regarding the plea
 3    negotiations.  Is it correct that you rejected the plea
 4    offers made to you by the United States?
 5              DEFENDANT ALCORN:  That's correct, Your Honor.
 6              THE COURT:  And before you rejected those plea
 7    offers, did you consult with your counsel?
 8              DEFENDANT ALCORN:  I did, Your Honor.
 9              THE COURT:  Was the decision to reject these plea
10    offers made by you?
11              DEFENDANT ALCORN:  Yes, Your Honor.
12              THE COURT:  Did anyone coerce you into rejecting
13    these plea offers?
14              DEFENDANT ALCORN:  I'm sorry?
15              THE COURT:  Did anyone coerce you or force you to
16    reject the plea offers?
17              DEFENDANT ALCORN:  I still didn't understand.
18              MR. YAROW:  Did anyone coerce you?
19              DEFENDANT ALCORN:  Oh, no, sir, Your Honor.  I'm
20    sorry.
21              THE COURT:  Okay.  Thank you very much.  You may
22    have a seat.
23              I think what we're going to do is, Mr. Yarow, we
24    have some hearing aids that we can provide to Mr. Alcorn to
25    aid him in hearing what is taking place in here.  I think
```

1    we'll give him these right now.

2              MR. YAROW:  He has hearing aids in his ears,

3    Your Honor.

4              THE COURT:  Okay.  With respect to Mr. Smith, does

5    the United States wish to indicate whether plea offers were

6    made to Mr. Smith?

7              MS. O'BOYLE:  Yes, Your Honor.  Thank you.

8              Your Honor, prior to indictment, the government

9    contacted Mr. Smith, and he was appointed counsel, and the

10   government did attempt to reach a pre-indictment plea offer

11   with Mr. Smith, and we were unable to do so, and so he was

12   indicted.

13             After indictment, there was a plea offer made on

14   August 7, 2019.  That offer was to plead to Count 8 of the

15   indictment, and we gave a deadline of September 6, 2019.  On

16   September 5, 2019, we were informed through counsel that

17   Mr. Smith had rejected that offer.

18             In connection, again, with COVID, the government

19   went back to Mr. Smith and made a second plea offer.  That

20   offer was made on July 23rd, 2020, and that offer was to

21   plead to a 371 conspiracy, which would have capped

22   Mr. Smith's exposure at five years.  This was an offer that

23   was made in connection with the COVID pandemic to attempt to

24   resolve a case prior to trial.

25             The government gave a deadline of August 7, 2020,

1    and on August 7, 2020, Mr. Smith, through counsel, rejected

2    that offer.

3            After the trial in United States versus Daryl Bank

4    and Billy Seabolt, the government, again, approached defense

5    counsel and asked whether defendant Mr. Smith would be

6    interested in reopening plea negotiations.

7            On May 25th, 2021, the government, again, offered

8    that specific -- to reopen plea negotiations, and we were

9    informed via counsel that Mr. Smith did not want to reopen

10   plea negotiations after that trial was completed.

11            THE COURT:  Thank you very much.

12            If you would stand and take an oath, Mr. Smith.

13            (Defendant Smith was duly sworn.)

14            THE COURT:  Mr. Smith, you may remain standing.

15            Mr. Smith, you heard the statements made by the

16   United States about the plea offers that were made to you.

17   Was that statement correct?

18            DEFENDANT SMITH:  Yes, Your Honor, it was correct.

19            THE COURT:  And did you reject each of the plea

20   offers?

21            DEFENDANT SMITH:  Yes, Your Honor, I did.

22            THE COURT:  And before you rejected the plea offers,

23   did you consult with your counsel?

24            DEFENDANT SMITH:  I did.

25            THE COURT:  And did you make an independent decision

```
 1    to reject the plea offers?

 2            DEFENDANT SMITH:  I did.

 3            THE COURT:  Did anyone force you to reject the plea

 4    offers?

 5            DEFENDANT SMITH:  No force.

 6            THE COURT:  Okay.  Thank you very much.  You may

 7    have a seat.

 8            All right.  Counsel, that's all the Court has.  What

 9    we're going to do now is we're going to take a recess and

10    have the jury come down to the courtroom, and then we're

11    going to come back, and we will commence voir dire.

12            (Recess from 10:30 a.m. to 10:43 a.m.)

13            (The venire, Jury Panel A, is present in the

14    courtroom.)

15            THE CLERK:  United States of America vs. David

16    Alcorn and Aghee William Smith II in Criminal Action

17    2:19cr47.  Ms. Yusi, Ms. O'Boyle, Mr. Bosse, is the

18    government ready to proceed?

19            MS. YUSI:  We are.  Good morning, Your Honor.

20            THE COURT:  Good morning.

21            THE CLERK:  Mr. Yarow, is Mr. Alcorn ready to

22    proceed?

23            MR. YAROW:  Mr. Alcorn is ready, Your Honor.

24            THE CLERK:  Ms. McCaslin, Mr. Grindrod, is Mr. Smith

25    ready to proceed?
```

```
 1            MS. McCASLIN:  He is.  Good morning, Your Honor.
 2            THE COURT:  Good morning.
 3            THE CLERK:  Members of Jury Panel A, when I call
 4  your number, would you please stand and answer "present."
 5  Please remain standing until the next number is called and
 6  then be seated.
 7            Juror Number 3.
 8            PROSPECTIVE JUROR:  Present.
 9            THE CLERK:  Juror Number 6.
10            PROSPECTIVE JUROR:  Present.
11            THE CLERK:  Juror Number 21.
12            PROSPECTIVE JUROR:  Present.
13            THE CLERK:  Juror Number 35.
14            PROSPECTIVE JUROR:  Present.
15            THE CLERK:  I'm sorry.  Juror Number 23.
16            PROSPECTIVE JUROR:  Present.
17            THE CLERK:  Juror Number 35.
18            PROSPECTIVE JUROR:  Present.
19            THE CLERK:  Juror Number 38.
20            PROSPECTIVE JUROR:  Present.
21            THE CLERK:  Juror Number 39.
22            PROSPECTIVE JUROR:  Present.
23            THE CLERK:  Juror Number 43.
24            PROSPECTIVE JUROR:  Present.
25            THE CLERK:  Juror Number 45.
```

```
 1              PROSPECTIVE JUROR:  Present.

 2              THE CLERK:  Juror Number 60.

 3              PROSPECTIVE JUROR:  Present.

 4              THE CLERK:  Juror Number 71.

 5              PROSPECTIVE JUROR:  Present.

 6              THE CLERK:  Juror Number 88.

 7              PROSPECTIVE JUROR:  Present.

 8              THE CLERK:  Juror Number 90.

 9              PROSPECTIVE JUROR:  Present.

10              THE CLERK:  Juror Number 92.

11              PROSPECTIVE JUROR:  Present.

12              THE CLERK:  Juror Number 95.

13              PROSPECTIVE JUROR:  Present.

14              THE CLERK:  Juror Number 106.

15              PROSPECTIVE JUROR:  Present.

16              THE CLERK:  Juror Number 107.

17              PROSPECTIVE JUROR:  Present.

18              THE CLERK:  Juror Number 117.

19              PROSPECTIVE JUROR:  Present.

20              THE CLERK:  Juror Number 118.

21              PROSPECTIVE JUROR:  Present.

22              THE CLERK:  Juror Number 123.

23              PROSPECTIVE JUROR:  Present.

24              THE CLERK:  Juror Number 126.

25              PROSPECTIVE JUROR:  Present.
```

```
 1              THE CLERK:  Juror Number 128.

 2              PROSPECTIVE JUROR:  Present.

 3              THE CLERK:  Juror Number 136.

 4              PROSPECTIVE JUROR:  Present.

 5              THE CLERK:  Juror Number 141.

 6              PROSPECTIVE JUROR:  Present.

 7              THE CLERK:  Are there any jurors present whose

 8  number I have not called?

 9              There are 24 jurors present, Your Honor.

10              Members of the jury, will you please stand and raise

11  your right hand to be sworn.

12              You shall true and perfect answer make to such

13  questions that may be propounded to you by the Court or

14  counsel, so help you God?

15              THE VENIRE:  (Answered in the affirmative.)

16              (The venire, Jury Panel A, was duly sworn.)

17              THE CLERK:  Thank you.  You may be seated.

18              THE COURT:  Good morning, ladies and gentlemen.  I

19  always advise the jury that while I'm using a microphone, you

20  are not, and you may have problems hearing me, and if you do,

21  raise your hand and let the Court know.

22              Before you answer any question the Court propounds

23  to you, please stand up and state your juror number.

24              Now, I think each one of you were issued a clear

25  mask.  Please put the clear mask on at this time.
```

1          PROSPECTIVE JUROR:  No, Your Honor, we were not.

2          THE COURT:  We're going to take a minute to give you

3    these clear masks.  The purpose of this is so that counsel

4    can see your complete face during the course of the voir dire

5    inquiry.

6          (There was a pause in the proceedings.)

7          THE COURT:  Ladies and gentlemen, as I told you, the

8    purpose of this clear mask is so that the counsel can see

9    your face as you are responding to questions raised.

10          This morning, ladies and gentlemen, this is a

11    criminal case.  It's expected to last approximately four

12    weeks.  I think you were told that in your jury

13    questionnaire/inquiry.

14          In this case, we have two defendants who have been

15    charged.  In this case, we have the defendant Mr. David

16    Alcorn who is charged and Mr. Aghee Smith who has been

17    charged.

18          Mr. Alcorn, if you would stand, please, and face the

19    jury.  Mr. Alcorn is represented by Attorney Richard Yarow

20    from Norfolk.  Mr. Alcorn is charged with conspiracy to

21    commit mail and wire fraud and at least 11 counts of wire

22    fraud and one count of engaging in unlawful monetary

23    transactions, which is another way of saying money

24    laundering.

25          You may have a seat.

1          Mr. Aghee Smith, if you would stand and face the

2    jury.

3          Mr. Aghee Smith is represented by Attorney Lindsay

4    McCaslin and Attorney Andrew Grindrod of the Federal Public

5    Defender's.  He is charged with conspiracy to commit mail

6    fraud and also at least four counts of wire fraud.

7          You may have a seat.

8          The United States, which is bringing this case,

9    prosecuting this case, is represented by three assistant U.S.

10   Attorneys:  Assistant U.S. Attorney Andrew Bosse, Assistant

11   U.S. Attorney Elizabeth Yusi, and Assistant U.S. Attorney

12   Melissa O'Boyle.

13         Thank you very much.

14         Ladies and gentlemen, I've listed the parties, and

15   I've told you the lawyers that are representing these

16   parties.  At some point, I'll come back and determine whether

17   you have had any personal or professional association with

18   any of these counsel in the case, so please remember their

19   names.

20         We are ready to begin what we call the jury

21   selection process.  It's called the voir dire process.  In a

22   criminal case, at least 12 jurors are selected to consider

23   the verdict in a case.  In addition to the 12 jurors that

24   will be selected in this case, given the fact that we're in

25   pandemic times, the Court will also select six alternate

1    jurors.

2            The alternate jurors selected will sit with the

3    jury, will have the same duties and obligations as the

4    jurors, but an alternate juror who does not replace a juror

5    prior to the jury's retiring to deliberate will be discharged

6    and may not participate in the deliberations.  In sum, 18 of

7    you will be selected.

8            The parties have a right to have a qualified, fair,

9    and impartial jury.  A qualified and impartial jury, ladies

10   and gentlemen, is one which is responsible and capable and

11   which will, without fear, favor, bias, prejudice, sympathy,

12   or passion, objectively hear and decide the issues to be

13   tried and render a verdict based solely on the evidence

14   presented in the case and the law applicable to the case as

15   given to you by the Court.

16           Your qualifications and your impartiality may not be

17   assumed without some inquiry.  The inquiry we're about to

18   make is known as the voir dire process.  It's a time-honored

19   process by which your qualifications and your impartiality

20   may be determined.  The purpose is to develop the truth about

21   your competency, your frame of mind, and your ability to

22   abide by the oath you just took a few minutes ago.

23           Your answers to the questions the Court asks you

24   will enable the Court to determine whether you should be

25   excused for cause, either on the Court's determination or the

1    motion of a party.

2         Your answers will also allow the attorneys to

3    intelligently exercise their peremptory strikes.  A

4    peremptory strike or challenge is nothing more than an

5    opportunity the law gives a party to strike a juror or excuse

6    a juror without giving a cause for it.

7         So it's important that your answers to the questions

8    asked be complete and be truthful.  Each of you is under a

9    compulsion to disclose, upon a general question, any and all

10   matters that might tend to disqualify you from sitting as a

11   juror in this case.

12        So while the sweep of my questions might be broad or

13   general, it's your affirmative duty to honestly and

14   conscientiously answer the real implications of the questions

15   and to make your answers as full and complete as possible

16   under the circumstances.

17        Now, I caution you, false and misleading answers may

18   result in the seating of a person/juror who would not have

19   been selected if all answers were truthful and thus result in

20   a miscarriage of justice.

21        So consider each question very carefully and don't

22   wait until after you have been selected and sworn as a juror

23   to disclose something that ought to be made known at the time

24   the question is asked or if one question suggests to you some

25   other reason for disqualification.

1          Over the years, I notice that too many jurors try to
2    gain the system and wait to see if they're going to be
3    selected, and then when they get in the box, they want to
4    raise their hand.  Don't even think about it.  It will not
5    work well for you.
6          So as I said, the Court will not presume anything.
7    So the Court will ask you some pretty direct questions in
8    order to determine whether you are qualified to sit in this
9    jury.  So I'll start with a basic question:
10         Can each of you read, write, and understand the
11   English language?  In other words, are there any language
12   barriers?  We didn't detect any on the questionnaire.
13         Are any of you suffering from any physical problem,
14   medical problem, which would make it difficult for you to
15   hear, observe, and understand the evidence in this case?
16         I see two hands.  Stand up and state your jury room.
17         PROSPECTIVE JUROR:  21.
18         THE COURT:  One other precaution.  If what you have
19   to say is very private and you do not wish to say it here,
20   the Court will give you an opportunity to step up to the
21   microphone and put on headphones and talk to counsel and the
22   Court without speaking out loud.
23         Now you are number 21, and what is the reason you
24   stand?
25         PROSPECTIVE JUROR:  Medical problem.

1            THE COURT:  Do you wish to state it, or do you wish
2    to be private?
3            PROSPECTIVE JUROR:  Private, Your Honor.
4            THE COURT:  Number 21.  Okay.
5            I saw another hand.
6            PROSPECTIVE JUROR:  Number 92.  I have vision
7    problems.  I can see that you're there, but if I were to see
8    you on the street, I would not recognize you because my
9    vision is blurry.
10           THE COURT:  So you have a problem seeing me; is that
11   correct?
12           PROSPECTIVE JUROR:  The optometrist can only correct
13   it to 25 feet, so anything that I would need to visually see,
14   I would need to have someone give me a copy of it to see
15   close up or bring it closer to me, too, and the writing
16   cannot be small.
17           THE COURT:  You're standing in front of a -- I think
18   we have some video monitors.
19           PROSPECTIVE JUROR:  Yes.  It's blurry.  Now, if this
20   is on, I could see it.
21           THE COURT:  Okay.  Well, we'll make sure that you
22   are placed where you can see a monitor.  Thank you very much.
23           Yes, sir?
24           PROSPECTIVE JUROR:  35.  Your Honor, I wear hearing
25   aids, so I hear you just fine through the microphone.  I just

```
 1    want you to know that I wear hearing aids.  That's all.  It
 2    is significant in my right side, but generally I don't have a
 3    problem with it.
 4            THE COURT:  If you have a problem, we have some
 5    hearing aids we can give you to assist you.
 6            I saw another one.  Yes, sir?
 7            PROSPECTIVE JUROR:  126.  I have become 100 percent
 8    disabled.  I have a bad back.  And so I just can't sit for
 9    long periods of time, longer than about four hours.  I have
10    to either stand or move around.
11            THE COURT:  Well, the judge can't sit more than two
12    hours, so you won't have a problem.
13            Was there another hand?  Okay.
14            Ladies and gentlemen, the alleged criminal conduct
15    in this case took place between around January 2011 through
16    2014 here in the Eastern District of Virginia and elsewhere
17    around the country.
18            Do any of you think you know anything about this
19    case, either read it, heard from someone else, or anything
20    that causes you to believe you know something about this
21    case?
22            All right.  Hearing nothing, we'll move on.
23            I need to correct that.  It's January 2011 to
24    January 2017.  But I still see no hands.
25            If any of you have previously served on a jury panel
```

```
1   of any kind, whether it be grand jury, federal or state,
2   please raise your hand if you have prior jury service.
3           Okay.  Stand up and give your juror number.
4           PROSPECTIVE JUROR:  123.
5           THE COURT:  Where did you serve?
6           PROSPECTIVE JUROR:  On grand jury in Chesapeake.
7           THE COURT:  Thank you.
8           PROSPECTIVE JUROR:  60.  I was called to be part of
9   a jury, but they pled out, so I didn't serve.
10          THE COURT:  So you didn't sit?
11          PROSPECTIVE JUROR:  Right.  Correct.
12          THE COURT:  Yes?
13          PROSPECTIVE JUROR:  88.  I think it was just a civil
14  trial, but it was in Massachusetts.
15          THE COURT:  In Massachusetts?
16          PROSPECTIVE JUROR:  Yes.
17          THE COURT:  Okay.  With respect to those who
18  responded, was there anything about your jury service or
19  being called to serve that you believe would make it
20  impossible for you to sit in this jury, in this case, and
21  render a fair and impartial verdict if you are selected?  If
22  so, stand.
23          Juror Number?
24          PROSPECTIVE JUROR:  31.
25          THE COURT:  You didn't indicate that you had jury
```

1    service.  Did you have prior jury service?

2              PROSPECTIVE JUROR:  No.  I misunderstood the

3    question.  I'm sorry, sir.

4              THE COURT:  What question did you think I asked?

5              PROSPECTIVE JUROR:  If there was some reason for

6    bias in this trial.

7              THE COURT:  Okay.  Well, you hold on, Juror

8    Number 31, and we will come back to that.

9              Ladies and gentlemen, I ask you, do any of you know

10   either one of the defendants that stood up in this case from

11   any source, any place?

12             Have any of you had any type of personal or

13   professional association with the counsel in the case;

14   Attorney Richard Yarow, who represents Mr. Alcorn; Attorneys

15   Grindrod and McCaslin, who represent Mr. Smith; Assistant

16   United States Attorney Andrew Bosse; Elizabeth Yusi?

17             You might want to pull your mask down too -- all of

18   you -- so they know who they're looking at.

19             Okay.  Thank you very much.

20             Have you or any member of your family ever been

21   accused of a felony offense, that is, an accused that has

22   been indicted or tried or convicted for a felony offense?

23             PROSPECTIVE JUROR:  92.  I'm not certain of the

24   charge because I'm estranged from my father, but he is on or

25   he was on the sexual assault website for a period of time.  I

1    think he was on probation for ten years, but I don't know

2    more about that because I'm estranged from my father.

3            THE COURT:  Thank you.

4            PROSPECTIVE JUROR:  Juror Number 90.  My uncle, he

5    got convicted of rape.  He served ten years.  So that's all

6    that I know about that.

7            THE COURT:  Thank you.

8            PROSPECTIVE JUROR:  45.  I have a cousin who was

9    convicted, also, of rape and is currently in prison.

10           PROSPECTIVE JUROR:  118.  My husband's uncle is

11   accused of arson.

12           THE COURT:  Accused?

13           PROSPECTIVE JUROR:  Accused.

14           THE COURT:  Was he tried, indicted, convicted?

15           PROSPECTIVE JUROR:  Not yet.

16           THE COURT:  Thank you.

17           PROSPECTIVE JUROR:  60.  I'm not sure, really, what

18   my sister was charged with.  I think it might be theft.  But

19   we were not close, so I'm not really sure what -- I know it

20   had to do with her job, but I don't know what.

21           THE COURT:  Thank you.

22           Ladies and gentlemen, a number of you have indicated

23   in response to the Court's question that a relative or

24   someone close to you, maybe, was convicted of a crime or

25   serving time for a crime, and the Court wants to determine

1   whether there's anything about that experience that causes

2   you, at this junction, to be unable to sit in a criminal case

3   and to render a fair, impartial verdict for anyone who is

4   accused of committing a crime.  If so, let the Court know.

5          Now, ladies and gentlemen, there are a number of

6   witnesses that may be called in this case over the next

7   several weeks, and I'm going down a long list.  If you

8   recognize a name but you're not sure whether it's the

9   individual you know, then what we will have to do, we will

10  have to get the parties to give the Court additional

11  information to see whether it's a person that you really

12  know, because the Court doesn't have anything but the names.

13         Charlotte Annas, Teresa Austin, Brian Avery, Teresa

14  Avery, Margaret Babich, Thomas L. Barnett.

15         And you're reminded that some these witnesses may

16  not be from this part of the country.

17         Debra Barry, J. Michael Barry, Peggy Barry, Alan

18  Baskin, Coleman Bazelon, Sharyon Bean -- that's S-h-a-r-y-o-n

19  Bean -- Wilfried Berndt, Bonnie Berndt, Bob Berrett, Ryan

20  Braley, Denise Brown, Jeff Browne.  This is a Browne with an

21  E, B-r-o-w-n-e.

22         Teresa Busch, Richard Busch, Gary Clapper, Darryl

23  Clark, Ruth Clark, Roger Courson, George Cushman, Nathaniel

24  Dodson, L. Doug Dunn, Rosie Eads, Jeff Eschrich, Constance

25  Flammang, Matthew Fowles, Jere Friedman, Raelene Gastman,

1    Nicholas Gentile, Kyle Gerek, Raeann Gibson, Carol Groff,

2    Sunshine Grissom, Andrew Gulcher;

3           Vanaleen Hatfield, Laura Houston, Vera Hullum,

4    Patricia Hundley, Kimberly Husted, David Idigpio, Deborah

5    Jenkins, Jacob Kurtz, Helen Larson, Edward Lichtig, Michael

6    Lindauer, Justin Lira, Lawrence Lyon, Alain Martell, Ray

7    Martin, Dennis McCrumb, Peter Melley, Craig Newell, Susan

8    Newell;

9           Darcy Oliver, Jon Palmieri, Amos Parker, Peter

10   Perry, Dee Pinkston, Adan Rangel, Matthew Roth, Barbara

11   Russell, Tony Sellers, Brian Semple, Robert Semple, Brian

12   Smith, Rosie Smith, Grecie Suarez, Ken Sykes, Alan Tilles,

13   Andrea Tottossy;

14          Terri Walsh, Charles West, Michael J. Wilhelm,

15   Phillip Yee, Lucille Zenke, Aaron Bobkin, Robert Jones, Peter

16   Lewis, Thomas Littler, Daryl Bank, Tripp Forrest, Steve

17   Gasser, Robert Guest, Bob LaBine, Peter Lewis, Kent Maerki,

18   Terence Pinkston, Wanda Rivera, and Lynne Shelton.

19          The Court also has, I think, Susan Courson, Tuesday

20   Douglas, Joe Tottossy.

21          Each of the parties have paralegals, I believe, with

22   them, and the paralegals for the United States government

23   are...

24          Who's the paralegal?  Introduce your paralegals and

25   your agents.

1          MS. YUSI:  We just have our agents, Your Honor.

2          THE COURT:  The special agents, their names, please.

3          MS. YUSI:  We have Andy Bowers with IRS, Jason

4    Thomasson with the United States Postal Inspection Service,

5    and then we have Jennifer Collins with the FBI, and Julie

6    Shields with the FBI.

7          THE COURT:  Okay.  Thank you very much.

8          With respect to the defendants' paralegal?

9          MS. McCASLIN:  Your Honor, we have Susan Harrison

10   Jones, an investigator.

11         THE COURT:  Thank you very much.

12         Ladies and gentlemen, no one has raised their hand

13   so far with respect to any of these parties.  If your light

14   goes off any time before we get this case started, whenever,

15   let the Court know.  All right?

16         Now, are you or an immediate member of your family

17   engaged in law enforcement?  Raise your card and stand up.

18         PROSPECTIVE JUROR:  39.

19         THE COURT:  And?

20         PROSPECTIVE JUROR:  My father is a police officer.

21         THE COURT:  Where?

22         PROSPECTIVE JUROR:  He's for DOD, Joint

23   Expeditionary Base Little Creek-Fort Story.

24         THE COURT:  Thank you very much.

25         PROSPECTIVE JUROR:  Juror Number 90.  My uncle, he

```
1   is a sheriff deputy with Madison County.

2          THE COURT:  What county?

3          PROSPECTIVE JUROR:  Madison.  It's in Tennessee.

4          THE COURT:  Thank you very much.

5          Yes, ma'am?

6          PROSPECTIVE JUROR:  Number 60.  My husband is a

7   retired police officer for Chesapeake, Virginia, and Rapid

8   City, South Dakota.

9          THE COURT:  I didn't ask about retired, but you're

10  spot on in raising that.

11         Have you or any member of your family ever worked

12  for a law enforcement agent, whether it be a prosecuting

13  attorney or law enforcement investigative agency?

14         PROSPECTIVE JUROR:  My husband was a narcotics

15  detective in Rapid City, South Dakota.

16         THE COURT:  I can't hear once again.

17         PROSPECTIVE JUROR:  Sorry.  My husband was a

18  narcotics detective in Rapid City, South Dakota.

19         PROSPECTIVE JUROR:  I worked as the sheriff's deputy

20  in Portsmouth.

21         THE COURT:  Your juror number?

22         PROSPECTIVE JUROR:  90, Your Honor.

23         THE COURT:  Thank you.

24         Yes, sir?

25         PROSPECTIVE JUROR:  Number 136.  My wife used to
```

1      work at Hampton Roads Regional Jail in Portsmouth.

2              THE COURT:  Thank you.

3              Would any of you give more or less weight to the

4      testimony of a law enforcement officer because that

5      individual is a law enforcement officer?

6              PROSPECTIVE JUROR:  No, Your Honor.

7              THE COURT:  You don't have to answer orally.  If you

8      would, then you would stand and let the Court know which way

9      you would be inclined to go.

10             PROSPECTIVE JUROR:  Yes, I would.

11             THE COURT:  You what?

12             PROSPECTIVE JUROR:  I would.

13             THE COURT:  Juror number?

14             PROSPECTIVE JUROR:  60.

15             THE COURT:  You would be inclined to do what?

16             PROSPECTIVE JUROR:  To believe the officer's

17     testimony.

18             THE COURT:  Okay.  Thank you.

19             PROSPECTIVE JUROR:  126.  I have a question on that,

20     because it depends on -- are you asking in relation to a

21     witness?  Like, with two witnesses, if you have a law

22     enforcement officer and versus a civilian witness, because

23     depending on the situation, I would tend to give the law

24     enforcement officer more credence because their job is to

25     uphold the law; but, you know, it depends on the person

1    that -- the other witness, you know.  It's a tough question.

2              THE COURT:  Thank you.

3              PROSPECTIVE JUROR:  It's a tough question.  I'm not

4    sure how to answer --

5              THE COURT:  Wait a minute, now.  Someone's talking.

6    Do not talk unless you stand up and identify yourself.

7              PROSPECTIVE JUROR:  Yeah, it's a tough question.

8    I'm not really sure how I would answer.  I mean, with all the

9    things in the media and stuff, with bad cops and things of

10   that nature --

11             THE COURT:  You're Juror Number what?

12             PROSPECTIVE JUROR:  Oh, I'm sorry.  92.

13             THE COURT:  The question is very simple.  You're

14   going to have many witnesses in here.  Would you be inclined

15   to believe a law enforcement officer as opposed to another

16   person just because the person is a law enforcement officer?

17   Would you be inclined to disbelieve them because they're a

18   law enforcement officer?

19             PROSPECTIVE JUROR:  No.  I would listen to all the

20   evidence.

21             THE COURT:  Thank you.

22             Ladies and gentlemen, there are certain principles

23   of law that govern the trial of criminal cases.  They're

24   constitutional principles.

25             Each defendant in this case is presumed to be

1    innocent unless proven guilty beyond a reasonable doubt.   Is
2    there anyone who disagrees with this principle of law?
3          Is there anyone who believes that you must be guilty
4    because you're sitting here and you've been charged?
5          The United States is called upon -- that is, the
6    prosecution -- to prove the defendants' guilt beyond a
7    reasonable doubt.   Is there anyone who disagrees with this
8    principle?
9          In a criminal case, a defendant is not required to
10   prove his or her, if it's a female, innocence.   A defendant
11   is not required to produce any evidence, really not even to
12   cross-examine a witness.   A defendant has a constitutional
13   right to remain silent because the government has the burden
14   of proof.   Is there anyone who disagrees with this position?
15         Is there anyone here who has already formulated an
16   idea about the guilt or innocence of the defendants because
17   they're here?
18         Are any of you acquainted with each other?   In other
19   words, you attend the same church, work on the same job, live
20   in the same neighborhood.
21         Do any of you belong to any organization which
22   advocates the reform or the repeal of any criminal laws?
23         PROSPECTIVE JUROR:   Juror Number 71.   I am a member
24   of Moms Demand Action and also the League of Women Voters,
25   and we advocate for a lot of legal change.

```
 1              THE COURT:  My question was repeal of criminal laws.
 2    I don't think any of those organizations deal with the repeal
 3    of criminal laws, do they?
 4              PROSPECTIVE JUROR:  Marijuana laws for criminal
 5    laws.
 6              THE COURT:  Okay.
 7              Do any of you believe you have a moral, religious,
 8    or ethical belief that would make it difficult for you to sit
 9    as a juror in this case?  A moral, religious, or ethical
10    belief that prevents you from sitting as a juror?
11              PROSPECTIVE JUROR:  Yes.
12              THE COURT:  Juror number?
13              PROSPECTIVE JUROR:  106.
14              THE COURT:  And what is your response to that
15    question?
16              PROSPECTIVE JUROR:  I'm not really clear in the
17    papers that I filled out and --
18              THE COURT:  Wait a minute, sir.  I cannot hear you.
19    You have to speak loudly and slowly.
20              PROSPECTIVE JUROR:  I cannot, with my religious
21    beliefs, find somebody guilty and convict them.
22              THE COURT:  Have you ever sat on a jury before?
23              PROSPECTIVE JUROR:  No.
24              THE COURT:  Thank you.  Do you recall whether you
25    answered that question on the questionnaire?
```

```
 1            PROSPECTIVE JUROR:  Yes.

 2            THE COURT:  Stand up.

 3            PROSPECTIVE JUROR:  Yes, multiple times.

 4            THE COURT:  All right.  Thank you very much.

 5            Now, ladies and gentlemen, the Court has been asking

 6   you a series of questions designed to determine whether you

 7   could sit in this case and render a fair, just, and impartial

 8   verdict.

 9            Do you know of any reason you think that you could

10   not sit in this case and render a just, fair, honest, and

11   impartial verdict?

12            That comes back to Juror Number 31.  What I want you

13   to do is come step up here and put on a headset, and we're

14   going to talk to you one-on-one.  I think it was Juror

15   Number 31.

16            PROSPECTIVE JUROR:  71?

17            THE CLERK:  It was 21.

18            THE COURT:  21.  I think you were over here on the

19   left-hand side, and I indicated that we would come back to

20   you.

21            PROSPECTIVE JUROR:  Yes.

22            THE COURT:  And you're Juror Number...

23            PROSPECTIVE JUROR:  71.

24            THE COURT:  71.  I don't recall -- we'll see.

25            THE CLERK:  She had a medical issue, 21.
```

```
 1              THE COURT:  Step up.
 2              (A sidebar conference was held as follows:)
 3              (Juror Number 71 entered the conference.)
 4              THE COURT:  Can you hear me, ma'am?
 5              PROSPECTIVE JUROR:  Yes, I can.
 6              THE COURT:  Okay.  We still have a lot of static
 7  from someplace.
 8              PROSPECTIVE JUROR:  I can still hear you.
 9              THE COURT:  Okay.  You can still hear me.
10              PROSPECTIVE JUROR:  Yes.
11              THE COURT:  If everyone else can hear me, what is
12  the reason you raised your hand indicating you may have a
13  bias?
14              PROSPECTIVE JUROR:  I was married for nearly 30
15  years to someone in the financial services industry, and I
16  have heard a lot of -- oh, I'm trying to think of how to put
17  it -- situational information on people who have been in the
18  financial services industry and not being compliant with the
19  SEC regulations and being in trouble with the compliance
20  department and people being -- losing their licenses and
21  Ponzi schemes and committing fraud in this area.
22              THE COURT:  Are you saying you believe because you
23  heard this, you are not able to give these defendants a fair
24  and just verdict based on the evidence that comes forward in
25  here?
```

1          PROSPECTIVE JUROR:  I know I have a bias that I
2   expect that a lot of times people in their own self-interest
3   will mislead people, so I have a -- I'm not sure that I could
4   be unbiased.
5          THE COURT:  Okay.  Counsel, I think we will just
6   stop here.  All right, then.  You can take your microphone
7   off and step down.  You are not excused.
8          (Prospective Juror 71 exited the conference.)
9          THE COURT:  (To the venire:)  There's another juror.
10  Ma'am, did you have something you wanted to say privately?
11         PROSPECTIVE JUROR:  Yes.  Juror Number 21 in regards
12  to medical.
13         THE COURT:  If you would step up, and we'll give you
14  a headset.  As a matter of fact, you can stand right there
15  so -- well, come up here, ma'am.
16         (Juror Number 21 entered the conference.)
17         THE COURT:  You're a little soft there.
18         PROSPECTIVE JUROR:  Can you hear me now?
19         THE COURT:  I can hear you now.
20         You are Juror Number...
21         PROSPECTIVE JUROR:  21.
22         THE COURT:  And you had a medical reason you wanted
23  to be -- you didn't want to --
24         PROSPECTIVE JUROR:  Yes, sir.  I get cluster
25  migraines.  It's idiopathic, meaning the doctors don't know

```
1   the cause of them.  It's an intense pain in my right temple.
2   I get nauseous.  I have vomiting.  And I have medication that
3   I can take.  The medication makes me really sort of tired.
4   The pain is less, but I'm extremely fatigued, and I'm not
5   very operational.  So I think it would affect my competency.
6           THE COURT:  How often do you take the medication?
7           PROSPECTIVE JUROR:  It's as needed, so it's whenever
8   the migraine comes on.
9           THE COURT:  And you cannot predict when the
10  migraines come on?
11          PROSPECTIVE JUROR:  Correct.
12          THE COURT:  Thank you very much.  You may return to
13  your seat.
14          PROSPECTIVE JUROR:  Thank you.
15          (Juror Number 21 exited the conference.)
16          THE COURT:  (To the venire:)  We have another juror
17  raising -- yes, sir?
18          PROSPECTIVE JUROR:  Juror 141.  I'd like to speak
19  privately with the Court, if I can, Your Honor.
20          THE COURT:  Step forward.
21          (Juror Number 141 entered the conference.)
22          THE COURT:  For what reason did you want to speak
23  privately with the Court?
24          PROSPECTIVE JUROR:  I have a couple of issues.  I
25  have somewhat irritable bowel syndrome to where I frequently
```

```
 1    have to use the restroom and -- but, also, I recently had a
 2    death in the family, and there's a planned memorial service
 3    in Florida on February 19th.
 4            THE COURT:  Now, February 19th is on a weekend.
 5            PROSPECTIVE JUROR:  Yes, sir.
 6            THE COURT:  When did you first start with the
 7    medical problem?  When did that first arise?
 8            PROSPECTIVE JUROR:  I've had it most of my life.
 9            THE COURT:  Okay.  And at the time you filled out
10    your questionnaire, did you indicate this?
11            PROSPECTIVE JUROR:  Yes, sir, I did.
12            THE COURT:  Do you take medication for this problem?
13            PROSPECTIVE JUROR:  I'm on Prozac for anxiety
14    because of this issue.
15            THE COURT:  You have medication for anxiety but no
16    medication for the problem that you have?
17            PROSPECTIVE JUROR:  No, sir.  That's correct.
18            THE COURT:  Okay.  Any question by counsel?
19            Okay.  You may step down, sir.
20            PROSPECTIVE JUROR:  Thank you, sir.
21            (Juror Number 141 exited the conference.)
22            THE COURT:  Counsel, before the Court terminates,
23    are there any other questions that you want to propound to
24    the jury?
25            MS. YUSI:  Your Honor, from the government, there
```

1   were a few people, I think, that may have had some -- they

2   were not specific in their questionnaires but mentioned

3   something about travel but were not giving dates or if it was

4   prepaid.

5           THE COURT:  Do you know which juror it was, because

6   they're not raising the issue this morning?

7           MS. YUSI:  I might have looked at the second panel.

8   Oh, Your Honor, 95.  Is that on this panel?

9           THE COURT:  We don't have a 95 on this panel, do we?

10  Am I correct there is no 95?

11          THE CLERK:  Yes.

12          THE COURT:  Okay.  Any other question?

13          MR. GRINDROD:  You're asking about all of Panel A,

14  correct?

15          THE COURT:  Just this panel that's before us.

16          MR. GRINDROD:  Your Honor, we do have a few.  So

17  with just going in order, with respect to Juror 21, she is

18  the one who had the migraine, so we don't have to go back to

19  that if the Court is inclined to excuse her, but she also

20  indicated bias against financial advisors in Question 32 of

21  the juror questionnaire and, also, in Question 48 said she

22  might experience difficulty with unconscious bias.

23          THE COURT:  Well, the Court will come to the

24  question about the strikes, so you just hold onto that.

25          Any other question?

1          MR. GRINDROD:  Yes, Your Honor.  Juror 35 indicated
2     in the questionnaire that there might be issues about
3     weighing law enforcement testimony differently than a lay
4     witness but did not indicate that when the Court asked
5     orally, so I'm not sure why there was a difference there, but
6     I would ask the Court to inquire about that.
7          THE COURT:  Anything else?
8          MR. GRINDROD:  Yes, Your Honor.  Juror 39 indicated
9     on the form that the juror would put personal views -- or
10    base a verdict on personal views rather than the law if they
11    were in conflict and also -- that was in response to, I
12    believe it's Question 69.
13         And then in response to Question 52 on the
14    questionnaire, the juror said that she was unsure about -- or
15    that he was unsure about weighing law enforcement testimony
16    differently and wrote, quote, "Given experiences with my
17    father as a police officer, this is hard to honestly answer,"
18    but Juror 39 also did not -- he raised the fact that his
19    father is a police officer today but didn't answer
20    affirmatively to the Court's question about weighing law
21    enforcement testimony differently.
22         THE COURT:  As the Court recalls, Mr. Grindrod, that
23    juror was going backwards and forth about how you weigh it,
24    and the Court will simply leave it to counsel on dealing with
25    that on a peremptory strike.  The Court did question the

1   witness about that, and he said it was a difficult problem,

2   and I think he restated what he put in the questionnaire

3   about that.  So his opinions seem to be pretty firm about how

4   difficult it is to decide which way he's going.

5          MR. GRINDROD:  I don't think so, Your Honor.  That

6   colloquy was with -- your colloquy today was with a

7   combination of Juror 60, Juror 92, and Juror 126.

8          THE COURT:  So it was a different juror?

9          MR. GRINDROD:  Yes, Your Honor.

10          THE COURT:  That being the case, we'll bring up

11   Juror Number 39 and Juror Number 35, and we'll question those

12   two.

13          MR. GRINDROD:  Thank you, Your Honor.

14          The same issue with Juror Number 107.  Juror

15   Number 107 indicated on the form that there were some issues

16   with weighing law enforcement testimony but did not answer

17   affirmatively the Court's question today.

18          Sorry.  I jumped to the bottom of my form.

19          Juror Number 71, which the Court may already have

20   information about that juror that's sufficient to cause

21   strike but -- oh, I'm sorry.  You've already voir dired on

22   that.  I apologize, Your Honor.

23          88 indicated, Your Honor, that she was a victim of

24   fraud that was reported to the police, but we would ask that

25   the Court voir dire on how that might affect her service as a

1  juror in this case.

2        Juror Number 90 indicated that he served as a

3  sheriff's deputy, and he indicated that again today, but on

4  the form, Your Honor, when he was asked if he knew anyone who

5  had been falsely accused of a crime, he wrote, quote, "Every

6  inmate during my time as a deputy said that."  So we would

7  ask for some voir dire on how that might affect his service

8  as a juror.

9        Juror Number 92, Your Honor, answered that -- with

10 respect to the presumption of innocence, wrote "I would need

11 to know all the circumstances.  Sometimes the government does

12 not take effort to understand the circumstances," but didn't

13 indicate that -- or didn't just agree that the

14 presumption-of-innocence question would be followed.

15        Also indicated that the juror would have strong

16 feelings about financial advisors and so forth.  And then

17 indicated that, as to Question 69, she was unsure whether she

18 would base her verdict on personal views rather than the law

19 if they were in conflict.

20        MS. YUSI:  If I may?

21        THE COURT:  Wait a minute.

22        Yes, ma'am?

23        MS. YUSI:  Your Honor, if I may, a lot of these

24 things where they may have seemed wishy-washy on the

25 questionnaire, I believe that the Court has asked if they

1    have any biases or if there is any reason for them not to be

2    seated, so I understand voir diring a few of these people,

3    but in general, I don't think we need to ask them about every

4    single thing if they already answered your question about

5    whether or not they could sit and listen to the law and make

6    a fair judgment.

7          THE COURT:  Well, I have been listening at

8    Mr. Grindrod, and it's clear we would voir dire the jury in

9    here again, but I think the Court has asked them definitive

10   questions, and they have not given a response that they could

11   not be fair and impartial.

12         Now, some of them the Court will bring back up here,

13   but the Court is not going to bring every juror in here back

14   up here for further voir dire.

15         MR. GRINDROD:  Your Honor, I understand that.  I'm

16   not asking for that.

17         THE COURT:  You are close.

18         MR. GRINDROD:  Well, Your Honor, I think the reason

19   I'm asking for so much is because there is a great degree of

20   conflict between the oral non-responses that we heard today

21   when you compare that to the affirmative responses that the

22   jurors did give on the forms.

23         So when the juror affirmatively indicated in writing

24   some issue as to whether they would -- how they would decide

25   this case or whether they could do it unfairly and then

1   simply sat silently today, I think substantial weight should

2   be given to the individual written question that they filled

3   out under oath.

4           THE COURT:  All right.  The Court will go, to a

5   certain extent, and deal with that, Mr. Grindrod, and some of

6   them we'll call, and some of them the Court will not call

7   back, and you can strike them if you've got an issue with

8   them.

9           All right.  Bring up Juror Number 35.

10          Oh, I forgot.

11          MR. YAROW:  Juror Number 71, she identified in the

12  oral -- answering the oral -- answering your questions

13  today --

14          THE COURT:  Let's do something.  I hate to cut you

15  off, but is there a motion to strike Juror Number 71?  Is

16  there a motion to strike?

17          MS. O'BOYLE:  Yes, the government moves to strike

18  71.

19          THE COURT:  We can save that one.  That one is gone.

20  As a matter of fact, is there a motion to strike anybody

21  else?

22          MR. BOSSE:  Yes, Your Honor, the government moves to

23  strike Juror 106.  106 said he could not vote for guilt in

24  the case and indicated that on the form as well.

25          THE COURT:  106 is gone; 71 is gone.

1          Any others?

2          MS. YUSI:  Your Honor, the government moves to

3    strike 21, the woman that came up here and talked about her

4    medical issues with the cluster migraines.

5          THE COURT:  All right.  Any objection to striking

6    Juror Number 21?

7          MR. GRINDROD:  None from Mr. Smith, Your Honor.

8          MR. YAROW:  None from Mr. Alcorn, Your Honor.

9          THE COURT:  Juror Number 21 is stricken.

10         Any others?

11         MS. McCASLIN:  Your Honor, we do move to strike

12   Number 60.  She did indicate that her husband is a retired

13   police officer, she would believe the law enforcement officer

14   over other witnesses.

15         THE COURT:  Juror Number 60 is stricken.

16         MR. BOSSE:  No objection from the government.

17         MS. McCASLIN:  I also have the same objection for

18   Number 92.  She also indicated that she would listen to a law

19   enforcement officer.

20         THE COURT:  Was that 90 or 92?

21         MS. McCASLIN:  92.

22         MR. GRINDROD:  She's also the one with the vision

23   problems, Your Honor.

24         MS. YUSI:  Your Honor, I would say that she also

25   said that she would listen to all the evidence when you

```
 1    further inquired of her.  That was someone that you asked
 2    specific questions to.
 3           THE COURT:  92, the Court is going to overrule that.
 4    We're not going to strike her, not at this juncture.
 5           Yes, sir, Mr. Yarow?
 6           MR. YAROW:  There's one other juror, 126.  In her
 7    questionnaire, she said she believed law enforcement would be
 8    more credible than other witnesses.  Today, she answered --
 9    she did not respond to that question -- or a similar form of
10    that question.
11           THE COURT:  Okay.
12           MS. YUSI:  What number is that?  Number 126 is a
13    male.
14           MR. YAROW:  Dale?
15           MS. YUSI:  You were calling him "she."
16           MR. YAROW:  Oh, I'm sorry, "he."
17           MR. GRINDROD:  Your Honor, I think that was the
18    juror all the way in the back that you had the extended
19    colloquy with.
20           THE COURT:  All right.  Tell you what we're going to
21    do; that was Juror Number --
22           MS. YUSI:  126.
23           THE COURT:  Is there a motion to strike that juror?
24    No motion to strike that juror?
25           MR. GRINDROD:  We'll make the motion, Your Honor.
```

1        MR. BOSSE:  Your Honor, the government would oppose

2    that motion.  The Court had an extended colloquy in which it

3    was equivocal at best there was no indication that he would

4    affirmatively believe law enforcement or vice versa, hold it

5    firmly against law enforcement.  This is exactly the kind of

6    thing for a peremptory strike, if necessary.

7        MR. GRINDROD:  Your Honor, we have a constitutional

8    right to an impartial jury, but before we get peremptories,

9    if someone is equivocal about whether they can be fair, they

10   should not be serving on the jury.

11       MR. BOSSE:  I shouldn't have said "equivocal."  To

12   the extent that he didn't know that he could be fair, he

13   seemed pretty straightforward about that.  He said it was a

14   hard question, and if the Court wants to examine him further,

15   I didn't see that there was a firm basis for striking him

16   based on that answer.

17       THE COURT:  The Court is not going to question him

18   further, and the Court is not going to strike him.  We're

19   going to leave him right there.  If he appears on the panel,

20   somebody else can strike him.  One of you can strike him, but

21   the Court didn't see that it was something that was going to

22   cause an unconstitutional seating of a juror.  It's just not

23   the case.

24       MR. YAROW:  Your Honor, one more.  Juror Number 92,

25   you've overruled a motion to strike on her, but I don't think

```
1    it was brought up that she has vision problems, and there's a
2    lot of visuals in this case, and I'm not sure if she would be
3    able to see the monitor.  She said she had to have something
4    brought up and put in front of her face.
5              THE COURT:  Well, she said that she had to be within
6    certain feet of it, and the Court said that it would make
7    sure that she is in front of the monitor.  The monitor can be
8    right there within 5 to 6 feet of her if she's a juror,
9    because it's sitting right there where she can look right
10   into the screen.  And the letters and writing are even bigger
11   than what is on the paper, so that's why the Court did not
12   strike Number 92.
13             MR. GRINDROD:  Can I just put -- I understand the
14   Court's ruling.  Can I just put something on the record very
15   quickly on that?
16             I just would note that because of the COVID
17   distances involved here, she is going to be very, very far
18   from all of the witnesses in this case.
19             THE COURT:  She can be far from all the witnesses,
20   but she can be close to the monitor.
21             MR. GRINDROD:  I understand, Your Honor.
22             THE COURT:  All right.  Okay.  Let's do this:
23             I've written so many notes here, now I can't read my
24   own handwriting.  So I need help, is what it boils down to.
25             We're going to start with Number 88.  Bring Juror
```

1    Number 88 up.

2              (To the venire:)  Juror Number 88, if you would step

3    forward, please.

4              (Juror Number 88 entered the conference.)

5              THE COURT:  Ma'am, I believe somewhere on your

6    questionnaire or this morning you indicated you have been a

7    victim of fraud.

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  When was this?

10             PROSPECTIVE JUROR:  It was back in 20-, I believe,

11   '7 or '8.

12             THE COURT:  What was the nature of the fraud?

13             PROSPECTIVE JUROR:  It was construction fraud.

14             THE COURT:  In what sense were you a victim?

15             PROSPECTIVE JUROR:  We basically purchased carpeting

16   from someone, and he didn't provide the product, and he just

17   took our money and ran.

18             THE COURT:  Okay.  Did you ever get compensated for

19   that?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Now, because of that event, do you

22   believe that that event would cause you to be unable to

23   listen at the evidence in this case and render a verdict

24   that's fair and impartial based on the evidence?

25             PROSPECTIVE JUROR:  Not at all.

1          THE COURT:  You would not have a difficulty?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  Okay.  Thank you very much.  You may

4    step down.

5              (Juror Number 88 exited the conference.)

6          THE COURT:  (To the venire:)  Juror Number 35.

7              (Juror Number 35 entered the conference.)

8          THE COURT:  Mr. Grindrod, you wanted us to bring

9    Juror Number 35 back.  I don't recall what the question was.

10          MR. GRINDROD:  Your Honor, the question was about

11   weight to law enforcement testimony.

12          THE COURT:  All right, sir.  You are Juror

13   Number 35?

14          PROSPECTIVE JUROR:  Yes, sir.

15          THE COURT:  The Court asked a question of whether

16   any juror would be inclined to give more weight to a law

17   enforcement officer versus any other witness, more or less

18   testimony because that individual is a law enforcement

19   officer, and what is your response?

20          PROSPECTIVE JUROR:  I may have answered yes on the

21   questionnaire, but after thinking about it, after I -- I

22   think I can take it evenly, sir.  I would not weight it.  I

23   believe I -- I would not weight it.

24          THE COURT:  You would not weigh more or less to a

25   law enforcement officer?

```
 1              PROSPECTIVE JUROR:  That's correct.
 2              THE COURT:  Okay.  And you say you had a chance to
 3    think about it.
 4              PROSPECTIVE JUROR:  Yes, sir.  I mean, I did 22
 5    years in the Navy.  I spent a lot of time around DOD law
 6    enforcement.  But you have to take things at face value, and
 7    I believe I can do that.
 8              THE COURT:  Thank you very much.  Step down.
 9              (Juror Number 35 exited the conference.)
10              THE COURT:  (To the venire:)  Juror Number 39.
11              (Juror Number 39 entered the conference.)
12              THE COURT:  You are Juror Number 39?
13              PROSPECTIVE JUROR:  Yes, sir.
14              THE COURT:  Sir, in the instructions of the Court,
15    in order to reach a verdict, you're required to follow the
16    law as given to you by the Court as opposed to your personal
17    views.  What was your response to the requirement that you
18    follow the law as given by the Court?
19              PROSPECTIVE JUROR:  In the questionnaire?
20              THE COURT:  In the questionnaire and even today,
21    what is your view on following the law as instructed by the
22    Court as opposed to your personal view?
23              PROSPECTIVE JUROR:  I think it would be difficult, I
24    mean, frankly, but I'd do my best, especially as an attorney
25    or as someone who passed the Bar.  It's difficult to turn
```

1    that part of my brain off.  Does that make sense?

2              THE COURT:  What part of the brain is that?

3              PROSPECTIVE JUROR:  The part that has legal

4    knowledge and the son of a cop my whole life.

5              THE COURT:  And so you believe that your personal

6    view would be inserted into the evaluation of the guilt or

7    innocence?

8              PROSPECTIVE JUROR:  I would hope that's not the

9    case, but I think that's a very real possibility.

10             THE COURT:  You do understand that you are required

11   as a juror to deliberate based upon the facts you hear and

12   the law as given to you by the Court?

13             PROSPECTIVE JUROR:  Yes, Your Honor.

14             THE COURT:  And you are required to put aside your

15   personal view when it conflicts with the law.

16             PROSPECTIVE JUROR:  Absolutely.  Honestly, it's

17   somewhat of a, like, a conscious decision.  You know what I

18   mean?  I would do my best.

19             THE COURT:  All right.

20             MR. GRINDROD:  Your Honor, would the Court consider

21   asking about weight to law enforcement testimony

22   specifically?

23             THE COURT:  Oh, okay.  The Court also propounded a

24   question to all the jurors about whether you would give more

25   or less weight to the testimony of a law enforcement officer

 1 | because that individual is a law enforcement officer.  What
 2 | was your response to that question?
 3 | PROSPECTIVE JUROR:  My response would be I think
 4 | that I could apply equal weight.  I don't think I would be
 5 | any more or less likely to believe a law enforcement officer
 6 | over someone else's testimony just on the face of it.
 7 | THE COURT:  Okay.  Thank you.  Step down.
 8 | (Juror Number 39 exited the conference.)
 9 | MR. GRINDROD:  Your Honor, we have a motion.  Do you
10 | want to hear that now?
11 | THE COURT:  We'll just hold up a second.
12 | (To the venire:)  Juror Number 107.
13 | (Juror Number 107 entered the conference.)
14 | THE COURT:  The Court asked a question about whether
15 | any juror would be inclined to give more or less weight to
16 | the testimony of a law enforcement officer because the
17 | individual is a law enforcement officer.  What was your
18 | response?
19 | PROSPECTIVE JUROR:  I believe I said it depends -- I
20 | believe I said it depends.  If it was just because he was a
21 | law enforcement officer, then the answer is no.  If it was a
22 | law enforcement officer versus -- you know, whether it was a
23 | law enforcement officer's testimony versus that of a
24 | convicted felon's, then I would probably believe the law
25 | enforcement officer.

```
 1              THE COURT:  So if an individual is a convicted felon
 2    or something else involving that individual, you might go
 3    with the law enforcement officer?
 4              PROSPECTIVE JUROR:  Yes, sir.  But if it was just
 5    testimony from a law enforcement officer and it was just
 6    because he was a law enforcement officer, then the answer is
 7    no.
 8              THE COURT:  Okay.  So my understanding is you say
 9    there has to be other factors before you would just give
10    weight to the law enforcement officer?
11              PROSPECTIVE JUROR:  Yes, Your Honor.
12              THE COURT:  Step down.
13              PROSPECTIVE JUROR:  Thank you, sir.
14              MS. McCASLIN:  We do have --
15              THE COURT:  Wait a minute.  Stay right there.
16              MS. McCASLIN:  Your Honor, if the Court could
17    inquire, as she does say that she's a financial advisor, has
18    extensive knowledge in the industry and is an insurance
19    agent.  We just want to make sure that she could rule
20    according to the law and not her personal bias.
21              THE COURT:  Well, the concern is that you have some
22    knowledge as a financial planner and some background about
23    insurance, whether you would be able to listen at the law as
24    given to you by the Court and apply the law based on the
25    facts and the law in reaching your verdict in this case as
```

1    opposed to things maybe that you have learned over the years.

2              PROSPECTIVE JUROR:  I believe that -- I mean, I

3    believe I would be able to have an impartial understanding

4    of, you know -- at least follow the -- you know, hear the

5    evidence and make an impartial judgment that way.  I think --

6    yes, I do have a background in finance.  Obviously I do it

7    for a living.  So I think it would help me understand the

8    evidence.

9              THE COURT:  Okay.

10             PROSPECTIVE JUROR:  But I don't think that it would

11   have an impact on making a judgment.

12             THE COURT:  You may step down.

13             PROSPECTIVE JUROR:  Thank you.

14             (Juror Number 107 exited the conference.)

15             THE COURT:  By the Court's calculation, there's only

16   one other one that the Court hasn't called up here on the

17   list I was going down, and that was Number 90.

18             (To the venire:)  Number 90.

19             MR. BOSSE:  Your Honor, while the witness is coming

20   up, we would also ask for 95 to be questioned.  That was the

21   only one we had follow-up on.

22             THE COURT:  And what was 95 on?

23             MR. BOSSE:  95 had work-related travel and also

24   talked about some law enforcement issues.  We had multiple

25   issues that we wanted to follow up on.  That's the only one

1   we asked for.

2              THE COURT:  What was the law enforcement issue?

3              MR. BOSSE:  Trust issues with law enforcement due to

4   social media.

5              THE COURT:  Okay.

6              (Juror Number 90 entered the conference.)

7              THE COURT:  All right.  Are you Juror Number 90?

8              PROSPECTIVE JUROR:  Yes, Your Honor, I am.

9              THE COURT:  You had previously indicated that you

10  served as a sheriff's deputy; is that correct?

11             PROSPECTIVE JUROR:  Yes, Your Honor, but I did not

12  go through, like, the full training for it.

13             THE COURT:  Okay.  Now, with respect to -- I think

14  you made a comment about inmates -- all inmates say something

15  about being innocent; is that correct?

16             PROSPECTIVE JUROR:  Yes, sir, I did.

17             THE COURT:  Now, would the fact that you say you

18  heard all inmates say they're innocent affect your ability to

19  consider the evidence with respect to these defendants -- the

20  evidence and the law -- to reach a verdict that is impartial

21  and fair for them?

22             PROSPECTIVE JUROR:  No, Your Honor, it would not.

23  When I made the statement that as a sheriff's deputy as I

24  walked around, the inmates would sometimes tell me their

25  cases that they were facing, and the ones that I did talk to,

1    it wasn't in reference to all, you know, like I spoke to

2    everyone in the jail.

3          If I may speak freely, there was an incident where

4    my supervisor who was a sergeant happened to take down an

5    inmate, and she kicked him in the head.  That is not standard

6    procedure, so, therefore, I reported that.  So if you're

7    asking would it affect my ability, no, as a juror, no.

8          THE COURT:  Any other questions of this witness?

9          Step down.

10         (Juror Number 90 exited the conference.)

11         THE COURT:  (To the venire:)  Juror Number 95.

12         (Juror Number 95 entered the conference.)

13         THE COURT:  You are Juror Number 95?

14         PROSPECTIVE JUROR:  Yes, sir.

15         THE COURT:  Now, with respect to looking at your

16   questionnaire, do you have any issue regarding travel that

17   conflicts with your ability to serve on this jury?

18         PROSPECTIVE JUROR:  Yes, sir.  I go out of town for

19   training.

20         THE COURT:  When?

21         PROSPECTIVE JUROR:  I just went out of town.  I

22   don't know when my next schedule will be.

23         THE COURT:  So it could be after the trial ends?

24         PROSPECTIVE JUROR:  It could be.  I'm not sure yet.

25         THE COURT:  Okay.  And what was the second question

1    that you had?

2          MR. BOSSE:  Your Honor, there are two others.  One

3    is a note about trust issues with law enforcement, and the

4    other one is discomfort with being a juror in a big case.

5          THE COURT:  Okay.

6          Ma'am, we may have law enforcement officers

7    testifying in this case.  Do you have a problem with law

8    enforcement officers testifying, that is, the ability to

9    trust what they say?

10         PROSPECTIVE JUROR:  Yes, I do.

11         THE COURT:  What does this stem from?

12         PROSPECTIVE JUROR:  It stems from everything I've

13   seen in the social media.  I was --

14         THE COURT:  You what now?

15         PROSPECTIVE JUROR:  Everything I've seen in social

16   media.  I'm sorry.

17         THE COURT:  So what you're seeing in social media

18   causes you to just distrust law enforcement officers?

19         PROSPECTIVE JUROR:  Yes, sir.

20         THE COURT:  So what you're telling the Court is that

21   you don't believe that you could listen at the testimony of a

22   law enforcement officer in this case and trust what they say?

23         PROSPECTIVE JUROR:  Yes, sir.

24         THE COURT:  Okay.  You may return to your seat.  You

25   are not excused, however.  You can return to your seat.

```
1              PROSPECTIVE JUROR:  I actually do have a comment.  I
2    didn't know whether it pertained to this case.  I used to
3    work for a hospice company which serviced a family of Alcorns
4    here in Virginia Beach.  I had just remembered this.
5              THE COURT:  I don't think that's the same family.
6              PROSPECTIVE JUROR:  Okay.
7              (Juror Number 95 exited the conference.)
8              THE COURT:  Okay.  Counsel, the Court believes
9    that's the last juror to be called up, so what we're going to
10   do is, I think there are some more issues regarding strikes.
11   I would like to hear which those are.
12             MS. YUSI:  Your Honor, the government would move to
13   strike 95, which is the young woman that was just up here,
14   for her inability to listen to law enforcement with an open
15   mind.
16             THE COURT:  Hearing no opposition, the Court strikes
17   number 95.
18             MS. McCASLIN:  Your Honor, we would move to strike
19   Number 39, ██████████.  He was fairly clear that there was a
20   real possibility that he was going to base his verdict on
21   personal views.  He said he would try to base it on the law,
22   but he said that based on his personal knowledge of the law
23   and his background with his father as a police officer, that
24   basing it on his personal views is a real possibility.
25             MR. BOSSE:  The government has no objection to
```

1    striking 39.

2            THE COURT:  39 is stricken.

3            Okay.  All right, then.  That's it.  She'll review

4    the strikes we made.

5            THE CLERK:  Juror Number 21, Juror Number 39, Juror

6    Number 60, Juror Number 71, Juror Number 95, Juror

7    Number 106.

8            THE COURT:  Okay.  All right.  What we're going to

9    do is, we're going to start taking -- wait a minute.  It's

10   now 12:05.  Does anyone need a break before we take these

11   strikes?  If not, we'll go on and take the strikes.

12           MS. YUSI:  If we could have a small break, Your

13   Honor.

14           THE COURT:  Okay.  We're going to take about a

15   ten-minute recess here before we get started.  I'll let the

16   jurors know and let them stay right in place unless they need

17   to go to a restroom.  All right.

18           (The sidebar conference was concluded.)

19           THE COURT:  Ladies and gentlemen, momentarily we

20   will begin to do what's called peremptory strikes, but we're

21   going to take a ten-minute break.

22           While the Court is taking a ten-minute break, you

23   are to say here unless you have a need to use the restroom.

24   If so, the court security officer will direct you to the

25   restroom.  Otherwise, we want you to sit quietly there during

```
1    the ten-minute break.

2              (Recess from 12:04 p.m. to 12:17 p.m.)

3              THE COURT:  Ladies and gentlemen, we are ready to

4    begin the jury selection process.  You will see a board going

5    backwards and forward between the counsel here, and they will

6    be taking their peremptory strikes.  At the end of that

7    process, we will know who will be serving as jurors in this

8    case.

9              It's a possibility that you will be notified when

10   you are to come back.  It may be tomorrow morning, but not

11   today.  The Court will give you specific instructions at the

12   end of this process.

13             Okay.

14             (Pause in the proceedings.)

15             MR. GRINDROD:  Your Honor, can I confer with

16   counsel?

17             THE COURT:  You may confer with counsel.

18             (Pause in the proceedings.)

19             THE COURT:  Ladies and gentlemen, while you're

20   sitting there waiting for these strikes to be made, let me

21   tell you a little something about this court.

22             This building was built in 1933, and over the years,

23   it has been renovated to accommodate 11 federal courtrooms in

24   this building.  The United States Post Office that was in

25   here has been moved over to the corner of Church Street and
```

1   Brambleton Avenue.  It was here for years.

2           This is one of the courts in the Eastern District of

3   Virginia.  We have a division in Newport News, Richmond, and

4   Alexandria.  We're in the Eastern District of Virginia.

5   Virginia is split right down the middle.  The Western

6   District of Virginia has federal courts in Roanoke,

7   Charlottesville, Lynchburg, and a number of other cities in

8   the Western District of Virginia.

9           To give you some history about the United States,

10  every state has federal courts.  They either have one or two

11  divisions, either a western and a southern, or they might

12  have four divisions; north, east, west, south.

13          But under our Constitution, there is a federal court

14  system.  You are in one of the trial courts.  This is the

15  first tier of the federal court system.  When cases leave

16  here, some of them want to appeal some decision made in this

17  court, they go to one of the courts of appeals.

18          There are 11 circuits.  The country is divided into

19  11 divisions.  So you have circuit courts.  We're in the

20  Fourth Circuit, which means all appeals from courts in South

21  Carolina, North Carolina, Virginia, and West Virginia go to

22  the Fourth Circuit.  Down in the Eleventh Circuit, you have

23  Alabama, Mississippi, and Texas.  They would be in another

24  circuit.  So the Courts are divided that way.

25          When they are dissatisfied with what happens in the

1   circuit court, which is the second level, the last place they

2   can go is to the Supreme Court of the United States, where

3   you have nine justices there.  And so that's the way the

4   system works.  It's like a pyramid.  It starts here, then the

5   next level, and the last level is the Supreme Court of the

6   United States.

7       All federal judges are appointed for life under our

8   Constitution.  They are nominated by United States Senators

9   to the President.  The President makes a recommendation to

10  the Senate.  When they are approved, they are appointed for

11  life.  They can only be removed by the United States

12  Congress, a vote of both houses, for a commission of a

13  felony.  Otherwise, there is no control over federal judges.

14      Now, this system differs from what you see in the

15  state system.  In the state of Virginia, judges are elected

16  for either a six-year term or an eight-year term.  Every six

17  years or eight years, they go back to the state legislature

18  in Richmond to be reappointed.  We do not go back for

19  reappointment.  Those judges in the state address matters

20  occurring in the Commonwealth of Virginia.

21      In federal court, we handle matters occurring across

22  the United States, across the world if an American citizen or

23  an American corporation is involved and they want to bring

24  that matter back to America, it's handled here.  We also

25  handle matters arising in the territories of the

1     United States, out of the Virgin Islands and other

2     territories of the United States.

3            So in a nutshell, the litigation comes from

4     everywhere.  That's why you will find in this case a lot of

5     things arising from what happened in California, Arizona,

6     other places, but if any of it happened in the Eastern

7     District of Virginia, this Court has jurisdiction, just as a

8     court in California or Arizona could have had this case.

9     Sometimes it just depends on who gets to it first.  So that's

10    just a brief note about your federal court system.

11           All courts are public.  You are paying for those

12    seats.  A lot of times they are empty.  People look at Judge

13    Judy and all the rest of those judge shows.  They don't know

14    what they're talking about most of the time.  I'm just

15    telling you.  That is entertainment.  It doesn't happen.

16    Some of the things that you see the judges do there will get

17    them bounced off the bench in reality.

18           So you are free to come back any time.  If you just

19    want to come in here, you don't have to have any business in

20    here.  When I say "business," you don't have to be a part of

21    anything happening.  You can come in and sit back there.

22    Seldom do we close the Court.  It has to be an unusual matter

23    to close the Court.  It just doesn't happen that frequently.

24    It's very infrequently we close a court.  I've been here

25    nearly 30 years.  I don't ever remember closing a court in

1    the last 29 and a half years.  I've been in this courtroom

2    for about 18 years.  So you are welcome to return whether you

3    are selected as a juror or not.  And you can go to any

4    courtroom in this building.  You might not want to show up in

5    COVID times, but otherwise, feel free to return.

6            And that's the same in every court in the

7    United States, whether you're visiting Florida, Minnesota, or

8    Utah.  It's the same process.  In fact, we follow the same

9    rules of procedure.  Whether you're in Utah or Mississippi,

10   we follow the same rules of procedure.

11           So what you are doing here today occurs every day

12   somewhere in a federal court in America, the same process,

13   same procedure.  We are bound by the same rules.  We've got

14   these little manuals back here.  They go the same direction

15   on everything.  So that's it in a nutshell.

16           (Pause in the proceedings.)

17           THE CLERK:  The following jurors have been selected

18   for trial:  As your number is called, will you please stand

19   and remain standing.

20           Juror Number 23, Juror Number 38, Juror Number 43,

21   Juror Number 90, Juror Number 117, Juror Number 118, Juror

22   Number 123, Juror Number 136.

23           THE COURT:  Ladies and gentlemen, you may be seated.

24           Now, ladies and gentlemen, eight of you have been

25   selected for service in this case.  You will get a call to

1    let you know when you are to return here.  We will still be

2    conducting jury selection this afternoon.  As I said, we need

3    a total of 18.  So we will still be selecting jurors this

4    afternoon.  Those of you who have not been selected, you are

5    excused.

6           You have to call the juror line -- that's what you

7    have to do -- to determine when you are to return here, those

8    who have been selected.

9           Also, change back into your regular masks.  You can

10   take off the clear masks.  Leave the clear masks right there

11   on the seats, and you put the regular masks back on.  And you

12   will wear them in the building, and you will wear them when

13   you return.  You only wore the clear mask during jury

14   selection.

15          So that's it.  You are all excused.  Those eight who

16   have been selected, please check the juror line so you know

17   when you are to return here.  The balance of the persons not

18   selected, thank you for coming.  You are free, as I said, to

19   stick around when the trial starts to see what a trial is

20   like.

21          (The venire, Jury Panel A, exited.)

22          THE COURT:  We will be in recess until 2:00 p.m.

23   when we return here with another panel.

24          (Recess from 1:00 p.m. to 2:06 p.m.)

25          (The venire, Jury Panel B, is present in the

1   courtroom.)

2          THE CLERK:  United States of America vs. David

3   Alcorn and Aghee William Smith II in Criminal Action

4   2:19cr47.

5          Ms. O'Boyle, is the government ready to proceed?

6          MS. O'BOYLE:  The United States is ready.  Good

7   afternoon, Your Honor.

8          THE COURT:  Good afternoon.

9          THE CLERK:  Mr. Yarow, is Mr. Alcorn ready to

10  proceed?

11         MR. YAROW:  Mr. Alcorn is ready, Your Honor.

12         THE COURT:  Good afternoon.

13         THE CLERK:  Ms. McCaslin, is Mr. Smith ready to

14  proceed?

15         MS. McCASLIN:  He is.  Good afternoon, Your Honor.

16         THE CLERK:  Members of Jury Panel B, when I call

17  your number, would you please stand and answer "present."

18  Please remain standing until the next number is called and

19  then be seated.

20         Juror Number 5.

21         PROSPECTIVE JUROR:  Present.

22         THE CLERK:  Juror Number 7.

23         PROSPECTIVE JUROR:  Present.

24         THE CLERK:  Juror Number 9.

25         PROSPECTIVE JUROR:  Present.

```
 1              THE CLERK:  Juror Number 10.

 2              PROSPECTIVE JUROR:  Present.

 3              THE COURT:  Juror Number 11.

 4              PROSPECTIVE JUROR:  Present.

 5              THE CLERK:  Juror Number 17.

 6              PROSPECTIVE JUROR:  Present.

 7              THE CLERK:  Juror Number 26.

 8              PROSPECTIVE JUROR:  Present.

 9              THE CLERK:  Juror Number 28.

10              PROSPECTIVE JUROR:  Present.

11              THE CLERK:  Juror Number 33.

12              PROSPECTIVE JUROR:  Present.

13              THE CLERK:  Juror Number 42.

14              PROSPECTIVE JUROR:  Present.

15              THE CLERK:  Juror Number 50.

16              PROSPECTIVE JUROR:  Present.

17              THE CLERK:  Juror Number 53.

18              PROSPECTIVE JUROR:  Present.

19              THE CLERK:  Juror Number 62.

20              PROSPECTIVE JUROR:  Present.

21              THE CLERK:  Juror Number 72.

22              PROSPECTIVE JUROR:  Present.

23              THE CLERK:  Juror Number 73.

24              PROSPECTIVE JUROR:  Present.

25              THE CLERK:  Juror Number 74.
```

```
 1              PROSPECTIVE JUROR:  Present.

 2              THE CLERK:  Juror Number 79.

 3              PROSPECTIVE JUROR:  Present.

 4              THE CLERK:  Juror Number 84.

 5              PROSPECTIVE JUROR:  Present.

 6              THE CLERK:  Juror Number 112.

 7              PROSPECTIVE JUROR:  Present.

 8              THE CLERK:  Juror Number 115.

 9              PROSPECTIVE JUROR:  Present.

10              THE CLERK:  Juror Number 134.

11              PROSPECTIVE JUROR:  Present.

12              THE CLERK:  Juror Number 152.

13              PROSPECTIVE JUROR:  Present.

14              THE CLERK:  Juror Number 154.

15              PROSPECTIVE JUROR:  Present.

16              THE CLERK:  Are there any jurors present whose

17   number I have not called?

18              There are 23 jurors present, Your Honor.

19              Members of the jury, will you please stand and raise

20   your right hand to be sworn.

21              You shall true and perfect answer make to such

22   questions that may be propounded to you by the Court or

23   counsel, so help you God?

24              THE VENIRE:  (Answered in the affirmative.)

25              (The venire, Jury Panel B, was duly sworn.)
```

1          THE COURT:  Good afternoon, ladies and gentlemen.

2     I'd like to welcome you to federal court.  You are here this

3     afternoon to be considered for a trial, a criminal case.

4     It's expected to last approximately four weeks, as you were

5     informed during your jury questionnaire.

6          In this case, the defendants, Mr. David Alcorn and

7     Mr. Aghee Smith, are charged with a series of offenses.  I

8     will introduce you to the defendants and their counsel and to

9     the United States Attorneys who will be trying this case.

10          First, with respect to Mr. David Alcorn --

11     Mr. Alcorn, will you please stand -- and his counsel,

12     Mr. Richard Yarow of Norfolk.  Mr. Alcorn is charged with

13     conspiracy to commit mail fraud, wire fraud, and engaging in

14     unlawful monetary transactions.

15          Mr. Aghee Smith, if you will please stand.

16          Mr. Smith is charged with conspiracy to commit mail

17     fraud, mail and wire fraud, and wire fraud.  He's represented

18     by Attorney Lindsay McCaslin and Attorney Andrew Grindrod of

19     the Federal Public Defender's Office.

20          Thank you.  You may have a seat.

21          I've given you the names of the parties, the

22     defendants, and the counsel who represent them.  I want you

23     to remember that because I will ask you further questions

24     about them in a few minutes.

25          We're now ready to begin the jury selection process.

1  A jury in a criminal case, ladies and gentlemen, consists of

2  12 qualified persons.  In addition to the 12 qualified jurors

3  selected today, the Court will select six additional jurors

4  or alternate jurors.

5         The alternate jurors selected will sit with the

6  jury, will have the same duties and obligations as other

7  jurors, but an alternate juror who does not replace a juror

8  prior to the jury retiring to deliberate will be discharged

9  and may not participate in the deliberations.  In summary, we

10  will select 18 jurors.  We're doing this because we're in the

11  middle of a pandemic.

12         The parties have a right, ladies and gentlemen, to

13  be tried by a qualified and fair and impartial jury panel,

14  and a qualified and impartial jury panel is one which is

15  responsible and capable and which will, without fear, favor,

16  bias, prejudice, sympathy, or passion, objectively hear and

17  decide the issues to be tried and render its verdict based

18  solely upon the facts of the case and instructions of law as

19  given to you by the Court.

20         Your qualifications and your impartiality may not be

21  assumed without some questioning or inquiry.  This inquiry

22  we're about to make is a time-honored process called the voir

23  dire examination, which serves to seek to determine your

24  qualifications and impartiality.  The purpose of it is also

25  to develop the truth about your competency, your frame of

1    mind, and your ability to abide by the oath you just took a

2    few minutes ago.  Your answers will assist the Court in

3    determining whether you need to be excused based upon the

4    Court's determination or on the motion of a party.

5            Your answers will also allow counsel to make

6    intelligent use of their strikes or peremptory challenges.  A

7    peremptory challenge is nothing more than an opportunity that

8    the law gives a defendant in a case to excuse a juror without

9    assigning a specific cause for it.

10           So it's important that your answers to the Court's

11   questions be complete and truthful.  Each of you is under a

12   compulsion to answer or disclose, upon a general question,

13   any and all matters which might tend to disqualify you for

14   any reason from sitting in this jury.

15           So while the sweep of my questions may be broad, the

16   Court wants you to conscientiously and honestly process those

17   questions as asked and to answer them as fully as possible.

18   I tell you that false or misleading answers could result in

19   someone being seated as a juror who should not be here.  That

20   leads to a miscarriage of justice, and we're going to avoid

21   that in this case.

22           Do not wait until you have been selected as a juror

23   to raise something that you should raise now.  The Court has

24   seen that happen many times, and it does not work out well

25   for the juror.  So keep that in mind.

1            I will address you, as I said, in a general fashion,

2   but what I want you to do is think about every single

3   question.  I will not assume anything in asking the questions

4   of you.

5            So I ask you, as the first question, can each of you

6   read, write, and speak the English language without any

7   difficulty?

8            You don't have to answer.  If you don't stand up and

9   state your name, then I assume your answer is yes.

10           Now, when you respond to my questions, always stand

11  up and state your name first -- not your name, I'm sorry,

12  your juror number, always your juror number first.

13           Are any of you suffering from any physical problem,

14  medical problem, which would make it difficult for you to sit

15  as a juror in this case?

16           Now, I told you what the defendants in this case

17  were charged with.  These charges the conspiracy alleges took

18  place between January 2011 and 2014 here in the Eastern

19  District of Virginia, and in the indictment, there are other

20  charges that took place between 2011 and 2017.

21           The witnesses in this case come from various places

22  around the country, some from this area and other places in

23  the country.

24           Now, when I get to specific parts of my inquiry, I

25  want you to listen carefully to determine whether you know

```
 1    any of the witnesses who may be involved in this case.

 2            Have any of you heard anything about this case from

 3    any source, you believe, from any person, any source?

 4            Has any member of this panel had an opportunity to

 5    serve on a jury before, whether it be a grand jury or a trial

 6    jury?  If so, when and where?

 7            THE COURT:  Stand up and state your name -- I mean

 8    your juror number.

 9            PROSPECTIVE JUROR:  52.

10            THE COURT:  Where did you serve?

11            PROSPECTIVE JUROR:  State of New Jersey.

12            THE COURT:  What type of case was it?

13            PROSPECTIVE JUROR:  Grand jury.

14            THE COURT:  You were on a grand jury.  Okay.  Thank

15    you very much.

16            Juror Number?

17            PROSPECTIVE JUROR:  72.  Virginia Beach, civil.

18            THE COURT:  How long ago was that?

19            PROSPECTIVE JUROR:  I don't know.  Like, 20 years

20    ago.

21            THE COURT:  In the back.

22            PROSPECTIVE JUROR:  Juror Number 154.  Norfolk grand

23    jury.

24            THE COURT:  City of Norfolk?

25            PROSPECTIVE JUROR:  Yes.
```

```
1              THE COURT:  When was this?

2              PROSPECTIVE JUROR:  2014.

3              THE COURT:  Okay.

4              Yes?

5              PROSPECTIVE JUROR:  42.  Chesapeake.  It was a

6    civil.

7              THE COURT:  And when was it?

8              PROSPECTIVE JUROR:  2004.

9              THE COURT:  Thank you.

10             PROSPECTIVE JUROR:  115.  I was an alternate

11   court-martial panel member in approximately 2006.

12             THE COURT:  Thank you.

13             A follow-up question:  Was there anything about your

14   service that causes you to be unable to render a fair and

15   impartial verdict in this case based upon the facts and

16   instructions given to you by the Court?

17             Now, are any of you, to your knowledge, related by

18   blood or marriage to any of the defendants, the two

19   defendants in this case?

20             Have any of you had any type of personal or

21   professional relationship with any of the attorneys in the

22   case?

23             Wait a minute.  I failed to introduce the

24   United States Attorneys in this case.

25             Representing the United States is Assistant
```

1    United States Attorney Andrew Bosse -- drop your mask --

2    Assistant U.S. Attorney Elizabeth Yusi, Assistant

3    United States Attorney Melissa O'Boyle.

4           Also with them are two FBI agents, and I don't

5    recall the names, so please stand up and take your mask off

6    and state your name.

7           MS. O'BOYLE:  Yes, sir.  We have Special Agent

8    Jennifer Collins of the FBI; we have Special Agent Julie

9    Shields Powell with the FBI; we also have IRS Special Agent

10   Andy Bowers; and U.S. Postal Inspection Service Agent Jason

11   Thomasson.

12          THE COURT:  And there is also, Ms. McCaslin, a

13   paralegal that you have with you.

14          MS. McCASLIN:  We have Susan Harrison Jones.  She's

15   an investigator.

16          THE COURT:  Okay.  Thank you very much.

17          Now, so the question was whether you had had any

18   professional or personal relationship with any of the counsel

19   or the agents and paralegals and support staff that they have

20   here in the courtroom.

21          Do any of you have any kind of relationship,

22   personal or professional, with other juror members?  Do you

23   attend the same church, live in the same neighborhood?  Or

24   are you related in any way?  In other words, do you know each

25   other from someplace?

1          Okay.  Ladies and gentlemen, have you or any member

2    of your immediate family ever been a victim of fraud?

3          PROSPECTIVE JUROR:  Juror Number 62.  My

4    father-in-law, I imagine, 30 years ago, maybe 40 years ago.

5          THE COURT:  What type of fraud?  What type of fraud,

6    if any, was he a victim of?

7          PROSPECTIVE JUROR:  I really don't know.  I wasn't

8    married at that time.  It was before my marriage.  So I

9    really don't know all the details.  I do know he was in

10   prison for it, but I think he was let out because his oldest

11   daughter died.

12         THE COURT:  Thank you very much.

13         PROSPECTIVE JUROR:  Juror Number 11.  Personal

14   victim of credit card fraud.

15         THE COURT:  Did you ever get any relief from that

16   credit card fraud?

17         PROSPECTIVE JUROR:  Yeah.  I was -- the credit card

18   company took care of just about all of it.

19         PROSPECTIVE JUROR:  Juror Number 72.  My identity

20   was stolen through credit card fraud.  That was approximately

21   three years ago.

22         THE COURT:  Okay.  Thank you.

23         PROSPECTIVE JUROR:  152.  Credit card fraud.

24         THE COURT:  How was that resolved?

25         PROSPECTIVE JUROR:  Navy Federal handled it from

```
 1   there.  They eliminated the charges from the account.
 2              THE COURT:  Thank you.
 3              Juror Number?
 4              PROSPECTIVE JUROR:  33.  My husband was a victim of
 5   fraud too.
 6              THE COURT:  Your husband -- what?
 7              PROSPECTIVE JUROR:  When he went to buy a car --
 8              THE COURT:  State it again.  Keep your voice up.
 9   Speak slowly and clearly.  Your husband was what?
10              PROSPECTIVE JUROR:  My husband.
11              THE COURT:  He was a victim of fraud?
12              PROSPECTIVE JUROR:  Yes.
13              THE COURT:  In what way?
14              PROSPECTIVE JUROR:  When he went to buy a car.
15              THE COURT:  How was he defrauded?
16              PROSPECTIVE JUROR:  The information was given to
17   another person who used his information to buy a car.
18              THE COURT:  Okay.  Are there any others?
19              Five of you have indicated you have some
20   recollection of fraud or victims of fraud or relatives of
21   victims of fraud.  What the Court wants to know is whether
22   these experiences in any way makes it impossible or difficult
23   for you to sit in this jury case and to reach a verdict
24   that's fair and impartial based upon the law and the facts
25   you hear in this courtroom?
```

1          Have any of you been employed in a law enforcement

2     capacity or have an immediate relative employed in a law

3     enforcement capacity?  I'm talking about a child, a spouse,

4     et cetera.

5          PROSPECTIVE JUROR:  62.  My husband was a

6     correctional officer.

7          THE COURT:  Was a what officer?

8          PROSPECTIVE JUROR:  Correctional officer.

9          THE COURT:  Where?

10         PROSPECTIVE JUROR:  State of New Jersey.

11         THE COURT:  Thank you.

12         PROSPECTIVE JUROR:  74.  I was a deputy for the City

13    of Chesapeake as Auxiliary.

14         THE COURT:  I didn't understand the last part.  You

15    were a deputy for the City of Chesapeake?

16         PROSPECTIVE JUROR:  Auxiliary corps.

17         THE COURT:  Okay.

18         PROSPECTIVE JUROR:  152.  My husband is a retired

19    lieutenant from the City of Portsmouth, Virginia.

20         THE COURT:  Repeat that again.  Your husband is

21    retired from where?

22         PROSPECTIVE JUROR:  Portsmouth, Virginia.

23    Lieutenant.

24         THE COURT:  Was that in the police department or

25    sheriff's department?

```
 1              PROSPECTIVE JUROR:  Police department.

 2              THE COURT:  Yes, sir?

 3              PROSPECTIVE JUROR:  Juror Number 11.  I was a

 4    medical examiner, and my mother-in-law, who lives with me, is

 5    a corrections nurse and was a corrections officer before

 6    then.

 7              THE COURT:  Thank you.

 8              Yes, sir?

 9              PROSPECTIVE JUROR:  Your Honor, 115.  My brother is

10    a deputy sheriff in Nassau County, Florida, and I'm a retired

11    special agent with United States Army Counterintelligence.  I

12    exercise normal judicial authority under UCMJ while

13    commanding officer.

14              THE COURT:  You're going to have to restate it again

15    slowly.

16              PROSPECTIVE JUROR:  Yes, sir.  My brother is a

17    deputy sheriff in Nassau County, Florida.  I'm a retired army

18    officer.  I exercise normal judicial authority under UCMJ

19    while commanding officer.  And I am also a special agent

20    retired from U.S. Army Counterintelligence.

21              THE COURT:  Thank you, sir.

22              Number 154?

23              PROSPECTIVE JUROR:  Yes.

24              THE COURT:  You wanted to restate something?

25              PROSPECTIVE JUROR:  No.  I was responding to the
```

Carol L. Naughton, Official Court Reporter

1   question.

2         THE COURT:  I thought we had reached you before, but

3   go on.

4         PROSPECTIVE JUROR:  So I have a brother that he's no

5   longer working in the Norfolk Police Department, but he used

6   to work for drug enforcement.

7         THE COURT:  Worked for whom?

8         PROSPECTIVE JUROR:  Norfolk Police Department.

9         (Pause in the proceedings.)

10         THE COURT:  What we're going to do is, I think we're

11   going to have to bring a microphone out there.  We heard you,

12   sir, the last one.  Let's just hold up and see if we have the

13   problem again.

14         Would any of you give more or less weight to the

15   testimony of a law enforcement officer than the testimony of

16   any other witness because that individual is a law

17   enforcement officer?  Would you give more or less weight to

18   the testimony of a witness because that witness -- solely

19   because that witness is a law enforcement officer?

20         Juror Number?

21         PROSPECTIVE JUROR:  62.  And I would probably give

22   more to the law enforcement officer.

23         THE COURT:  You would give more.

24         PROSPECTIVE JUROR:  152.  I would give more.

25         THE COURT:  Thank you.

1              PROSPECTIVE JUROR:  74.  I would probably, depending

2     on the situation and statement being given.

3              THE COURT:  Repeat that again.

4              PROSPECTIVE JUROR:  It depends on the statement

5     being given.

6              THE COURT:  Depending upon the statement being

7     given?

8              PROSPECTIVE JUROR:  Correct, sir.

9              THE COURT:  All right.  Thank you very much.

10             There are certain principles of law that pertain to

11    the trial of a criminal case and to a defendant in a criminal

12    case.  Each defendant it presumed to be innocent until proven

13    guilty beyond a reasonable doubt.  Is there anyone who

14    disagrees with this principle of law?

15             Secondly, the United States, through the

16    United States Attorneys that are sitting here, is required to

17    prove each defendant's guilt beyond a reasonable doubt.  Is

18    there anyone who disagrees with this principle?

19             Thirdly, this is a criminal case.  The defendant is

20    not required to prove his innocence.  A defendant is not

21    required to present any evidence, not even to cross-examine a

22    witness.  Is there anyone who disagree was this principle of

23    law?

24             A defendant has a constitutional right to remain

25    silent, that is, not to testify, because the government has

1    the burden of proof beyond a reasonable doubt.  Is there

2    anyone who disagrees with this principle of law?

3          Do you or any member of your family belong to any

4    group or organization which advocates for the reform or the

5    repeal of certain criminal laws?

6          Do any of you belong to any support organization for

7    the criminal justice system?

8          Do any of you belong to any organizations that

9    oppose the criminal justice system?

10          Do any of you have a moral or religious or ethical

11    belief that would make it difficult for you to sit as a juror

12    in this case?

13          PROSPECTIVE JUROR:  Number 10.

14          THE COURT:  Raise your voice.

15          PROSPECTIVE JUROR:  I'm Number 10.  I want to be

16    excluded.  I am having a hard time judging.  I'm Catholic,

17    and I'm having a hard time judging.  And right now, I'm

18    nervous in the courtroom.

19          THE COURT:  You are having a hard time judging?

20          PROSPECTIVE JUROR:  Passing judgment.

21          THE COURT:  Thank you very much.

22          Go back to Number 10 for a second, please.  Go back

23    to the microphone.  In other words, take it back.

24          Did you indicate on your questionnaire that you had

25    a hard time judging people?

1          PROSPECTIVE JUROR:  I did.

2          THE COURT:  Okay.  Thank you very much.

3          Ladies and gentlemen, the Court has been going

4     through a series of questions just trying to determine your

5     state of mind, your frame of mind, and et cetera, but you

6     took an oath.  Do you know of any reason why you think that

7     you could not sit in this case and render a just, honest,

8     fair, and impartial verdict?

9          PROSPECTIVE JUROR:  Juror Number 28.

10         THE COURT:  By the way, I didn't give you this

11    precaution.  In responding to the Court's questions, I want

12    to make sure you don't say anything that will adversely

13    affect the ability of other jurors to serve.

14         Now, what were you going to say?

15         PROSPECTIVE JUROR:  Juror Number 28.  I did put on

16    my questionnaire that my father has cancer, and I didn't know

17    if I was going to have to take him to a treatment, and I

18    wouldn't know till February, and it's looking like I'm going

19    to end up having to take him to that treatment, and I think

20    it's on February 14th.

21         THE COURT:  Thank you very much for bringing that to

22    our attention.

23         Yes, sir?

24         PROSPECTIVE JUROR:  73.  I started class after the

25    questionnaire, and I got a syllabus, and so I have an exam in

1   the middle of February.  It's one of three days I have to

2   pick.  It's proctored, and I can't reschedule it.  And so I

3   couldn't put that on the questionnaire because I didn't have

4   the syllabus yet.

5         And, also, my girlfriend needs a ride to get

6   cortisone shots in her spine, and that also was scheduled

7   after the questionnaire.  I have the dates written down here.

8         THE COURT:  Thank you.

9         Ladies and gentlemen, we're going to go through a

10  series of names here.  I want you to listen very carefully

11  just in case you know some of these witnesses, and if you're

12  not sure, we'll have counsel to follow up with details to

13  help you determine whether you really know the witness or

14  not.

15        Charlotte Annas, Teresa Austin, Brian Avery, Teresa

16  Avery, Margaret Babich, Thomas L. Barnett, Debra Barry, J.

17  Michael Barry, Peggy Barry, Alan Baskin, Coleman Bazelon,

18  Sharyon Bean.  That Sharyon is spelled S-h-a-r-y-o-n Bean.

19        Wilfried Berndt, Bonnie Berndt, Bob Barnett, Ryan

20  Braley, Denise Brown, Jeff Browne, Teresa Busch, Richard

21  Busch, Gary Clapper, Daryl Clark, Ruth Clark, Roger Courson,

22  Susan Courson.  That's spelled C-o-u-r-s-o-n.

23        George Cushman, Nathaniel Dodson, Tuesday Douglas,

24  L. Doug Dunn, Rosie Eads, Joe Tottossy, Jeff Eschrich --

25  that's E-s-c-h-r-i-c-h -- Constance Flammang, Matthew Fowles,

1  Jere Friedman, Raelene Gastman, Nicholas Gentile, Kyle Gerek,

2  Carol Groff, Sunshine Grissom, Andrew Gulcher, Vanaleen

3  Hatfield.

4          Laura Hudson, Vera Hullum, Kimberly Husted, David

5  Idigpio, Debra Jenkins, Jacob Kurtz, Heather Larson, Edward

6  Lichtig, Michael Lindauer, Justin Lira, Lawrence Lyon, Allain

7  Martell, Ray Martin, Dennis McCrumb, Peter Melley, Craig

8  Newell, Susan Newell;

9          Darcy Oliver, Jon Palmieri, Amos Parker, Peter

10  Perry, Dee Pinkston, Adan Rangel, Matthew Roth, Barbara

11  Russell, Tony Sellers, Brian Semple, Robert Semple, Brian

12  Smith, Rosie Smith, Grecie Suarez, Ken Stiles, Alan Tilles,

13  Andrea Tottossy, Joe Tottossy.  That's T-o-t-t-o-s-s-y.

14          Terri Walsh, Charles West, Michael Wilhelm, Phillip

15  Yee, Lucille Zenke, Aaron Bobkin, Robert Jones, Peter Lewis,

16  Thomas Littler.

17          Daryl Bank, Tripp Forrest, Steve Gasser, Robert

18  Guest, Bob LaBine, L-a-B-i-n-e, Peter Lewis, Kent Maerki,

19  M-a-e-r-k-i, Terence Pinkston, Wanda Rivera, Lynne Shelton,

20  Raeann Gibson, Patricia Hundley.

21          Those are the names of people who may be called as

22  witnesses in this case, not guaranteeing all of them are

23  going to be called, but they may be called.

24          I haven't seen any hands indicating anyone believed

25  they know any of these witnesses.  If at some point it

```
 1    becomes clear that you do, you need to notify the Court.

 2              Now, we're going to go into a session where the

 3    Court wants to speak to counsel, and I want you to make every

 4    effort not to hear what the Court is talking about.

 5              (A sidebar conference was held as follows:)

 6              THE COURT:  What the Court wants to know is whether

 7    you have any other questions you want to propound to this

 8    jury at this junction.

 9              MS. McCASLIN:  Yes, Your Honor, we do have two

10    jurors that we have follow-up questions for.  The first one

11    is Juror Number 11.  The juror indicated on his questionnaire

12    that he has previously cared for inmates and they all said

13    that they were innocent.  He also stated on his

14    questionnaire, Number 37, Question 37, that he wants justice

15    for people who have been stolen from.

16              Additionally, Your Honor, Juror Number 11 has

17    specialized training in stocks, annuities, and licensed radio

18    operator.  So we do have questions about whether or not he

19    can reach his verdict based on the facts of the case instead

20    of outside knowledge.

21              THE COURT:  Well, you know, the jurors are not

22    required to divorce their knowledge of things from

23    deliberation.  In other words, if he knows something about

24    ham radios or microwaves or wavelengths or whatever, that

25    doesn't disqualify him.
```

1          MS. McCASLIN:  I think the specialized knowledge,

2     though, is above and beyond just everyday life experience.

3          THE COURT:  Even if he has specialized knowledge,

4     that doesn't disqualify him.  The question is whether he can

5     make a decision based on the law and the facts in the case.

6     If that be the case, every time we had a jury, we would

7     disqualify anybody who had any knowledge of anything similar

8     to the case.

9          MS. McCASLIN:  Yes, Your Honor.  My concern was him

10    substituting his own knowledge for the facts of the case.

11         THE COURT:  Okay.  Well, then, we will pursue that.

12         MS. McCASLIN:  And then the other juror that we have

13    a question on is Number 115.  He has testified, he said, in

14    numerous cases.  He was also found in contempt of court.  We

15    just want to follow up to see if he will follow the rules of

16    the Court and to see if his experiences in court have biased

17    him to the trials.

18         THE COURT:  Let me look back for a second.

19         Okay.  All right.  Will do.

20         MS. McCASLIN:  Thank you, Your Honor.

21         THE COURT:  Mr. Yarow?

22         MR. YAROW:  No follow-up, Your Honor.

23         MS. O'BOYLE:  Your Honor, the government has

24    follow-up for three jurors.

25         First, Number 5, this should be pretty short, but

1    she indicated in her questionnaire that she was concerned

2    that she may not know the meaning or understand the meaning

3    of certain words.  So we just wanted to make sure that she

4    was comfortable with that.

5            Number 33, answered a question that she should not

6    sit as a juror because of "who I am," and so we wanted to

7    kind of follow up with that.  We were a little confused.

8            She also indicated that she believes that the system

9    is broken.  So we have just some concerns as to whether or

10   not she can render a fair and impartial verdict.

11           And then the last one is 62.  On one hand she did

12   state that she might give more credence to law enforcement,

13   but in her questionnaire, she also indicated some trust

14   issues as well with the system.

15           I think just a couple of further questions about

16   whether she believes that she can listen fairly and

17   impartially and render a verdict consistent with the facts

18   and the law would give everybody some comfort as to where she

19   is.

20           THE COURT:  Is that 162 or 62?

21           MS. O'BOYLE:  Just 62.  5, 33, and 62, Your Honor.

22           THE COURT:  Okay.  That being the case --

23           MS. McCASLIN:  Your Honor, may I just add one thing?

24   The government did mention Juror 5.  Juror Number 5 did

25   indicate in her questionnaire that she had heard about the

1    case.  If you could just follow up with that as well, we

2    would appreciate that.

3            THE COURT:  As I understand it, Mr. Smith has

4    concerns with Jurors 11, 115, and which was the other one?

5            MS. McCASLIN:  Number 5.

6            THE COURT:  Number 5.  So both of you had questions

7    about number 5.  Let's start with Juror Number 5.

8            (To the venire:)  Juror Number 5, please step up.

9            (Juror Number 5 entered the conference.)

10           THE COURT:  You are Juror Number 5?

11           PROSPECTIVE JUROR:  Yes, sir, I am.

12           THE COURT:  And are you able to hear the Court

13   clearly.

14           PROSPECTIVE JUROR:  Can you speak a little bit

15   louder, please?

16           THE COURT:  Can you hear the Court clearly?

17           PROSPECTIVE JUROR:  Yes.

18           THE COURT:  Now, ma'am, you indicated that you may

19   not understand the meaning of certain words.  What did you

20   mean by that on your questionnaire?

21           PROSPECTIVE JUROR:  Well, English is my second

22   language, and sometimes when people, you know, on TV or even

23   when I read, I don't know what the meaning of the word is

24   because it's in English.  You know, like -- how to explain

25   this?  Some words like what they use in -- how to explain

Carol L. Naughton, Official Court Reporter

1   this?

2          THE COURT:  Well, let me ask you this:  Does your

3   lack of understanding of words vary from time to time

4   depending upon what the conversation is?

5          PROSPECTIVE JUROR:  Well, yes.  Like, words from the

6   old English and especially, like, mechanical words or what

7   people in the computer language stuff use.  I don't know what

8   it means in English.  You know, if you probably tell me in

9   German, I'll probably know what it means.

10          THE COURT:  Is German your first language.

11          PROSPECTIVE JUROR:  Yes, it is.

12          THE COURT:  Now, you indicated also you thought

13   you'd heard something about the case.  What did you mean that

14   you've heard something about the case?

15          PROSPECTIVE JUROR:  No.  What I meant was I may have

16   saw it on TV, but I don't remember.  And now I, for sure,

17   didn't hear anything because it was so long ago, it seemed

18   like it.

19          THE COURT:  So you don't believe you know anything

20   about this case?

21          PROSPECTIVE JUROR:  No, I don't know anything about

22   it.  But, I mean, you know, you watch TV, you see something,

23   but you really don't know what you see.  You know, you forget

24   about it when it's not of interest to you.  So I can't say I

25   didn't see anything when it was on TV, but I don't remember

 1   if I saw something.

 2           THE COURT:  Okay.  Thank you very much.

 3           PROSPECTIVE JUROR:  You're welcome.

 4           (Juror Number 5 exited the conference.)

 5           THE COURT:  I think what I'm going to do is, I'm

 6   going to probably address these strikes as we go along.  It

 7   appears to the Court that this juror -- we cannot be sure

 8   when she will miss the meaning of a word or what words.

 9           So is there a motion?

10           MS. McCASLIN:  Motion, Your Honor, motion to strike.

11           THE COURT:  All right.

12           MS. O'BOYLE:  No objection, Your Honor.

13           THE COURT:  We will strike Number 5.

14           (To the venire:)  Juror Number 11, please step

15   forward.

16           (Juror Number 11 entered the conference.)

17           THE COURT:  You are Juror Number 11?

18           PROSPECTIVE JUROR:  That is correct.

19           THE COURT:  Let me ask you, sir, in your

20   questionnaire, have you had a lot of dealings with inmates?

21           PROSPECTIVE JUROR:  Yes, sir.  I was a hospitalist

22   physician at Southampton Memorial Hospital.  We had a

23   correctional medicine unit where we took care of those

24   inmates, State of Virginia inmates.

25           THE COURT:  As a result of that, have you developed

1    any opinion regarding your position with respect to whether

2    inmates have received justice?

3            PROSPECTIVE JUROR:  Well, sir, all of them say they

4    are innocent when you ask them, so it's -- you do tend to get

5    a little bit cynical, because none of them are going to tell

6    you that they're guilty.

7            THE COURT:  Do you believe that your cynicism you

8    had about those inmates would prevent you from listening at

9    the evidence in this case and rendering a fair and just

10   verdict based on the facts and the law the Court gives you?

11           PROSPECTIVE JUROR:  I would try to be fair, and I'll

12   listen to the facts, sir.

13           THE COURT:  You will listen to the facts, or you

14   will try to listen the facts?  Which one is it?

15           PROSPECTIVE JUROR:  I will listen to the facts and

16   make judgment based upon, you know, what is presented to me.

17           THE COURT:  Now, what specialized training do you

18   have?  You have specialized medical training?

19           PROSPECTIVE JUROR:  Yes, sir.  I am a family

20   medicine physician and a physician executive, so I have

21   training both as a family medicine doctor, and I have

22   training -- MBA and business training, so right now my role

23   is at an intersection of business and medicine.

24           THE COURT:  Do you have any training dealing with

25   securities or contracts or anything of that nature?

1              PROSPECTIVE JUROR:  Yes, sir.  I do a lot with
2    contract law.  Being a physician executive, I have to
3    contract with physicians.  I have to make sure I don't
4    violate Stark law, Federal Anti-Kickback legislation, you
5    know, all that kind of stuff that deals with physician
6    contracts and CMS and all that type of stuff.
7              THE COURT:  Okay.  Thank you very much.
8              PROSPECTIVE JUROR:  Thank you.
9              THE COURT:  Step down.
10             (Juror Number 11 exited the conference.)
11             THE COURT:  Is there any motion?  But I will tell
12    you, the Court finds no reason to strike.
13             MS. McCASLIN:  Your Honor, for the purposes of the
14    record, please note that we asked to strike the juror for
15    cause.
16             MS. O'BOYLE:  Your Honor, the juror was pretty clear
17    that he believed that he could be fair and would listen to
18    the facts, and so we believe that for that reason he should
19    not be struck for cause.
20             THE COURT:  The Court can't find a reason to strike
21    the juror for cause at all.  So the motion to strike is
22    denied on Juror Number 11.  We will call, then, Juror
23    Number 33.
24             (To the venire:)  Juror Number 33, please step up.
25             (Juror Number 33 entered the conference.)

```
 1              THE COURT:  You are Juror Number 33?
 2              PROSPECTIVE JUROR:  Yes, sir.
 3              THE COURT:  Ma'am, I think in your questionnaire,
 4     you said something to the effect that you were not sure you
 5     should be --
 6              PROSPECTIVE JUROR:  Can you repeat, sir?  Can you
 7     repeat?
 8              THE COURT:  Can you hear me now?
 9              PROSPECTIVE JUROR:  A little bit.
10              THE COURT:  Apparently the cause was with me.
11              PROSPECTIVE JUROR:  Now I hear you, sir.
12              THE COURT:  In your questionnaire, ma'am --
13              PROSPECTIVE JUROR:  Yes.
14              THE COURT:  -- you made a statement, I think, to the
15     effect that you're not sure you should be sitting in the
16     case.  What does that mean?
17              PROSPECTIVE JUROR:  I think --
18              THE COURT:  I can't hear you.
19              PROSPECTIVE JUROR:  You can't hear me?
20              THE COURT:  Now I hear you.
21              PROSPECTIVE JUROR:  Okay, sir.  I think -- it's my
22     personal opinion.  I think the system is broken, sir, so -- I
23     didn't stand up because I'm a nervous person.
24              THE COURT:  You think the system is broken.  So why
25     do you believe that you cannot sit as a juror?
```

1          PROSPECTIVE JUROR:  That's what I -- and that's why
2    I didn't stand up because maybe I could give a chance to
3    myself to see how the system works.
4          THE COURT:  You do not believe the system works?
5          PROSPECTIVE JUROR:  That's what I said first in the
6    questionnaire, and that's why I didn't stand up at first
7    because I would like to try to see how the system really
8    works.
9          THE COURT:  Do you believe you have the ability to
10   listen at the facts, follow the law the Court gives you to
11   arrive at a just and fair verdict?
12         PROSPECTIVE JUROR:  I will try, sir.
13         THE COURT:  I take it you've never sat as a juror
14   before?
15         PROSPECTIVE JUROR:  No, sir.
16         THE COURT:  Is there any other question?  The Court
17   has no further questions.
18         PROSPECTIVE JUROR:  Thank you, sir.
19         THE COURT:  Step down.
20         (Juror Number 33 exited the conference.)
21         THE COURT:  What is counsel's response to this
22   juror?
23         MR. BOSSE:  Your Honor, the government moves to
24   strike for cause.  This is not -- a multi-week trial is not
25   the time to find out as an experiment whether she thinks the

1    system works, and she was not at all clear whether she would

2    be able to sit and render a fair and impartial verdict in

3    this case.  The hope that she might when facing down a

4    multi-week trial is -- she should not be sitting on this

5    jury.

6              THE COURT:  Thank you, sir.

7              MS. McCASLIN:  No objection.

8              THE COURT:  Mr. Yarow?

9              MR. YAROW:  No objection.

10             THE COURT:  Juror Number 33 will be stricken.

11             (To the venire:)  Juror Number 115, step forward,

12   please.

13             (Juror Number 115 entered the conference.)

14             THE COURT:  Can you hear me, sir?

15             PROSPECTIVE JUROR:  Yes, sir.

16             THE COURT:  I think your questionnaire indicates

17   that you have testified in numerous cases; is that correct?

18             PROSPECTIVE JUROR:  I'm not sure if I used the word

19   "numerous," but yes, sir, I have.

20             THE COURT:  I think your microphone needs to be

21   turned up a little or something.

22             PROSPECTIVE JUROR:  Sir, I'm not sure I remember

23   saying "numerous," but yes, sir, I have testified in

24   court-martials, nonjudicial punishment before.

25             THE COURT:  Also, you indicated -- there's an

1    indication that you've been held in contempt.  Why were you

2    held in contempt?

3            PROSPECTIVE JUROR:  Sir, I don't recall ever being

4    held in contempt.

5            THE COURT:  You don't recall being held in contempt?

6            PROSPECTIVE JUROR:  No, Your Honor, I don't.  I

7    either -- I may have miswrote something on the form, but I

8    don't recall ever -- yes, sir, I do, now that I think about

9    it.  I was 16 or 17 years old.  It was traffic court here in

10   Norfolk, and the judge did not like something I said.

11           THE COURT:  Oh, you were a juvenile when that

12   happened?

13           PROSPECTIVE JUROR:  Yes, sir.  He put me in lockup

14   for a couple of hours back behind the bench.

15           THE COURT:  And then you went in law enforcement?

16           PROSPECTIVE JUROR:  Of sorts, yes, sir.

17           THE COURT:  Okay.  Do you believe having testified

18   so many times in criminal cases and having so much of

19   exposure to the law enforcement, that it would adversely

20   affect your ability to sit in this case and be fair and

21   impartial based on the law and the facts?

22           PROSPECTIVE JUROR:  I do not, sir.  In fact, my

23   brother and I, the deputy, we get into some heated

24   discussions about how much I detest prosecutorial and law

25   enforcement misconduct and how I tend to lean toward the

1    rights of the accused.

2            THE COURT:  All right.  Thank you very much.

3            PROSPECTIVE JUROR:  Yes, sir.

4            THE COURT:  Step down.

5            (Juror Number 115 exited the conference.)

6            THE COURT:  Counsel, the Court sees no reason to

7    strike this witness for cause.

8            So, Ms. Thompson, can you give us a list of how many

9    strikes we've had here?

10           MS. O'BOYLE:  Your Honor, we also requested to talk

11   to Juror Number 62, and then we have a few other motions to

12   strike based on the answers.  I don't know if --

13           THE COURT:  Juror Number 62?

14           MS. O'BOYLE:  Yes.

15           THE COURT:  I missed that one.

16           MS. O'BOYLE:  Sorry, Your Honor.

17           THE COURT:  (To the venire:)  Juror Number 62, step

18   forward.

19           While she's stepping forward, I need to speak to

20   counsel again.  Not only did I miss it, I missed the reason

21   you want her to come forward.

22           MS. O'BOYLE:  Sorry, Your Honor.  She mentioned she

23   has, on her questionnaire, trust issues with the system, and

24   then she also answered that she might give more credit to law

25   enforcement testimony.

```
 1              MR. GRINDROD:  Judge, that's Ms. O'Boyle who is
 2    talking, just so you know.  I know you're looking in our
 3    direction.
 4              MS. O'BOYLE:  Oh, yes, I'm sorry.
 5              THE COURT:  Thank you.  Okay.
 6              (Juror Number 62 entered the conference.)
 7              PROSPECTIVE JUROR:  Judge, I --
 8              THE COURT:  Can you hear me?
 9              PROSPECTIVE JUROR:  Softly, yeah.
10              THE COURT:  Pull the microphone up your mouth.
11    That's good.
12         Okay.  I think we're good.  You indicated that you
13    would be inclined to give more credit to testimony of a law
14    enforcement officer; is that correct?
15              PROSPECTIVE JUROR:  Yes.
16              THE COURT:  Why did you say that?
17              PROSPECTIVE JUROR:  Well, I recently lost my
18    husband.
19              THE COURT:  You're going to have to speak a little
20    louder.
21              PROSPECTIVE JUROR:  Okay.  So I -- can you hear me?
22    I recently lost my husband, so I'm not really sure when the
23    trial is going to start, but the week of February the 21st, I
24    need to return to New Jersey to take care of some personal
25    business regarding his death.  So I'm not really sure if I
```

1    will even be available for the trial.

2            THE COURT:  But respond to my question about why you

3    think you would tend to give more credit to a law enforcement

4    officer.

5            PROSPECTIVE JUROR:  Well, basically because he was

6    in law enforcement for over 25 years and retired as a senior

7    correctional officer, so I have a lot of respect for that

8    department --

9            THE COURT:  Okay.

10           PROSPECTIVE JUROR:  -- and law enforcement.

11           THE COURT:  Did you also indicate you have some

12   trust issues with respect to the system?

13           PROSPECTIVE JUROR:  Well, like I said earlier, my

14   father-in-law, which was years and years ago, was also

15   indicted for mail fraud, and we also have members of the

16   family that have been in criminal cases that the defendant --

17   the offender was not even found.  So I'm kind of bias

18   regarding the law.

19           THE COURT:  Thank you very much.  You may step down.

20           (Juror Number 62 exited the conference.)

21           THE COURT:  Counsel, is there a motion?

22           MS. McCASLIN:  There is a motion, Your Honor, from

23   Mr. Smith's counsel.

24           THE COURT:  I can't tell who's talking.

25           MS. McCASLIN:  Lindsay McCaslin.

```
 1            THE COURT:  Yes, ma'am.

 2            MS. McCASLIN:  We do have a motion to strike.  She

 3   will give more weight to law enforcement.  She also has

 4   scheduling issues.  So we think it's appropriate to strike.

 5            MS. O'BOYLE:  Government has no objection.

 6            THE COURT:  We will strike this juror, Number 62.

 7            I think that's the end of the strikes.

 8            MS. O'BOYLE:  Your Honor, we have three that we

 9   would like to raise, based just on the answers that were

10   given to the Court's questions.  This is Melissa O'Boyle,

11   AUSA O'Boyle for the government.

12            The government would move to strike Juror Number 10,

13   Your Honor.  She is the juror that specifically stated that

14   she is uncomfortable judging others, that she cannot pass

15   judgment on others.

16            Her questionnaire was filled with representations

17   that she feels very uncomfortable in this role as a juror,

18   and she stated, also, in response to the Court's question

19   that she was nervous just sitting there in the courtroom.

20            THE COURT:  Any objection?

21            MS. McCASLIN:  I have no objection.

22            THE COURT:  Number 10 is stricken.

23            MS. O'BOYLE:  Your Honor, the government also -- we

24   would move to strike Juror Number 28.  That's the juror whose

25   father has cancer treatment on February 14th.  The government
```

1   fully expects that it will be in the middle of its case on

2   that particular date.

3           THE COURT:  Hearing nothing, Juror Number 28 is

4   stricken.

5           MS. O'BOYLE:  And the last one that the government

6   has, Your Honor, is Juror Number 73.  He is the juror that

7   specifically stated that he has started classes and has a

8   test in the middle that he cannot reschedule in the middle of

9   this trial, as well as taking his girlfriend to and from

10  medical appointments.

11          MS. McCASLIN:  No objection.

12          MR. YAROW:  (Shaking head.)

13          THE COURT:  Juror Number 73 is stricken.

14          MS. O'BOYLE:  That's all from the government, Your

15  Honor.

16          MS. McCASLIN:  This is Lindsay McCaslin.  We do have

17  one -- this is Lindsay McCaslin.  We have one additional

18  strike.  152.  Juror 152 did state that her husband is a

19  police lieutenant, she would give more weight to the

20  testimony of a law enforcement officer.  She was clear about

21  that.

22          THE COURT:  All right.

23          MS. O'BOYLE:  The government has no objection to

24  that.

25          THE COURT:  Juror Number 152 is stricken.

```
 1          Any others?

 2          Now we'll review how many we have stricken.  Have we

 3   stricken all of them yet?  Let's see how many -- we had 23.

 4   Let's see how many we have left.  Go on.

 5          THE CLERK:  Juror Number 5, Juror Number 10 --

 6          THE COURT:  I cannot hear you, Ms. Thompson.

 7          THE CLERK:  Can you hear me now?

 8          THE COURT:  I can hear you now.

 9          THE CLERK:  Juror Number 5, Juror Number 10, Juror

10   Number 28, Juror Number 33, Juror Number 62, Juror Number 73,

11   Juror Number 152.

12          THE COURT:  Was that 72?

13          THE CLERK:  73.

14          THE COURT:  That's seven strikes.  So that means we

15   have 16 to work with.  All right.  I think we might be here

16   tomorrow morning.  Okay.

17          (The sidebar conference was concluded.)

18          THE COURT:  Ladies and gentlemen, we're now finished

19   with the questions that we'll be propounding to you as the

20   jurors.  We will now move to another stage where the counsel

21   will have an opportunity to take their peremptory strikes.

22          You're going to see a board moving backwards and

23   forwards until they complete the strikes, and then we will

24   know who among you sitting out there will be chosen for the

25   jury panel.  So if you'll sit quietly, we're going to see if
```

1    we can get this done.

2              (Pause in the proceedings.)

3              THE CLERK:  The following jurors have been selected

4    for trial:  As your number is called, please stand and remain

5    standing.

6              Juror Number 7, Juror Number 26, Juror Number 84,

7    Juror Number 112.

8              THE COURT:  All right.  Ladies and gentlemen, the

9    four of you that have been selected for this jury panel,

10   check the jury line.  You will be expected to come back in

11   here tomorrow about 2:00 p.m.  Check the juror line, but you

12   are expected to be back in here tomorrow by 2:00 p.m.  You

13   may have a seat.

14             With respect to all of those who have not been

15   selected, we thank you for coming.  We could not have this

16   case take place unless you participated.  So you might

17   wonder, we only picked four.  Well, we picked eight this

18   morning, and we'll still be picking tomorrow until we finish.

19             Please leave your clear mask and your paddle on the

20   bench.  Put your solid mask back on at this time.  You may be

21   excused.  Thank you for coming.

22             Those four we just picked, be back tomorrow no later

23   than 2:00, but still check the juror line.

24             MR. GRINDROD:  Does the Court want to advise about

25   not to research the case?

1          THE COURT:  Thank you, Mr. Grindrod.

2          Take no action respecting this case.  Though you've

3    been selected, just keep a free mind and wait for the

4    instructions of the Court.  Do nothing to inquire about this

5    case, no radio, no TV, no electronic technology.  You may be

6    excused.

7          (The venire, Jury Panel B, exited the courtroom.)

8          THE COURT:  You may be seated, counsel.

9          We will be back in the morning to select the

10   alternates.  She'll put ten on the board, and each side will

11   get two strikes to get the six that we need tomorrow morning,

12   and we will be prepared to go forward.  I don't know how long

13   it will take you to select those six tomorrow morning and

14   take the strikes, but what we're going to do is start

15   tomorrow morning at 10:30.

16         MS. McCASLIN:  Your Honor, before we go, can I make

17   a motion?

18         THE COURT:  Yes.

19         MS. McCASLIN:  Your Honor, we are making a motion

20   based on *Batson* and progeny, both on race and gender.  It is

21   our burden at this point to establish a prima facie case.

22         There were ten white men who came before the Court

23   that were not struck for cause, and of those ten white males,

24   the government struck six of them.  Every one of their

25   peremptory strikes were white men.  There are two white men

```
1   on the jury.  And Mr. Smith, of course, is a white man
2   himself --
3           THE COURT:  Second thought, come around.  You know
4   something, the Court probably should have done this before
5   they left here, but that's all right.  The Court will have to
6   make a midcourse correction if necessary.  We'll call them
7   all back in here depending on what happens here.
8           MS. McCASLIN:  And, Your Honor, we did want to bring
9   it up now so that there is -- there are still panels
10  tomorrow, if the Court needs that.
11          Your Honor, in terms of the composition, we did have
12  a fairly diverse composition of the jury.  Like I did
13  mention, of the jurors who came before the Court who were not
14  struck for cause, there were ten white men.  The government
15  did strike six of those white men, and all of their strikes
16  consisted of white men.
17          THE COURT:  Let me ask you a question before you go
18  any further.
19          MS. McCASLIN:  Yes.
20          THE COURT:  This morning we selected eight.  You
21  didn't raise a motion.  You did not raise an objection this
22  morning to the eight we selected this morning.
23          MS. McCASLIN:  Correct.
24          THE COURT:  So I know you are not raising an
25  objection to the eight.  You are raising objection to the six
```

```
 1    they struck this afternoon; is that correct?
 2           MS. McCASLIN:  Your Honor, we are raising the
 3    objection to not only the individual jurors but the pattern
 4    they are --
 5           THE COURT:  The Court just wants to be clear because
 6    if you are raising an objection now about what happened this
 7    morning, the Court will say you should have raised that
 8    objection before the Court let them go out of here this
 9    morning.  So you are raising an objection, to be clear, about
10    what just happened; is that correct?
11           MS. McCASLIN:  Your Honor, we're raising an
12    objection to all of it.  I do understand the procedure is a
13    little unusual because the jury is being broken up.
14           THE COURT:  But you had a chance this morning,
15    before the Court sent some of them out of here and excused
16    them, to indicate if that pattern was taking place.  Did the
17    pattern start with those this morning or those this
18    afternoon?
19           MS. McCASLIN:  It started with those this morning,
20    but it became very apparent this afternoon.
21           THE COURT:  How many did they strike this morning
22    that you are complaining about?
23           MS. McCASLIN:  Was it three or four?
24           Your Honor, like I said, all of their strikes were
25    white men.  I believe four of them were this morning, two of
```

```
 1    them were this afternoon.
 2            THE COURT:  So they struck four this morning that
 3    were white males, and they struck two this afternoon out of
 4    23, right, out of -- how many did we have left?  We had 16
 5    left on the panel, and they struck two.  This morning we
 6    had --
 7            How many were left on the panel for consideration?
 8    Hold on a second.
 9            -- 18.  And they struck four.
10            MS. McCASLIN:  From this morning, though, there was
11    only, I believe, six white men that came before the Court.
12    Four of them were struck by the government.
13            As for this afternoon, for Panel B, the first four
14    jurors that we received were Numbers 7, 17, 154, and 115.
15    Number 7, 17, and 154 were all black men.  115 was a white
16    male.  The government struck the one white male and left the
17    three others.
18            THE COURT:  How many white males did the defendant
19    move to strike?
20            MS. McCASLIN:  We struck, Your Honor, I believe,
21    three white males, three white females, and four black males.
22            THE COURT:  This morning how many white males did
23    you strike?
24            MS. McCASLIN:  This morning, we struck, I believe,
25    one white male this morning.
```

```
 1              THE COURT:  And three today?
 2              MS. McCASLIN:  Correct.
 3              THE COURT:  So you have stricken four.  All right.
 4    I think the Court understands -- are you finished?
 5              MS. McCASLIN:  Yes, Your Honor.
 6              THE COURT:  I'll call on the government to respond.
 7    All right, Mr. Bosse.
 8              MR. BOSSE:  I'm sorry that I have to be doing this.
 9    I think this is a ridiculous Batson challenge to bring,
10    frankly, because the -- first of all, they said "white" and
11    "male."  The defense struck -- more than half of their
12    strikes were men, and so they cannot come up here and say
13    that the government improperly struck men.  Most of their
14    strikes were men.  They also struck multiple white men in
15    this case.
16              But even setting that aside, I can give a reason for
17    every strike we made so I can make a record on this.
18              THE COURT:  All right.  Let's do it.
19              MR. BOSSE:  Juror Number 3 was government's strike
20    one.  That juror appeared to be nodding off during the voir
21    dire process.
22              Juror Number 141 has irritable bowel syndrome and
23    said he would have to get up and use the bathroom frequently
24    during the trial.
25              THE COURT:  The Court struck him for cause.
```

1          MR. BOSSE:  No, sir.  The government struck him so

2      we wouldn't have to deal with that issue.

3          Juror Number 45 was a lawyer.  I've never not

4      stricken a lawyer on a case.  I don't want a lawyer on the

5      case.  It has nothing to do with his race or gender.  And he

6      also had, I think, some strange things he said, which we can

7      dig up if it's necessary.

8          Juror Number 6, we did not -- he appeared to be

9      unhappy and unengaged, and we did not like the way that he

10     was looking around and not making eye contact with anybody.

11     And that's exactly the reason for us to use a peremptory

12     strike.  We look at the jurors and take a look at their

13     demeanor and interactions with the other people in the room.

14         Juror Number 115 said that he was favorable toward

15     the defense.  That was the Army Counterintelligence officer,

16     and it's just a perfectly fine exercise of a peremptory

17     strike for someone to say that.  It had nothing to do with

18     who he was.

19         And Juror Number 72, I'd have to confer.  I don't

20     have notes on that juror.

21         But we had a reason for striking every juror.  We're

22     not trying to stack the deck in any way.  And the defense, if

23     they wanted more white men on the jury, they could have

24     refrained from striking the numerous white men that they

25     struck.  There's no grounds here for a *Batson* challenge.

1          THE COURT:  Wait a minute.  Confer with your counsel

2    before you say anything.

3          (Pause in the proceedings.)

4          THE COURT:  Anything else?

5          MR. BOSSE:  The last government strike was Juror 62.

6    That -- sorry, it was 72.  That juror talked about being the

7    victim of identity theft.  We're going to play a recording --

8    we're going to try to -- where Defendant Smith talks about

9    being the victim of identity theft.  And, yeah, he came in

10   looking a little bit disheveled, and so those are the reasons

11   we struck him.

12          I'd also note, Your Honor, that the last three

13   jurors that we passed on were all white men, and we passed

14   the board repeatedly in this case to try to get the jury.

15          That's all I have.

16          THE COURT:  With respect to what has been offered

17   here, the challenge from the defense and the response from

18   the United States, under *Batson*, the United States has

19   articulated a legitimate, nondiscriminatory reason for

20   striking these jurors.  The Court can't find a basis to

21   uphold a *Batson* challenge based upon these strikes.

22          The Court has recall clearly, having taken notes as

23   we went along, what these jurors said and what position they

24   took.  The Court has no recall about the reaction of Juror

25   Number 6 in terms of being disengaged.  But the other things

1    the Court clearly recalls in the record about these jurors,

2    so your *Batson* challenge is overruled.

3         MR. YAROW:  Your Honor, I would like to add into

4    that motion, but Mr. Alcorn has nothing further to add.

5         THE COURT:  Mr. Alcorn wishes to adopt that motion

6    for purposes of the record.  Your request is granted;

7    however, your challenge is also overruled.  There's no basis

8    for a *Batson* challenge here.

9         I will be prepared to come back in here tomorrow

10   morning, and we'll get started, as I said, at 10:30.

11        Hold on one second.

12        (Pause in the proceedings.)

13        THE COURT:  It's come to the Court's attention that

14   Juror Number 123 that we selected this morning returned home

15   and found out that one of his children had tested positive

16   for COVID-19, and he has been with that particular child.  So

17   I think, out of an abundance of caution, I think Juror

18   Number 123 --

19        Am I correct?

20        THE CLERK:  Yes, sir.

21        THE COURT:  We're going to have to remove Juror

22   Number 123.  So tomorrow, instead of selecting six

23   alternates, we're going to have to go back and select an

24   additional juror.  So we will have to put enough on the board

25   to hopefully accomplish that tomorrow morning.  So we'll be

```
 1   trying to select seven jurors tomorrow morning.

 2            On second thought, I think we need to go back to

 3   10:00 tomorrow.  We'll be here at 10:00 tomorrow morning to

 4   get started.

 5            (Proceedings adjourned at 4:13 p.m.)

 6

 7

 8                            CERTIFICATION

 9

10       I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12

13

14            _____/s/_____

15                         Carol L. Naughton

16                         August 30, 2022

17

18

19

20

21

22

23

24

25
```

Carol L. Naughton, Official Court Reporter