```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
 2                          Norfolk Division


 3


 4    - - - - - - - - - - - - - - - - - - -
                                          )
 5    UNITED STATES OF AMERICA            )
                                          )
 6    v.                                  )      CRIMINAL ACTION NO.
                                          )              2:19cr47
 7    DAVID ALCORN and                    )
      AGHEE WILLIAM SMITH II,             )
 8                                        )
               Defendants.                )
 9    - - - - - - - - - - - - - - - - - - -

10                       ** Jury Trial - Day 14 **

11                      TRANSCRIPT OF PROCEEDINGS

12                          Norfolk, Virginia

13                          February 23, 2022

14

15    BEFORE:  THE HONORABLE RAYMOND A. JACKSON
                United States District Judge, and a jury
16

17    APPEARANCES:

18            UNITED STATES ATTORNEY'S OFFICE
              By:  Andrew C. Bosse
19                 Melissa E. O'Boyle
                   Elizabeth M. Yusi
20                 Assistant United States Attorneys
                   Counsel for the United States
21
              RICHARD S. YAROW LLC
22            By:  Richard S. Yarow
                   Counsel for Defendant David Alcorn
23
              FEDERAL PUBLIC DEFENDER'S OFFICE
24            By:  Andrew W. Grindrod
                   Lindsay Jo McCaslin
25                 Assistant Federal Public Defenders
                   Counsel for Defendant Aghee William Smith II
```

Carol L. Naughton, Official Court Reporter

```
 1              (Proceedings resumed at 10:01 a.m.)

 2              THE COURT:  Good morning, counsel.

 3              Mr. Yarow, on behalf of Mr. Alcorn, you made a

 4    motion for judgment for acquittal, and the Court deferred

 5    ruling on that motion.  The Court simply wants to rule on it

 6    at this time.

 7              Is there anything else you want to say about your

 8    motion for judgment of acquittal?

 9              MR. YAROW:  No, sir.

10              THE COURT:  All right.  We're at the juncture where

11    all evidence is in in the case, so the Court has a global

12    view of all of the evidence.  The Court finds there is

13    sufficient evidence to find the defendant guilty, if the jury

14    deems it appropriate.  The Court will deny that motion.

15              MR. YAROW:  Yes, Your Honor.

16              THE COURT:  Bring the jury in.

17              We're going to be excusing Jurors 4, 5, and 6

18    because we've already used Alternates 1, 2, and 3 to replace

19    people who we had to excuse.

20              MS. YUSI:  Your Honor, we do that after

21    instructions; is that right?

22              THE COURT:  Do what?

23              MS. YUSI:  Do we excuse them after instructions?

24              THE COURT:  Oh, yeah, absolutely.  We may have to

25    bring them back before deliberations are over.
```

```
1              (The jury entered the courtroom.)
2              THE COURT:  Please let the record reflect that this
3    morning we have all the jurors present.
4              Does counsel agree?
5              MS. YUSI:  Government agrees, Your Honor.
6              MR. YAROW:  Mr. Alcorn agrees.
7              MS. McCASLIN:  Mr. Smith agrees.
8              THE COURT:  Good morning, ladies and gentlemen.
9    We're at the stage where the Court will give you your final
10   instructions.  The instructions the Court will give you, the
11   Court will read through these instructions, but they are all
12   indexed, numbered, in capital letters so you can go back on
13   the index if you think there's some instruction you want to
14   review.
15             The Court will not have 12 packs of instructions in
16   there, but the Court will deliver four sets in there of the
17   same instructions for your use during your deliberations.
18             So let me begin.  This will probably take 30, 35
19   minutes.  Who knows?
20             Now that you have heard all of the evidence in the
21   case, it is my duty to give you the instructions of the Court
22   concerning the law applicable to this case.  It's your duty
23   as jurors to follow the law as the Court shall state it to
24   you and to apply the law to the facts as you find them from
25   the evidence in the case.
```

1          And counsel may quite properly have referred to some
2    of the governing rules of law in their arguments.  If,
3    however, any difference appears to you between the law as
4    stated by counsel and these instructions given to you by the
5    Court, you, of course, are to be governed by the instructions
6    as given by the Court.

7          You are not to single out one instruction alone as
8    completely stating the law but must consider the instructions
9    as a whole.  Neither are you to be concerned with the wisdom
10   of any rules of law stated by the Court.  Regardless of any
11   opinion you may have as to what the law is or ought to be, it
12   would be a violation of your sworn duty to base a verdict
13   upon any view of the law other than that given in the
14   instructions of the Court, just as it would also be a
15   violation of your sworn duty as judges of the facts to base a
16   verdict upon anything other than the evidence in the case.

17         In deciding the facts of the case, you must not be
18   swayed by sympathy for any party nor bias or prejudice or
19   favor as to any party.  Our system of law does not permit
20   jurors to be governed by prejudice, sympathy, bias,
21   guesswork, or speculation.

22         Justice by trial by jury depends upon the
23   willingness of each individual juror to seek the truth as to
24   the facts from the same evidence presented to all the jurors
25   and to arrive at a verdict by applying the same rules of law

2520

1   as given in the instructions of the Court.

2           I instruct you, ladies and gentlemen, that you must

3   presume the defendants to be innocent of the crimes charged;

4   thus, the defendants, although accused of a crime in this

5   indictment, begin the trial with a clean slate, with no

6   evidence against them -- against him.  The indictment as you

7   already know is not evidence of any kind.  The defendants

8   are, of course, not on trial for any act or crime not

9   contained in the indictment.

10          The law permits nothing but legal evidence presented

11  before the jury in court to be considered in support of any

12  charge against the defendant.  The presumption of innocence

13  alone, therefore, is sufficient to acquit the defendants.

14          The burden is always upon the prosecution to prove

15  guilt beyond a reasonable doubt.  This burden never shifts to

16  a defendant, for the law never imposes upon a defendant in a

17  criminal case the burden or duty of calling any witnesses or

18  producing any evidence.  The defendant is not even obligated

19  to produce any evidence by cross-examining the witnesses for

20  the government.

21          It is not required that the government prove guilt

22  beyond all possible doubt.  The test is one of reasonable

23  doubt.  Reasonable doubt is a doubt based upon reason and

24  common sense, the kind of doubt that would make a reasonable

25  person hesitate to act.  Proof beyond a reasonable doubt

must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs.

Unless the government proves beyond a reasonable doubt that a defendant has committed each and every element of an offense charged in the indictment, you must find the defendant not guilty of the offense.  If the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury must, of course, adopt the conclusion of innocence.

Now, a separate crime is charged in each count of the indictment.  Each charge and the evidence pertaining to it should be considered separately by the jury.  The fact that you may find the defendant guilty or not guilty as to one of the offenses charged should not control your verdict as to any other offense charged.

Similarly, a separate crime is charged against each of the defendants in each count of the indictment.  The fact that you find one defendant guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged against that defendant or against any other defendant.  You must give separate and individual consideration to each charge, again, against each defendant.

Now, the evidence in the case consists of the sworn testimony of the witnesses, regardless of who may have called

them, all exhibits received in evidence, regardless of who
may have produced them, and all facts which have been
admitted or stipulated.  Depositions have also been received
in evidence.  These contain sworn testimony with counsel for
each party being entitled to ask questions.  A deposition may
be accepted by you subject to the same instructions which
apply to the testimony received in court.

        The statements and arguments of counsel are not
evidence in the case unless made as an admission or
stipulation of fact.  When the attorneys on both sides
stipulate or agree as to existence of a fact, however, you
must, unless otherwise instructed, accept the stipulation as
evidence and regard that fact as proved.

        Any evidence as to which an objection was sustained
by the Court, any evidence ordered stricken by the Court must
be entirely disregarded.  Anything you may have seen or heard
outside the courtroom is not evidence and must be entirely
disregarded.

        You are to consider only the evidence in the case.
In your consideration of evidence, however, you are not
limited to bald statements of the witnesses.  In other words,
you are not limited solely to what you see and hear as the
witnesses testify.  You are permitted to draw from facts
which you find have been proved such reasonable inferences as
you feel are justified in light of your experiences and

1    common sense.

2           So while you should consider only evidence in the

3    case, you are permitted to draw some reasonable inferences

4    from the testimony and exhibits that you feel are justified

5    in light of common experience.  In other words, you may make

6    deductions, reach conclusions which reason and common sense

7    lead you to draw from the facts which have been established

8    by the testimony and evidence in the case.

9           You may also consider either direct or

10   circumstantial evidence.  I gave you this instruction before

11   trial began.  Direct evidence is the testimony of one who

12   asserts actual knowledge of a fact, such as an eyewitness,

13   and circumstantial evidence is proof of a chain of facts and

14   circumstances indicating the existence of a fact.  The law

15   makes no distinction between the weight to be given to either

16   direct or circumstantial evidence.  It requires only that you

17   weigh all of the evidence and be convinced of the defendant's

18   guilt beyond a reasonable doubt before he can be convicted.

19          Now, a word about the recordings.  Recordings of

20   conversations have been received in evidence and have been

21   played for you.  Typewritten transcripts of these recorded

22   conversations have been furnished to you only solely for your

23   convenience in assisting you in following the conversation or

24   in identifying the speakers.  The tapes themselves, however,

25   are evidence in the case, and the typewritten transcripts are

not evidence.  What you hear on the tapes is evidence.  What
you read on the transcript is not.  If you perceive any
variation between the two, you will be guided solely by the
tapes, not by the transcripts.

The Court has just determined that before it reads
an instruction, we're going to give you the caption of the
instruction just in case you need to go back and try to
remember what the Court was reading.  I just read instruction
number 6 dealing with recordings and typewritten transcripts.

Now instruction number 7, dealing with charts and
summaries.  The government has presented evidence in the form
of charts and summaries for the purpose of explaining the
facts that are allegedly contained in the books, the records,
and other documents which are also in evidence in this case.
You should consider these charts and summaries as you would
any other evidence admitted during the trial and give them
such weight or importance, if any, as you feel they deserve.

Instruction 8A is titled "Rule 404(b) evidence."

You may have heard evidence that the defendant
committed certain acts that may be similar to acts charged in
the indictment.  You may not consider this evidence in
deciding if the defendant committed the acts charged in the
indictment.  However, you may consider this evidence for
other very limited purposes, such as the following:

To prove the defendant had a motive or the

1   opportunity to commit the crimes charged in the indictment;

2   to prove the defendant had the state of mind or the intent

3   necessary to commit the crimes charged in the indictment; to

4   prove the defendant acted accordingly to a plan or in

5   preparation to commit the crimes charged in the indictment;

6   to prove that the defendant knew what he was doing when he

7   committed the crimes charged in the indictment; or to prove

8   that the defendant did not commit the crime charged in the

9   indictment by mistake or accident.

10          Do not conclude from this evidence that the

11  defendant has bad character in general or that because the

12  defendant may have committed other similar acts, that it is

13  more likely that he committed the crimes of which he is

14  currently charged.

15          Instruction number 8 deals with credibility of

16  witnesses.  Now, we had this instruction early on, but I will

17  repeat it again.

18          You, ladies and gentlemen, as jurors, are the sole

19  judges of the credibility of the witnesses and the weight, if

20  any, that their testimony deserves.  You may be guided by the

21  appearance and conduct of a witness or by the manner which a

22  witness has testified or by the character of the testimony

23  given or by the evidence to the contrary of the testimony

24  given.

25          In making your assessment of a witness, you should

1    carefully scrutinize all the testimony given, the
2    circumstances under which each witness has testified, and
3    every matter in evidence that tends to show whether that
4    witness is worthy of belief.  Consider each witness's
5    intelligence, motive to falsify, state of mind, and demeanor
6    or manner while on the stand.  Consider the witness's ability
7    to observe the matters as to which he or she has testified
8    and whether he or she impresses you as having an accurate
9    memory or recollection of these matters.
10          Consider, also, any relation each witness may bear
11   to either side of the case, the manner in which each witness
12   might be affected by the verdict, and the extent to which, if
13   at all, each witness is either supported or contradicted by
14   other evidence in the case.
15          Now, inconsistencies or discrepancies in the
16   testimony of witnesses or between the testimony of different
17   witnesses may or may not cause you as a juror to discredit
18   such testimony.  Two or more persons witnessing an incident
19   or transaction may see or hear it differently.  An innocent
20   misrepresentation, unlike a failure of recollection, is not
21   an uncommon experience.
22          In weighing the effect of a discrepancy, always
23   consider whether it pertains to a matter of importance or an
24   unimportant detail and whether this discrepancy results from
25   innocent error or intentional falsehood.  After making your

1   own judgment or assessment concerning the believability of a

2   witness, you are to give the testimony of each witness such

3   weight, if any, as you think it deserves.  You may, in short,

4   accept or reject the testimony of any witness in whole or in

5   part.

6          Also, the weight of the evidence is not necessarily

7   determined by the number of witnesses testifying to the

8   existence or non-existence of any fact.  You may find that a

9   small -- that the testimony of a small number of witnesses as

10  to any fact is more credible than the testimony of a larger

11  number of witnesses to the contrary.

12         Next instruction is number 9, entitled "Uncalled

13  Witnesses."

14         There are people whose names you have heard during

15  the trial who did not appear to testify.  You should not

16  speculate as to what those people would have testified to had

17  they been called.  Their actions should not affect your

18  judgment in any way.  You should keep in mind my instruction,

19  however, that the law does not impose on a defendant the

20  burden or the duty of calling any witnesses or producing any

21  evidence.  It is the government's burden to prove beyond a

22  reasonable doubt each element of the crimes charged in the

23  indictment.

24         Instruction number 10 deals with expert witnesses.

25  We had at least one expert in here.

1              The Rules of Evidence ordinarily do not permit

2    witnesses to testify as to their own opinions or their own

3    conclusions about important questions in a trail.  An

4    exception to this rule exists as to those persons who are

5    described as expert witnesses.  An expert witness is someone

6    who, by education or by experience, may have become

7    knowledgeable in some technical, scientific, or very

8    specialized area.

9              If such knowledge or testimony or experience may be

10   of assistance to you in understanding some of the evidence or

11   in determining a fact, an expert witness in that area may

12   state an opinion as to the matter in which he or she claims

13   to be an expert.

14             You should consider each expert opinion received in

15   evidence in this case and give it such weight, if any, as you

16   think it deserves.  You should consider the testimony of

17   expert witnesses just as you consider other evidence in this

18   case.

19             If you should decide that the opinion of an expert

20   witness is not based upon sufficient education or experience

21   or if you should determine that the reasons given in support

22   of the opinion are not sound or if you should conclude that

23   the opinion is outweighed by other evidence, you may

24   disregard the opinion in part or in its entirety.  As I've

25   told you several times, you, the jury, are the sole judges of

1    the facts in the case.

2           Instruction number 11 deals with witnesses who -- a

3    witness who has pled guilty to the same or related charges.

4           You have heard evidence that Raeann Gibson and Tony

5    Sellers pled guilty to charges arising from the events that

6    are the subject of this trial.  You must not consider Raeann

7    Gibson and Tony Sellers's guilty pleas as any evidence of the

8    defendants' guilt.  Raeann Gibson and Tony Sellers's decision

9    to plead guilty were personal decisions about their own

10   guilt.  You should disregard Raeann Gibson and Tony Sellers's

11   guilty pleas completely when considering the defendant's

12   guilt or innocence.  You should give such testimony the

13   weight you believe it deserves keeping in mind it must be

14   considered with caution and great care.

15          Now we're back to another credibility of a witness,

16   instruction number 12, credibility of witnesses who have been

17   convicted of a felony.

18          The testimony of a witness may be discredited or

19   impeached by evidence showing that the witness has been

20   convicted of a felony, a crime for which a person may receive

21   a prison sentence of more than one year.  Prior conviction of

22   a crime that is a felony is one of the circumstances which

23   you may consider in determining the credibility of that

24   witness.  It is the sole and exclusive right of the jury to

25   determine the weight to be given to any prior conviction as

Carol L. Naughton, Official Court Reporter

1    impeachment and the weight to be given the testimony of

2    anyone who has been previously convicted of a felony.

3           Next instruction is entitled "Testimony of

4    accomplices, informers, and plea agreements."

5           In this case, the government called as witnesses

6    alleged accomplices with whom the government has entered into

7    plea agreements providing for the dismissal of some charges.

8    Such plea bargaining, as it is called, is common and has been

9    approved as lawful and proper and expressly provided for in

10   the rules of this Court.

11          An alleged accomplice, including one who has entered

12   into a plea agreement with the government, does not thereby

13   become incompetent as a witness.  On the contrary, the

14   testimony of such a witness may alone be sufficient weight to

15   sustain a verdict of guilty.  However, the jury should keep

16   in mind that such testimony is always received with caution

17   and weighed with great care.

18          You should never convict a defendant upon

19   unsupported testimony of an alleged accomplice unless you

20   believe that testimony beyond a reasonable doubt.  And the

21   fact that an accomplice has entered a plea of guilty to the

22   offense charged is not evidence in and of itself of the guilt

23   of any other person.

24          Now we turn to an instruction entitled "Credibility

25   of witnesses dealing with prior inconsistent statements."

1          The testimony of a witness may be discredited or, as

2     we sometimes say, impeached by showing that he or she

3     previously made statements which are different than or

4     inconsistent with his or her testimony here in court.  The

5     earlier inconsistent or contradicted statements are

6     admissible only to discredit or impeach the credibility of

7     the witness and not to establish the truth or the falsity of

8     these earlier statements made somewhere other than here

9     during the trial.

10         If you believe any witness has been impeached and

11    thus discredited, it is your exclusive province to give the

12    testimony of that witness such credibility, if any, as you

13    think it deserves.  If a witness has shown to have knowingly

14    testified falsely concerning any important material matter,

15    you have a right to distrust such witness's testimony

16    concerning other matters, and you may reject all of the

17    testimony of that witness or give it such weight or

18    credibility as you think it deserves.

19         This next instruction deals with the fact of the

20    defendant's decision not to testify.

21         The defendant in a criminal case has an absolute

22    right under the Constitution not to testify.  The fact that

23    the defendants did not testify must not be discussed or

24    considered in any way when deliberating and in arriving at

25    your verdict.  No inference of any kind may be drawn from the

fact that a defendant decided to exercise his privilege under the Constitution and did not testify.  As stated before, the law never imposes upon a defendant in a criminal case the burden or the duty of calling any witness or producing any evidence.

The term "on or about" is used.  Let's define it. You will note that the indictment charges that the offenses were committed on or about a certain date.  Proof need not establish with certainty the exact date of the alleged offense.  It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

The approximate amount is used.  You will note that the indictment alleges that an approximate amount of money was involved in the offenses charged.  It is not necessary for the government to prove the exact or the precise amount of money alleged in the indictment.

Also, the expression "knowingly" is used in the indictment.

The term "knowingly," ladies and gentlemen, as used in these instructions to describe the alleged state of mind of the defendants, means that he was conscious and aware of his action or omission, realized what he was doing or what was happening around him, and did not act or fail to act because of ignorance, mistake, or accident.

1            Okay.  We will now move over to instruction 20.  The

2    term "willfully" means, as used in these instructions, to

3    describe the alleged state of mind of the defendant, meaning

4    that he knowingly performed an act deliberately and

5    intentionally or on purpose as contrasted with accidentally,

6    carelessly, or unintentionally.

7            The Court believes it read instruction number 23 on

8    inconsistent statements.

9            (Pause in the proceedings.)

10           THE COURT:  Ladies and gentlemen, we've also had law

11   enforcement witnesses in this case.  You've heard the

12   testimony of law enforcement officers.  The fact that a

13   witness may be employed as a law enforcement officer does not

14   mean that his testimony is necessarily deserving of more or

15   less consideration or greater or lesser weight than that of

16   an ordinary witness.

17           At the same time, it is quite legitimate for defense

18   counsel to try to attack the credibility of a law enforcement

19   witness on the grounds that his testimony may be colored by a

20   personal or professional interest in the outcome of the case.

21           It is your decision, after reviewing all the

22   evidence, whether to accept the testimony of the law

23   enforcement witness and to give that testimony whatever

24   weight, if any, you think it deserves.

25           Now let's talk about the term "motive."  This is

instruction number 21 by the Court's count.

Intent and motive are different concepts and should never be confused.  Motive, ladies and gentlemen, is what prompts a person to act or fail to act.  Intent refers only to the state of mind with which the act is done or omitted. Personal advancement and financial gain, for example, are two well-recognized motives for much of human conduct.  These motives, however, may prompt one person to voluntary acts of good while prompting another person to voluntary acts of crime.

Good motive alone is never a defense where the act done or omitted is a crime.  The motive of the defendant is, therefore, immaterial except insofar as evidence of motive to aid in the determination of the state of mind or the intent of the defendant.

How do you go about proving intent?  Instruction number 22 deals with proof of intent.

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of scrutinizing the workings of the human mind.  In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done or omitted by that person and all other facts and circumstances received in evidence which may aid in your determination of that

1    person's knowledge or intent.

2          You may infer, but you are certainly not required to

3    infer, that a person intends the natural and probable

4    consequences of acts knowingly done or knowingly omitted.

5    It's entirely up to you, however, to decide what facts to

6    find from the evidence received during the trial.

7          Now, you've heard some references to the SEC and

8    other proceedings.  Instruction number 23 deals with the

9    relationship between violations of civil regulations and

10   violations of criminal law.

11         Evidence has been received in this case that certain

12   regulatory statutes may have been violated during the time

13   alleged in the indictment.  All those violations are

14   regulatory statutes may not be considered by you as a

15   violation of criminal law.  Evidence of violations of civil

16   statutes may be considered by you as any other evidence in

17   determining whether the defendant had acquired knowledge and

18   intent to violate criminal laws.

19         Instruction number 24 is entitled "Good Faith

20   Defense."

21         Good faith is a complete defense to a charge that

22   requires intent to defraud.  A defendant is not required to

23   prove good faith.  The government must prove intent to

24   defraud beyond a reasonable doubt.  An honestly held opinion

25   or an honestly formed belief cannot be fraudulent intent even

1    if the opinion or belief is mistaken.  Similarly, evidence of

2    a mistake in judgment and error in management or carelessness

3    cannot establish fraudulent intent.  However, an honest

4    belief that a business venture would ultimately succeed does

5    not constitute good faith if the defendant intended to

6    deceive others by making representations that the defendant

7    knew to be false or fraudulent.

8             Next instruction deals with deliberate ignorance.

9    The government may prove that the defendants, David Alcorn

10   and Aghee William Smith II, acted knowingly by proving beyond

11   a reasonable doubt that these defendants deliberately closed

12   their eyes to what would otherwise have been obvious to them.

13   No one can avoid responsibility for a crime by deliberately

14   ignoring what is obvious.

15            A finding beyond a reasonable doubt of an intent of

16   the defendants, David Alcorn and Aghee William Smith II, to

17   avoid knowledge or enlightenment would permit the jury to

18   find knowledge.  Stated another way, a person's knowledge of

19   a particular fact may be shown from a deliberate or

20   intentional ignorance or deliberate or intentional blindness

21   to the existence of that fact.

22            It is, of course, entirely up to you whether you

23   find any deliberate ignorance or deliberate closing of eyes

24   and any inferences to be drawn from any such evidence.  You

25   may not conclude that defendants, David Alcorn and Aghee

1    Smith II, had knowledge, however, from proof of a mistake,

2    negligence, carelessness, or a belief in an inaccurate

3    proposition.

4           Instruction number 26 deals with ignorance of the

5    law.  It is not necessary for the prosecution to prove that

6    the defendants, David Alcorn and Aghee Smith II, knew that a

7    particular act or failure to act is a violation of law unless

8    and until outweighed by evidence in the case to the contrary.

9    The presumption is that every person knows what the law

10   forbids and what the law requires to be done.

11          The next instruction deals with false exculpatory

12   statements.  Statements knowingly and voluntarily made by a

13   defendant upon being informed that a crime had been committed

14   or upon being accused of a criminal charge may be considered

15   by a jury.

16          When a defendant voluntarily offers an explanation

17   or voluntarily makes some statement tending to show his

18   innocence and it is later shown that the defendant knew that

19   his statement or explanation was false, the jury may consider

20   this as showing a consciousness of guilt on the part of the

21   defendant since it is reasonable to infer that an innocent

22   person does not usually find it necessary to invent or

23   fabricate an explanation or statement tending to establish

24   his innocence.

25          Whether or not evidence as to the defendant's

explanation or statements point to a consciousness of guilt on his part and the significance, if any, to be attached to any such evidence are matters exclusively within the province of the jury since you are the sole judges of the facts in the case.

In your evaluation of the evidence of an exculpatory statement shown to be false, you may consider that there may be reasons fully consistent with innocence that could cause a person to give a false statement showing that he did not commit a crime. Fear of law enforcement or reluctance to become involved and simple mistake may cause a person who has committed no crime to give such a statement or explanation.

The term "aiding and abetting" is used in the charges in this case. A person may violate the law even though he or she does not personally do each and every act constituting the offense if that person aided and abetted the commission of the offense.

Section 2(a) of Title 18 of the United States Code provides: Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

Before a defendant may be held responsible for aiding and abetting others in the commission of a crime, it is necessary that the government prove beyond a reasonable doubt that the defendant knowingly and deliberately

1    associated himself in some way with the crime charged and

2    participated in it with the intent to commit the crime.

3              In order to be found guilty of aiding and abetting

4    the commission of the crimes charged in Counts Seven through

5    Seventeen, wire fraud, and Count Nineteen, unlawful monetary

6    transactions, of the indictment, the government must prove

7    beyond a reasonable doubt that the defendant, one, knew that

8    the crime charged was to be committed or was being committed;

9    two, knowingly did some act for the purpose of aiding,

10   commanding, and encouraging the commission of that crime;

11   and, three, acted with the intention of causing the crime

12   charged to be committed.

13             Before the defendant may be found guilty as an aider

14   or an abettor to the crime, the government must also prove

15   beyond a reasonable doubt that some person or persons

16   committed each of the essential elements of the offenses

17   charged in Counts Seven through Seventeen, wire fraud, and

18   Count Nineteen, unlawful monetary transactions, of the

19   indictment.

20             Now, merely being present at the scene of the crime

21   or merely knowing that a crime is being committed or is about

22   to be committed is not sufficient for the jury to find that a

23   defendant aided and abetted the commission of that crime.

24   The government must prove the defendant knowingly and

25   deliberately associated himself with the crime in some way as

1    a participant, someone who wanted the crime to be committed,
2    not as a mere spectator.
3          The next instruction, number 29, is entitled "Proof
4    May Be Disjunctive."
5          Juror proof may be disjunctive.  The Court instructs
6    the jury that although the indictment may charge the
7    defendant with committing an offense in several ways using
8    conjunctive language, that is, "and," it is sufficient if the
9    government proves the offense in the adjunctive, that is
10   "or."
11         That is to say, the jury may convict on a unanimous
12   finding of an element of a conjunctively charged offense.
13   Therefore, I instruct you that it is not necessary for the
14   government to prove that the defendant did each of those
15   things.  It's sufficient if the government proves beyond a
16   reasonable doubt that the defendant did any of these
17   alternative acts as charged as long as you all agree that the
18   same particular alternative act was, in fact, committed.
19         Instruction number 30.  We now turn to the offenses
20   charged.  When the Court talks about the offenses charged,
21   you can look in the instructions, and it lays out what's
22   charged in each count.  So we are starting now to go through
23   the counts.
24         Count One of the indictment charges conspiracy to
25   commit mail and wire fraud.  Counts One and Two charge

1   conspiracy to commit mail and wire fraud.

2          Count One of the indictment charges that from in or

3   about January 2011 through in or about August 2014, in the

4   Eastern District of Virginia and elsewhere, Aghee Smith II

5   and others known and unknown to the grand jury -- unknown --

6   I'm sorry, others known and unknown knowingly and

7   intentionally combined, conspired, confederated, and agreed

8   to commit the following offenses against the United States:

9          Number one, mail fraud.  Defendants and others known

10  and unknown, having devised a scheme and artifice to defraud

11  and to obtain money and property by means of materially false

12  or fraudulent pretenses, representations, and promises, did

13  knowingly place and cause to be placed in any post office and

14  authorized depository of mail any matter and thing whatever

15  to be sent and delivered by the Postal Service; did deposit

16  and cause to be deposited any matter and thing whatever to be

17  sent and delivered by any private and commercial interstate

18  carrier and caused to be delivered by mail or such carrier

19  any matter and thing whatever according to the direction

20  thereon for the purpose of executing such scheme and

21  artifice, in violation of Title 18, United States Code,

22  Section 1341.

23         And two, wire fraud.  Defendants and others known

24  and unknown, having devised a scheme and artifice to defraud

25  and to obtain money and property by means of materially false

1    and fraudulent pretenses, representations, and promises, did

2    transmit and cause to be transmitted by means of wire

3    communications in interstate commerce, writings, signs,

4    signals, pictures, and sounds for the purpose of execution of

5    such scheme and artifice, in violation of Title 18, United

6    States Code, Section 1343.

7           The purpose of the conspiracy was for the

8    conspirators to personally profit by misleading investors in

9    material ways about an investment in Dental Support Plus

10   Franchise, in violation of Title 18, United States Code,

11   section 1349, 1341, and 1343.

12          Now, Count Two of the indictment charges, from in or

13   about January '11 through in or about August 2017, in the

14   Eastern District of Virginia, the defendants, David Alcorn

15   and Aghee Smith II, and others known and unknown knowingly

16   and intentionally combined, conspired, confederated, and

17   agreed to commit the following offenses against the

18   United States:

19          Number one, mail fraud.  Defendants and others known

20   and unknown, having devised a scheme and artifice to defraud

21   and obtain money and property by means of materially false

22   and fraudulent pretenses, representations, and promises, did

23   knowingly place and cause to be placed in any post office and

24   authorized depository for mail any matter and thing whatever

25   to be sent and delivered by the Postal Service, did deposit

2543

```
1    and cause to be deposited any matter and thing whatever to be
2    sent and delivered by any private and commercial interstate
3    carrier and caused to be delivered by mail with such carrier
4    any matter and thing whatever according to the direction
5    thereon for the purpose of execution of such scheme and
6    artifice, in violation of Title 18, United States Code,
7    Section 1341.
8           And the second objective, mail fraud.  Defendants
9    and others known and unknown, having devised a scheme and
10   artifice to defraud and to obtain money and property by means
11   of materially false and fraudulent pretenses,
12   representations, and promises, did transmit and cause to be
13   transmitted by means of wire communications in interstate
14   commerce, writings, signs, signals, pictures, and sounds for
15   the purpose of executing such scheme and artifice, in
16   violation of Title 18, United States Code, Section 1343.
17          The purpose of the conspiracy was for the
18   conspirators to personally profit by misleading investors in
19   material ways about an investment in cellular spectrum, in
20   violation of Title 18, United States Code, Section 1349,
21   1341, and 1343.
22          Now to the statutes defining these offenses.
23   Title 18 of the United States Code, Chapter 63, Section 1349,
24   provides in pertinent part the following:
25          Any person who conspires to commit any offense under
```

1    this chapter shall be subject to the same penalties as though
2    prescribed for the offense, the commission of which was the
3    object of the conspiracy.
4           In turn, Title 18, United States Code, Chapter 63,
5    Section 1341, provides in pertinent part whoever, having
6    devised or intending to devise any scheme or artifice to
7    defraud for the purpose of executing such scheme or artifice
8    places in any post office or authorized depository for mail
9    any matter and thing whatever to be sent or delivered by the
10   Postal Service or sent or delivered by any private or
11   commercial interstate carrier shall be guilty of an offense
12   against the United States.
13          In turn, Title 18, United States Code, Chapter 63,
14   Section 1343, provides whoever having devised or intending to
15   devise any scheme or artifice to defraud transmits or causes
16   to be transmitted by means of a wire communication in
17   interstate commerce any writing, signs, signals, sounds,
18   pictures for the purpose of executing such scheme or artifice
19   shall be guilty of an offense against the United States.
20          Now, what are the elements?  In other words, what
21   does the government have to prove to prove these two
22   conspiracy charges?  Now, the conspiracy charges are long,
23   but it's necessary that I go through it.
24          In order to sustain its burden of proof for the
25   crime of conspiracy as charged in Counts One and Two of the

1    indictment, the government must prove the following three

2    essential elements beyond a reasonable doubt:

3            First -- this is instruction number 32 -- the

4    conspiracy, agreement, or understanding to commit mail and

5    wire fraud as charged in the indictment was formed, reached,

6    or entered into by two or more persons;

7            Second, that at some time during the existence of

8    the life of this conspiracy or agreement or understanding,

9    the defendant you are considering knew the purpose of the

10   agreement;

11           And, three, that with knowledge of the purpose of

12   the conspiracy, agreement, or understanding, the defendant

13   you are considering then deliberately joined the conspiracy,

14   agreement, or understanding.

15           Now we're going through a whole bunch of definitions

16   having to do with conspiracy.  What is a conspiracy?  That's

17   instruction number 33.  I just read 32.

18           A conspiracy, ladies and gentlemen, is a combination

19   or agreement of two or more persons to join together to

20   attempt to accomplish some unlawful purpose.  It is a kind of

21   partnership in criminal purposes where each member becomes

22   the agent of every other member.  The essence of the offense

23   is a combination or mutual agreement by two or more persons

24   to disobey or disregard the law.

25           The evidence in the case need not show that the

1    alleged members of the conspiracy entered into any express or

2    formal agreement or that they directly stated between

3    themselves the details of the scheme and its object or

4    purpose or the precise means by which the objective purpose

5    was to be accomplished.

6         Similarly, the evidence in the case need not

7    establish that all the means or methods set forth in the

8    indictment were, in fact, agreed upon to carry out the

9    alleged conspiracy or that all of the means or methods which

10   were agreed upon were actually used or put into operation;

11   neither must it be proved that all of the persons charged to

12   have been members of the conspiracy were such nor that the

13   alleged conspirators actually succeeded in accomplishing

14   their unlawful objectives; neither is it necessary for the

15   government to prove any of the overt acts listed in the

16   indictment.

17        What the evidence in the case must show beyond a

18   reasonable doubt is:

19        That two or more persons in some way or manner

20   positively or tacitly came to a mutual agreement, mutual

21   understanding to try to accomplish a common unlawful plan as

22   charged in the indictment; and, number two, that the

23   defendant you are considering willfully became a member of

24   such conspiracy.

25        One may become a member of the conspiracy without

```
1    full knowledge of all the details of the unlawful scheme or
2    the names and identities of all of the other alleged
3    conspirators.  So if a defendant, with an understanding of
4    the unlawful character of a plan, knowingly and willfully
5    joins in an unlawful scheme on one occasion, that is
6    sufficient to convict him for conspiracy even though he had
7    not participated at earlier stages in the scheme and even
8    though he played only a minor part in the conspiracy.
9            Of course, mere presence at the scene of an alleged
10   transaction or event or mere similarity of conduct among
11   various persons and the fact that they may have associated
12   with each other and may have assembled together and discussed
13   some common names and interest does not necessarily establish
14   proof of the existence of a conspiracy.  Also, a person who
15   has no knowledge of a conspiracy but who happens to act in a
16   way which advances some object or purpose of a conspiracy
17   does not thereby become a conspirator.
18           In your consideration of the conspiracy offense as
19   alleged in the indictment, you shall first determine from all
20   of the evidence and all of the testimony in the case whether
21   or not the conspiracy existed as charged.  If you conclude
22   that a conspiracy did exist as alleged, you should next
23   determine whether or not the defendant you are considering
24   willfully became a member of such conspiracy.
25           If and when it does appear beyond a reasonable doubt
```

1   from the evidence in the case that a conspiracy did exist as

2   charged and the defendant you are considering was a member,

3   then the statements and acts knowingly made and done during

4   such conspiracy and in furtherance of its object by another

5   proven member of the conspiracy may be considered by the jury

6   as evidence against the defendant under consideration even

7   though he was not present to hear the statement made or see

8   that act done.

9            This is true, ladies and gentlemen, because, as

10   stated earlier, a conspiracy is a kind of partnership so that

11   under the law each member is an agent or partner of every

12   other member, and each member is bound by or responsible for

13   the acts and the statements of every other member made in

14   pursuance of their unlawful scheme.

15            We probably have another 30 minutes.  We will make

16   it.

17            Now, we talked about the existence of an agreement.

18   What does that mean?  A criminal conspiracy is an agreement

19   or a mutual understanding knowingly made or knowingly entered

20   into by at least two people to violate the law by some joint

21   or common plan or course of action.

22            A conspiracy is, in a very true sense, a partnership

23   in crime.  A conspiracy or agreement to violate the law, like

24   any other kind of agreement or understanding, need not be

25   formal, written, or even expressed directly in every detail.

1    The government must prove that defendants David Alcorn and

2    Aghee Smith II knowingly and deliberately arrived at an

3    agreement or understanding that they, and perhaps others,

4    would violate some law by means of some common plan or course

5    of action as alleged in Counts One and Two of the indictment.

6          It is proof of this conscious understanding and

7    deliberate agreement by the alleged members that should be

8    central to your consideration of the charge of conspiracy.

9    Unless the government proves beyond a reasonable doubt that a

10   conspiracy, as just explained, actually existed, then you

11   must acquit the defendants.

12         The next instruction deals with membership in an

13   agreement.  First, I just read to you in 34 the existence of

14   an agreement.  Now this deals with membership in the

15   agreement.

16         Before the jury may find the defendants or any other

17   person became a member of the conspiracy charged in

18   Counts One and Two of the indictment, the evidence in the

19   case must show beyond a reasonable doubt that the defendants

20   knew one or more of the purpose or goals of the agreement or

21   understanding and deliberately entered into the agreement

22   intending in some way to accomplish the goal or purpose by

23   this common plan or joint action.

24         Again, merely associating with others and discussing

25   common goals, mere similarity of conduct among such persons,

1    merely being present at the place where a crime takes place

2    or is discussed, or even knowing about the criminal conduct

3    does not of itself make someone a member of the conspiracy or

4    a conspirator.  However, once it has been shown that a

5    conspiracy existed, the evidence need only establish a slight

6    connection between the defendants and the conspiracy.

7            Instruction 36 deals with acts and declarations of

8    co-conspirators.  As I said, these instructions on conspiracy

9    are repetitive.

10           Evidence has been received in this case that certain

11   persons, who are alleged in Counts One and Two of the

12   indictment to be co-conspirators of the defendants and other

13   unnamed co-conspirators, have done or said things during the

14   existence or the life of the alleged conspiracy in order to

15   further or advance its goal.  Such acts and statements of

16   these co-conspirators and other individuals may be considered

17   by you in determining whether or not the government has

18   proved the charges in Counts One and Two of the indictment

19   against the defendants.

20           Since these acts may have been performed and these

21   statements may have been made outside the presence of the

22   defendants and even done or said without the defendants'

23   knowledge, these acts or statements should be examined with

24   particular care by you before considering them against the

25   defendants who did not do the particular act or make the

1    particular statement.

2         Acts done or statements made by an alleged

3    co-conspirator before a defendant joined the conspiracy may

4    also be considered by you in determining whether the

5    government has proved -- has sustained its burden of proof in

6    Counts One and Two of the indictment.  Acts done or

7    statements made before an alleged conspiracy began or after

8    an alleged conspiracy ended, however, may only be considered

9    by you regarding the person who performed that act or made

10   that statement.

11        Instruction 37 is entitled "Agent of the Defendant."

12   It is not necessary for the government to prove that the

13   defendants, David Alcorn and Aghee Smith II, personally did

14   every act constituting the offense charged.

15        As a general rule, whatever any person is legally

16   capable of doing himself, he can do through another acting as

17   his agent.  So if the acts or conduct of another is

18   deliberately ordered or directed by a defendant or

19   deliberately authorized or consented to by a defendant, then

20   the law holds that defendant responsible for such acts or

21   conduct just the same as if personally done by him.

22        We turn to instruction number 38 dealing with

23   "Conspiracy -- Liability for the Substantive Counts."  The

24   substantive counts are the mail fraud and the wire fraud and

25   unlawful transaction counts.

1          A conspirator is responsible for the offenses
2  committed by another conspirator if the conspirator was a
3  member of the conspiracy when the offense was committed and
4  if the offense was committed in furtherance of or as a
5  foreseeable consequence of the conspiracy.
6          Therefore, if you have first found the defendant
7  guilty of the conspiracy charged in Counts One and Two and if
8  you find beyond a reasonable doubt that during the time the
9  defendant was a member of that conspiracy, another
10  conspirator committed the offenses in furtherance of a
11  foreseeable consequence of that conspiracy, then you may find
12  the defendant guilty of other charges, even though the
13  defendant may not have participated in any or all of the acts
14  which constitute the offenses described in other charges in
15  the indictment.
16          Instruction 39 is dealing with the success of the
17  conspiracy.
18          The government is not required to prove that the
19  parties to or members of the alleged agreement or conspiracy
20  were successful in achieving any or all of the objects of the
21  agreement or conspiracy.
22          This next instruction deals with unanimity.  Each of
23  the conspiracy counts of the indictment charged the
24  defendants with violation of federal law concerning
25  conspiracy.

1           The indictment alleges a number of separate means or

2     methods by which the defendants are accused of violating the

3     law.  The government is not required to prove all of the

4     means or methods alleged in Counts One or Two of the

5     indictment.  Each juror must agree with each of the other

6     jurors, however, that the same means or methods alleged in a

7     conspiracy count with an indictment was, in fact, engaged in

8     or employed by the defendants in committing the crime charged

9     in the conspiracy counts within the indictment.

10          The jury need not unanimously agree on each means or

11    method, but in order to convict, you must unanimously agree

12    upon at least one such means or method as one engaged in by

13    the defendants.  Unless the government has proven the same

14    means or method to each of you beyond a reasonable doubt, you

15    must acquit the defendant of the crime charged in each

16    conspiracy count within the indictment.

17          Did I miss something?

18          MS. YUSI:  Your Honor, in the index, and I think in

19    the original, we have number 37, "Agent," and I don't think

20    it's in the packet.

21          THE COURT:  Number 37 is not in your package?

22          MS. YUSI:  I don't believe so.  And I don't believe

23    it was read.

24          THE COURT:  I just read number 37.

25          MS. YUSI:  I'm sorry.  It's the one about "Agent."

```
 1              MR. YAROW:  It's 38 in my packet.

 2              THE COURT:  I have read -- I just read number 37

 3    dealing with agent.  I read -- as a matter of fact, I read

 4    them all.  I don't know what happened here.  We've got some

 5    misnumbering going on here.  I read 37 dealing with agent of

 6    the defendant.  I read number 38, which was the conspiracy

 7    liability.

 8              MS. YUSI:  All right.  Thank you.

 9              THE COURT:  Okay.  So now I'm moving down to -- I

10    just read unanimity and explained that, and I'm getting ready

11    to go to 41.  Are we together?  41 is dealing with Counts

12    Seven through Seventeen.  And unless the index has been

13    changed, that's where we are.

14              (Pause in the proceedings.)

15              THE COURT:  We are at 41.  41 is the nature of the

16    offense charged in Counts Seven through Seventeen.  Ladies

17    and gentlemen, we have these counts laid out in a chart.  I'm

18    going to be reading the beginning language with regard to the

19    chart.

20              Counts Seven through Seventeen of the indictment

21    charges that on or about the date set forth below, in the

22    Eastern District of Virginia and elsewhere, for the purpose

23    of executing the above-described scheme and artifice to

24    defraud and for obtaining property by means of materially

25    false and fraudulent pretenses, representations, and
```

1    promises, the defendants, David Alcorn and Aghee Smith II,

2    and those known and unknown knowingly transmitted and caused

3    to be transmitted by means of wire communication in

4    interstate commerce certain writings, signs, signals,

5    pictures, and sounds as follows:

6            In Count Seven, it's laid out here with the date of

7    the alleged offense and the item that was wired.  In

8    Count Eight -- you can just go right through the counts, the

9    dates -- the times the defendants allegedly committed the

10   offense, the date it was allegedly committed, and the wired

11   item involved is laid out in Counts Seven through Seventeen.

12   You can track the counts.

13           Now, let's go to the statute defining that offense.

14   I think I read it when we were talking about the conspiracy,

15   but now I have to read it again.

16           Section 1343, Title 18, United States Code, provides

17   in pertinent part that:  Whoever, having devised or intending

18   to devise any scheme or artifice to defraud, or for obtaining

19   money or property by means of false or fraudulent pretenses,

20   representations, promises, transmits or causes to be

21   transmitted by means of a wire communication in interstate

22   commerce, writings, signs, signals, pictures, or sounds for

23   the purpose of executing such scheme or artifice, shall be

24   guilty of an offense against the United States.

25           Instruction number 43 lays out what the

1    United States is required to prove that charge, and after I

2    read what the United States is required to prove, we're going

3    to have a breakdown further of what is meant by each of the

4    things that -- the statements that are made in instruction

5    43.

6            In order to sustain its burden of proof for the

7    crime of using a wire communication to further a scheme or

8    plan to obtain money or property by means of false or

9    fraudulent pretenses, representations, or promises, as

10   charged in Counts Seven through Seventeen of the indictment,

11   the government must prove the following four essential

12   elements beyond a reasonable doubt:

13           First, the defendant knowingly devised or knowingly

14   participated in a scheme or artifice to defraud or, B, a

15   scheme or artifice to obtain money or property by means of

16   materially false or fraudulent pretenses, representations, or

17   promises, as detailed in Counts Seven through Seventeen of

18   the indictment;

19           Second, the scheme and artifice to defraud or the

20   pretenses, representations, or promises were material, that

21   is, they would reasonably influence a person to part with

22   money or property;

23           Third, the defendant did so with intent to defraud;

24           Fourth, in advancement or furthering or carrying out

25   this scheme to defraud or scheme to obtain money or property

1  by means of false or fraudulent pretenses, representations,

2  or promises, the defendant transmitted any writings, signals,

3  or sounds by means of a wire, radio, or television

4  communication in interstate commerce or caused the

5  transmission of any writings, signals, or sounds of some kind

6  by means of wire communications in interstate commerce.

7        Now, we've used the term a number of times, "any

8  scheme or artifice to defraud."  What does all that fancy

9  term mean?  Instruct 44 addresses that.

10       The phrase "any scheme or artifice to defraud" and

11 "any scheme or artifice for obtaining money or property"

12 means any deliberate plan or action or course of conduct by

13 which someone intends to deceive or to cheat another or by

14 which someone intends to deprive another of something of

15 value.

16       The term "false or fraudulent pretenses,

17 representations, or promises" means:

18       A statement or an assertion which concerns a

19 material or important fact or material or important aspect of

20 the matter in question and that was even known to be untrue

21 at the time that it was made or used, that it was made or

22 used with reckless indifference as to whether it was, in

23 fact, true or false, and made or used with the intent to

24 defraud.

25       The term "false or fraudulent pretenses,

1    representations, or promises" includes actual direct false

2    statements as well as half-truths and includes the knowing

3    concealment of facts that are material or important to the

4    matter in question and that were made or used with intent to

5    defraud.

6         A scheme or artifice to defraud includes a scheme to

7    deprive another person of tangible as well as intangible

8    property rights.  Intangible rights means anything valued or

9    considered to be a source of wealth including, for example,

10   the right to decide how one's money is spent.

11        The term "intent to defraud" means -- "to act with

12   intent to defraud" means to act knowingly and with the

13   intention or the purpose to deceive or cheat.  An intent to

14   defraud is accompanied ordinarily by a desire or with a

15   purpose to bring about some gain or benefit to oneself or

16   some other person or by a desire or a purpose to cause some

17   loss to some person.

18        That was instruction 45 dealing with intent to

19   defraud.  I'm moving now to instruction 46 dealing with

20   materiality.

21        A statement or representation, ladies and gentlemen,

22   is material if it has a natural tendency to influence or is

23   capable of influencing a decision or an action.  To be

24   material it's not necessary that the statement or

25   representation, in fact, influence or deceive.  As used in

1    these instructions, a representation, pretense, or promise is

2    material if it has a natural tendency to influence or is

3    capable of influencing the decision of the person or entity

4    to which it is addressed.

5         The government can prove materiality in either of

6    two ways:  First, a representation or promise or pretense is

7    material if a reasonable person would attach importance to

8    its existence or nonexistence in determining his or her

9    choice of action in the transaction in question.

10        A statement could be material even though only an

11   unreasonable person would rely on it if the person who made

12   the statement knew or had reason to know his or her victim

13   was likely to rely on it.

14        In determining materiality, you should consider that

15   naivety, carelessness, negligence, or stupidity of a victim

16   does not excuse criminal conduct, if any, on the part of the

17   defendant.

18        Instruction number 47 deals with the use of wire.

19   What does that mean?

20        A wire communication includes a wire transfer of

21   funds between banks in different states, or between a bank

22   and the United States and a bank in a foreign country.  The

23   government and the defendants have stipulated that the wires

24   charged in the indictment consisted of interstate wire

25   transfers of funds between banks in different states.

1          The use of the wire need not itself be a fraudulent

2     representation.  It must, however, further or assist in the

3     carrying out of the scheme to defraud.  It is not necessary

4     for the defendant to be directly or personally involved in

5     the wire communications as long as the communication was

6     reasonably foreseeable in the execution of the alleged scheme

7     to defraud in which the defendant is accused of

8     participating.

9          In this regard, it is sufficient to establish this

10    element of the crime if the evidence justifiably finds that

11    the defendant caused the wires to be used by others.  This

12    does not mean that the defendant must specifically have

13    authorized others to transfer the funds.  When one does an

14    act with knowledge that the use of the wires will follow in

15    the ordinary course of business or where such use of the

16    wires can reasonably be foreseen, even though not actually

17    intended, then he causes the wires to be used.

18         The government contends that it was reasonably

19    foreseeable that the wires would be used in the ordinary

20    course of business, for example, to transfer the funds

21    between banks, and therefore, the defendants caused the use

22    of the wires.

23         The government does not have to prove that the wires

24    were used on the exact dates charged in the indictment.  It

25    is sufficient if the evidence establishes beyond a reasonable

1   doubt that the wires were used on a date substantially

2   similar to the dates charged in the indictment.

3         Ladies and gentlemen, we've come to the last count

4   in the indictment, Count Nineteen, instruction number 48.

5   We'll follow the usual pattern.  First we tell you what the

6   charge is, then we tell you what the statute is that condemns

7   that act, and then we tell you what the government has to

8   prove beyond a reasonable doubt on that particular charge.

9         So we have, I estimate, at least another 15 minutes

10  or more, maybe 20, but we'll keep on going.

11        Count Nineteen of the indictment charges that on or

12  about May 1st, 2015, in the Eastern District of Virginia and

13  elsewhere, the defendant David Alcorn did unlawfully and

14  knowingly engage and attempt to engage in a monetary

15  transaction by, through, and to a financial institution,

16  affecting interstate and foreign commerce, in criminally

17  derived property of a value greater than $10,000, such funds

18  having been derived from a specified unlawful activity, that

19  is, wire fraud, involving wire transfers from the Eastern

20  District of Virginia, in violation of Title 18, United States

21  Code, Section 1343, as follows:  depositing a cashier's check

22  totaling $100,093.05 into his retirement plan bank account,

23  in violation of Title 18, United States Code, Section 1957.

24        That's the charge.

25        Instruction 49 is the statute defining the offense

1    charged in Count Nineteen.  Section 1957 of Title 18, United

2    States Code, provides in part, whoever knowingly engages or

3    attempts to engage in a monetary transaction in criminally

4    derived property of a value greater than $10,000 and is

5    derived from specified unlawful activity shall be guilty of

6    an offense against the United States.

7            To prove this count -- instruction 50 lays out what

8    the government has to prove.  It has five elements, and then

9    the Court has to go through and define those five elements.

10           In order to prove the crime of engaging in a

11   monetary transaction in property derived from specified

12   unlawful activity -- that's a long way of saying money

13   laundering -- the government must establish beyond a

14   reasonable doubt each of the following elements:

15           First, that the defendant engaged or attempted to

16   engage in a monetary transaction in or affecting interstate

17   commerce;

18           Two, that the monetary transaction involved

19   criminally derived property with a value greater than

20   $10,000;

21           Third, that the property was derived from specified

22   unlawful criminal activity;

23           Fourth, the defendant acted knowingly, that is, with

24   knowledge that the transaction involved proceeds of a

25   criminal offense;

1          And, fifth, that the transaction took place in the
2     United States.
3          Now, the first element deals with engaging in a
4     monetary transaction.  What does all that mean?  Well, I've
5     got a page here to explain it to you.
6          The first element that the government must prove
7     beyond a reasonable doubt is the defendant engaged in a
8     monetary transaction in or affecting interstate commerce.
9          The term "monetary transaction" means a deposit,
10    withdraw, transfer, exchange in or affecting interstate or
11    foreign commerce of funds of a monetary instrument by,
12    through, or to a financial institution.
13         The term "interstate or foreign commerce" means
14    commerce between any combination of the states, territories,
15    or possessions of the United States, or between the
16    United States and foreign countries.
17         You remember that the government has already
18    stipulated to the interstate transfer of funds in this case.
19         You must find that the transaction affected
20    interstate commerce in some way; however minimal.  This
21    effect on interstate commerce can be established in several
22    ways:
23         First, any monetary transaction with a financial
24    institution insured by the Federal Deposit Insurance
25    Corporation or the National Credit Union Share Insurance Fund

1    affects interstate commerce.  So if you find that any of the

2    banks at issue in this case were insured by the FDIC or

3    NCUSI, that is enough to establish the transaction affected

4    interstate commerce;

5         Second, if you find that the source of the funds

6    used in a transaction affected interstate commerce, that is

7    sufficient as well;

8         Third, if you find that the transaction itself

9    involved an interstate transfer of funds, that would also be

10   sufficient.

11        The government and the defendants have stipulated

12   that the relevant financial institutions were insured by the

13   FDIC and the NCUSI and the transactions affected interstate

14   commerce.

15        The second element:  Transaction involved criminally

16   derived property.  That's a mouthful.  What does that mean?

17        The second element that the government must prove

18   beyond a reasonable doubt is that the monetary transaction

19   involved criminally derived property having a value in excess

20   of $10,000.

21        The term "criminally derived property" means any

22   property constituting or derived from proceeds obtained from

23   a criminal offense.

24        The term "proceeds" means any property derived from

25   or obtained or retained directly or indirectly through some

1  form of unlawful activity, including the gross receipts of

2  such activity.

3          The government is not required to prove that all of

4  the property involved in a transaction was criminally derived

5  property; however, the government must prove that more than

6  $10,000 of the property involved was criminally derived.

7          The third element:  Property derived from a

8  specified unlawful activity.  What does that mean?

9          The third element that the government must prove

10  beyond a reasonable doubt is that the defendant knew that the

11  property involved in the financial transaction was the

12  proceeds of some form of unlawful activity.

13          I instruct that this element refers to a requirement

14  that the defendant knew the property involved in a

15  transaction represented proceeds from some form, though not

16  necessarily which form, of activity constituting -- that

17  constitutes a criminal offense under state or federal law.  I

18  instruct you as a matter of law that wire fraud is a criminal

19  offense.

20          The fourth element talks about knowledge.  You've

21  had some instructions on knowledge as well, but here's

22  another one.

23          The fourth element that the government must prove

24  beyond a reasonable doubt is that the defendant knowingly

25  engaged in an unlawful monetary transaction as defined above.

1          I instruct you that in a prosecution for an offense

2     under this section, the government is not required to prove

3     that the defendant knew the particular offense from which the

4     criminally derived property was derived; however, the

5     government must prove beyond a reasonable doubt that the

6     defendant knew that the transaction involved criminally

7     derived property, which I remind you means any property

8     constituting or derived from proceeds obtained from a

9     criminal offense.

10         If you find that the government has established

11    beyond a reasonable doubt that the defendant knew that the

12    transaction involved property derived from a criminal

13    offense, then this element is satisfied.

14         And the last element is the fifth element, that the

15    transaction took place in the United States.

16         The fifth element that the government must prove

17    beyond a reasonable doubt is that the transaction took place

18    in the United States.

19         I think we've covered part of that already.  Now we

20    get down to our last three instructions.

21         Ladies and gentlemen, I caution you that you are not

22    here to determine the guilt or innocence of the accused from

23    the evidence -- I caution you that you are here to determine

24    the guilt or innocence of the accused from the evidence in

25    this case.  The defendants are not on trial for any act or

1   conduct or offense not alleged in the indictment.  Neither

2   are you called upon to return a verdict as to the guilt or

3   innocence of any other person or persons not on trial as a

4   defendant in this case.

5            Also, the punishment provided by law for the

6   offenses charged in the indictment is a matter exclusively

7   within the province of the Court or the judge and should

8   never be considered by a jury in any way in arriving at an

9   impartial verdict as to the guilt or innocence of those

10   accused.

11            The Court has permitted you to take notes during the

12   trial.  Your notes should be used only as a memory aid.  You

13   should not give your notes precedent over your independent

14   recollection of the evidence.  If you did not take notes, you

15   should rely on your own independent recollection of the

16   proceedings, and you should not be influenced by the notes of

17   other jurors.

18            I emphasize that the notes are not entitled to any

19   greater weight than the recollection or impression of each

20   juror as to what the testimony may have been.

21            And my last instruction:

22            Your verdict must represent the considered judgment

23   of each juror.  In other words, your verdict must be

24   unanimous on each count.  Each of you must decide this case

25   for yourself but only after an impartial consideration of all

1    the evidence in the case with your fellow jurors.

2           It is your duty as jurors to consult with one

3    another and deliberate with a view to reach an agreement if

4    you can do so without violence to your individual judgment.

5    In the course of your deliberations, do not hesitate to

6    reexamine your own views and change your opinion if convinced

7    it is erroneous, but do not surrender your honest conviction

8    as to the weight or the effect of the evidence solely because

9    of the opinion of your fellow jurors or for the mere purpose

10   of returning a verdict.

11          Remember at all times you are not partisans.  You

12   are judges of the facts.  You are judges of the facts.  Your

13   sole interest is to seek the truth from the evidence in the

14   case.

15          Now, upon retiring to the jury room, you should

16   first select one of your members to serve as your foreperson

17   who will represent or who will preside over your

18   deliberations and will be your spokesperson here in court.

19          A special verdict form has been prepared for each of

20   the defendants in this case.  And for your convenience, you

21   will take the exhibits, which will be sent to the jury room,

22   and the verdict forms to the jury room, and when you have

23   reached a unanimous verdict, your foreperson will sign this

24   verdict form and will let court security officer know that

25   you have reached your verdict.  The court security officer

1    will bring it to the attention of the Court.  Remember to
2    date the verdict sheet and sign it.
3           Now, if during your deliberations you decide you
4    want to communicate with the Court, your message or question
5    must be in writing and signed by the foreperson, and it
6    should be folded.  Now, if you leave enough space on the
7    paper, the Court may be able to answer your question on the
8    same piece of paper, or it could be that the Court may find
9    it necessary to bring you back to the courtroom.
10          If you should send a message, do not reveal to the
11   Court what your division is.  The Court does not want to know
12   who is for what and who is against what.  That is your
13   business.
14          Finally, you should not interpret anything the Court
15   has said or done over the course of this trial as indicating
16   what your verdict should be.  That is your responsibility and
17   yours alone.
18          Now, ladies and gentlemen, when we started this
19   case -- first, let me do this before I do that, just in case
20   I have to go back.
21          Are there any questions or issues about the charges
22   as given?
23          MS. YUSI:  Not from the government.
24          MR. YAROW:  Not from Mr. Alcorn, Your Honor.
25          MS. McCASLIN:  Not from Mr. Smith.

```
1              THE COURT:  Okay.  Thank you.

2              Ladies and gentlemen, you have been very attentive

3    during the course of this trial.  That's very good for

4    white-collar fraud case where it's paper, paper, paper.  Only

5    12 of you can deliberate, so the Court must excuse three of

6    you.  Those three excused cannot discuss this case until a

7    verdict is in, because if something happens to one of the

8    jurors during deliberations, we will have to call on one of

9    the three who were excused to come back to deliberate.

10             So do not discuss the case with your family or

11   friends or do any research or anything.  Just hold on.  So

12   you will need to probably call the clerk or check to

13   determine whether the case is over before you decide that

14   you're going to discuss this case.

15             So we want to thank the following three jurors for

16   coming in: ██████████████████████████████████████.

17             I want to thank you very much for coming in and

18   giving your time.  It was so important that you be here.  As

19   you see, we lost three jurors in the course of this trial, so

20   that's why we selected an abundance.

21             If you would retire to the jury room and pick up

22   your materials, you must be departed from the jury room

23   before I can send your fellow jurors in, so if you would

24   stand up and depart now.

25             (The alternate jurors were excused.)
```

```
 1              (Pause in the proceedings.)

 2              THE COURT:  Ladies and gentlemen, you may depart to

 3    the jury room.

 4              (The jury exited the courtroom.)

 5              THE COURT:  Counsel, you can come up and take a look

 6    at these instructions I just read.  It should be the same

 7    thing that you have, but you can come up here and take a

 8    look.  Here are the verdict forms that are going back too.  I

 9    am sending four copies back, and I'm just saving some time.

10    We had a little confusion on those pages.  It just so happens

11    we had two Page 23s, but we're straight.

12              (Pause in the proceedings.)

13              THE COURT:  We will be sending a clean laptop back

14    there so if they want to use it to play those exhibits,

15    they'll have it, and they won't have to come back out and ask

16    us for a laptop.

17              Have you, counsel, checked the exhibits that are

18    going back?

19              MS. YUSI:  The government is fine with them.

20              MR. YAROW:  Mr. Alcorn is fine.

21              THE COURT:  Any objection to the exhibits going

22    back, Ms. McCaslin?

23              MS. McCASLIN:  No objections.

24              THE COURT:  I'm going to have Ms. Thompson and the

25    court security officer take them back.
```

```
 1              (Pause in the proceedings.)

 2              THE COURT:  They are asking for markers and a board.

 3    We don't need to sit here while they are getting markers and

 4    a board in there.

 5              We're going -- when they get their meals, we'll be

 6    able to be out from 1:00 to 2:30.  So hopefully the meals

 7    will be in here at 1:00.  And we'll be unavailable from 1:00

 8    to 2:30.  Otherwise, counsel needs to be close by.  I don't

 9    know whether they are going to have questions or not.

10              (Recess from 11:53 a.m. to 2:32 p.m.)

11              THE COURT:  Good afternoon.  The jury has come back

12    with a question -- two questions:

13              "Can we have the transcripts of Sunshine Grissom?"

14              Now, I think we told the jurors early on we would

15    not be providing transcripts from anybody testifying.  So the

16    Court's answer to that would be "No.  You must rely on your

17    recall."

18              Any problems with that?

19              MS. O'BOYLE:  No, Your Honor.

20              MS. YUSI:  No, Your Honor.

21              MR. YAROW:  Not from Mr. Alcorn.

22              MS. McCASLIN:  No, Your Honor.

23              THE COURT:  That was from Mr. Smith, "no"?

24              MS. McCASLIN:  Correct.

25              THE COURT:  I'll show you the question because I'm
```

 1   going to mark it.

 2          Now, the second question might be a little bit more

 3   problematic.

 4          "Does instruction 29 'and/or' apply to the

 5   Count Sixteen?"

 6          Instruction 29 is the one that talks about proof may

 7   be disjunctive.  If they looked at Count Sixteen, it pertains

 8   to Mr. Alcorn and Mr. Smith, and it says "Interstate

 9   conference call with sales force about DSPF and Janus

10   Spectrum."

11          The only thing I can figure out is they may very

12   well find that maybe the call pertained to one or the other

13   or maybe it pertained to one or the other defendant, but it

14   may not be both.  It may be one; DSPF or it could be Janus

15   Spectrum.

16          So the question is how do we answer it?  "Does

17   instruction 29 'and/or' apply," and I would be inclined to

18   answer it:  "It may apply as you deem appropriate."

19          MS. YUSI:  That's fine with the government, Your

20   Honor.

21          MR. YAROW:  That's fine with Mr. Alcorn, Your Honor.

22          MS. McCASLIN:  I'm not entirely clear about what

23   they're asking can be disjunctive.

24          THE COURT:  They are asking if instruction 29,

25   and/or, applies to Count Sixteen.  In other words, may it

1    apply to Count Sixteen?

2          When you look at Count Sixteen, apparently the

3    government charges that the interstate conference call with

4    sales force was about DSPF and Janus Spectrum.  It could be

5    "DSPF or," because the instruction says where it's "and," it

6    could be "or."

7          We can always write back and tell them "We do not

8    understand your question.  Please explain."  But I think

9    that's even worse.

10         You're really not compromising anything if you tell

11   them the instruction may apply as you deem appropriate, which

12   means it may not apply.

13         All right.  We've got to go one way or the other.

14         MS. McCASLIN:  Your Honor, I do think that they're

15   asking about what the definition and what the jury

16   instruction means, and so I don't know that we can just leave

17   it very ambiguous with "It means whatever you want it to

18   mean," because I think there needs to be a more concrete

19   answer based on law, if that's what they're asking.

20         THE COURT:  The only response to that would be

21   "Reread the instruction," because the Court would not go any

22   further than what that instruction says, without committing

23   error.  That's as far as the Court will go, is tell them

24   "Please reread instruction 29," period, and leave it there.

25              Any objection to that?  I don't know how you attempt

1   to go back and explain.  I think it would be risky to go back

2   and start trying to expound upon what that particular

3   instruction says, but it's very clear in terms of what they

4   have to do without us trying to inquire further into their

5   deliberations, which we do not want to do, in order to

6   answer.

7           So I'm just going to write "Please reread

8   instruction 29."

9           Take a look at the question.  One of you-all step up

10  and take a look at the question before we send it back there.

11          (Pause in the proceedings.)

12          THE COURT:  Okay.  Hearing no objection to what the

13  Court has written, we will send it back there with those

14  answers.

15          We'll be in recess until further notice.

16          (Recess from 2:39 p.m. to 3:31 p.m.)

17          THE COURT:  There's another question from the jury

18  here, and this question reads as follows:

19          "Exhibit 2000, Section E, paragraph 14, 7/8/14

20  conference call.  Can it be construed that, in fact, Janus

21  and DSPF were discussed on the sale, or does the stipulation

22  only mean the call took place within interstate commerce?"

23          And now, the Court's inclined to tell the parties --

24  to refer them back to the stipulation, back to what a

25  stipulation is as opposed to just answering that in any other

1    way, but let them understand that when the parties have

2    stipulated to something, they must accept it as proven,

3    period, as opposed to getting into debate with them about how

4    much of it is what, et cetera.  So I'm just telling you

5    that's what I'm thinking here.

6              MR. YAROW:  Judge, would you mind repeating the

7    question?

8              THE COURT:  The question was --

9              MR. YAROW:  I understand it was a stipulation they

10   are referring to.

11             THE COURT:  "Exhibit 2000, Section E, paragraph 14,

12   7/8 conference call.  Can it be construed that, in fact,

13   Janus and DSPF were discussed on the sale, or does the

14   stipulation only mean that it took place in interstate

15   commerce?"

16             Now, you might want to see what's in the exhibit.

17   The Section E, the section they're referring to, says this:

18   Go down to the call they're referring to.  It says -- it's

19   the second from the last stipulation on Page 6 of the

20   exhibit.

21             "On or about April 7, 2014, the conference call with

22   sales personnel about DSPF and Janus Spectrum containing

23   Government's Exhibit 1016A commenced outside of the

24   Commonwealth of Virginia, traveled through interstate

25   commerce, and ended in the Eastern District of Virginia."

```
1              So the stipulation talked about what they discussed
2     as well as how it traveled, and they are asking us whether
3     they should construe it as fact that they discussed DSPF and
4     Janus Spectrum.  And my suggestion is they can give them the
5     definition of the stipulation as opposed to telling them how
6     they should treat various parts of the stipulation.
7              MR. BOSSE:  Your Honor, that is fine by the
8     government.  The instruction number 4 --
9              THE COURT:  That's what I'm looking at.
10             MR. BOSSE:  -- is what defines it.
11             THE COURT:  Instruction number 4 talks about the
12    stipulation.  "When the attorneys on both sides stipulate or
13    agree as to existence of a fact, however, you must, unless
14    otherwise instructed, accept the stipulation as evidence and
15    regard that fact as proved."
16             So refer them to see instruction number 4.
17             Any problems with that, Ms. McCaslin?
18             MS. McCASLIN:  No, Your Honor.
19             THE COURT:  So we're all in agreement.
20             Okay.  Here is the question.  You can take that back
21    to them.
22             We're going to terminate at 5:00.  And I think you
23    can -- I don't think that rushes them in any way, letting
24    them know we're going to terminate at 5:00.  So unless
25    someone has an objection, that's what we're going to tell
```

1   them.

2          MR. BOSSE:  No objection.

3          MR. YAROW:  No objection from Mr. Alcorn.

4          MS. McCASLIN:  No objection, Your Honor.

5          THE COURT:  Okay.  We'll be in recess until the next

6   question or 5:00, whichever one comes.

7          (Recess from 3:38 p.m. to 4:05 p.m.)

8          THE COURT:  The Court understands the jury has a

9   verdict.  Bring them in.

10         (The jury entered the courtroom.)

11         THE COURT:  You may be seated.

12         Let the record reflect all jurors are present in the

13  courtroom.

14         Does counsel concur?

15         MS. YUSI:  The government agrees.

16         MR. YAROW:  Mr. Alcorn concurs, Your Honor.

17         MS. McCASLIN:  Mr. Smith agrees.

18         THE COURT:  Okay.

19         THE CLERK:  Members of the jury, have you reached a

20  verdict, and may we have it, please?

21         Mr. Alcorn, will you please stand and face the jury.

22         In the United States District Court for the Eastern

23  District of Virginia, Norfolk Division, United States of

24  America vs. David Alcorn, in Criminal Action 2:19cr47, we the

25  jury find the defendant David Alcorn:

```
 1              Count Two, conspiracy to commit mail and wire fraud,

 2    guilty;

 3              Count Seven, wire fraud, guilty;

 4              Count Eight, wire fraud, guilty;

 5              Count Nine, wire fraud, guilty;

 6              Count Ten, wire fraud, guilty;

 7              Count Eleven, wire fraud, guilty;

 8              Count Twelve, wire fraud, guilty;

 9              Count Thirteen, wire fraud, guilty;

10              Count Fourteen, wire fraud, guilty;

11              Count Fifteen, wire fraud, guilty;

12              Count Sixteen, wire fraud, guilty;

13              Count Seventeen, wire fraud, guilty;

14              Count Nineteen, engaging in unlawful monetary

15    transactions, guilty.

16              Dated February 23, 2022, signed by foreperson, Juror

17    Number 90.

18              Members of the jury, is this your verdict, so say

19    you all?

20              (The jury answered in the affirmative.)

21              THE CLERK:  Thank you.

22              You may be seated.

23              Mr. Smith, if you would please stand and face the

24    jury.

25              In the United States District Court for the Eastern
```

1    District of Virginia, Norfolk Division, United States of

2    America vs. Aghee William Smith II, in Criminal Action

3    2:19cr47, we the jury find the defendant Aghee William

4    Smith II:

5           Count One, conspiracy to commit mail and wire fraud,

6    guilty;

7           Count Two, conspiracy to commit mail and wire fraud,

8    guilty;

9           Count Eight, wire fraud, guilty;

10          Count Nine, wire fraud, guilty;

11          Count Sixteen, wire fraud, guilty;

12          Count Seventeen, wire fraud, guilty.

13          Dated February 23, 2022, signed foreperson, Juror

14   Number 90.

15          Members of the jury, is this your verdict, so say

16   you all?

17          (The jury answered in the affirmative.)

18          THE CLERK:  Thank you.

19          THE COURT:  You may be seated.

20          Okay, ladies and gentlemen.  We want to thank you

21   for your service --

22          MS. McCASLIN:  Your Honor, we would make a motion to

23   poll the jury, please.

24          THE COURT:  I was waiting for it.  I didn't hear

25   anything.  All right.  You may poll the jury on behalf of

1    Mr. Smith.

2           MR. YAROW:  Mr. Alcorn, too, please, Your Honor.

3           THE COURT:  And Mr. Alcorn.  So take them one by

4    one.  You can just ask them whether this is their verdict

5    instead of going through every count all over again.

6           THE CLERK:  Yes, sir.

7           As to David Alcorn, Juror Number 7, is this your

8    verdict?

9           THE JUROR:  Yes.

10          THE CLERK:  Juror Number 26, is this your verdict?

11          THE JUROR:  Yes.

12          THE CLERK:  Juror Number 38, is this your verdict?

13          THE JUROR:  Yes.

14          THE CLERK:  Juror Number 43, is this your verdict?

15          THE JUROR:  Yes.

16          THE CLERK:  Juror Number 84, is this your verdict?

17          THE JUROR:  Yes.

18          THE CLERK:  Juror Number 87, is this your verdict?

19          THE JUROR:  Yes.

20          THE CLERK:  Juror Number 90, is this your verdict?

21          THE JUROR:  Yes.

22          THE CLERK:  Juror Number 99, is this your verdict?

23          I believe we had two parties answer for Juror

24    Number 90.

25          Juror Number 90, is this your verdict?

```
1              THE JUROR:  Yes.

2              THE CLERK:  Juror Number 99, is this your verdict?

3              THE JUROR:  Yes.

4              THE CLERK:  Juror Number 101, is this your verdict?

5              THE JUROR:  Yes.

6              THE CLERK:  Juror Number 112, is this your verdict?

7              THE JUROR:  Yes.

8              THE CLERK:  Juror Number 136, is this your verdict?

9              THE JUROR:  Yes.

10             THE CLERK:  Juror Number 140, is this your verdict?

11             THE JUROR:  Yes.

12             THE CLERK:  All have answered in the affirmative,

13      Your Honor.

14             As to Mr. Smith, Juror Number 7, is this your

15      verdict?

16             THE JUROR:  Yes.

17             THE CLERK:  Juror Number 26, is this your verdict?

18             THE JUROR:  Yes.

19             THE CLERK:  Juror Number 38, is this your verdict?

20             THE JUROR:  Yes.

21             THE CLERK:  Juror Number 43, is this your verdict?

22             THE JUROR:  Yes.

23             THE CLERK:  Juror Number 84, is this your verdict?

24             THE JUROR:  Yes.

25             THE CLERK:  Juror Number 87, is this your verdict?
```

```
 1              THE JUROR:  Yes.
 2              THE CLERK:  Juror Number 90, is this your verdict?
 3              THE JUROR:  Yes.
 4              THE CLERK:  Juror Number 99, is this your verdict?
 5              THE JUROR:  Yes.
 6              THE CLERK:  Juror Number 101, is this your verdict?
 7              THE JUROR:  Yes.
 8              THE CLERK:  Juror Number 112, is this your verdict?
 9              THE JUROR:  Yes.
10              THE CLERK:  Juror Number 136, is this your verdict?
11              THE JUROR:  Yes.
12              THE CLERK:  Juror Number 140, is this your verdict?
13              THE JUROR:  Yes.
14              THE CLERK:  All have answered in the affirmative,
15    Your Honor.
16              THE COURT:  Okay.  Ladies and gentlemen, thank you
17    for your service.  We know it's been a sacrifice.  But for
18    you, we could not have a jury trial.
19              By the way, they don't have jury trials in Russia,
20    while we're talking about Russia this day.  They do something
21    else that I will not explain to you.
22              At any rate, if you will return to the jury room and
23    just wait, we will momentarily dismiss you.
24              (The jury exited the courtroom.)
25              THE COURT:  We will be in recess for about ten
```

 1    minutes, and then we'll come back and entertain any motions.
 2            MS. YUSI:  Your Honor, one thing before the
 3    dismissal of the jury.  We have a forfeiture issue with
 4    Mr. Alcorn.  I believe he's prepared to waive jury findings
 5    regarding forfeiture, but I just want to get that before they
 6    are dismissed.
 7            THE COURT:  Fine.  You may all have a seat.
 8            Mr. Yarow, where are we on that issue?
 9            MR. YAROW:  We're prepared to waive the jury
10    findings on the forfeiture.
11            THE COURT:  You've consulted with Mr. Alcorn?
12            MR. YAROW:  I have, Your Honor.
13            THE COURT:  Okay.
14            MS. YUSI:  Thank you.
15            THE COURT:  Anything with respect to Mr. Smith?
16            MS. YUSI:  No, Your Honor.
17            THE COURT:  Then we will take the ten-minute break,
18    and we'll be back to address other matters.
19            (Recess from 4:15 p.m. to 4:26 p.m.)
20            THE COURT:  The Court has a Sentencing Procedures
21    Order here for Mr. Alcorn.  Let's see.  All the parties have
22    signed this.
23            Mr. Alcorn, you are directed to be present on
24    June 23, 2022, at 2:00 p.m. here in Norfolk.  That order will
25    be entered.

1          The Court also has a Sentencing Procedures Order on

2    Mr. Smith.  You are directed to be present 11:00 a.m. on the

3    23rd of June.

4          Any motions that you want to make, you can certainly

5    make them, or you can put them in writing or whatever your

6    option may be that you want to exercise.

7          MR. YAROW:  Your Honor, I have a motion for

8    Mr. Alcorn to be allowed to remain on pretrial release

9    pending his sentencing.  He has been, over the last almost

10   three years now, an extraordinarily cooperative client.  We

11   have maintained at least weekly telephone contact.

12         He would be willing to come back to the Eastern

13   District of Virginia.  He would ask to be allowed to go back

14   to Phoenix, Arizona, where he lives, where he's been on

15   pretrial supervision his entire almost three years, and he

16   would be prepared to come back here for his sentencing.  He's

17   on medication.  He has medication at his hotel.

18         THE COURT:  Well, the Court believes -- well, let's

19   see what the United States' position is.

20         MS. O'BOYLE:  Your Honor, the government objects to

21   that request.  We would move to revoke Mr. Alcorn's bond

22   under 3143(a).  This defendant has now been convicted of

23   every count that he was charged with in the indictment.  The

24   circumstances have completely changed from his pretrial

25   supervision when he was initially indicted.

1          His guidelines -- his advisory guideline range

2     because of the loss amounts in this case and the substantial

3     financial hardship to the victims -- there's going to be 25

4     or more.  He's going to get a number of enhancements.  His

5     guidelines are going to be very, very high, possibly as high

6     as 360 to life.

7          The government would also note that in the records

8     in trial, there have been plenty of evidence of an unindicted

9     co-conspirator who assisted Mr. Alcorn in moving a lot of --

10    funneling fraud proceeds into companies that were in his

11    name.  That individual is still out there and could -- was

12    certainly willing to assist Mr. Alcorn in hiding assets in

13    connection with the Securities and Exchange Commission suit.

14         And while the government did do a lot of tracing in

15    this case, there is money -- there is cash that obviously is

16    fungible that the government cannot trace, and so we have no

17    way of knowing exactly how much cash is out there or how much

18    money -- whether he has friends who are going to be willing

19    to assist him.

20         We have no confidence that at this stage, given the

21    guideline range that he is facing, that he will report, and

22    the burden -- or the standard has shifted.  At this point, he

23    is to be detained unless the Court finds by clear and

24    convincing evidence that he is not likely to flee.

25         And so at this point, Your Honor, the government

1    believes that his bond should be revoked and that he should

2    be detained pending sentencing.

3          THE COURT:  The Court had looked at Section 3143(a)

4    before it came in here, knowing that it would be faced with

5    this particular issue.  And the Court understands that it

6    must detain this defendant, given the gravity of the charges

7    he's convicted on and the length of the sentence that he's

8    facing.  He's facing a minimum of 292 to 365 months'

9    incarceration, even under the best circumstances calculating

10   the guideline.

11         Moreover, the Court cannot make a finding by clear

12   and convincing evidence that this defendant is not likely to

13   flee.  This defendant has shown an extensive pattern of

14   dishonesty and ignoring law enforcement and regulatory

15   agencies.  In the face of being advised that what he was

16   doing was wrong, he still persisted in his conduct.  The

17   Court also is concerned about the whereabouts of a lot of the

18   money discussed in this case.  The Court does not know where

19   it is.

20         The Court cannot trust the defendant to return here

21   and does not believe that he's not a flight risk.  There's no

22   evidence to show by clear and convincing evidence that he is

23   not likely to flee.  As a matter of fact, the evidence would

24   probably show otherwise given his pattern of conduct as

25   demonstrated in this trial.

1          So that motion is denied.  You will be remanded to

2     the custody of the United States Marshal at the end of this

3     hearing.

4          Is there another motion for Mr. Smith?

5          MS. McCASLIN:  There is, Your Honor.  Under 3143, we

6     are also asking that Mr. Smith remain out on bond pending

7     sentencing.  Of course it is a clear-and-convincing standard;

8     however, Mr. Smith has been out on bond for three years as

9     well.  He has had no violations.  He has lived in the same

10     home in California for 21 years with his wife.  He has six

11     children, 11 grandchildren, all around the California area.

12          He has appeared in court every day this month, of

13     course, staying at the hotel.  He has never -- he did not

14     flee in any way.  He actually flew out here in November, just

15     before we were supposed to go to trial then.  That trial, of

16     course, got continued when a co-defendant tested positive for

17     COVID.  But Bill came out here prepared to go to trial in

18     November, and he was here again, of course, for this trial.

19          On top of that, Your Honor, he is not a danger.  He

20     has completely left the financial world, as you heard during

21     the trial.  Mr. Smith is 70 years old.  He does have health

22     issues, including multiple heart medications, and those risk

23     factors are also a problem with COVID-19.  Mr. Smith is not

24     vaccinated.  He has not had COVID-19 because he's been very

25     careful and primarily stays at home, but the jail is going to

1    be very dangerous for Mr. Smith.  Mr. Smith did not perjure

2    himself.

3           And there is a disparity here as well.  Tony Sellers

4    and Tom Barnett both were able to stay out on bond pending

5    sentencing.  Tony Sellers also got a delayed reporting.  And

6    I would note that in this case, Tony Sellers denied part of

7    the Statement of Facts.  Billy Seabolt also went to trial and

8    also remained out on bond.

9           Your Honor, the legal standard under 3143 does not

10   change depending on whether a person pleads guilty or

11   exercises their right to go to trial.  Mr. Smith exercised

12   his constitutional right, and his bond should not be revoked

13   at this time when he is not a danger, he's not a flight risk,

14   he always comes.

15          THE COURT:  Does the United States wish to make any

16   response?

17          MS. O'BOYLE:  Your Honor, yes, we do.  We do believe

18   that this defendant's bond should be revoked for many of the

19   same reasons that we outlined for Mr. Alcorn.

20          To address, first, the difference between

21   Mr. Sellers, Mr. Barnett, and Mr. Smith, Mr. Sellers and

22   Mr. Barnett came into this Court and accepted responsibility

23   for the crime that they committed.  They are on bond because

24   they accepted that responsibility.

25          Mr. Smith, on the other hand, the government does

1   not penalize him for exercising his right to trial.  He

2   absolutely had that right.  But the jury at this point has

3   convicted him, and this is a defendant who has accused the

4   government of having a conspiracy against him.  In the

5   bankruptcy deposition that the Court heard at trial, he

6   believed, under oath, that he is in this situation because of

7   criminals in government.

8           And so under those circumstances, Your Honor, this

9   is not someone who we believe is going to show up here for

10   sentencing when he believes that he is the victim of some

11  vast governmental conspiracy.

12          He has not accepted responsibility in this case.

13  His guidelines, also, like Mr. Alcorn's, are extremely high.

14  His loss amount is even higher than Mr. Alcorn's because he

15  has losses related to both dental as well as spectrum.

16          And given that this defendant has not shown any

17  level of acceptance of responsibility at all and the level of

18  deceit and deception that was displayed over seven years of

19  course of conduct in this case, we believe that this

20  defendant also should be detained pending sentencing.

21          MS. McCASLIN:  Your Honor, may I respond briefly?

22          THE COURT:  Briefly.

23          MS. McCASLIN:  The legal standard does not change in

24  3143 based on whether somebody accepts responsibility or

25  doesn't.  And while I do not have full information on this, I

1    have doubts about whether all of these defendants who pled

2    guilty truly accepted responsibility in their debrief.

3          Mr. Smith chose to go to trial, but that is not a

4    consideration in the law.  And Mr. Smith has a very stable

5    home life with his wife, with his children, with his

6    grandchildren.  He is not a flight risk.  He is a good person

7    to remain on bond.  He will come back in three months for

8    sentencing.  And obviously he would stay in contact with me,

9    Mr. Grindrod, and our office.

10          THE COURT:  Well, you're right about the standard.

11    The standard doesn't require that he accept responsibility,

12    but there's a multiplicity of factors that the Court has to

13    weigh in making the determination whether it should release

14    Mr. Smith pending sentencing, and we start with the fact that

15    the Court is required to detain him unless the judicial

16    officer finds by clear and convincing evidence that the

17    person is not likely to flee.

18          The Court has heard the argument of counsel, but

19    there's nothing clear and convincing about that.  Mr. Smith

20    has been convicted now by a jury for his criminal conduct,

21    which lasted over seven years.  The Court has to take into

22    consideration his state of mind and his general posture with

23    respect to these offenses.

24          Mr. Smith evidenced an indifference to the law.  The

25    Court believes after watching the case, listening at the

1    evidence, that he has no respect for the law, that he will do
2    what he wants to do, and that tells the Court that when he's
3    facing as much time as he is, the Court cannot trust that he
4    will look at his family, and et cetera, and decide that he's
5    not going to flee.  The Court cannot make that determination.
6    The Court does not see any remorse on behalf of Mr. Smith.
7            The fact that he's not vaccinated, the Court
8    considers that, but the prison will have to cope with the
9    fact that he's not vaccinated.  They have other people who
10   are unvaccinated that come in this court from time to time
11   for guilty pleas or other proceedings, so they know how to
12   handle that.
13           With respect to his medical condition.  They have
14   the capacity to deal with that, so those are not reasons to
15   suggest he should be released.  On the other hand, the Court
16   believes that the evidence is overwhelming in this case of
17   his guilt and his tendency to engage in dishonesty.
18           He has no credibility with this Court, so the Court
19   cannot find by clear and convincing evidence that he will not
20   flee.  Accordingly, his bond is revoked, and he is remanded
21   to the custody of the United States Marshal upon the
22   conclusion of these proceedings.
23           MS. McCASLIN:  Your Honor, would the Court consider
24   a one-day delay so that Mr. Smith can get his medication from
25   the hotel and bring them to the marshals with him for the

```
 1    jail?

 2              THE COURT:  No.

 3              MS. McCASLIN:  Thank you.

 4              THE COURT:  Someone else will have to go over there,

 5    counsel -- maybe you -- and get his things, but the Court is

 6    not releasing Mr. Smith anyplace except to the custody of the

 7    United States Marshal.  Now, this is not an unusual

 8    situation, to have someone else step in and take care of

 9    certain things, but the Court is not going to do a one-day

10    release.

11              Anything else?

12              MS. McCASLIN:  No, Your Honor.

13              MS. O'BOYLE:  Not from the government, Your Honor.

14    Thank you.

15              THE COURT:  Then the Court will be in recess until

16    further notice.

17              (Proceedings concluded at 4:39 p.m.)

18

19

20

21

22

23

24

25
```

1                        CERTIFICATION

2

3        I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6

7              _____/s/_____

8                        Carol L. Naughton

9                        August 30, 2022

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    Carol L. Naughton, Official Court Reporter