```
1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
2                        Norfolk Division

3

4    - - - - - - - - - - - - - - - - - -
                                       )
5    UNITED STATES OF AMERICA          )
                                       )
6    v.                                )     CRIMINAL ACTION NO.
                                       )         2:19cr47
7    DAVID ALCORN; AGHEE WILLIAM       )
     SMITH, II; THOMAS L. BARNETT;     )
8    and NORMA JEAN COFFIN,            )
                                       )
9            Defendants.               )
     - - - - - - - - - - - - - - - - - -

10

11

                     TRANSCRIPT OF PROCEEDINGS
12                     (Status Conference)

13                    Norfolk, Virginia

14                    November 9, 2021

15

16   BEFORE:  THE HONORABLE RAYMOND A. JACKSON
                 United States District Judge

17

18
     APPEARANCES:
19
             UNITED STATES ATTORNEY'S OFFICE
20           By:  Andrew C. Bosse
                  Melissa E. O'Boyle
21                Elizabeth M. Yusi
                  Assistant United States Attorneys
22                Counsel for the United States

23           RICHARD S. YAROW LLC
             By:  Richard S. Yarow
24                Counsel for Defendant David Alcorn

25
```

```
 1   APPEARANCES:   (Continued)

 2            FEDERAL PUBLIC DEFENDER'S OFFICE
              By:  Andrew W. Grindrod
 3                 Lindsay J. McCaslin
                   Assistant Federal Public Defenders
 4                 Counsel for Defendant Aghee William Smith, II

 5            ANCHOR LEGAL GROUP, PLLC
              By:  Anthony M. Gantous
 6                 Counsel for Defendant Thomas L. Barnett

 7

 8            GREGORY K. MATTHEWS PC
              By:  Gregory K. Matthews
 9                 Counsel for Defendant Norma Jean Coffin

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              (Proceedings commenced at 2:29 p.m.)

2              THE CLERK:  The United States of America vs. David

3    Alcorn; Aghee William Smith, II; Thomas L. Barnett; and Norma

4    Jean Coffin in Criminal Action 2:19cr47.

5              Ms. Yusi, is the government ready to proceed?

6              MS. YUSI:  We are.  Good afternoon, Your Honor.

7              THE COURT:  Good afternoon.

8              THE CLERK:  Are defense counsel ready to proceed?

9              MR. GANTOUS:  Anthony Gantous on behalf of Thomas

10   Barnett.  We're ready, Your Honor.

11             THE COURT:  All right.

12             MR. MATTHEWS:  Greg Matthews on behalf of Norma Jean

13   Coffin.  We're ready.

14             MR. YAROW:  Rick Yarow on behalf of David Alcorn.

15   We're ready.

16             MS. McCASLIN:  Lindsay McCaslin and Andrew Grindrod

17   on behalf of Aghee Smith.  We're ready, Your Honor.

18             THE COURT:  Okay.  Everybody's ready.  Good

19   afternoon.  Let's get going here.

20             The Court has read all of the objections that you

21   filed to the potential jurors based upon the questionnaire

22   that you received, so what the Court is going to do is the

23   Court is going to start with the objections that the

24   government raised, and we're going to go down those.

25             As we go through, that will probably take care of
```

1    some of the objections that other counsel raised that be

2    stricken.  Then we're going to move over to those objections

3    Mr. Smith has raised and go through those, and I think the

4    shorter list of objections are from Mr. Barnett and

5    Ms. Coffin.  So that's the way we're going to proceed here.

6           And I read the reasons that each party articulated

7    for it.  So we're going to start in that fashion.

8           I will say, with respect to some of the objections

9    that you have and the strikes with respect to the government,

10   I'm concerned that so many people indicate -- it may very

11   well be the case -- they have planned travel during November

12   and December.

13          So we will move on.  I think we'll still -- if we,

14   in fact, granted all of the strikes, we would still have

15   enough people to do what we need to do when we come back in

16   here to select a jury.  At least that's the Court's

17   calculation.  We shall see.

18          You started off -- I think the first juror the

19   United States suggested striking was Juror Number 11.  Juror

20   Number 11 indicated that Juror Number 11 has planned travel

21   during December.

22          Now, I have all these questionnaires up here in this

23   box.  It weighs about 60 pounds.  I don't intend to get into

24   them unless I have to get into them because they are all over

25   the place in there, I believe.

 1               Does anyone have any objection to striking Juror

 2     Number 11?

 3               Hearing none, then Juror Number 11 will be stricken.

 4               MR. YAROW:  Judge, just for clarification, I just

 5     realized what I printed out for myself cut off the numbers.

 6     If you could just give me the first name, I could line up the

 7     numbers.  Would that be William?

 8               THE COURT:  Juror Number 11 is ███████████.

 9               MR. YAROW:  Okay.  Thank you.

10               THE COURT:  I'll call the name and the number.

11               First ███████████ and then there was a request to

12     strike Juror Number 12.  That request was made by the

13     government, by Mr. Smith, and Mr. Barnett.

14               Any objection to striking Juror Number 12 that has

15     health concerns and some inability to understand the

16     questionnaire, and I think -- let's go back and look at one

17     thing here.  Juror Number 12, Mr. Smith had numerous

18     objections here to Juror Number 12.

19               Any objection to striking Juror Number 12?

20               Hearing none, Juror Number 12 will be stricken.

21               The next one on the list was Juror Number 15.  Juror

22     Number 15, you offered that Juror Number 15 had an impending

23     birth of a grandchild, is an elder caretaker, and concerned

24     with judging others.  Any objection?

25               Hearing none, Juror Number 15 will be stricken.

```
 1           You know, I just thought of something.  I said I was
 2  going to skip down that way, but it's obvious to me that as I
 3  go through these -- well, I'll go back.
 4           Juror Number 22.  Pending travel during December.  I
 5  don't know, unless we go back and look at the questionnaire,
 6  exactly when that travel is to start, if it's before or after
 7  Christmas.
 8           Do you recall, Ms. Yusi?
 9           MS. YUSI:  Your Honor, for the government's strikes,
10  any planned travel that we put down for strikes was for
11  travel prior -- it was before Christmas.
12           THE COURT:  Okay.
13           MR. GRINDROD:  It's December 2nd, Your Honor.
14           THE COURT:  Okay.  Juror Number 22 is gone.
15           Juror Number 34.  Juror Number 34 is ████
16  ████████, and I think the government wanted that strike,
17  Alcorn, Smith, and Barnett.  You all seem to be in
18  concurrence on this juror.  So hearing no objection, that one
19  is gone.
20           Juror Number 40 has international travel.  That's
21  juror ████████████, and I think Mr. Barnett also asked
22  that that juror be stricken.
23           Any objection to 40?  Hearing none, it's gone.
24           Juror Number 43, ████████.  The government
25  wanted to strike that juror, and so did Mr. Barnett for --
```

1    it's a full-time college student, and we don't usually

2    require college students to come in to do jury duty.

3              MS. McCASLIN:  Your Honor, we do object.

4              THE COURT:  To striking Juror Number 43?

5              MS. McCASLIN:  Yes, Your Honor.

6              THE COURT:  Do you concur that Juror Number 43 is a

7    full-time college student?

8              MS. McCASLIN:  As stated in the questionnaire, he

9    says he has class every day, but I don't know if that's in

10   the evenings, and that would rule out basically anybody from

11   18 to 22.

12             THE COURT:  Well, then, I understand, but the Court

13   is going to overrule that objection.  We're not going to

14   require a college student to come in here for jury duty.

15   That's been a standard practice of the Court.

16             Juror Number 45 has planned travel during the

17   holiday.  That's ███████████.  And also Mr. Barnett made a

18   motion to strike that juror.

19             Any objections?

20             Juror Number 58.  That's ██████████.  Again, the

21   United States and Mr. Barnett moved to strike that juror.

22   Apparently the United States states a financial hardship and

23   claimed bias and inability to follow the Court's

24   instructions.

25             Hearing no objection --

1          MS. McCASLIN:  Your Honor, we do object.  As for the

2    strong feelings of potential bias, it doesn't appear that it

3    would actually relate to this case, based on his handwritten

4    notes under some of the questions.

5          THE COURT:  What do the handwritten notes say?

6          MS. McCASLIN:  In terms of the strong feelings about

7    financial advisors, he's talking about organizations in

8    partnership with government, which we do not have here.  He

9    also discusses drugs, which is not at issue here.

10          THE COURT:  Okay.  Now, there's also -- it's an

11   objection I'll let the United States address, since they're

12   objecting on the grounds of financial hardship.  What was

13   that all about, Ms. Yusi?

14          MS. YUSI:  Your Honor, he's the primary breadwinner

15   for his family.  His wife stays at home.  And if I could have

16   one moment, Your Honor.

17          (Pause)

18          MS. YUSI:  Your Honor, I know he claimed financial

19   hardship here.  We're looking for that.  But in terms of the

20   bias, he's very clear, Your Honor.  In question 76 he says,

21   "I will not violate any personally held beliefs in order to

22   judge this case even if they go against as the Court applies

23   the law."

24          THE COURT:  All right.  Thank you.  The objection is

25   overruled.  The juror will be stricken.  Number 58 will be

1   stricken.

2         The next one you raised is number 62, and apparently

3   the United States objected to that one; Mr. Smith objected to

4   it; and Mr. Barnett objected to it.  The United States

5   articulated multiple statements of inability to judge.  That

6   was number 62 for ███████████████.

7         Is there any objection to striking number 62?  The

8   only person that did not object was Coffin and Alcorn.

9         Hearing nothing, that one is gone too.

10        Juror Number 65 is ████████████ who indicates that

11  she has surgery for early December, major surgery early

12  December.  Mr. Barnett and the United States wanted to strike

13  ████████████.  Any other objections to removing this juror?

14        Hearing none, we'll move on.

15        Juror Number 67 is ████████████.  And the government,

16  Smith, and Barnett objected to her.  The government objected

17  for financial hardship on commission and on the salary this

18  individual receives.

19        No objections.  67 is stricken.

20        71 is ████████████████.  And again, it's the United

21  States and Mr. Barnett that objected to this juror.  Has

22  planned travel during December.

23        Hearing no objections, 71 will be stricken.

24        We next move on to 73.  73 is ████████████.  Once

25  again, it's the government and Mr. Barnett who object.  The

1    next five have planned travel during December.

2                Any objection to 73 being stricken?  73.

3                74, same reason, planned travel during November.

4    And 74 is ██████████.  The United States and Mr. Barnett

5    requested this juror be stricken; two out of five.

6                No objection.

7                Number 76 is ██████████.  And the government

8    objects and wants to strike this juror.  Mr. Alcorn,

9    Mr. Smith, Mr. Barnett, you are united, for a change, on

10   striking this juror.  So I take it there's no objection to

11   number 76.

12               77, planned travel in November.  Mr. Smith and

13   Mr. Barnett and the United States seeks to strike the juror.

14   No objection.

15               84 is the next one you have.  She has planned travel

16   out of state for graduation.  That's number 84, and that is

17   ██████████, and everyone agreed except Ms. Coffin to

18   strike this juror.  The Court will strike number 84.

19               Number 96 is a physician with COVID patients.  Only

20   the United States moved to strike this juror.  I will tell

21   you, as a matter of practice, we try to avoid calling medical

22   professionals because there's a shortage right now out there,

23   and so we try to avoid that, and so the Court would be

24   inclined to grant number 96.

25               And by the way, that reminds me, the Court received

1    four more requests to be excused that you may not have.  Let

2    me find them right quick.

3          The Court received a request from the president and

4    medical director of Bayview Physicians pleading with the

5    Court to please release ████████████████ because she's in

6    a clinic environment and they are shorthanded.  She's a

7    doctor.  The Court is inclined and the Court will strike

8    number 84 -- or 96, I mean.

9          Next one is 103.  The only thing I can say is that

10   the United States has here that that individual has some

11   medical concerns, and the Court is not all that clear on the

12   medical concerns.  And that is ███████████.

13         Can you elaborate on your motion to strike

14   number 103?

15         MS. YUSI:  Your Honor, Ms. Parker stated that she

16   has leg spasms, and the medicine that she uses causes

17   drowsiness, and she can't sit very long because of the spasms

18   as well as getting drowsy.

19         THE COURT:  Well, we do want jurors to be physically

20   able to sit in the trial, and one of the first questions the

21   Court asks is whether they have any physical issue that would

22   cause them to be unable to sit, so if we bring her in here,

23   we'll end up having to remove her for cause anyway.

24         So unless there's an objection, we'll just take 103

25   off the board.  Hearing none, 103 is gone.

1          104 is ███████████.  Again, only the

2    United States has requested to strike this juror for

3    financial hardship.

4          What is the nature of the financial hardship?

5          MS. YUSI:  Your Honor, he works for Capital Concrete

6    in dispatch, and he said he does not get paid for days off,

7    and he cannot afford to not be working.

8          THE COURT:  Four weeks is a long time not to get

9    paid.  So I'll tell you what, the Court finds that is a

10   reasonable reason to strike the juror.

11         Number 106 is ████████████.  Again, financial

12   hardship.  Can you elaborate?  Only the United States asked

13   to strike ███████████.

14         MS. YUSI:  Your Honor, he did state that it was a

15   financial hardship.  He says he does not get paid time off,

16   his spouse is currently unemployed, and he cannot afford the

17   transportation to and from the court either.

18         THE COURT:  Any objection to striking this

19   particular potential juror?

20         Hearing none, 106 is gone.

21         110 is ███████████, and the United States moved to

22   strike this juror for planned travel, work travel, and

23   potential bias.  And Mr. Smith, Mr. Barnett, and Ms. Coffin,

24   all the defendants, I think, except Mr. Alcorn, also seek to

25   strike number 110.  Unless I hear an objection, 110 is

1    stricken.

2            112 is ███████████.   Only the United States

3    seeks to strike this juror.  Mr. Smith wants more answers.

4    So what is the basis for his -- oh, I think the Court got

5    some additional information on this juror.  Hold up one

6    second.

7            No.  The Court doesn't have any additional

8    information on that juror.  So you can go on.

9            MS. YUSI:  Your Honor, for ██████████, she said

10   she wasn't sure how she would feel if the defendant did not

11   testify.  She said she could not find someone guilty unless

12   she was 100 percent sure they were guilty.  It was unclear if

13   immunity was given to any, how she would feel about that.

14   She said she was not sure if she could find anyone guilty,

15   and she said it was very hard for her to make decisions in

16   general.

17           THE COURT:  Any objection to striking her?

18           MS. McCASLIN:  I object, Your Honor.

19           THE COURT:  For the record, I suppose.

20           MS. McCASLIN:  We do, correct.  Your Honor --

21           THE COURT:  Well, do you know whether your client is

22   going to testify or not?  She has an issue with people that

23   don't testify.

24           MS. McCASLIN:  Correct.

25           THE COURT:  That's a fundamental right of a

1   defendant not to testify.

2        MS. McCASLIN:  I would think that follow-up

3   questions would be helpful here, particularly because -- I

4   understand that she has reservation about finding someone

5   guilty or not guilty, but it is a serious decision, and so

6   everybody should have reservations about finding anybody

7   guilty or not guilty.  So I think follow-up would be helpful,

8   Your Honor.

9        THE COURT:  That's fine, but the Court has some

10  issues with the thinking that the defendant should testify.

11  And the Court is not certain whether that's going to be

12  changed if the Court tells her the defendant doesn't have to

13  testify, if it's in the back of her mind that the defendant

14  must testify.  But we'll just leave it here for the time

15  being.  We'll leave her here for the time being.

16       Okay.  Juror Number 113.  113 is ███████████ who

17  claims that she has an inability to sit in judgment on

18  others, whatever that means.

19       MS. McCASLIN:  Your Honor, we do object.  Looking at

20  the questionnaire, she does say it would be difficult for her

21  to sit in judgment.  It doesn't say that she can't.  And as I

22  previously said, it should be difficult for any juror to sit

23  in judgment because it is a solemn and serious event

24  especially in a person's life, so we do think that follow-up

25  questions are appropriate.

```
 1            THE COURT:  The Court will concur, and the Court
 2   will leave that one on the board.
 3            Juror Number 115.  The United States seeks to remove
 4   that juror for financial issues and anxiety, difficulty
 5   sitting in judgment.  If you care to elaborate, Ms. Yusi, it
 6   would be helpful.
 7            MS. YUSI:  Your Honor, number 115,          , stated
 8   that she's an hourly employee and would not get paid,
 9   obviously, if she wasn't at work.  She also stated, I believe
10   in question 61, she was unsure if she could find defendants
11   guilty after hearing all the evidence.  And number 73, she
12   stated something about -- she is expressing anxiety about --
13   she said she would have anxiety about potentially convicting
14   any of the defendants.
15            THE COURT:  There are multiple reasons articulated
16   here.  The Court will not put this juror at financial risk to
17   come in here.
18            MS. McCASLIN:  Your Honor, may I be heard?
19            THE COURT:  Yes, ma'am.
20            MS. McCASLIN:  Your Honor, we do understand that it
21   is a financial hardship for a lot of people.  It does appear
22   that she also has a spouse who works, so that person is
23   bringing in income.  Furthermore, in terms of the question
24   about whether or not she would have any reservations in
25   voting guilty, she puts "unsure."  She said that she's never
```

1    been in that position before.  "So I am just unsure."
2    Similarly to my other objection, I think follow-up questions
3    are appropriate because it is a difficult decision.
4              THE COURT:  Okay.
5              MS. YUSI:  Your Honor, just to clarify on number 73.
6              THE COURT:  Number 73?
7              MS. YUSI:  Sorry, question 73, for this particular
8    juror.
9              THE COURT:  I didn't think this was 73.
10             MS. YUSI:  No, Juror Number 115.
11             For question 73:  "Is there any reason you have not
12   already explained that you would not want to serve as a
13   juror?"  She said, "Yes.  I have not been diagnosed with
14   anxiety, but I do feel I would be very anxious about serving
15   as a juror."
16             I think there's just a multitude of issues.  And
17   hourly employees, Your Honor, I think it's very difficult for
18   them to sit.
19             THE COURT:  I'll tell you what, we will see.  We
20   cannot be sure that her name will end up in the pile.  If so,
21   you can strike her.  You can use a peremptory strike on her.
22   And the other thing is when we bring her in and question her,
23   the Court may excuse her, at any rate.  So we'll just leave
24   her for the time being.
25             Juror Number 118 has planned travel during December.

1   That's ▮▮▮▮▮▮.  And I think what we've done is we've

2   consistently stricken those who are in that situation, so

3   we're going to strike her.

4        MS. McCASLIN:  Your Honor, I do have a question

5   about this one.  This person said that they have travel from

6   December 18th to the 23rd, so I would like some instruction

7   from the Court about how long you think that the government's

8   case is going to last and how long we think that the jury is

9   going to last.

10       THE COURT:  And how long the defense is going to

11  last in the event the government does finish.  I think it's

12  very difficult for the Court to calculate whether we're going

13  to be going on the 18th or whether we end up going -- let me

14  take a look at this calendar -- or whether we end up going --

15  the 18th is a weekend.

16       Whether we end up having to go on the 20th or the

17  21st or the 22nd, the Court doesn't know.  We can't calculate

18  at this juncture.  And so that's just running the risk there

19  that we're going to be at a point where we can, in fact, end,

20  because even if the government ends its case, the defendant

21  is not required to call any witnesses, but the Court doesn't

22  know what the defendants are planning to do either.

23       So that leaves the Court in, really, a situation

24  where it can't predict whether we'll need to come in here at

25  least on the 20th or the 21st.  So the Court will strike the

1    juror.

2              What number was that?

3              MS. YUSI:  118, Your Honor.

4              THE COURT:  Oh, 118, not 115.  Okay.

5              132.  Now, the Court has some confusion on 132

6    because the government has down here that she says she has

7    financial hardship, and she's the primary caregiver for her

8    grandchild.  And then we've got a letter from Saber

9    Healthcare Group that says she is the lead registered nurse

10   for the nightshift, from 7:00 p.m. to 7:00 a.m., unless she

11   takes care of the grandchild during the day and does nursing

12   at night.

13             And they're asking her to be excused from this

14   particular trial because she would be in trial all day, and

15   then she would report about 7:00 p.m. for nightshift that

16   lasts 12 hours.  They indicated she's been doing this for

17   three years and she is now indispensable in terms of running

18   things.  So that's the letter that the Court received today.

19             Any objection to striking Juror Number 132?

20             Hearing none, 132 will be stricken.  That was ██████

21   ██████.

22             We now move to Juror 138 who has pre-booked work

23   travel.  Now, I don't know what that's all about.  I think

24   the United States wants to strike this juror, so does

25   Mr. Smith and Mr. Barnett.

1        I'll start with the United States.  How long is that
2   pre-booked work travel?  Where is she going?  Portsmouth?
3        MS. YUSI:  One moment, Your Honor.
4        (Pause)
5        MS. YUSI:  Your Honor, the juror is not specific as
6   to when but says she has several work-related travel
7   commitments already booked in November and in December.
8        THE COURT:  Oh, okay.  Well, that only leaves one
9   person to object, and that's -- two, Mr. Alcorn and
10  Ms. Coffin.  I haven't heard any objection from either one of
11  you-all.
12       MR. MATTHEWS:  I have no objection.
13       THE COURT:  And on behalf of Mr. Barnett?
14       MR. GANTOUS:  We've also raised the objection, Your
15  Honor.  I'm sorry, no objection.
16       THE COURT:  138 will be stricken.
17       Now we move to 143.  High school teacher with
18  prepaid travel.  When is it?
19       MS. McCASLIN:  Your Honor, we do object to this one.
20  The dates he does provide are November 23rd to the 28th.
21  Again, I think this is going to come down to the Court's
22  schedule.
23       If you leave on the night of Tuesday the 23rd -- I
24  assume, of course, that we would have court on the 24th.  I
25  just don't know if we would have other matters to take care

1   of that day where the jury doesn't need to be present.  I

2   know there's some assumption there, but we do object.

3              THE COURT:  November 23rd through the 28th?

4              MS. McCASLIN:  Yes.

5              MS. YUSI:  Your Honor, November 23rd is a Tuesday,

6   and so that would assume that we would be taking off

7   Wednesday the 24th and only having two days for the week of

8   Thanksgiving.

9              THE COURT:  We'll have to make some assumptions here

10  that she's leaving on the night of the 23rd, which we don't

11  know that, and that we're not going to do a half day on the

12  24th.  It all depends on how desperate the Court gets about

13  the timing.  So the Court will strike the juror.

14             That was ██████████.

15             Let's move now to Juror Number 147, prepaid

16  international travel.  That's juror ████████████.  The only

17  person that moved to strike her was the United States.

18             Are there other objections to this juror -- not

19  objections, I mean are there any objections to striking the

20  juror?  Hearing none, we'll strike her.

21             148.  Contractor performance out of state during

22  trial.  And 148 is ███████████.  The only objection is

23  on -- the only motion to strike is from the United States.

24  And do you wish to supplement that short phrase you have

25  there, Ms. Yusi?

```
 1          MS. YUSI:  Your Honor, this woman said that she has

 2   a contract to perform.  She's, I guess, an actress and will

 3   be traveling with the company from November 20th to

 4   December 20th.  She's an ice skater, Your Honor, and it's

 5   with a traveling ice skating show.  And she stated this is

 6   her last chance for the biggest break in her career.

 7          THE COURT:  Does anybody want to stop the ice

 8   skating?

 9          Hearing none, we will let her ice skate.

10          156, planned travel during November.  156, once

11   again, it's ████████████,  ████████████████████

12   and his reason is he also has planned travel in November.

13          MS. YUSI:  Yes, Your Honor.  It starts

14   November 22nd, that Tuesday.

15          THE COURT:  Hearing no objection, we're going to

16   grant that one too.

17          The final strike is number 171, that you've offered.

18   171 is ████████  who has planned travel during November.

19          Anything else to add other than that?

20          MS. YUSI:  Your Honor, it says he's going to leave

21   the 24th and come back that Sunday.  So he might be okay,

22   depending on what time he leaves on the day before

23   Thanksgiving.  We might have to just ask him more questions.

24          THE COURT:  Okay.  We will leave that.  We will not

25   strike that juror.
```

```
 1            MS. YUSI:  Yes, Your Honor.

 2            THE COURT:   Number 159.   159 was not on the

 3   United States' strike list.  I'm not sure it's on anybody

 4   else's list either, but we're going to find out here.  159, I

 5   received a letter from ███████████████ -- that's Juror

 6   Number 159 -- who has requested that she be excused.

 7            At the time she completed her questionnaire on the

 8   28th, she was told the trial would last three to four weeks.

 9   At the time she completed her paperwork, she mistakenly

10   thought that her daughter's college graduation was being held

11   later in December.

12            She has now learned that her daughter will be

13   graduating from George Mason University on December 16th at

14   10:00, and she said she's worked hard to get her degree and

15   she really would like to be able to attend her ceremony and

16   celebrate her accomplishment; if possible, could her jury

17   service be postponed?

18            MS. YUSI:  Your Honor, we would move to strike, and

19   I believe -- is it ████████████████?

20            THE COURT:   159 is -- let's go back.  I have the

21   name right here.  ████████████████.

22            MS. YUSI:  Your Honor, December 16th is a Thursday.

23   We would move to strike.

24            THE COURT:   Okay.  Hearing no objection to college

25   graduations, we'll strike 159.
```

1           Those are all the strikes that the government

2    addressed.  Now we will turn to Defendant Smith's strikes,

3    and I think in the process of addressing the government's

4    strikes, we probably knocked off some of the strikes that

5    Mr. Smith was concerned about.

6           I think we struck number 12, which is on Mr. Smith's

7    list.

8           Number 16, we did not address, and Mr. Smith has

9    raised several objections.  He indicated he may know one

10   witness, Mr. Brown.  He indicates he will only hear about

11   30 percent of what is presented.  "I'll probably just rely on

12   other jurors' views and vote with the majority."

13          Any objection to striking this juror?

14          MS. YUSI:  Your Honor, I would think that a lot of

15   these questions could be further questioned, or further

16   questions could elaborate on these.  I'm not sure if this is

17   enough for a strike for cause.

18          THE COURT:  All right.

19          MS. McCASLIN:  Your Honor, if I may reply?

20          This juror has listed just about every problematic

21   indication that there is.  He says that he would have

22   reservation about voting not guilty but would have no problem

23   voting guilty, which means that presumption of innocence is

24   going to be a problem for this juror.

25          He would base his verdict on personal views instead

1   of the law.  He does think that the defendants should or do

2   need to testify.  He also says that he would have an issue

3   with the government having the burden of proof and the

4   defense not having to prove innocence.

5          THE COURT:  You're just talking about Juror 16?

6          MS. McCASLIN:  Yes.  I can list off the numbers of

7   the questions, Your Honor, if that's helpful.

8          THE COURT:  The reason I ask you that is because I

9   thought that you offered -- Mr. Smith offered a rather

10  comprehensive objection to this juror, and several of the

11  things you just said are not in these about eight bullet

12  points.

13         MS. McCASLIN:  They are, Your Honor.  They might be

14  a little bit varied, but for the third bullet point down, it

15  does mention difficulty with the Fifth Amendment, also

16  problems with the government having the burden of proof,

17  which is the same --

18         THE COURT:  All right.  The Court will strike this

19  juror.

20         MS. McCASLIN:  Thank you.

21         THE COURT:  16 is gone.

22         Number 20.  On number 20, no one objected except to

23  this -- wanting to strike number 20 is Mr. Smith and

24  Mr. Barnett.  And Mr. Smith offered his objection based on

25  this individual's occupation and his education.  I don't see

```
 1    anything much here except that he's too intelligent for the
 2    jury.  I mean, I don't see a basis for striking this juror.
 3            What you said is this.  Here's a summary that you
 4    gave:  Currently works in accounting and operations.  Job
 5    duties include processing payroll, invoicing customers,
 6    preparing financial statements.  Has an MBA as well as
 7    undergraduate degree in finance, a Bachelor of Arts in
 8    accounting.  This level of financial knowledge, as
 9    specialized such as this juror's, judgment would not be based
10    on common sense and facts.  This juror would have undue
11    influence on other jurors in deliberations.
12            She says absence from her job would cause a big
13    strain on the business.  That's not a reason to strike.  She
14    has a second-grader who does not have daycare after school;
15    therefore, it would be difficult for four weeks.
16            I don't think that's a reason to strike a juror, so
17    the Court is not inclined to strike number 20.  If you feel
18    strongly about it, you can use a peremptory strike on her if
19    she shows up on the board.  That's ███████████████.
20            Juror Number 21.  Just Mr. Smith seeks to strike
21    Juror Number 21 on the ground that you are not sure whether
22    the juror would have difficulty following the rules
23    pertaining to presumption of innocence for the defendant.
24    And she did not check whether she would have difficulty
25    treating -- not treating the indictment as evidence of guilt.
```

1          That may be unclear.  The Court will recommend we
2    just hold on to Juror Number 21.
3          MS. McCASLIN:  Your Honor, if I may?
4          THE COURT:  Yes.
5          MS. McCASLIN:  She also said that she would be
6    unsure whether she could follow the rule that the defendant
7    is presumed innocent and that the government has the burden
8    of proof.  She also said that she was unsure about and had
9    reservations about voting not guilty even if the government
10   had not met its burden of proving guilt beyond a reasonable
11   doubt.
12         THE COURT:  Okay.  You have some additional info
13   that the Court doesn't have, looking at simply your reasons
14   for your objection.  That's an additional reason.
15         MS. YUSI:  Your Honor, I would just say that this
16   particular juror put unsure about a lot of things, and I
17   think just additional questions by the Court could help
18   clarify some of these.
19         THE COURT:  All right.  We'll hold on to Juror
20   Number 21, then.
21         Okay.  Juror Number 23.  Mr. Barnett and Mr. Smith
22   wish to strike Juror Number 23 because she -- you state:
23   Does not know whether the juror would put personal view over
24   law.  Declined to affirmatively check a box to answer number
25   69.  I don't know what 69 is right now.  Do not know, she

1  says, whether -- you do not know whether she is motivated by

2  something other than civic duty.

3          THE CLERK:  I think you're reading the wrong one.

4  Go one block down.

5          THE COURT:  Oh, wait a minute.  I should be on 23.

6  Thank you for that correction.

7          This juror was -- there's objection again, still, to

8  this juror from Mr. Smith and Mr. Barnett.  The only thing

9  she says is the fact that she works in a firm and her sole

10  duty is to pay people.  That is insufficient to strike her.

11  But then the Court gives consideration to her statement that

12  she would give more weight to law enforcement testimony only

13  because they are to uphold the law and tell the truth.

14          MS. YUSI:  Your Honor, I would just say about this

15  particular one, as long as she's going to follow the Court's

16  instructions, then I think that she at least should be held

17  for more questions to see if she would follow the Court's

18  instructions about that and any possible bias.

19          THE COURT:  Well, what we can do is we can hold on

20  to her.

21          MR. GANTOUS:  This is Juror Number 23 we're talking

22  about?

23          THE COURT:  Juror Number 23.

24          MR. GANTOUS:  Well, she also responds that she

25  provides day-to-day subsistence care for her 85-year-old

1    father-in-law.  That's the answer to question 6a.

2         MS. YUSI:  It's unclear.  It appears that she does

3    work as well.  Like I said, more questions, I think, would be

4    appropriate.

5         MR. GANTOUS:  There's also the fact, Your Honor, she

6    states to question 52 that she would give more weight to

7    testimony of law enforcement over other individuals.

8         THE COURT:  Well, I recognize that one.  The only

9    thing added was being the caregiver that the Court hadn't

10   given any consideration to.  Now, is she the only caregiver?

11   We don't know.

12        MR. GANTOUS:  Her response states:  "I have an

13   85-year-old father-in-law that needs my day-to-day care for

14   medicines, food, and doctor appointments."

15        THE COURT:  All right.

16        MR. GANTOUS:  And then the answer to number 9, "Are

17   you the sole or primary caretaker?"  She answers:  "Yes.

18   85-year-old father-in-law."

19        THE COURT:  We'll strike Juror Number 23.

20        MR. GANTOUS:  Thank you, Your Honor.

21        THE COURT:  Juror Number 28.  Mr. Barnett and

22   Mr. Smith seek to strike Juror Number 28.  Primarily the

23   reason you want to strike this juror is she is unsure about

24   the rules, whether she can follow the rules or not.

25        Now, you know, I'm beginning to think when they say

1    they're not sure about whether they can just follow the

2    rules, that that alone would not be enough to strike them now

3    because we may need to get them in front of the Court and let

4    them understand what their duty and responsibility is before

5    I strike them.  If they still take this equivocal position,

6    the Court will strike them for cause then.

7         MS. McCASLIN:  Your Honor, I do understand that.

8    However, this juror does state that they would be biased.

9    This juror says, on the second bullet point down, unsure if

10   they could be fair to both sides because they've known

11   somebody who has dealt with fraud, and mentions that twice.

12        On the third bullet point down, again, this juror

13   would have no reservations voting guilty but is unsure if

14   they could vote not guilty even if the government did not

15   prove guilt.

16        And the last bullet point asked if anything else

17   would influence her ability to judge fairly and impartially,

18   the juror basically said yes.

19        THE COURT:  You know, I started with the first two

20   bullet points.  I think before I speak the next time, I'll

21   read all the bullet points.  That juror is stricken.

22   Number 28 is gone.  That's too much for us to try to

23   rehabilitate in voir dire.

24        29.  Now, this is a juror who says -- and let's see

25   who objected to 29.  Mr. Smith and Mr. Barnett.  You're

1    looking over each other's shoulders the way you're

2    coordinating.

3          At any rate, she says she would base her verdict on

4    her personal views over the law.  And she has strong,

5    negative feelings about financial advisors.  "It's all

6    rigged."

7          Yes, sir?

8          MR. BOSSE:  Judge, just in general, when people are

9    putting down here they are unsure about things or they've got

10   feelings about things, the Court hasn't instructed them about

11   how this process works.

12         Our general objection to striking jurors just based

13   on things that the Court could talk more to them about is

14   that if we do that for all of them, we're going to have no

15   jurors left.

16         And these are all things that in other cases the

17   Court has inquired about jurors, and then some of them will

18   be stricken for cause based on what they say; and others, it

19   turns out, had a misapprehension or a misunderstanding, and

20   they could very well be in the jury pool.

21         THE COURT:  Let me put it this way.  This Juror 29

22   is different from Juror 28, which had other things other than

23   being unsure, and so what the Court will do is the Court will

24   leave 29 in and find out just how strongly does she feel

25   about these things after the Court tells them what their duty

1    really is.  29 stays.

2           32.  Has strong feelings against financial advisors,

3    insurance salesmen, do not trust them.  Prior dealing with

4    attorneys make her skeptical.

5           I think number 32 is another one.  I think that they

6    need to be told the basics that we usually tell them during

7    voir dire, and that should address whether they still come

8    out the same way no matter what the Court says.

9           MS. McCASLIN:  Your Honor, if I may?

10          THE COURT:  You may.

11          MS. McCASLIN:  This juror states that they're going

12   to have a problem with most of the constitutional issues.

13   I'm not sure if they would have trouble treating the

14   indictment as evidence of guilt.

15          They circled that they would have difficulty abiding

16   by the Fifth Amendment and not drawing adverse inference from

17   a defendant remaining silent, and she follows it up with

18   "Maybe what's the attorney hiding?"  Also says that her prior

19   dealings with attorneys make her skeptical in this case.

20          She says that she is unsure whether she can follow

21   the presumption of innocence.  And on the next page, she is

22   unsure if she would give more or less weight to law

23   enforcement.  Unsure -- or she said if she heard about the

24   case, would not be able to set that aside and be fair to both

25   sides.  Unsure whether they would be able to vote guilty or

```
 1    not guilty and would base their verdict on personal views.

 2              It is a lot of legal and constitutional issues.

 3              THE COURT:  In case we don't accept that, she tops

 4    it off with going out of town for Thanksgiving.

 5              MR. GANTOUS:  And, Your Honor, she is also taking

 6    care of her grandkids starting in December again.  It appears

 7    to be a financial -- or a family hardship.

 8              THE COURT:  The Court will strike Juror Number 32.

 9              Let me tell you something.  Sometimes I get the

10    impression that people are trying to avoid jury duty, because

11    you're not sure you can abide by any principle of law.  I

12    don't like to waste time; otherwise, I would bring her in

13    here to make sure that's her attitude.

14              Okay.  Let's move on to number 34.

15              MR. GRINDROD:  34 is already stricken, Your Honor.

16              THE COURT:  Okay.  That saves time.

17              44.  United States and -- no.  Mr. Smith and

18    Mr. Barnett wish to strike Juror Number 44.

19              Bias.  Police should be respected.  She answered yes

20    to the question about weighing law enforcement testimony,

21    explaining police are always right and should be respected.

22    Then she says she doesn't trust lawyers, but the U.S.

23    Attorney's Office have police who jurors trust.

24              MR. BOSSE:  That's not -- that's the foundation by

25    the defense.  That's not what the juror said.
```

1         THE COURT:  Wait a minute.

2         MR. BOSSE:  They've made an argument within the --

3         MS. McCASLIN:  That's correct, Your Honor.  The part

4    in quotes is "I don't trust lawyers."  So part of my argument

5    was if you combine those first two, the U.S. Attorney's

6    Office, of course, have police and law enforcement who the

7    juror trusts and the defense just have lawyers who she

8    obviously doesn't, so it's a double problem.

9         THE COURT:  It's your argument on the back of your

10   objection.  All right.  Okay.

11        She checked "yes" indicating she would have trouble

12   with the Fifth Amendment.  Unsure of whether -- she would

13   have difficulty with the rule that the defendant has no

14   obligation to prove his innocence, explaining that they would

15   need to know both sides of the story.  Has no reservations --

16   wait a minute.  She's unsure about finding them not guilty.

17   She may know Jeff Browne, which is one of your witnesses.

18        There's too much going on here with this juror,

19   ladies and gentlemen.  The Court is striking number 44.

20        Number 46 is an objection raised by Mr. Smith and

21   Mr. Barnett.  This prospective juror has experience with

22   parents being victims of fraud.  Unidentified family member

23   working in corrections.  Spouse works for CBP.

24        She says, about the defendant not testifying, "I do

25   not understand why a defendant would be advised not to

1    testify if he is innocent."

2           Unsure about voting not guilty.  "I would hope that

3    the defense proved their innocence as well."

4           Motion to strike is granted on 46.

5           52.  This strike is by Mr. Alcorn, Mr. Smith, and

6    Mr. Barnett.  This juror would have trouble following the

7    Fifth Amendment.  She says, "Yes.  I want to say no, but I

8    believe that if you are innocent, what do you have to lose?

9    If my kids won't answer my questions, it's because they are

10   hiding something."  She would also give more weight to law

11   enforcement in their testimony.

12          Any objection to striking this juror?

13          MR. BOSSE:  Yes, Your Honor.

14          THE COURT:  Yes, sir?

15          MR. BOSSE:  Your Honor, this is another example

16   of -- I mean, when you have lay people confronted with these

17   legal concepts, these might be red flags or things for the

18   Court to inquire into, but if we look at the strikes that are

19   proposed by the defendants, we're seeing a lot of women being

20   stricken from the jury, and these are things that can be

21   asked of the juror.

22          I mean, the commonsense answer about if my kids

23   won't answer my questions, it's because they're hiding

24   something, that's a layperson understanding that can be

25   corrected by the Court, or you might find out that it's a

1    deeply held belief that she can't put aside, in which case it

2    would be appropriate to strike her.

3           But by doing it here at this stage on this paper,

4    these are essentially red flags that would suggest further

5    inquiry, not striking across the board any time we see

6    confusion about this sort of thing.

7           And same, Your Honor, with strong opinions for or

8    against financial advisors, lawyers, I mean -- all of us --

9           THE COURT:  We're on 52 now.

10          MR. BOSSE:  I'm jumping ahead but --

11          THE COURT:  Don't do that.

12          MR. BOSSE:  Yes, sir.

13          THE COURT:  I have enough problems with 52.

14          MS. McCASLIN:  Your Honor, for number 52, the juror

15   admits to having a bias already.  "I realize I don't have the

16   facts yet, but I already find myself leaning towards guilt."

17   And the juror acknowledges having already formed an opinion.

18   So that in itself is a major problem for presumption of

19   innocence.

20          THE COURT:  Here's the deal.  Among the

21   instructions, it points to the fact that everyone has a bias

22   when they come in here, but then they get cautioned to put

23   aside their biases, to impartially decide the facts

24   notwithstanding your bias.  Everybody has a bias about

25   something or another.  The question is do you have the

1    discipline to put aside your bias?

2            I will put it this way.  I understand what you said,

3    Mr. Bosse.  The Court has no problem in delaying striking the

4    juror, because if the juror comes in here and equivocates

5    during voir dire, then you can raise your motion to strike

6    them again.  So we'll just pass on 52.

7            Now, number 53.  The witness has strong opinions for

8    or against financial advisors; works in financial management,

9    analyst in the Navy, providing financial assistance; studied

10   business administration and accounting in college and took

11   multiple classes.

12           53 has no basis for striking anyone for cause.  If

13   you want to knock out 53, you'll have to do it by peremptory,

14   but the fact that the witness knows business and finances,

15   and et cetera, et cetera, that's no basis for striking that

16   juror.  So that juror has to stay in.  We can avoid a lot of

17   discussion on 53.

18           62.

19           MR. GRINDROD:  Already stricken, Your Honor.

20           THE COURT:  Wonderful.

21           66.  Just Mr. Smith is striking 66.  This juror

22   would give more weight to the law enforcement testimony.  "I

23   would think their testimony is simply an objective statement

24   of facts."

25           But, you know, I will leave 66, too, because the

```
 1    Court has to instruct them that they cannot do that.  Good
 2    guys don't always wear white hats.  That's an expression that
 3    means the police don't always tell the truth, and they need
 4    to understand that.  So we're going to leave 66 in.
 5              Let's go down to 67.
 6              MR. GRINDROD:  Already stricken, Your Honor.
 7              THE COURT:  75 is a strike raised by Mr. Smith and
 8    Mr. Barnett.
 9              He has a relationship with Mr. Gantous, who is a
10    counselor here.  I think number 75 has enough reasons for the
11    Court to strike that, to be candid with you.
12              MR. BOSSE:  Can I ask what the relationship is with
13    Mr. Gantous?  I didn't catch that.
14              MR. GANTOUS:  He's a good friend of mine and a
15    neighbor, which I pointed out in our motion as well.
16              MR. BOSSE:  Yeah.
17              THE COURT:  Number 75, as I said, it's appropriate
18    to strike the potential juror, number 75.
19              76.  Everyone has asked to strike this juror
20    except --
21              MR. GRINDROD:  It's already stricken, Your Honor.
22              THE COURT:  76 is gone.
23              77.
24              MR. GRINDROD:  Already stricken, Your Honor.
25              THE COURT:  81.  Mr. Barnett and Mr. Smith asked to
```

1    strike this juror.  This juror is speculating about "unsure"

2    and "may have" and this and that and the other, kind of

3    straddling the fence.  So this is a juror the Court

4    definitely needs to bring in here, so the Court is going to

5    leave 81 on the board.  Everything is "may."  It's

6    speculation.  It may not come to pass.

7            Number 84.

8            MR. GRINDROD:  Already stricken, Your Honor.

9            THE COURT:  Okay.  Number 93.  There's an objection

10   raised by Mr. Smith and Mr. Barnett.  Would have trouble not

11   drawing conclusion from a defendant not testifying.  Has a

12   business trip in early December.  May know some of the

13   witnesses.  Hardship, work travel, and loss of income.

14           MR. BOSSE:  Your Honor, we tried to strike everyone

15   where it was clear what the travel was and that it was out of

16   town and prepaid and not optional.  The other items on here,

17   the fact that they studied toward a Series 7 exam and has a

18   financial planning background -- those are not reasons to

19   strike someone from the jury pool.

20           And the other things are all things that can be

21   inquired about.  So if it turns out that they have

22   out-of-state travel that's planned or some of these other

23   reasons are fixed, firm beliefs, we wouldn't object probably

24   at the time, but this seems like somebody that should be

25   inquired into.

```
1            THE COURT:  Hearing nothing, 93 will remain.
2            100.  This is a strike that was raised by Mr. Smith
3   and Mr. Barnett.  Has strong opinions against financial
4   advisors.  "I feel these type of people have self-interest in
5   their profits and not their customers."  And another answer
6   about crime, "I have no respect for anybody that would take
7   the life or possession from their fellow citizen."  "Would
8   have trouble not drawing conclusion from a defendant not
9   testifying."
10           I think that we need to bring this juror in here.
11           MS. McCASLIN:  Your Honor, if I may?
12           THE COURT:  Yes.
13           MS. McCASLIN:  As to that last bullet point of
14  having trouble not drawing a conclusion from the defendant
15  not testifying, this juror did follow up with written
16  commentary and said, "I believe if a defendant cannot speak
17  on a matter they are charged with, they must be hiding
18  something or being untruthful."  That is much stronger than
19  just an unsure.
20           THE COURT:  But does that juror understand that the
21  defendant is not even required to call a witness or
22  cross-examine a person and that's why they are not testifying
23  and they are not required to do so?
24           MS. McCASLIN:  Your Honor, I think that if the -- if
25  the juror is already stating "a defendant must be hiding
```

1    something," that's not anything that is wishy-washy.  That

2    means that they are unable to follow the presumption of

3    innocence, they are unable to follow the right to remain

4    silent, and the government's burden of proof.

5           THE COURT:  You know, this has come up multiple

6    times in here.  I said don't look ahead, but I'm seeing a

7    couple more where questions are raised by lay people about

8    why people are not saying anything without knowing about the

9    Fifth Amendment.

10          We don't teach civics anymore in this country.  So

11   they don't know that a defendant is not required to testify.

12   Pure and simple as that.  And that's a right.  They don't

13   know that.

14          So I tell you what we're going to do.  We're going

15   to leave 100 there.

16          Without even entertaining any questions, we're going

17   to leave number 102 there, and if they persist in these

18   positions, we will strike them.  The Court will have no

19   problem; if they equivocate, they're gone.  It's simple as

20   that.

21          Let's look at number 105.  Here it is again.  The

22   same basic rules of law that apply to a criminal case are

23   raised again.  The juror is not sure if juror -- let me tell

24   you who it is.  105 is ███████████.  Not sure if she

25   would treat the indictment as accusation and not evidence of

1    guilt.

2          Unsure if she could follow the rule that the

3    government has the burden and that the defendant has the

4    presumption of innocence.

5          It's all equivocation.  All right.  Tell you what,

6    you have the questionnaire.  It's a good chance a lot of

7    these jurors won't even come up on the board and you won't

8    even have to be bothered with peremptorily striking.  105

9    stays in.

10          108.

11          MR. GRINDROD:  Your Honor, may I be heard briefly on

12    the -- just to respond to Mr. Bosse's point?

13          It's just not true that these jurors haven't been

14    told what the law is.  The question itself instructs them on

15    the law.

16          For example, the question about the defendant not

17    having to testify says:  "A defendant in a criminal trial has

18    no obligation to testify," and it instructs them, "Jurors

19    cannot draw any conclusion from the fact that a defendant

20    chooses not to testify.  The fact that a defendant may choose

21    not to testify cannot be a factor in reaching your verdict."

22          And then it asks:  "Would you have problems

23    following those rules?"

24          So they are instructed as to the law.  And they,

25    notwithstanding that instruction, state hesitation or an

1  unwillingness to follow the law that they were just given in

2  this written filing that the Court sent.

3          MR. BOSSE:  Your Honor, these are lay people who are

4  being confronted with new concepts for the first time on a

5  written document that is -- I mean, we saw one person that we

6  struck that basically said they didn't understand any of it.

7  Thankfully, that person, I believe has been struck, but the

8  idea that we're going to strike them based on their written

9  response and not even bring them in to court to ask them

10 about it, it's too much.

11         This is exactly the ammunition and the tools that

12 the lawyers need to, with the Court, conduct voir dire, but

13 the idea that we're going to strike anybody who portrays any

14 uncertainty or unclearness about how these laws apply in a

15 federal courtroom, it's too much at this stage.

16         Because of the questionnaire, it's a three-stage

17 process.  It's this initial stage, then it's strikes for

18 cause in court, and then it's the peremptory strikes.  So

19 we're at stage 1 of 3.

20         THE COURT:  I think that we can make a distinction

21 here.  If they look at the information provided that

22 Mr. Grindrod read and they make an unequivocal statement that

23 "I will not" do something -- or "I'm not sure" or "unsure," I

24 think that is a basis probably for questioning further, but

25 if they make a definitive statement that "I will not" do

1    something, whatever, then I think that is a firm indication

2    of what their position is.  They're not equivocating.

3            And so when I look at one of these questions, that's

4    the distinction I would make; jurors who are not sure,

5    unsure, as opposed to "I will not," "the defendant ought to

6    testify if he's not guilty," that's a distinction to the

7    Court.

8            Anyway, now where were we?  We were going to

9    number 108.  Oh, I did not deal with 105.  I left 105 on the

10   board.

11           Now, number 108 is an affirmative statement.  "A

12   person who is accused" -- now, who raised that?  That was

13   Mr. Smith and Mr. Barnett again.

14           It says, "A person who is accused of something and

15   don't want to talk about it is probably hiding something that

16   will prove them guilty."

17           That's the response to the question about the

18   defendant not being required to testify.  That is an

19   affirmative statement.  The Court will grant number 108 and

20   strike the person, number 108.

21           109 was raised by Mr. Barnett and Mr. Smith again.

22   The person says they have no hearing in their right ear,

23   temporary loss in the left ear, cannot leave work during the

24   fourth quarter.

25           The Court is concerned about the individual's

1  physical capacity.  Does he have a hearing aid?

2        MR. BOSSE:  Your Honor, that's what we don't know.

3  We don't know what the situation is, if they can hear

4  perfectly well with one ear and with the court's assistance

5  with the headphones.  This is exactly the kind of person that

6  ought to be inquired into in person, as well as the extent of

7  whatever this claimed hardship is.

8        We tried to strike people who made a very clear and

9  definite statement of a financial hardship, and this person

10 was not on our list for that.

11       THE COURT:  All right.  The Court usually asks the

12 question of whether they can hear with the assistance of a

13 hearing aid or visual aid.  This doesn't tell us whether she

14 has a hearing aid -- or he -- 109 is a male, ███████████

15 █████████ -- whether he has a hearing aid or what is happening

16 with the temporary loss in the left ear.  So we will leave it

17 for inquiry.

18       Number 110.  Did we strike that one already?

19       MR. GRINDROD:  Yes, already stricken, Your Honor.

20       THE COURT:  121.  121 was raised by Mr. Barnett and

21 Mr. Smith again.  This is another unsure juror, unsure about

22 everything.  So what we're going to do is we're going to

23 question the juror.  We're just not going to strike them.

24 We'll question the juror.

25       122 was raised, again, by Mr. Smith and Mr. Barnett.

1   Okay.  This one is also vague.  "Would find it hard to avoid

2   social media."  Hard to avoid it?  The Court tells you don't

3   do it, and I'm sitting right up here and not on the paper.

4   And what are the work requirements?  That doesn't explain

5   anything to the Court; hardship, work requirement.

6            Counsel, we need to bring 122 in here for further

7   clarification.

8            MS. McCASLIN:  One moment, Your Honor.

9            (Pause)

10           MS. McCASLIN:  He does say that "I will be out of

11  town November 16th to November 25th."  Wait.  That might be

12  two different out-of-towns.

13           THE COURT:  That's number 122?

14           MS. YUSI:  Your Honor, my understanding is he's out

15  of town and comes back the 16th, and so we assume that we're

16  going to have a second day of the jury panel, so he could

17  make it the 17th.

18           MS. McCASLIN:  Just a moment, Your Honor.

19           (Pause)

20           MS. McCASLIN:  Your Honor, the juror just says, "My

21  work life would not allow something like this due to the

22  requirements of the job."

23           THE COURT:  We're going to find out what that is.

24  "What are you working on?"  Okay.

25           136 knows Attorney Yusi personally.  What is the --

```
 1   would you like to elaborate?
 2           MR. GANTOUS:  I think we skipped 126.
 3           MS. YUSI:  Sure, Your Honor.  Which number is this,
 4   Your Honor?
 5           THE COURT:  136.
 6           MS. YUSI:  She worked at my children's school a
 7   couple years ago.  She no longer works there, Your Honor.
 8   That is how I know her.  I don't see her personally or
 9   otherwise.  And I believe she answered the questions that she
10   would follow the law.  We can inquire more.
11           THE COURT:  When they know one of the counsel in the
12   case, it's the Court's practice to follow that up with
13   whether they would be influenced in their decision-making by
14   virtue of the fact they know the counsel in the case, and
15   just how close is the relationship with counsel.
16           You gave us a statement about what the relationship
17   is, so I think we need to leave 136 in here, and we will ask
18   her what we usually ask when we have this situation.
19           138 was raised as an objection.
20           THE CLERK:  Your Honor, we skipped 126.
21           THE COURT:  I skipped 126?  Oh, I sure did.
22           Bias based on specialized knowledge.  No way.  We've
23   said that before.  We can't strike people for cause just
24   because of their expertise and their background and ability,
25   so 126 stays.
```

138.

MR. GRINDROD:  Already stricken, Your Honor.

THE COURT:  We can speed this up with a bunch of the others that are stricken already.

153.  That's the same thing I just said a few minutes ago.  There's no basis for striking number 153 based on specialized knowledge in certain areas; insurance licenses, annuities, et cetera.

154 has strong opinions on financial advisors. "They are deceptive."  Can you put your bias aside and decide the case and see whether they have been deceptive in this case or not?

Yes, sir?

MR. GANTOUS:  Your Honor, you notice that's all in caps, and that's a pretty definitive statement on his part.

MR. BOSSE:  Your Honor, he wrote everything all in caps.  That's not -- he didn't capitalize --

THE COURT:  Let him finish first.

MR. BOSSE:  Yes, sir.

THE COURT:  Yes, sir?

MR. GANTOUS:  That is accurate.  That is accurate. We were just looking at question 32, Your Honor, but regardless if it's written all in caps or not, "They are deceptive" is not unequivocal or something he's not sure about.  That is a definitive statement.

```
 1          MS. McCASLIN:  Furthermore, Your Honor, if I could
 2   jump in, he did say that he would base his opinion on
 3   personal views and not the law if they contradicted each
 4   other.  So those two together are quite dangerous and
 5   unconstitutional.
 6          THE COURT:  Anything, Mr. Bosse?
 7          MR. BOSSE:  Yes, sir, Your Honor.  Any number of
 8   jurors were confused by that last question.  It seems to
 9   catch a significant portion of them.  The idea that -- if you
10   look at that, question 32, it says banks, financial advisors.
11   It says -- it's a compound question that deals with insurance
12   salesmen, trust companies, stockbrokers, investment brokers.
13          The idea that someone in the public would think that
14   one or more of those entities can be deceptive or are
15   deceptive -- I mean, that's not -- that's a commonly held
16   belief, and the idea that we're going to strike them from it
17   before inquiring whether they can put aside and decide
18   whether these people were deceptive in this case just on the
19   basis of a written questionnaire is premature.
20          THE COURT:  Having heard both counsel, the Court is
21   going to leave 154.
22          157.  You know, you can go but so far dealing with
23   these issues when someone says, "My instinctive reaction is
24   that the person must be guilty of something for this to have
25   gone as far as a court case" and "base the verdict on my
```

1    personal views and not the law."

2           You know, if this is a firmly held opinion, the

3    Court is telling you that you can't base it on the fact that

4    they are charged in an indictment, an indictment is just an

5    accusation, the Court is not sure that that's even sufficient

6    to raise this individual's view that they must have done

7    something.

8           You all object, so it's stricken.

9           166.  Raised by Mr. Alcorn, Mr. Smith,

10   Mr. Barnett -- no, Mr. Smith and Mr. Barnett.

11          MR. BOSSE:  Did we just strike 157?  I apologize.

12          THE COURT:  Yeah, I struck 157.  I struck 157.

13          166.  That's another affirmative statement.  "If

14   they say nothing, I'd have to side with what I heard."

15          Can that overcome the instruction that they're not

16   required to say anything?

17          Trust police more.

18          The Court is striking number 166.  That juror is

19   stricken.

20          167.  All three defendants -- Alcorn, Smith, and

21   Barnett -- raised those three.  Knows Special Agent Bowers,

22   has previously been in grand jury with Assistant U.S.

23   Attorney Yusi, may have been foreperson.

24          I have an objection to this particular individual.

25   The Court is inclined to grant it.

1          169 has a strong opinion about financial advisors.

2          MR. BOSSE:  Your Honor --

3          MR. GRINDROD:  Sorry, Judge, did you strike or

4    not --

5          THE COURT:  I struck 167.

6          MR. GRINDROD:  Thank you.

7          MR. BOSSE:  And, Your Honor, I think we wanted to be

8    heard on that one.  There's nothing indicating here what --

9    why that would bias them or -- we might find out something at

10   the voir dire, but the fact that they know -- I mean, that

11   seems like something for further inquiry, and maybe they

12   would be struck in time.

13         MS. McCASLIN:  Your Honor, the juror knows Special

14   Agent Bowers who is going to be testifying as a government

15   witness.

16         THE COURT:  But you know something, I moved to

17   strike him, but how does that juror know Special Agent

18   Bowers?

19         MS. McCASLIN:  They mention in --

20         THE COURT:  Is there anything else in the

21   questionnaire?  Was he driving through the neighborhood?  Did

22   they see him at a hot dog joint?  In other words, what do we

23   know about how she knows Special Agent Bowers?  Did she have

24   any conversations with Elizabeth Yusi if she saw her in the

25   grand jury?  I remain to be persuaded and unpersuaded and

1   whatever.  Anything else?

2          MR. BOSSE:  Your Honor, the questionnaire indicates

3   something about Mr. Bowers 15 years ago, "Knew him 15-plus

4   years ago," "Not in the same office."  I mean...

5          THE COURT:  All right.  We'll leave it.  Changed my

6   mind again.  How many times have I changed my mind today?

7          MR. GRINDROD:  Every time Mr. Bosse gives a speech.

8          THE COURT:  The Court is not tracking that.  You may

9   be tracking it, but I'm not tracking it.

10         MR. BOSSE:  For the record, I wish that were the

11  case.

12         THE COURT:  Don't credit him with that much

13  latitude.

14         MR. GRINDROD:  Fair enough, Judge.

15         THE COURT:  All right.  Has a strong opinion of

16  financial advisors; will have trouble not drawing a

17  conclusion from a defendant not testifying; based on views,

18  not law; the police have more power; trust the police more.

19         That's a lot, ladies and gentlemen.  That's a lot in

20  that prospective juror.  That's a lot.  And this time I'm not

21  changing my mind.  169 is stricken.  You all can appeal that.

22         Look, the Court just noticed something.  Time flies.

23  It's five till 4:00.  We've probably got about another 45

24  minutes or an hour more of work to do, so we're going to take

25  a 15-minute break and then come back and continue.

```
 1              (Recess from 3:54 p.m. to 4:10 p.m.)
 2              THE COURT:  We did the last requested strikes on the
 3    sheet of Mr. Smith.  Now we're going to turn to the sheet for
 4    Mr. Alcorn, and we might move a lot quicker because I think
 5    we've taken a lot of these strikes already.
 6              MR. YAROW:  Judge, every single one of the folks
 7    that I've objected to have been struck except for number 52
 8    and 136.  Both of those have already been ruled on.  And I
 9    really don't have any additional objections other than what
10    has already been stated.
11              THE COURT:  That's wonderful news.  Thank you, sir.
12              Can you improve on that, Mr. Matthews?
13              MR. MATTHEWS:  I do, Judge.  If I have any left, I
14    withdraw them all.
15              THE COURT:  Thank you, sir.  We're making progress.
16    We might be out in the next ten minutes.
17              What the Court is going to do now is the Court is
18    going to turn just quickly to some of these motions that have
19    been raised here.
20              THE CLERK:  We have one more defendant.
21              THE COURT:  Oh, Mr. Barnett.  Hold on a second here.
22              What do you have here?  You have quite a number
23    here, Mr. Barnett.
24              MR. GANTOUS:  Well, in contributing to this
25    lovefest, Your Honor, I'm going to withdraw most of my
```

```
1    motions here save for a few.

2            THE COURT:  I'm talking about your proposed strikes.

3            MR. GANTOUS:  That's right.

4            Based on the Court's rulings so far this afternoon,

5    Your Honor, I can safely withdraw most of the remaining

6    motions to strike these jurors for cause, Your Honor.

7            THE COURT:  Okay.  Thank you very much.

8            MR. GANTOUS:  I do have a couple that I've selected,

9    Judge.

10           THE COURT:  Tell me what the couple are.

11           MR. GANTOUS:  Okay.  Juror Number 3, Your Honor, she

12   had put down that she had left her job due to COVID, and the

13   Court may want to inquire more as to the reasons surrounding

14   COVID, but I don't think someone who quits their job as an RN

15   for COVID reasons is going to want to sit in this courtroom

16   for a month.  Juror Number 3.

17           THE COURT:  Then we'll leave number 3 on the sheet.

18   Not stricken.

19           Next one.

20           MR. GANTOUS:  All right.  Juror Number 9, Your

21   Honor.  There seems to be a family hardship, Judge, where

22   this juror claims to have to be the sole and primary

23   caretaker of their spouse, make all her liquid food due to

24   her having cancer.

25           THE COURT:  So you would move to strike that juror.
```

```
 1    Let's see one thing here.  You are the only one to object.

 2              Are there any other objections to this strike?

 3              MR. BOSSE:  We don't think that this juror should be

 4    stricken without further inquiry.  It sounds like this person

 5    is working, and I don't know if I remember this one

 6    correctly, but it sounds like they had something indicating

 7    they thought they would have to stay overnight for this case.

 8              This just seems like something we need to know more

 9    about the situation.  It certainly sounds like a hard

10    situation, but it's unclear, if the person is working, why

11    they couldn't -- oh, retired.  I'm sorry.

12              Yeah, so I think we thought we needed to know more

13    about it.  It seems like they thought they'd have to do

14    overnight stays, and obviously they don't.

15              MR. GANTOUS:  I just go back to her response here,

16    Your Honor, that he is definitive that he takes care of his

17    spouse and makes all her liquid food.  I would think she

18    would require more than evening care.

19              THE COURT:  I would ask when does she prepare the

20    liquid foods and what stage is he in in terms of cancer.

21    There are some additional questions we can certainly ask.

22              MR. GANTOUS:  Fair enough, Your Honor.

23              THE COURT:  Not that Mr. Bosse recommended it.

24    Okay.

25              MR. GANTOUS:  Juror Number 35.  The way I read her
```

1   response to number 7, she's going to be out of town in

2   La Jolla, California, from the 13th through the 17th,

3   returning at 10:00 p.m., and that would put that at two days

4   of jury selection, Your Honor.

5          THE COURT:  All right.  The Court will strike 35.

6   They said the 13th through the 17th.

7          MR. BOSSE:  Yes, sir.  It was unclear -- we thought

8   the same thing, but it was unclear from here when this person

9   is getting back.  If the jury selection goes to the 17th and

10  they're back on the 17th, if they say they're back on the

11  night of the 16th --

12         THE COURT:  She said through the 17th.

13         MR. GANTOUS:  She says returning at 10:00 p.m., Your

14  Honor.

15         THE COURT:  On what date?

16         MR. GANTOUS:  The 17th.

17         MR. BOSSE:  Well, it looks like 16 or 17.  Both

18  numbers appear to be there.  If she can't be back until

19  10:00 p.m. on the 17th, we're fine with letting her go, but

20  it's unclear what it said there to me.

21         THE COURT:  Well, we're striking the juror.

22         Next.

23         MR. GANTOUS:  Just Juror Number 55, Your Honor.

24  This gentleman says that he is self-employed and running a

25  small business, and he's the only person in the household

1    that works.  I would say a family hardship exists in that

2    situation for Juror Number 55.

3          THE COURT:  He's the only person in the household

4    that works, and he would be in here for maybe up to four

5    weeks.

6          MR. GANTOUS:  And he's self-employed, Your Honor,

7    running his own business.

8          THE COURT:  Anybody have an objection to that?

9          MR. BOSSE:  Your Honor, this is one where we marked

10   this as one to inquire about.  This person supervises two to

11   three other people, and so I don't know why -- I mean, we

12   would need to find out why they wouldn't be able to be here

13   while the other people are working.  And it might be that

14   they couldn't be, but they didn't say they're working alone

15   in the business.

16         MR. GANTOUS:  Judge, if someone is self-employed and

17   running their own business, missing a month of work, I would

18   consider a financial hardship for this family.

19         THE COURT:  Depending upon the size of the business,

20   who he employs, whether he has a foreperson or a manager,

21   whatever.

22         MR. GANTOUS:  Fair enough, Your Honor.

23         THE COURT:  So that one will remain.

24         What else do you have?

25         MR. GANTOUS:  That's all I have, Your Honor.  Thank

1    you.

2              THE COURT:  Thank you very much.

3              Now, we're going to turn to some of these -- yes,

4    ma'am?

5              THE CLERK:  Do you want me to read off the strikes

6    that I have?

7              THE COURT:  Maybe that's not a bad idea.

8              THE CLERK:  Juror 11, 12, 15, 16, 22, 23, 28, 32,

9    34, 35, 40, 43, 44, 45, 46, 58, 62, 65, 67, 71, 73, 74, 75,

10   76, 77, 84, 96, 103, 104, 106, 108, 110, 118, 132, 138, 143,

11   147, 148, 156, 157, 159, 166, and 169.

12             THE COURT:  Did you count how many strikes there

13   are?

14             THE CLERK:  42.

15             THE COURT:  Is there a question?

16             MR. BOSSE:  If I could just have one moment, Your

17   Honor.

18             THE COURT:  While the government is questioning,

19   does it comport with what the defense has?

20             MR. GRINDROD:  We'd have to cross-reference, Your

21   Honor.  We can also look while the government is looking.

22             THE CLERK:  Judge, it's 43.

23             MR. BOSSE:  That's all right by our accounting.

24             THE COURT:  All right.

25             MR. GRINDROD:  Same, Your Honor.

1          THE COURT:  Okay.  That being the case, we will

2     finish with this for the time being.  We have 43 that we

3     struck, so that leaves what?

4          THE CLERK:  108.  We started with 151.

5          THE COURT:  All right.  Then we will bring in -- in

6     probably two days, we'll bring in 24 in the morning and 24 in

7     the afternoon, and we'll keep on until we are able to get a

8     panel.

9          The Court proposes to pick 18 jurors.  And that gets

10    to the issue that was raised regarding the number of strikes.

11    I may have to adjust the number of strikes, but what the

12    Court intends to do is start with ten strikes for the

13    defendants and then give each defendant left at least two

14    strikes.  Okay?

15         So for four defendants, that would be 18 strikes.

16    For three defendants, that would be 16 strikes.  For two

17    defendants, that would be 14 strikes, peremptory strikes.

18    For the government, the government will get 10 strikes.  All

19    right?

20         Now, with respect to one of the motions raised here

21    regarding conducting an inquiry about Mr. Bank's decision to

22    invoke the Fifth Amendment, the Court has read the case law,

23    and the Court will grant the motion in terms of an inquiry.

24         We will have to do it after the government rests.

25    At that time, the Court will conduct an inquiry.  The Court

1   will inquire of the defendant specifically what will be asked

2   of Mr. Bank so the Court can rule on it question by question.

3   Plus it helps the Court to know what the evidence has been on

4   direct and where we're going and to get it all in context.

5   So the motion for hearing an inquiry will be granted.

6       MS. YUSI:  Your Honor, I don't believe

7   Mr. Broccoletti still represents Daryl Bank.  So just for

8   planning purposes, if there is going to be, he might need to

9   have counsel appointed for him.

10      THE COURT:  Well, who is Mr. Bank's appellate

11  counsel?  Doesn't he have appellate counsel?

12      MR. YUSI:  He does, Your Honor.  Mr. Yamamoto was

13  the CJA attorney appointed by the Fourth Circuit for his

14  appeal.

15      THE COURT:  That's who objected to the inquiry by --

16  the Court understands it was the appellate attorney.

17      MS. YUSI:  There has been no objection filed by

18  anyone representing Mr. Bank.

19      THE COURT:  Well, wait a minute, now.  Mr. Grindrod,

20  what is this representation you've made that his counsel

21  indicated that Mr. Bank would be invoking the Fifth?  Who was

22  that?

23      MR. GRINDROD:  That was Mr. Yamamoto, Your Honor.

24  Even though he only represents him on appeal, for purposes of

25  being ethical, we considered Mr. Bank to be represented in

1    the matter, so we inquired of Mr. Yamamoto as to whether we

2    could meet with Mr. Bank and ask him questions, and

3    Mr. Yamamoto responded back saying that we could not meet

4    with Mr. Bank and that he expected Mr. Bank to invoke his

5    Fifth Amendment privilege if we called him at trial.  So

6    that's why we raised the issue.

7              THE COURT:  Well, the question for the Court is

8    whether the Court needs to appoint another CJA counsel.

9              MS. YUSI:  That's why I wanted to bring it up to the

10   Court, Your Honor, yes.  And perhaps Mr. Yamamoto might be

11   able to represent him on this as a CJA if he's appointed in

12   this court as well.

13             THE COURT:  Okay.  The Court will deal with that.

14             There's a motion here respecting excluding certain

15   evidence respecting the status of investments and securities

16   law.

17             MR. BOSSE:  Your Honor, we're still -- we're

18   briefing the numerous motions --

19             THE COURT:  Oh, yeah, that's right.  Your responses

20   are due on the 10th.  I forgot that.  No problem.  There's

21   too much going on here.

22             I think most of the motions the Court has really

23   addressed except for those where the responses are due on the

24   10th, and then the Court will be able to respond.  A lot of

25   these motions are motions adopting motions that have been

1    raised.  And with respect to motions for indigent travel, the

2    Court has addressed those.

3           If there's anything else burning, the Court will

4    have to deal with it at a later time.  We'll see what else is

5    left.

6           Oh, the question you raised about taking photographs

7    of the court, Mr. Grindrod, I don't know whether that's a

8    viable issue in the first instance, but to the extent you

9    need photographs of the court, the Court will take

10   photographs of its own court, and those photographs will be

11   placed with the courtroom deputy, and if they are needed for

12   any kind of appeal, that's where they will be.  But the Court

13   will take photographs of the courtroom.

14          And as the Court sees this courtroom, every single

15   defendant and counsel will be able to see the jurors.  All

16   the jurors will be wearing clear -- when they are questioned

17   during voir dire, will be wearing clear face masks, which

18   means you'll see every wrinkle in their face, so there will

19   be no question about whether you can see a juror.

20          Every witness will be wearing a clear mask so that

21   you can see them.  We've checked the lines of sight in here

22   from where each party and the counsel -- each counsel and

23   defendant is sitting, and they have a clear view of the

24   jurors.

25          In addition, to the extent the jurors have a problem

1   trying to see a witness, that television, that video display

2   up there on the wall presents a very clear view of the

3   witness.  Even though they're here, they can see them, and

4   they can also see a clear video view, so that's the Court's

5   response to that motion.  In other words, the Court will

6   grant the motion to obtain photographs of the courtroom.

7           Now, I don't know whether there's anything else to

8   that motion other than doing that.

9           MR. GRINDROD:  No, Your Honor, I guess we would --

10  whatever pictures the Court takes, we would ask that they be

11  made part of the record somehow, whether that's filing them

12  on ECF or just making them a court exhibit, but I understand

13  the Court's ruling.

14          THE COURT:  Well, the Court said it would make sure

15  that they are available, so if you wish to use them for

16  appeal, they will be there in the record.  Any party wishing

17  to take advantage of the photos, you will be able to see

18  them.  And we will get a panoramic view of the courtroom.

19          All right.  Is there anything else we need to deal

20  with right now?  A lot of things we'll reserve, and we'll

21  deal with it before trial and during trial and et cetera.

22          MS. McCASLIN:  Your Honor, if I could ask for brief

23  guidance.  The United States Marshals are trying to

24  coordinate the travel for defense witnesses.  They are

25  nervous about the dates coming up and are unsure how to

1   proceed with flight arrangements and hotels without knowing,

2   of course, what day they're supposed to be here.  They are

3   seeking guidance, so I wanted to bring that up.

4           THE COURT:  The Court told the U.S. Marshals when

5   they were supposed to be here, told them no later than

6   10:00 p.m. on the 11th.  I think that's what the Court said

7   in its order.  And the Court has had communication with the

8   Marshals so they know, unless they have changed something.

9           THE CLERK:  Judge, they're talking about the

10  witnesses.

11          THE COURT:  Oh, the witnesses?

12          MS. McCASLIN:  Yes.

13          THE COURT:  When do you need the witnesses?  The

14  U.S. Marshals, if they're going to get some witnesses here,

15  they need to know exactly when you will need the witness.  It

16  varies.

17          MS. McCASLIN:  We need the witnesses when the

18  government is done with their case in chief.

19          THE COURT:  Okay.  Then what needs to happen here is

20  we need some better information on when the government will

21  be finished, to have the U.S. Marshals bring the witness

22  here.  We don't want them to bring a witness here and they

23  sit around here for two and a half weeks.

24          So this is going to be a very close call, but

25  they've got to get the tickets early enough so we won't get

```
 1   charged through the roof.  And hopefully the airlines won't
 2   cancel the flights.
 3          So I'll tell you what we're going to do.  We're
 4   going to wait until the trial gets started.  We will let the
 5   U.S. Marshals know they have to make a quick business of
 6   arranging these flights, but hopefully they can get notice at
 7   least a week out before you want the witness so they can
 8   arrange it.
 9          MS. McCASLIN:  And then just briefly for the
10   defense, if any of the defendants choose to put on a case, is
11   it going to be just going in order of the indictment?
12          THE COURT:  The Court hasn't looked at that, but the
13   Court will take a look, and the Court can probably tell you
14   at the beginning of trial.  The Court hasn't gone back to
15   look at that.  If you were going to shoot me right now, I can
16   tell you who is listed first.  I think it's Mr. Smith.
17          MS. McCASLIN:  Mr. Alcorn, Mr. Smith, and then
18   Mr. Barnett.  It just could influence when we tell the
19   Marshals someone would need to be here.
20          THE COURT:  We can go in that direction; Mr. Alcorn,
21   Mr. Smith, Mr. Barnett, Ms. Coffin if she's still here.
22   Alcorn, Smith, Barnett, and Ms. Coffin if she's still in the
23   case.
24          MS. McCASLIN:  Thank you, Judge.
25          THE COURT:  And, of course, if somebody else wants
```

```
1    to drop out of the case, the Court has no objection to that.
2            MR. GRINDROD:  We'll be here, Judge.
3            THE COURT:  I was afraid that would be your answer.
4            Anything else?
5            MR. BOSSE:  Not from the government.  Thank you,
6    Your Honor.
7            THE COURT:  If not, we will be in recess until
8    further notice.
9            (Proceedings adjourned at 4:31 p.m.)
10
11                         CERTIFICATION
12
13       I certify that the foregoing is a correct transcript
14   from the record of proceedings in the above-entitled matter.
15
16
17           _____/s/_____
18                         Carol L. Naughton
19                         October 27, 2022
20
21
22
23
24
25
```