```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                      Norfolk Division


- - - - - - - - - - - - - - - - - -
                                   )
 UNITED STATES OF AMERICA          )
                                   )
 v.                                )   CRIMINAL ACTION NO.
                                   )        2:19cr47
 DAVID ALCORN; AGHEE WILLIAM       )
 SMITH, II; and THOMAS L.          )
 BARNETT,                          )
                                   )
        Defendants.                )
- - - - - - - - - - - - - - - - - -


              TRANSCRIPT OF PROCEEDINGS
              (Telephone Status Conference)

                  Norfolk, Virginia

                  November 11, 2021



BEFORE:   THE HONORABLE RAYMOND A. JACKSON
          United States District Judge



APPEARANCES:   (Via teleconference)

          UNITED STATES ATTORNEY'S OFFICE
          By:  Andrew C. Bosse
               Melissa E. O'Boyle
               Elizabeth M. Yusi
               Assistant United States Attorneys
               Counsel for the United States

          RICHARD S. YAROW LLC
          By:  Richard S. Yarow
               Counsel for Defendant David Alcorn
```

Carol L. Naughton, Official Court Reporter

```
 1   APPEARANCES:   (Continued)

 2             FEDERAL PUBLIC DEFENDER'S OFFICE
           By:  Andrew W. Grindrod
 3              Lindsay J. McCaslin
                Assistant Federal Public Defenders
 4              Counsel for Defendant Aghee William Smith, II

 5             ANCHOR LEGAL GROUP, PLLC
           By:  Anthony M. Gantous
 6              Counsel for Defendant Thomas L. Barnett

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Telephonic proceedings commenced at 9:27 a.m.)
2          THE CLERK:  United States of America vs. David
3  Alcorn; Aghee William Smith, II; and Thomas L. Barnett in
4  Criminal Action 2:19cr47.
5          Ms. O'Boyle, is the government ready to proceed?
6          MS. O'BOYLE:  The United States is ready.  Good
7  morning.
8          THE COURT:  Good morning, Ms. O'Boyle.
9          THE CLERK:  Are the defendants ready to proceed?
10         MR. YAROW:  Your Honor, Rick Yarow for David Alcorn.
11  I'm ready to proceed.
12         THE COURT:  Good morning, Mr. Yarow.
13         MR. YAROW:  Good morning.
14         MS. McCASLIN:  This is Lindsay McCaslin and Andrew
15  Grindrod.  We are representing Aghee William Smith, and we
16  are ready to proceed.
17         THE COURT:  Good morning, Ms. McCaslin.
18         MS. McCASLIN:  Good morning.
19         MR. GANTOUS:  Anthony Gantous for Tom Barnett.
20  We're ready, Your Honor.  Good morning.
21         THE COURT:  Good morning, Mr. Gantous.
22         Okay.  Counsel, you know the reason we called this
23  conference call.  Unfortunately, we have to disturb your
24  holiday, but this is an emergency matter.  We understand that
25  Mr. Barnett is in the hospital with COVID.

1        Mr. Gantous, could you give an update for the
2   record.
3        MR. GANTOUS:  Sure.  The information I have is from
4   last night, Your Honor, given the time difference; it's
5   6:30 a.m. in California.  I found out yesterday --
6   Mr. Barnett texted me a photo of a physician's note from UC
7   Davis health system in Sacramento saying that he's unable to
8   travel.  We've since spoken and followed up.  He's been
9   confirmed to test positive for COVID.
10       I spoke to him last night after I notified Patrice
11  of what was happening.  We spoke around 5:30 or so, and then
12  I spoke to Mr. Barnett probably around 7:30, 8:00 in the
13  evening, and he told me he was admitted -- being admitted to
14  UC Davis hospital, that he's tested positive for COVID, and
15  that his physician has told him he should not be traveling
16  for at least two weeks.
17       I looked on the CDC's website and did a little of my
18  own research, and apparently you can travel 10 days of being
19  symptom-free, but at this point, Your Honor, he is positive
20  for COVID.
21       Last we spoke, he was still in the hospital.  I'm
22  not sure if he's been discharged at this point, but I told
23  him we wanted to get -- you'd want to see more records, I
24  would assume.  So he's going to -- you know, it takes time to
25  put the notes together and get records sent, but I have no

1  reason to doubt that he's actually tested positive for COVID
2  and is in the hospital.
3       THE COURT: And that's exactly what I was going to
4  ask about, an independent confirmation that he is in the
5  hospital and has tested positive. And you are, at this
6  juncture, unable to get any independent record. You've only
7  talked to Mr. Barnett; is that correct?
8       MR. GANTOUS: I've talked to him, yes, and I sent
9  Patrice the physician's no-travel note. It does not indicate
10 the reason for no travel, but upon talking to Mr. Barnett, it
11 was -- a positive COVID test was the reason.
12      THE COURT: All right. If we accept the fact that
13 he's in the hospital and he cannot travel for ten days, it's
14 a real serious situation here about what we're going to do
15 because we have subpoenaed witnesses from everywhere, and we
16 have the co-defendants traveling. And as you know from going
17 through the jury selection process, many of the jurors
18 anticipated that this trial would start on the 16th and would
19 be over before Christmas.
20      And the Court's concern is, if we delay the trial
21 because of his situation, we're going to have to scrap the
22 whole jury panel because a lot of them are not going to be
23 available. Not only that, it will disrupt the subpoenas
24 we've already sent out, and so the question becomes for the
25 Court, what are our options? Our options do not look good.

1       If we continue it, I don't know where to continue it
2  to because right now the Court's master calendar is
3  absolutely a wreck.  We moved six civil trials to try this
4  case, and we had multiple criminal cases that are still on
5  the docket that we're trying to find someone to try, and
6  January is an absolute land mine with cases that have been
7  moved forward in January and February.  So that's what we
8  face.
9       Now, I want to know, Ms. O'Boyle, what is the
10 government's position on this?  Because the Court will state
11 its position shortly.
12      MR. BOSSE:  Your Honor, this is Andrew Bosse.  I'm
13 also on the line for the government.
14      Our overriding concern is that, despite all the
15 incredible logistical difficulties that this is going to
16 create, is that these defendants be tried together so we
17 don't do a six-week trial and then another five-week trial
18 later in 2022, which would wreak havoc with the Court's
19 calendar and with our own calendars here.
20      My second note is that I think it's very important
21 that as soon as possible we get -- I don't know if we've got
22 to live-stream a doctor or do a FaceTime call with an actual
23 MD, but we would like to get real hard confirmation that
24 Mr. Barnett has tested positive for COVID and can't travel.
25      THE COURT:  Well, two things about that, Mr. Bosse:

1     The government will have to take the steps to get
2 the hard confirmation that Mr. Barnett is indeed in a
3 situation where he cannot travel.
4     The second thing about that, you do not want to try
5 this case a second time, a third time.  The Court doesn't
6 want to do it either, but I can tell you the problem is I
7 have no idea, if we continue this case, where this case will
8 be tried.
9     Now, one of the Court's options is to sever
10 Mr. Barnett from this case.  You don't want to try it three
11 times, but I have no idea where you will try this case in
12 2022.  It's as pure and simple as that.
13     MR. BOSSE:  Your Honor, if I could, two quick notes
14 there:
15     One is I do think, given the circumstances, that the
16 Court can issue an order, either a compulsion order or some
17 sort of order by the Court, that will compel -- not that we
18 need to compel Mr. Gantous, but will compel the defendant to
19 provide hard confirmation of this scenario and, really,
20 immediately.
21     And that can be an order to Pretrial Services; it
22 could be an order directing the defendant to provide the
23 information.  Because if we're going to make this decision
24 here on the fly five days before trial, it just seems
25 imperative that we know this is real.

1   And the second note is these defendants are all out
2   on bond. If we have to move -- if we have to continue this
3   trial, we will do everything we can on our end, on the
4   government's end, to clear out whatever space we need in,
5   hopefully, very early 2022, and I know the Court has its own
6   docket, but we will do everything we can to streamline the
7   trial.
8   We've removed Ms. Norma Jean Coffin from the case,
9   and that's going to give us an opportunity to shave more
10  witnesses off the trial, to shave more documents off of the
11  trial. I'm confident that we can present as streamlined a
12  case as possible if we can fit this in in early 2022.
13  That's assuming we get hard confirmation as soon as
14  possible, because obviously the ideal would be to go forward
15  on Tuesday, if we could, with all three defendants, if that's
16  possible from a health perspective.
17  THE COURT: Well, I can jump back to the
18  confirmation. I'm not finished with this question of whether
19  this case ought to be continued or not. Let me go back to
20  Mr. Gantous.
21  Mr. Gantous, the Court will need some confirmation
22  from somebody other than Mr. Barnett that he has tested
23  positive and he cannot travel. And I need it in the form of
24  some type of affidavit from someone for that proposition, and
25  the Court is going to have to definitely turn to you to make

1  sure we get that information and we get it by Monday morning;
2  by Monday.  As a matter of fact, we need it tomorrow because
3  Monday morning is a little too close, almost, to call off
4  everything here.  And how we get it is a whole nother
5  question.
6          MR. GANTOUS:  I'm trying to get everything I
7  possibly can today, Your Honor.  What I would -- I'm not sure
8  about an affidavit, but medical records from UC Davis
9  hospital, I think would -- would that suffice?
10         THE COURT:  If you can get genuine medical records
11 from UC Davis hospital, that should suffice.
12         MR. GANTOUS:  Okay.  I'm working on it.
13         THE COURT:  The physician's note that was sent, I
14 don't know that the Court would deem that sufficient.  We
15 don't know where that came from.
16         MR. GANTOUS:  I understand, Your Honor.  And I
17 did -- just for the record, I did look that physician up.
18 She is an ER doctor with UC Davis.  And I actually called
19 that hospital physician yesterday, because I wanted to
20 confirm for myself that she was actually there, and I was
21 transferred to the ER, and they did confirm that he was a
22 patient there.
23         THE COURT:  Okay.  All right.  Well, anything else
24 you can get to confirm it, the Court needs you to do it.
25 Mr. Gantous, the Court is not in a position to give you more

```
 1   of an order than what the Court is saying on this record, to
 2   get further confirmation that he is there and he has tested
 3   positive for COVID-19.  Okay?
 4           MR. GANTOUS:  Yes, Your Honor.
 5           THE COURT:  Now, what is the defendants' position,
 6   the co-defendants' position, regarding whether this case
 7   should be continued or whether Mr. Barnett should be severed?
 8           Ms. McCaslin?
 9           MR. GRINDROD:  Your Honor, this is Mr. Grindrod.  I
10   believe Ms. McCaslin is on the phone.  I'm not sure why --
11   she may be muted.  If you can give me one quick second.
12           (Pause)
13           MR. GRINDROD:  Your Honor, I believe Ms. McCaslin --
14   I've lost a connection with her, both on our separate kind of
15   messaging connection also, so I don't know if she's
16   experiencing technical difficulties.  I can tell the Court
17   our position.
18           THE COURT:  Fine.  You will have to speak for
19   Mr. Smith.
20           MR. GRINDROD:  Your Honor, we would prefer a
21   continuance if that's possible.  We understand the
22   countervailing concerns here and the need to both move
23   forward and to avoid the separate trials, but we agree with
24   Mr. Bosse that it probably just doesn't make sense to sever
25   Mr. Barnett and have two four-week trials.
```

1     So if it can be -- if we can move the case out into
2 early 2022, then we would favor that option.  The only thing
3 we would say, Your Honor, is what we don't want is for there
4 to be, like, a brief continuance that would start the case
5 before Christmas and try to maneuver around the holidays.
6     We think that would be unworkable and potentially
7 prejudicial if jurors felt rushed to reach a verdict before
8 the holiday.
9     THE COURT:  We've got another problem here,
10 Mr. Grindrod, if we continue it.  And I say this to the
11 United States.
12     The United States is going to have to give up some
13 money.  I know the United States filed a motion opposing
14 paying any fee for the defendants to travel here.  And the
15 Court worked diligently -- the Court had to do it -- to get a
16 ticket to get them here.
17     Now, I suspect that they're traveling here already.
18 Am I correct?  Is Mr. Smith traveling here already?
19     MR. GRINDROD:  Yes, Your Honor.  I mean, he was
20 scheduled to board his flight at a little after 6:00 this
21 morning, Pacific Time.  We corresponded with him yesterday,
22 and he was claimed to be on that flight.  And pursuant to the
23 courtroom deputy's directions, we did not tell him not to get
24 on that flight, so I believe he's on that flight and is en
25 route to Virginia now.

1           THE COURT:  Okay.  So here we are with Mr. Smith
2   showing up and Mr. Alcorn showing up and the United States
3   Marshal only paid for their trip here one way.  And so there
4   we've got costs.  They have to go back, and they have to come
5   back.  And the United States -- I don't want to hear,
6   Mr. Bosse, about the United States having some serious
7   objection to paying the fees for them to go and come.
8           Now, you might say, well, it's not the
9   United States' fault, but the United States is sitting here
10  asking for a continuance, and all of these are consequences
11  that flow from giving a continuance in this case.
12          Now, the Court has some concern about continuing
13  this case.  I know it does not make a lot of sense to try it
14  twice.  The Court wants to avoid that.
15          The Court also is warning counsel right now, the
16  Court has no idea when it's going to find a four-week stretch
17  to try this case.  I can't move but so many cases so many
18  times to try this case.  The Court has juggled the docket
19  every way there was to move this to try this case, and so
20  what I really need to do is consider that.
21          Also, we have not heard from counsel for Mr. Alcorn.
22          MR. YAROW:  Your Honor, Rick Yarow for Mr. Alcorn.
23          Mr. Alcorn is en route to the airport.  I notified
24  him.  I told him to go ahead and go to the airport, and he
25  should be boarding a plane within about 60 minutes.  So at

1  this point, I can get a refund on that ticket if the Court so
2  chooses to continue the case.
3           THE COURT:  Okay.  What I need to do is, I do not
4  have -- Ms. Thompson, you do not have the Court's master
5  calendar with you; is that correct?
6           THE CLERK:  That is correct, Your Honor.  I do have
7  mine on my cell phone, but it's very abbreviated.
8           THE COURT:  In other words, the Court is not in a
9  position to tell you where we're going to move this on the
10 calendar, and the Court also needs to have some discussion
11 with Ms. Thompson about what we're going to do if we move
12 this case.
13          All the counsel are in agreement on continuing the
14 case.  The Court is of the view that it probably should not,
15 understanding what we have going on here in this case.
16          Now, Mr. Bosse, in view of the fact, you said, that
17 Ms. Coffin has entered a plea in this case, so that's
18 abbreviated.  In the event we go forward and we dispose of
19 two defendants and there's one defendant left, you can
20 further abbreviate this case, instead of it being a four-week
21 trial.
22          MR. BOSSE:  Judge, the issue there is that the
23 evidence presentation for any of the salesmen significantly
24 overlaps, so it would maybe reduce the number of victim
25 witnesses, but the core of the case, the documents that build

1  the actual fraud scheme are identical, and so it would be --
2  just as you're going to see in this case, the core of the
3  case is similar to that that we laid out with Mr. Bank with
4  the documents and underlying the corporate structure.
5       That all has to be done again.  It's going to be a
6  massive -- it's going to waste just weeks of trial time if we
7  try to split these defendants, especially five days before
8  the trial is supposed to kick off.
9       And I'll say just very briefly, Your Honor, whatever
10 the Court can arrange -- we're not going to object to a
11 return travel flight given what's happened here.  I mean,
12 this is not obviously the government's fault, it's not also
13 Mr. Smith's or Mr. Alcorn's fault that this happened, and so
14 it shouldn't be held against them on return travel.
15      And I just want to be clear, since we're making a
16 record here, that Mr. Yarow does not -- I think he said it,
17 but I wasn't sure, that he does not oppose a continuance.
18      MR. YAROW:  I don't oppose a continuance.
19      MR. BOSSE:  Thank you.
20      THE COURT:  Okay.  So all counsel are in favor of a
21 continuance in this case.  The Court has some serious doubts
22 about doing it, but I can tell you the Court is going to
23 fully expect the United States to abbreviate this case.  I
24 mean, in view of the amount of time it takes to try this case
25 and where we are, you might get it done by the summer.  The

1  Court does not know at this juncture.  The Court is going to
2  have to have some serious conversations with Ms. Thompson
3  about where you go when you get in a conference about trying
4  to schedule this case.  So the Court is going to put some
5  parameters on it, and it may not fit your schedule, but it's
6  certainly going to fit what the Court has to do.
7         This case cannot totally destroy the Court's docket;
8  and it has, in its own way, at this juncture.  Even though
9  defendants get priority over civil cases, they've also got
10 some priority over some other cases too.
11        With great reluctance, the Court will go on and
12 grant a continuance in this case.
13        But one thing we want to be sure of, Mr. Gantous,
14 that this is a genuine basis for a continuance.  If it's not,
15 Mr. Barnett is going to have a serious problem.  Do you
16 understand what I'm saying?
17        MR. GANTOUS:  I understand, Your Honor, and I've got
18 no reason to doubt what we've represented to the Court
19 already about his COVID diagnosis, Your Honor, but I will get
20 confirmation.  I'm going to try to get that today; at the
21 very latest, tomorrow.
22        MR. BOSSE:  Your Honor, this is Andrew Bosse for the
23 government.  Just briefly.  Would Your Honor consider holding
24 that order in abeyance for 24 hours until we have
25 confirmation?  I mean, if it's not confirmed and we can go

Carol L. Naughton, Official Court Reporter

1  forward, it is absolutely our preference to go forward on
2  Tuesday.
3          THE COURT: The Court can hold it in abeyance, but
4  you've got till tomorrow to work it out. To be sure,
5  tomorrow by approximately, military time, 1500, 3:00, we need
6  to be sure about whether the Court is going to continue this
7  case or not. The Court will hold it up.
8          MR. BOSSE: Thank you, Your Honor.
9          MR. GRINDROD: Your Honor, this is Andrew Grindrod.
10 This would just be a request that would call on the kindness
11 of the Court, but would it be possible, in light of this
12 development, to perhaps allow the parties to submit our
13 exhibit lists on Sunday night instead of by 2:00 p.m. on
14 Friday, just to avoid an all-nighter that may not be
15 necessary?
16         THE COURT: The Court is inclined to permit that,
17 Mr. Grindrod. We do want to avoid unnecessary work. I don't
18 know how many witnesses have been subpoenaed here, but that's
19 a cost that -- the Court is incurring a great deal of costs
20 in this case. But we can do that. The Court will do that.
21         MR. GRINDROD: Thank you, Your Honor.
22         MR. YAROW: Your Honor, this is Rick Yarow. If the
23 Court would allow my client to take a flight over the
24 weekend. He has a Southwest ticket. It's fully changeable.
25 I can call him back so he doesn't hop on that flight from

```
 1   Phoenix right within the next 30 minutes.
 2            THE COURT:  That's fine.  If we don't continue the
 3   case, he still has to be here so we can go forward.
 4            MR. YAROW:  Of course.
 5            THE COURT:  If we find that we're not continuing
 6   this case for some reason by 3:00 tomorrow, then he better
 7   get on a flight to get here.
 8            MR. YAROW:  Understood, yes, sir.
 9            THE COURT:  There's nothing we can do about
10   Mr. Smith.  If he's already boarded a plane, that's just
11   going to be an unnecessary trip across country.  And in terms
12   of getting funds, though the Court has not entered an order
13   authorizing the Marshal to send back, so that's another
14   problem that we'll have to deal with when he gets here.
15            MR. GRINDROD:  Yes, Your Honor, we can talk to
16   Mr. Wilkins at the Marshal's Office and get a proposed order
17   to the Court once the continuance issue is finalized, Your
18   Honor, if that pleases the Court.
19            THE COURT:  Okay.  Anything else?
20            MR. YAROW:  No, sir.  Thank you.
21            MR. GANTOUS:  Nothing here, Your Honor.
22            MR. GRINDROD:  Nothing here.
23            THE COURT:  The Court will expect to be back in
24   touch.  Now, the Court is going to be on travel, but I still
25   have my phone, and I will still be in touch.  Okay?
```

```
1            MR. GRINDROD:  Thank you, Your Honor.
2            THE COURT:  The conference has ended.
3            (Proceedings adjourned at 9:50 a.m.)
4
5                         CERTIFICATION
6
7     I certify that the foregoing is a correct transcript
8  from the record of proceedings in the above-entitled matter.
9
10
11            _____/s/_____
12                       Carol L. Naughton
13                       October 27, 2022
```

Carol L. Naughton, Official Court Reporter