<pre>
 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
 2                          Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - - -
                                         )
 5   UNITED STATES OF AMERICA            )
                                         )
 6   v.                                  )    CRIMINAL ACTION NO.
                                         )         2:19cr47
 7   DAVID ALCORN; AGHEE WILLIAM         )
     SMITH, II; and THOMAS L.            )
 8   BARNETT,                            )
                                         )
 9            Defendants.                )
     - - - - - - - - - - - - - - - - - - -

10

11

12                     TRANSCRIPT OF PROCEEDINGS
                         (Status Conference)

13                       Norfolk, Virginia

14                       January 18, 2022

15

16   BEFORE:  THE HONORABLE RAYMOND A. JACKSON
                  United States District Judge
17

18
     APPEARANCES:
19
                UNITED STATES ATTORNEY'S OFFICE
20                   By:  Andrew C. Bosse
                          Melissa E. O'Boyle
21                        Elizabeth M. Yusi
                          Assistant United States Attorneys
22                        Counsel for the United States

23              RICHARD S. YAROW LLC
                     By:  Richard S. Yarow
24                        Counsel for Defendant David Alcorn

25
</pre>

```
1    APPEARANCES:   (Continued)

2              FEDERAL PUBLIC DEFENDER'S OFFICE
              By:  Andrew W. Grindrod
3                  Lindsay J. McCaslin
                   Assistant Federal Public Defenders
4                  Counsel for Defendant Aghee William Smith, II

5              ANCHOR LEGAL GROUP, PLLC
              By:  Anthony M. Gantous
6                  Counsel for Defendant Thomas L. Barnett

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Proceedings commenced at 11:01 a.m.)
 2              THE CLERK:  United States of America vs. David
 3    Alcorn, Aghee William Smith, II; and Thomas L. Barnett in
 4    Criminal Action 2:19cr47.
 5              Mr. Bosse, is the government ready to proceed?
 6              MR. BOSSE:  The government is ready.  Good morning,
 7    Your Honor.
 8              THE COURT:  Good morning.
 9              THE CLERK:  Are the defendants ready to proceed?
10              MR. YAROW:  The defendant David Alcorn is ready to
11    proceed, Your Honor.  Good morning.
12              THE COURT:  Good morning.
13              MR. GANTOUS:  Good morning, Your Honor.  On behalf
14    of Thomas Barnett, we're ready to proceed.
15              MS. McCASLIN:  Lindsay McCaslin and Andrew Grindrod
16    are here to represent Aghee William Smith.
17              THE COURT:  Okay.  All right.  Counsel, the Court
18    had an opportunity to look at the strikes that you propose to
19    make in this case, and the Court will start -- we'll go with
20    looking at these strikes numerically because the Court has
21    charted out all the strikes that you've made here so we can
22    take a look at them on a one-by-one basis.
23              I will say to you that the Jurors 1 through 7, there
24    was no proposed strike on Jurors 1 through 7, so we're going
25    to start with Juror Number 8.
```

1          Both the government and Mr. Smith requested to

2     strike Juror Number 8 for different reasons.  Mr. Smith

3     proposed to strike Juror Number 8 because Juror Number 8 had

4     travel plans.  And let me go back to the United States.  The

5     United States proposed the same thing.

6          Unless I hear an objection, we will strike Juror

7     Number 8.

8          Juror Number 9, there were no proposed strikes.

9          Juror Number 10, both the United States and

10    Mr. Alcorn proposed that we strike Juror Number 10.

11         The Court's view on this, the Court would not be

12    inclined to strike this juror yet.  When people tell the

13    Court, well, I have a hard time sitting in judgment on

14    somebody, the Court prefers that you tell the Court that you

15    have a hard time sitting in judgment on somebody.  It's too

16    easy to say I can't really sit in judgment on anybody.

17    That's been the Court's experience.  So the Court is not

18    inclined to make that strike now.

19         If it appears genuine after some inquiry, the Court

20    will strike the juror.  If not and it so happens that juror

21    turns up on one of those -- on the list after we go through

22    all the strikes for cause, then there's an opportunity for

23    the parties, at least 10 to 20 peremptory strikes or more

24    here, then someone can simply strike the juror, but not right

25    now.  So we're going to leave Juror Number 10 there.

```
1              Juror Number 11.  I think, Mr. Smith, you proposed
2    to strike that juror, and I'm trying to go back and see.
3    That juror had some issues because someone had stolen
4    something from him once before.  He falls in the same
5    category as the previous juror.  The Court believes we should
6    probe something like that before we simple strike them.
7              Yes, ma'am?
8              MS. McCASLIN:  May I interrupt the Court, Your
9    Honor?
10             Your Honor, this is more than just he was a victim
11   of a theft.  Many people are victims of theft, but he does
12   say that he would like justice for those who are stolen from
13   and the justice system failed him.  And because of his work
14   with prior inmates, he said they were all innocent, that they
15   claimed that they were all innocent.
16             I think combining those together shows that he does
17   have a bias and he would be -- he would not be able to
18   impartially judge the evidence.  He would be seeking a
19   conviction because of his combined experience.
20             MR. BOSSE:  If I could respond, Your Honor?
21             The fact that someone says that they would like
22   justice for people who are stolen from is something that is
23   almost a universally held concept in the United States.  It
24   doesn't say anything about whether the government has proved,
25   which is the government's burden, whether anyone was stolen
```

1   from.

2          Secondly, a statement that the justice system failed

3   them in the past, this is exactly the kind of thing that

4   would need to be inquired about and could use a peremptory

5   strike to address.

6          This isn't even close to the bar at a pre-voir dire

7   stage.  We're looking for people who essentially can't follow

8   the Court's instructions or are unavailable physically for

9   trial at this stage.  I don't think this one comes close to

10  that.

11         THE COURT:  The Court has heard both counsel.  The

12  Court sticks with its initial view that we're not going to

13  strike Juror Number 11 yet.

14         Mr. Smith has also made a motion to strike Juror

15  Number 12, who said he would be out of work for no pay for a

16  month since his position is based on attendance.

17         Now, the Court's view is that we don't require

18  anybody to give up their sole source of income to do jury

19  work.  That being the case, if this is accurate and it's

20  under oath, the Court would be inclined to excuse that juror

21  from attendance, and that would, of course, be the Court's

22  consistent view if it's a hardship situation.

23         MR. BOSSE:  Yes, sir.  For the government, we don't

24  have any objection to striking this juror.

25         I do think, because a number of people have claimed

1    some kind of hardship, that we should have a nuanced view so

2    people who are single versus married -- that sometimes is a

3    difference, but this one does seem like a real hardship, and

4    so we don't have any objection.

5         THE COURT:  Well, the Court agrees as to the

6    proposition if they are the sole source of income, that we're

7    not going to strip away the sole source of income for them to

8    do jury duty.

9         With that, we're moving right along.

10        No objections or strikes on Juror Number 13.

11        Number 14.  Both the United States and Mr. Smith

12   move that we strike that juror.  That juror had preplanned

13   business travel out of state and internationally.  Work

14   schedule in the month of February.

15        He also has another reason.  The individual

16   indicated, according to Mr. Smith here, that the defendant

17   would have a problem with -- the juror would have a problem

18   with the defendant not testifying and it not being held

19   against him.  So that would be a problem.

20        The Court will strike Juror Number 14.

21        There's an objection by Mr. Alcorn to Juror

22   Number 16 -- wait a minute.  Maybe I'm wrong.

23        MR. YAROW:  Judge, I realize that in my numbering, I

24   may have -- I may be one off on the numbers.

25        THE COURT:  Well, because I don't see it -- maybe my

1   chart is wrong here.  I don't see an objection on your

2   pleading to Juror Number 16.

3           MR. BOSSE:  It's there, Your Honor.  He's objected

4   to Number 16, and that tracks with our numbering also.

5           MR. YAROW:  So this person said they may know

6   Special Agent Jason Thomasson.  I don't know who that is with

7   the government or what their role is, but it's a government

8   witness.

9           THE COURT:  Well, we're going to have to wait to

10  find out exactly what that is.  So we're going to hold off on

11  16.

12          17, no objection.

13          18, there are two objections, from the government

14  and Mr. Smith.  And the government says potential -- wait a

15  minute.  I think it was Mr. Alcorn, rather.  No, I'm right;

16  government and Mr. Smith have an objection to Juror Number 18

17  on multiple bases.  Where do we start?

18          All right.  Mr. Bosse, if you want to start.

19          MR. BOSSE:  So normally, Your Honor, we try to hold

20  a pretty good line on these questions where they maybe

21  misunderstand the law and they're not here in court to have

22  it explained to them, but this person just struck us as

23  someone who really didn't want to be here and just basically

24  answered every single bias question in a way that is

25  disturbing to the government and also to defense counsel.

1          I don't think there's any reason to bring this

2    person in.  I don't think they would be a good juror.

3          MS. McCASLIN:  We agree, Your Honor.

4          THE COURT:  I think the Court concurs, having read

5    what this individual has to say.  I don't know whether you

6    could rehabilitate the individual if we brought him in here,

7    to tell you the truth.

8          Next, Juror Number 19 has a scheduled vacation in

9    February, and both the United States and Mr. Smith ask that

10   this juror be excused.

11         The Court will excuse Juror Number 19 also.

12         Juror Number 20.  Mr. Smith, you have asked that

13   this particular juror be excused.  And your reason?

14         MS. McCASLIN:  Your Honor, we -- this juror does

15   have biases that are already in place.  The juror says that

16   they have now formed an opinion after filling out this

17   questionnaire, and they say in quotes, "I feel as though they

18   were doing this with malicious intentions.  What's right is

19   right, what's wrong is wrong."

20         So this juror has already decided.  When you combine

21   that with some of their -- that was question number 70.  When

22   you combine it with a couple of the other questions, it's

23   particularly biased and unconstitutional.

24         If you look at number 50, it says that she is unsure

25   regarding the presumption of innocence and the burden of

1  proof, but below it, she writes or he writes, "I feel like

2  they should have to prove they're innocent because if they

3  know they're guilty but prosecutors" -- "because what if they

4  know that they're guilty, but prosecutors can't prove it?"

5          And in that question, she's actually instructed on

6  the law and is still saying that the defendant should have to

7  prove that they're innocent.

8          Question 11 she also says, "Once I hear both sides,

9  even if one thing leans me towards one side, I stay over

10  there."  And that would not reach beyond a reasonable doubt.

11          THE COURT:  Any response?

12          MR. BOSSE:  I mean, if this is the bar we're

13  setting, we're okay with cutting this person.  I don't think

14  "Once I hear both sides, even if one thing leans me towards

15  one side, I stay over there" -- I mean, that's too equivocal,

16  and I think to cut her on that, that's the kind of thing that

17  would need to be inquired on, but if we want to combine that

18  with everything else including some concerns about income, I

19  don't have any objection to cutting Juror 11.

20          THE COURT:  This juror had multiple problems, and

21  when the Court sees something like that, the question becomes

22  to the Court what is the possibility we can rehabilitate the

23  juror to the point we can say we can have a fair trial or

24  whether we will be faced with it again on appeal if we keep

25  the juror.  So the Court would be inclined to strike the

1    juror.

2           Juror Number 21.  I see that Mr. Smith has objected

3    again.

4           MS. McCASLIN:  Yes, Your Honor.  For Juror 21, the

5    juror does say that they take migraine medication that

6    produces fatigue, foggy thinking, affects concentration,

7    makes them confused, and creates the potential to not

8    understand the case or to make incorrect judgments.  That is

9    looking at Questions 5 and 71.

10          The juror also says, in Question 32, when it asks do

11   you have any strong opinions either for or against financial

12   advisors or investment bankers, the juror checks "yes" and

13   says that they do have some bias against financial advisors

14   and investment bankers.

15          THE COURT:  Well, the Court will not excuse the

16   juror for the simple reason that the Court instructs the

17   jurors.  All jurors come to these cases with a bias.

18   Everybody in here has a bias.  The question is whether you're

19   able to set aside your bias and to render a verdict based

20   solely on the law and the facts given to you.

21          So we need to do some further inquiry on this juror.

22   I do not wish to strike this juror at this time.

23          And another thing is this juror's name may not even

24   come up in the 12 in the first place.

25          Numbers 22 through 27, there were no issues -- 28.

1          Number 29, I think you've challenged that juror

2   also, Mr. Smith.  You challenged that juror.

3          MS. McCASLIN:  Your Honor, for 29, this was simply a

4   hardship issue.  He or she does say that they're a small

5   business owner with only one other employee.  It involves

6   home building projects that would come to a complete halt

7   causing breach of contracts.

8          MR. BOSSE:  Judge, I have a note for 29 to inquire

9   further.  I think this is the person who says they supervise

10  between 2 and 90 people.

11         THE COURT:  2 and 90?

12         MR. BOSSE:  Did I have that one right?

13         MS. McCASLIN:  Let me double-check.

14         THE COURT:  If he supervises between 2 and 90

15  people, the Court will not be --

16         MR. BOSSE:  And it could be that it's a Grade A

17  contractor where they're planning things out, but it's the

18  kind of thing that I think we want to inquire about rather

19  than cut them today.

20         MS. McCASLIN:  Your Honor, this does say, "Do you

21  supervise others?"

22         "Yes."

23         "How many?"

24         "2 to 90 on any given day."

25         Given that he is in home building, these are likely

1    to be roofers, construction workers, not somebody who can run

2    the business.

3            THE COURT:  The only issue with that is I think we

4    need to do an inquiry because if he has 2 to 90, he has some

5    foremen, or he has some supervisors on site that's doing some

6    of this work.  He's not doing it all.  He's not supervising

7    it all.  He's supervising the supervisors.  So we're going to

8    hold off on that one.

9            Numbers 30 and 31, there are no issues.

10           There were challenges to 32 by the government and

11   Mr. Smith.  The commute would be two hours.  There's two

12   children to pick up and missing school.  I don't know where

13   that individual is coming from.

14           MR. BOSSE:  It's an Eastern Shore juror, Your Honor.

15   I don't think we should have a categorical rule, but this one

16   seemed like a tough combination for an Eastern Shore juror.

17           THE COURT:  Depending on where he is on the Eastern

18   Shore, it's 100 miles to this Court.  Depending on where

19   you're coming from on the Eastern Shore, from the Maryland

20   line to this court, it's about 100 miles or more.  So the

21   Court is inclined to strike Juror Number 32.

22           MS. McCASLIN:  Yes, sir.

23           MR. BOSSE:  Yes, sir.

24           THE COURT:  No issues with Jurors 33 through 36.

25           Mr. Smith has an objection to Juror Number 37.

1    Self-employed as a Realtor, would not be able to work for

2    four weeks, which would affect his income.  "If I'm out of

3    work for a month, I lose all pending contracts and in-process

4    clients."

5            Does anyone have an objection to this one?

6            MR. BOSSE:  We had this as someone that we want to

7    inquire about.  I mean, they are part of a two-income family,

8    and I mean, I don't understand the specifics.

9            THE COURT:  Well, the Court can inquire.  If -- it

10   doesn't tell us what his status is in terms of income or how

11   much of the family's depending upon his contracts, but one

12   thing is very clear, if you're a Realtor, you cannot be

13   picking up contracts, executing contracts, and doing anything

14   if you are absent for four weeks.  So it's most likely he's

15   going to end up being stricken anyway, but we'll hold on.

16           And with respect to all these no-shows -- we have a

17   bunch of no-shows -- the Court is going to do a show cause

18   ordering all the no-shows, so that is what is going to

19   happen.  They're not going to get a free ride out of here.

20           41 through 46, no objections, but I have two

21   objections on number 47.

22           MS. McCASLIN:  Your Honor, we do have objections for

23   39 and 42.

24           THE COURT:  39 and 42?

25           MS. McCASLIN:  Yes.

1          THE COURT:  I see -- oh, you do.  I missed those.  I
2     guess I'm just being hopeful.
3          39.  Your objection is hardship?
4          MS. McCASLIN:  Yes, hardship, Your Honor.  They're
5     in the Navy with very time-sensitive matters, the department
6     is understaffed.  And then he does say that he would rule in
7     a case based on personal views.
8          THE COURT:  I don't know what that means, but I do
9     know this, the Navy also has other people who can step in
10    when someone else falls in battle, out of line, so the Court
11    wants to inquire on Number 39.
12         Number 42.
13         MS. McCASLIN:  This is just a travel issue, Your
14    Honor.  We do understand that there aren't specific dates.
15    So we understand if the Court wants to inquire, but they do
16    say "I travel frequently and have a travel schedule through
17    February."
18         THE COURT:  And whether that's a certainty or not,
19    so 42 is -- we'll skip.
20         Now we go back to 47.  We have a number of these
21    cases where people have indicated that they work as a teacher
22    and substitutes are very hard to find right now.  There's no
23    substitute for coaches.  And this individual said they would
24    have a problem with defendant's choice not to testify.
25    "Unsure if I would until it happens."  There's a whole bunch

1    of stuff in here.

2              Back to the first issue.  During COVID there is a

3    problem finding teachers willing to teach.  There's a problem

4    finding substitutes, and so the question is whether we will,

5    as we go through these proposed strikes, how we treat that

6    issue, but the Court is very sensitive to the fact that it's

7    a real issue with finding educators to function.

8              MR. BOSSE:  Judge, I think the parties mostly

9    agreed.  Where we saw a teacher that said they had difficulty

10   finding substitutes, I think across the board we generally

11   moved to strike them, and I think this teacher falls into

12   that category.

13             THE COURT:  The Court will concur, and the Court

14   will excuse this juror.

15             Now we go down to number 49.  Runs own business and

16   cannot be gone for four weeks.  I don't know whether you have

17   some more information on that, but that doesn't tell the

18   Court enough.

19             MS. McCASLIN:  Your Honor, this person does own

20   their own business.  It does look like they have quite a few

21   employees.  I don't have the exact number in front of me.

22   They do say that there is not an employee with their skill

23   set to perform their duties during a trial of four weeks or

24   longer.

25             THE COURT:  Yes, sir?

1          MR. BOSSE:  There's 140 in all, and I'm sure they

2     can cobble together enough skill sets.

3          THE COURT:  Well, let's put it this way:  The Court

4     is going to find out whether there are some more skill sets,

5     so we're going to hold off on number 49 until further

6     inquiry.

7          MR. YAROW:  Your Honor, I also lodged an objection

8     to 49.  I know the person personally, the family.

9          THE COURT:  Do you have any relationship with the

10    family other than knowing the family?

11         MR. YAROW:  We belong to the same synagogue.  I

12    don't know this particular person, but I know the family

13    quite well.

14         THE COURT:  Okay.  Well, we'll still leave him there

15    for a while.

16         MR. YAROW:  Thank you.

17         THE COURT:  Number 50, no objections.

18         Number 51.  Everyone objected to Number 51.  The

19    Court will concur with the objections.  Number 51 is a nurse

20    trying to function during the pandemic.  They can't find

21    enough nurses and professionals to deal with a lot of the

22    issues we have, so we're not going to take one for a trial.

23         Number 53.  Mr. Alcorn objects to Number 53.

24         MR. YAROW:  The reason I have is cares for elderly

25    parents.

```
1              THE COURT:  What was this?  She's a teacher and
2    could be inadvertently exposed to COVID-19.
3              MR. YAROW:  53?
4              THE COURT:  Oh, cares for elderly parents.  Is that
5    your reason?
6              MR. YAROW:  That is my reason, yes, sir.
7              THE COURT:  The Court wants to know more about that,
8    so we're going to hold off on that one.  I don't know whether
9    she drops by during the day or whether this is a constant
10   24-hour care or what.
11             54.
12             MR. BOSSE:  Your Honor, I think you've already ruled
13   on this issue.  This is a pastor who said five times that he
14   could not sit in judgment of other people.
15             My experience with that question on voir dire is
16   that the Court will sometimes strike it if they repeatedly
17   say that they just can't.  You know, it's someone who
18   believes their role as a leader of a religious organization
19   prevents them from sitting in judgment.  I promise I'll cut
20   them anyway, but, you know, I think it's appropriate here.
21             If they can't even say that they can be -- the job
22   of a juror is to be a judge, so it's not a question of
23   whether or not they understand the law or not.  They're
24   saying they can't do the job they're being asked to do.  But
25   I understand.  I'm fine either way.
```

```
 1              THE COURT:  What it boils down to is we will find
 2      out how serious this problem really is, so we'll leave that
 3      one there.
 4              Number 55 is a teacher.  Who objected to Number 55?
 5      That was Mr. Alcorn.
 6              And, Mr. Alcorn, you objected on the grounds she's a
 7      teacher and does not want to miss a significant amount of
 8      work for a lengthy trial.
 9              MR. YAROW:  Your Honor, I generally objected to
10      teachers and healthcare workers.  There's just a shortage.
11      It's difficult to fill those positions right now.
12              THE COURT:  The Court, to be consistent, will excuse
13      any teacher that we bring in here.  That's just recognizing
14      reality.
15              Number 56.  Everyone seems to object to Number 56.
16      That's another teacher.
17              THE CLERK:  Judge, the reason you just read was for
18      Juror Number 56, but you were talking about Juror Number 55.
19              THE COURT:  Okay.  Juror Number 55.
20              MR. BOSSE:  Is Juror 55 stricken?
21              THE COURT:  55 is stricken, and 56 is stricken.
22              Next we go to Juror Number 60.  Mr. Alcorn, you
23      object to Juror Number 60.  Her husband is a police officer.
24      She stated she would give law enforcement testimony more
25      credit.
```

```
 1              MR. YAROW:  She said she's biased.

 2              THE COURT:  What did you say?

 3              MR. YAROW:  She's claiming she's biased in favor of

 4    police officers.

 5              MR. BOSSE:  So, Your Honor, the first thing I think

 6    to say is luckily for Mr. Alcorn and Mr. Smith, I don't know

 7    that we're actually going to have any police officers

 8    testifying in this trial.  There's going to be an FBI

 9    analyst.  There may be a clean-up FBI witness, but this is

10    not a typical drug and gun case where we have police officer

11    after police officer testifying.

12              But in any event, I don't think that that one answer

13    without further exploration is enough to cut at this pre-voir

14    dire stage.

15              THE COURT:  We will hold off on this one.

16              61.  I think you also objected to 61, Mr. Alcorn.

17              MR. YAROW:  Mr. Alcorn objects to 61.  Again, the

18    reason is they're a teacher -- actually, it's a teacher

19    assistant and, also, in addition to that, the mild hearing

20    loss.  I'm not sure what exactly the mild hearing loss means,

21    but if she cannot hear everything the witnesses testify to,

22    particularly given the fact that the setup may make it more

23    difficult...

24              THE COURT:  61 will be stricken.

25              MR. BOSSE:  Well, that's the ruling, I guess.  I did
```

1    want to say that this is one of the teachers who didn't

2    indicate on the questionnaire any issues or concerns about

3    coming in, and so neither we nor Mr. Smith suggested they be

4    stricken.  We moved to strike wherever they had any concerns

5    with substitutes or any express concerns.  I don't think this

6    potential juror expressed any reservations other than the

7    fact of her job.

8              THE COURT:  Okay.

9              MR. GRINDROD:  Your Honor, can I just -- I think we

10   might be confusing 60 and 61.

11             THE COURT:  I'm looking at 61 here.

12             MR. GRINDROD:  Is 61 ████, Your Honor?

13             THE COURT:  61 is ████████████.

14             MR. GRINDROD:  I think that ██████ is actually the

15   teacher's assistant, and ████ references being married to a

16   teacher's assistant.  I don't know if they're spouses.  It

17   would be quite a coincidence if they're not.  But 60, I

18   believe, is the actual person who's the teacher's assistant.

19             Is that your understanding, Mr. Bosse?  I just want

20   to make sure we're on the same page as to who's the teacher's

21   assistant and who is married to a teacher's assistant.  They

22   have the same names, but I think ██████ is the one who should

23   be stricken on that basis.

24             MR. BOSSE:  They are not married to each other.  I

25   don't think we have 61 downloaded.  We can just fix this.

1          MR. GRINDROD:  61's answer to Question 26, if your

2    spouse or nonmarital partner holds a job, yadda, yadda, and

3    he lists teacher's assistant, spouse, retired June 2021.

4          ██████████████ says in answer to Question 21, if you

5    are currently employed in any capacity, please state it, and

6    she says:  Occupation, teacher's assistant, Virginia Beach

7    Schools; and then type of work, teacher.

8          MR. BOSSE:  Just so we have the record, what number

9    is ██████████████ in the top right?

10         MR. GRINDROD:  ██████████████ is Juror 60.

11         THE COURT:  Well, the Court hasn't stricken 60.  Did

12   we?

13         MR. GRINDROD:  No, Your Honor, but I think the

14   confusion was that -- so on the juror bio form, 60 and 61 are

15   inverted, and so I think we were, at times, referring to

16   things that Juror 60, ██████████████, said when we were

17   talking about 61.

18         So for the record, Juror 60, ██████████████ is both a

19   teacher's assistant and is the person who said that they

20   would favor law enforcement testimony, and so I think when we

21   originally were talking about her, the issue of the teacher

22   aspect of that was not -- had not been brought up.

23         THE COURT:  Bottom line, though, we have not

24   stricken Number 60 yet.

25         MR. GRINDROD:  Correct.

```
 1              THE COURT:  And we're not striking 61.
 2              MR. BOSSE:  Thank you.  So we're bringing both
 3      █████████  in.
 4              MR. GRINDROD:  I just wanted to make sure we were
 5      talking about the right person.
 6              MR. BOSSE:  Yes, sir.  Thank you.
 7              THE COURT:  The  ████████  we'll leave.
 8              62.  Mr. Alcorn, Number 62, you indicated that this
 9      juror indicates that the legal system does not protect
10      everyone.  This juror would give more weight to law
11      enforcement testimony but with reservations.
12              MR. YAROW:  Your Honor, it is possible -- I may be
13      off by one number, so I do apologize.  I think the last two
14      people threw me off with my numbering.  Is 62  ██████?
15              THE COURT:  62 is  ████████████.
16              MR. YAROW:  Okay.  I'm not off, then.  Good.
17              THE COURT:  Well, this is a little bit on the vague
18      side here, and the Court is not going to simply -- the legal
19      system does not protect everyone.  Everyone has a problem
20      from time to time.  The Innocence Project proves that.  So
21      the Court is not inclined to strike 62 yet.
22              MR. YAROW:  Yes, sir.
23              THE COURT:  Now, everyone wants to strike Number 63.
24      The individual has a language barrier.  And we don't know
25      what's the scope of the language barrier, but it's a language
```

1    barrier, so the Court would be inclined to grant the request

2    to excuse this juror.

3              64 through 68, no objections.

4              69.  Mr. Alcorn raises an objection.

5              MR. YAROW:  She's employed in the media or involved

6    in the media.  She's produced TV programs about white-collar

7    crime in the past.  It just struck a little too close to

8    home.  I don't know what these programs are but...

9              THE COURT:  The Court doesn't believe that

10   disqualifies her.  She has to look past her occupation and

11   any bias that she has, if she can do it, and serve.  So the

12   Court would not be inclined to strike that juror, Juror

13   Number 69.

14             We turn to 70.  Everyone agrees that 70 has prepaid

15   plans to travel in mid-February, and she may know one

16   government witness.  We don't know which government witness

17   that is, but we've excused folks who already have prepaid

18   travel plans.  So 70 is excused.

19             71.  Mr. Alcorn, you challenge that one too.

20             MR. YAROW:  She's been the victim of fraud.  This is

21   a fraud case.  She may have a predisposition that is biased

22   against the defendants.

23             THE COURT:  Well, we need to ask her whether she has

24   a predisposition because one of her friends was a victim of

25   fraud, so we would not excuse Number 71.

1          Number 73.  The government objects to Number 73
2    because -- let's go back.  73 would have unusual financial
3    hardship.  So what is the scope of the unusual financial
4    hardship, Mr. Bosse?
5          MR. BOSSE:  So this person indicated they were a
6    part-time student at ODU and a Grubhub driver and a single
7    person.  So it's a single person who's working as a Grubhub
8    driver during the -- it seems like someone who falls in the
9    category of unusual hardship.  If they're a driver, that's
10   their work.
11         THE COURT:  And a student.
12         MR. BOSSE:  Yes.  Although I don't know that they
13   indicated they actually would be -- I don't know that they
14   gave a schedule or anything.  It said part-time at ODU.  But
15   a part-time ODU student who's driving for Grubhub, probably
16   it's going to be a hardship to be out for four weeks.
17         THE COURT:  Well, let's find out what's the scope of
18   their employment.  Are they taking 14 credits or 3?  They
19   could just be taking 3 credits.
20         Number 75.  Mr. Smith, you objected to Number 75.
21         MS. McCASLIN:  Your Honor, this is a combination.
22   The juror does indicate that they have viewed information
23   about the case on television, read about it online, and read
24   about it in the newspaper.  The juror is scheduled to begin a
25   brand-new job in February.  And he also notes that his niece

1   is married to your nephew.

2          THE COURT:  Oh, that one.  The Court did a little

3   inquiry and did come to find out that we have a niece in

4   common.  So I think we'll strike that one.

5          Number 77.  Everybody wants Number 77 excused.

6   They're traveling mid-February; an attorney who had worked

7   with the Anchor Legal Group where a co-defendant's attorney

8   practices.  I don't know who that is but -- oh, Mr. Gantous.

9          MR. GANTOUS:  That's right.

10          THE COURT:  It may be a legitimate reason to strike

11   them.

12          MR. GANTOUS:  I don't know him personally.  I talked

13   to some of my partners about him, Your Honor, and apparently

14   he's got an unfavorable view of some members of my firm, but

15   the feeling was not mutual on our end, so take that for what

16   it's worth, but I did not know this man at all.

17          THE COURT:  We're going to strike Number 77.  Excuse

18   rather than strike.  "Excuse" is a better word.

19          Number 81.  The government and Mr. Alcorn want to

20   remove 81 who attends college at Virginia Tech and will be

21   returning January 18th.  We usually excuse students.  So

22   Number 81, I think it's appropriate to excuse Number 81.

23          Okay.  Let's go.  Number 83.  The government and

24   Mr. Alcorn wishes to excuse Number 83.  In-person teacher;

25   could be inadvertently exposed to COVID.  We have protocols

1    for that, but we've also said that we would not pull a
2    teacher from the classroom to come in here when we're having
3    a problem in society trying to find teachers to teach.  So we
4    will excuse Number 83.

5           The next one is Number 88.  Mr. Alcorn objects to
6    Number 88.

7           MR. YAROW:  This person claims they own a farm and
8    is solely responsible for over 200 animals.  And there's
9    more, but I'm more concerned with the farm.

10          THE COURT:  The Court wants to know more about this
11   farm.  Are there any workers?  They might be solely
12   responsible for the farm but there's a bunch of folks working
13   on the farm.  So we need to find out more about this.

14          MR. YAROW:  Yes, sir.

15          THE COURT:  Number 91.  Mr. Alcorn.

16          MR. YAROW:  She's a teacher.  I believe she's a
17   teacher.

18          THE COURT:  Let's go back.  In-person teacher.
19   Okay.  We'll be consistent.

20          Number 93, both the United States and Mr. Alcorn
21   wish to excuse.  This is a public defender with a heavy
22   caseload and knows many of the attorneys from the Public
23   Defender's office; public defender to a public defender.  Any
24   objection?

25          MS. McCASLIN:  We object, Your Honor.  Mr. Grindrod

1    and I don't believe we know this person at all.  They don't

2    state who they know in the Federal Public Defender's office,

3    and there are, no doubt, many other attorneys in the office

4    that could help with that caseload.

5            THE COURT:  Well, I think you raised a strike to

6    Number 93.  The Court has that you objected -- hold on.

7    Let's see.  Yeah, you indicated this was someone that you

8    wished to have excused.

9            MS. McCASLIN:  No, that was not ours.  I believe

10   Mr. Alcorn did.  But we did not move to strike Number 93.

11           THE COURT:  Well, I'm looking at the government's

12   chart here.  No, that was the United States.  Sorry about

13   that.

14           Mr. Bosse?

15           MR. BOSSE:  Yes, sir.  Just as if there were a

16   Virginia Beach commonwealth attorney who knew many people in

17   my office, I don't think we'd object to striking that person.

18   They're claiming a heavy trial schedule, which certainly the

19   state courts all have right now.

20           I mean, we're going to strike them anyway, but it

21   seems unnecessary to bring them in if they're telling us they

22   have a trial schedule that's heavy for the next month and

23   they are a public defender who knows other people in the

24   FPD's office.

25           THE COURT:  That's true.  The Court is going to

1    strike Number 93.

2          95.   Only the government wishes to strike Number 95

3    on the grounds of travel.

4          For work and potential bias.

5          Is there anything you wish to add to that?

6          MR. BOSSE:  This person just evinced some

7    uncomfortableness of serving, claimed work travel, new job.

8    They just seem to have a constellation of difficulties, but

9    I'm fine if you want to inquire.  I don't have an issue about

10   that.

11         THE COURT:  The defendants have not objected to this

12   individual.  We need to know more about this work travel.

13   Unfortunately, over the years, the government has had any

14   number of jurors that just say, you know, I'm biased, and

15   then when you probe, you find out they really just want to

16   get out of jury duty.  And that's awful, but that's a

17   reality.  So we'll ask some more questions about Number 95.

18         96, the United States objected to 96 on the grounds

19   that it's a student.

20         MR. BOSSE:  Yes, sir, Your Honor, and I can give

21   some more information on that.  We're the only movant on this

22   juror, but this is a student who claims to have narcolepsy,

23   also is unemployed, and is a TCC evening student.  Now, that

24   might not interfere with the Court's schedule, but the

25   combination of narcolepsy, unemployment, and, I think,

1   looking for work seemed like a bad combination for a juror at
2   this point.
3          THE COURT:  The Court will be inclined to strike
4   this student.  The Court has had a few trials where
5   individuals had narcolepsy or individuals who worked at night
6   or did other things, and then daytime they were in here, and
7   they did not fare very well.  So the Court is going to strike
8   this juror.
9          Everyone wants to strike Number 98.  She's moving to
10  Florida on February 3rd.  I don't think she'll be around.  So
11  we'll strike Juror Number 98.
12         We next move to Juror Number 101 who has
13  hearing-loss issues.  How severe are these hearing-loss
14  issues?  Mr. Alcorn?
15         MR. YAROW:  Your Honor, I'd be happy if we inquired
16  how severe they are.
17         THE COURT:  All right.  Then we'll leave the
18  question mark there.
19         Everyone moves to strike ████████████,
20  Number 103.  He says he owns his own business, and it would
21  pose a financial hardship.  He also has a mother in hospice
22  that's declining rapidly.  He had a few other issues here,
23  too, regarding bias and difficulty following instructions.
24         I think ordinarily I said I'd bring anyone in who
25  says they have a problem reaching a judgment about someone or

1    maybe a potential bias, but there's a combination of things

2    here, I think, that makes him more difficult to rehabilitate,

3    so the Court is inclined to strike Number 103.

4            Did I skip 99?  I sure did.  99.  Mr. Smith, you

5    wanted to strike ███████████ because...

6            MS. McCASLIN:  Your Honor, I believe this was just

7    an abundance of caution because of the prepaid travel in

8    early to mid-March, especially if there's any type of COVID

9    issue in the middle of trial.

10           THE COURT:  Well, let's hold on.  Let's find out if

11   this juror has any travel insurance.

12           104.  Now, Mr. Alcorn and Mr. Smith both move to

13   strike 104.  Understands English with difficulty; hard time

14   following the case since their vocabulary is very limited.

15   Plus the juror failed to answer a number of questions on this

16   questionnaire.  The Court is inclined to strike Juror

17   Number 104.

18           I don't know where all these strikes are leaving us.

19           MR. BOSSE:  I stood up to agree, Judge.  I wasn't

20   trying to fight on that one.

21           THE COURT:  You're wasting time if they don't

22   understand you.  Sometimes with good hearing they still don't

23   understand you.

24           106.  The government and Mr. Alcorn both object to

25   106 on the grounds -- another -- he cannot sit in judgment of

1    others; small business hardship.  The Court wants to know

2    more about this sitting in judgment and this small business

3    hardship on 106, counsel.  So we're going to leave that one.

4              We next move down to 110.  Mr. Alcorn, you objected

5    to 110.

6              MR. YAROW:  Your Honor, I think this juror is going

7    to have a difficult time.  It's hard to get caregivers right

8    now.

9              THE COURT:  She's a single mother of three having

10   difficulty juggling the trial and caregivers.  I don't know

11   what the ages of the children are, but the Court is inclined

12   to agree.

13             Mr. Bosse?

14             MR. BOSSE:  No objection, Your Honor.

15             THE COURT:  Ms. McCaslin?

16             MS. MCCASLIN:  I'm sorry, Your Honor, are we on 110?

17             THE COURT:  Number 110.

18             MS. McCASLIN:  We don't object.

19             THE COURT:  Number 110 will be excused.

20             Number 111.  The United States and Mr. Alcorn

21   objected to Number 111.  She would miss work, four to five

22   weeks without compensation, and would be put under a

23   financial hardship is the reason that this juror raises a

24   question.  We do not know whether she is the sole breadwinner

25   or what, about this juror.

1          MR. BOSSE:  Your Honor, the juror indicated she was

2     single.  She's a chef at The Stockpot restaurant.  That's the

3     combination of reasons that led us to move for a strike.

4          THE COURT:  Any other objections?  There are two.

5     We will strike Juror Number 111.

6          113.  Mr. Alcorn and Mr. Smith, you both objected to

7     113.  She has prepaid travel plans during the first week of

8     February.

9          MR. BOSSE:  We must have missed that.  We don't

10    object to that, if that's the case.

11         THE COURT:  That was 113.  Okay.  113 is stricken.

12         Number 116.  Mr. Alcorn, you objected to 116 on the

13    grounds that she is an in-person teacher assistant at K-5 and

14    could be inadvertently exposed to COVID-19.  And, once again,

15    we have this issue of individuals trying to teach people

16    during COVID-19.

17         MR. BOSSE:  Judge, for 116 and the next one, 118,

18    this is another group of two; neither of them indicated any

19    hardship or difficulty with substitutes, and so we didn't

20    make a motion for them.

21         THE COURT:  They are teaching assistants also.

22         MR. BOSSE:  They are both -- well, one is a teaching

23    assistant, 116, and then the other one says a teaching

24    specialist.  All of the different area cities have different

25    difficulty levels with teaching, so if they didn't indicate

```
 1   difficulty, we didn't make a motion.
 2           THE COURT:  Here's what we can do.  We can bring
 3   them in and find out the extent of the problem, and then
 4   we'll decide then whether we should strike them.
 5           THE CLERK:  Judge, 114.
 6           THE COURT:  I missed 114.
 7           Number 114 is raised -- objections raised by
 8   Mr. Smith.  Mr. Smith raised an objection to 114 on the
 9   grounds of hardship, anxiety disorder, problems with the law.
10           MR. BOSSE:  We have no objection from the government
11   to cutting this juror.
12           THE COURT:  Do you have an objection, Mr. Alcorn?
13           MR. YAROW:  No, sir.
14           THE COURT:  I hope someone is left when we finish
15   cutting here.
16           Number 116 and 118, we left those.
17           Number 120.  Prepaid Caribbean cruise from
18   February 18th to the 26th and potential hardship because of
19   the working environment.  The Court is going to strike
20   Number 120.
21           122.  Now, this individual indicates they're taking
22   a business trip February 18th, 19th, 20th, and 21st.  I think
23   we need to make some inquiry about these business trips.  Are
24   these trips that can be deferred?  Are these trips that
25   somebody else can take?  I just need more information on that
```

1    one, so we're going to have to defer Number 122.

2            124.  124, there's an objection by Mr. Alcorn.

3            MR. YAROW:  Prepaid travel plans in February, Your

4    Honor.

5            THE COURT:  What time during February?  The end of

6    February or what?

7            MR. BOSSE:  It's a Friday to Sunday, Your Honor, and

8    that's why we didn't put him on our list.

9            THE COURT:  Friday to Sunday.  And what time in

10   February?

11           MR. BOSSE:  That's -- oh, February 18th to 20th; so

12   Friday to Sunday.  I don't know if we should cut that one.

13           THE COURT:  I don't think we would strike this juror

14   because, number one, the Court is trying to figure out

15   whether it's going to follow its practice in this case.  We

16   have a four- or five-week trial.  The Court usually kind of

17   skips Fridays so that everybody can deal with some issues

18   that they have, whether it be trial counsel or otherwise.  So

19   the Court is not going to excuse this one yet.

20           Number 126.  Business travel through the next few

21   months.  That's very vague.  So the Court is going to leave

22   that one in here also.  Further inquiry is necessary.

23           128 -- no, 129.  Everyone objects to Number 129.

24   She has significant difficulties with child care for the

25   duration of the trial, might have a bias because her close

1   family friend went to prison for tax fraud and embezzlement.

2   That alone would be insufficient.  But she takes care of her

3   nine-year-old son and her neighbor's children.  She's

4   juggling children here.  129, the Court will excuse 129.

5            130.  Only Mr. Smith and Mr. Alcorn objected to 130.

6            MS. McCASLIN:  Your Honor, for 130, this is a

7   combination of a couple of different answers.  One of them,

8   question number 52 asks if this person would give more or

9   less weight to the testimony of a law enforcement officer.

10  The answer here is yes, no, or unsure.  This person checked

11  "yes" and then wrote "I would believe a police officer" and

12  then further down said that if the law conflicts with their

13  personal views, they would base their verdict on their

14  personal views instead of the law.

15           There's also a potential conflict with them working

16  as a stenographer and doing transcripts for cases; also

17  worked with the Chesapeake Police Department.  So that all

18  goes into her -- his answer for number 52 as well.

19           THE COURT:  What is the United States' position on

20  this?

21           MR. BOSSE:  This is a person who ought to be brought

22  in and asked about the questions.  It's not uncommon on

23  question 52 to make that answer.  A lot of lay people will

24  say that about law enforcement and have not been instructed

25  by the Court about how witnesses' credibility is weighed.

 1              And as far as the transcript, if we find out that

 2     she did a transcript in this case -- I think that would be an

 3     impossibility, because we know all the court reporters who

 4     have worked on this case.  So unless there's something

 5     else...

 6              THE COURT:  Ms. McCaslin, we'll make some inquiry.

 7     She may be gone -- once she answers the question, she may be

 8     gone anyway.

 9              Now, it looks like everyone objected to ███████,

10     Number 131.  She would be under significant financial

11     hardship and also says she would be biased against the

12     defendant.  Single, self-employed.  If she doesn't work, she

13     doesn't have any income, can't pay her bills.  That's her

14     position.

15              The Court has no argument with that.  She'll be

16     excused.

17              Moving right along.  The government has an objection

18     to Number 133 on the grounds she has difficulty sitting in

19     judgment of others.  The Court wants to know just how

20     difficult is it for her to sit in judgment on others, and so

21     the Court would be inclined to bring her on in, Mr. Bosse,

22     and see what she has to say about that.

23              MR. BOSSE:  Yes, sir.

24              THE COURT:  Number 134 says she has difficulty

25     finding a caregiver for her father because she is the

```
 1    caregiver for her father, elderly father.
 2          MR. YAROW:  And she also says she's unable to make
 3    other arrangements.
 4          THE COURT:  What's your position, Ms. McCaslin?
 5          MS. McCASLIN:  We do object, Your Honor.
 6          THE COURT:  When you say you object, what do you
 7    mean?
 8          MS. McCASLIN:  Your Honor, we would like additional
 9    information from this juror.
10          THE COURT:  All right.  Do you concur with that,
11    Mr. Bosse?
12          MR. BOSSE:  Yes, sir, Your Honor.
13          THE COURT:  We'll have her come in and find out what
14    she has.
15          We move now to 142 where the government and
16    Mr. Alcorn objects to ████████████, Number 142.  The
17    government says it's a financial hardship and potential bias.
18    Mr. Alcorn says she stated it would be difficult not to hold
19    a police officer's testimony to a higher standard than other
20    witnesses.  Now, which is the most compelling here?  The
21    financial hardship?  I guess it's a combination of both here.
22          MR. BOSSE:  Your Honor, this is the juror who
23    indicated they're raising funds to go on a missionary trip.
24    If the Court or counsel thinks they should come in for
25    questioning, I don't have any objection to that, but it just
```

1    seemed like a strange combination, that and then the bias

2    response as well.

3         MS. McCASLIN:  Your Honor, we would ask for this

4    juror to come in.  We don't quite understand how they raise

5    money as a missionary, if that can be done outside of 9:00 to

6    5:00, if that's done just through the church on a regular

7    basis anyway.  We think we need more information.

8         THE COURT:  And the Court would like to know what

9    she means by she's holding the police officer's testimony to

10   a higher standard than other witnesses.  That's the first

11   time I've heard that one.  So we're going to have Number 142

12   come in.

13        143.  Mr. Alcorn and Mr. Smith both objected to that

14   particular juror.  That is ████████████.  He lives paycheck

15   to paycheck.  This trial would put him under significant

16   financial strain.  There's a lot of people that live paycheck

17   to paycheck.  He didn't say he can't get paid if he doesn't

18   work.

19        Is there something else there that would further

20   explain your objection to ████████████, Mr. Smith and

21   Mr. Alcorn?

22        MS. McCASLIN:  Your Honor, we do have a couple other

23   issues to raise with the Court.  In addition to living week

24   to week, this juror says that they're having 13 teeth pulled

25   on January 27th, so they are likely to be medicated starting

1   on February 1st still.

2           There's also some bias and constitutional issues.

3   When asked -- when instructed that the defendant has no

4   obligation to testify and that jurors cannot draw any

5   conclusions, he said that he would have an issue with that

6   and asked why would he not tell his side to the Court; so

7   stating that he has a problem following the Fifth Amendment.

8           Further, he is willing to convict.  He's unsure

9   about voting not guilty.  And that obviously violates the

10  presumption of innocence.  So given that combination, we

11  would move to strike.

12          MR. BOSSE:  If he's having 13 teeth pulled, I'm okay

13  with -- yeah, I agree.  I don't have any objection to that.

14          THE COURT:  13 teeth?

15          MR. BOSSE:  That's a lot of teeth.

16          THE COURT:  The Court will excuse this juror.  He'll

17  probably be medicated every day.  That was Number 142.  Well,

18  that's the -- no, 143.  Wait a minute.  Which one was it?

19          MR. YAROW:  I think the Court just struck 143.

20          THE COURT:  I struck 142.

21          MS. McCASLIN:  No, that was 143, Your Honor.

22          THE COURT:  That was 143.  Okay.  So we struck 143,

23  not 142.

24          MS. McCASLIN:  Correct.

25          THE COURT:  Those were the last objections the Court

1   had to this panel here.  I don't know where this leaves us

2   here.  We can try to go back and see if we can do a brief

3   calculation of how many strikes we made.

4           THE CLERK:  Do you want me to read them out?

5           THE COURT:  Yeah.  So we can be consistent and be

6   sure, start with Number 1, the first strike, the first

7   excused, and she's going to walk through them and see if it's

8   consistent with what you have.

9           THE CLERK:  The following jurors have been stricken

10  for cause:

11          Juror Number 8, Juror Number 14 -- I'm sorry.

12          Juror Number 8, Juror Number 12, Juror Number 14,

13  Juror Number 18, Juror Number 19, Juror Number 20, Juror

14  Number 47, Juror Number 51, Juror Number 55, Juror Number 56,

15  Juror Number 63, Juror Number 70, Juror Number 75, Juror

16  Number 77, Juror Number 81, Juror Number 83, Juror Number 91,

17  Juror Number 93, Juror Number 96, Juror Number 98, Juror

18  Number 103, Juror Number 104, Juror Number 110, Juror

19  Number 111, Juror Number 113, Juror Number 114, Juror

20  Number 120, Juror Number 129, Juror Number 131, and Juror

21  Number 143.

22          THE COURT:  I think you need to go back and check on

23  Juror Number 32 and 61.

24          THE CLERK:  Juror Number 32, and I do not have Juror

25  Number 61.

```
 1            THE COURT:  You don't have 32 stricken?
 2            THE CLERK:  I do, yes, sir.
 3            THE COURT:  You don't have 61 stricken?
 4            THE CLERK:  Correct.
 5            THE COURT:  That was ████████████.  I thought we
 6  struck them.
 7            MR. BOSSE:  We were going to bring both of the
 8  ████████ in.  This is where they were transposed, 60 and 61.
 9            THE COURT:  Oh, okay.
10            MR. BOSSE:  We were going to bring them both in.
11            THE COURT:  The Court stands corrected.  That's
12  correct.  So how many total strikes is that?
13            THE CLERK:  31.
14            THE COURT:  So that leaves us with...
15            THE CLERK:  105.
16            THE COURT:  That's enough to make it.
17            Okay, counsel.  We have 105 left here.  We should
18  have enough to come in and take the strikes that we're
19  supposed to be taking.  What the Court is trying to pick is
20  18 jurors.  We're going to take 12 plus 6 alternates.  That's
21  18.
22            And I gave each defendant two extra strikes.  So
23  defendants have 14, and the government has eight.  So that's
24  22 strikes between both parties, the government and -- there
25  will be 24 peremptory strikes after we go through strikes for
```

1    cause in here, so I think that will leave us with enough to

2    get where we need to go.  Assuming nothing happens between

3    now and February 1st, we intend to move on.

4             Any questions?

5             Okay.  Now, regarding the outstanding motions, the

6    Court will deal with these motions before the trial begins.

7    Some of these motions will be moot.  Some of them have

8    already been dealt with, but the docket hammers have not been

9    removed on some of these motions.

10             And I think by virtue of the fact that there may be

11   only two defendants in this courtroom would deal with a

12   couple of issues that we have in this case.

13             And, also, I think we've dealt with some of the

14   concerns raised about the configuration of the Court.  The

15   Court had photographs of the Court taken.  They will be in

16   the record for any potential appellate purposes.  So that's

17   been taken care of.  So a lot of the motions raised have been

18   addressed.

19             Some of the motions, the Court has to wait until we

20   get to trial to figure out the context within which some of

21   these motions are raised, to find out whether they should be

22   granted or not granted.  A lot of them are appropriate

23   questions for the parties anyway the closer we get.  That's

24   the only thing I would say.

25             Now, the other thing I want to know is this.

1    Mr. Bosse, how many witnesses are you contemplating right now

2    the government may call?

3            MR. BOSSE:  Your Honor, we're going off of memory

4    here.  We're going to send a supplemental witness list in.

5    We've added two witnesses, but we've also been able to

6    remove, I think, about nine witnesses because of

7    Mr. Barnett's impending plea.

8            The estimate, without having it in front of us, I

9    think we have between 50 and 60.  Some of them will be short.

10   And as we move through the trial, the number might drop.  I

11   hope it does.

12           THE COURT:  Oh, I'm sure it will.

13           MR. BOSSE:  I have a feeling it will.  But that's

14   where we are right now.

15           THE COURT:  And I won't even say to the defendants

16   how many you're calling because you may not know.  Or do you

17   know?

18           MS. McCASLIN:  Your Honor, for the most part, our

19   number is unchanged.  I don't know what the exact number of

20   witnesses is.  It is not very lengthy.  We did get rid of one

21   of our witnesses, which we already notified the government

22   and the parties about.

23           MR. YAROW:  Your Honor, I think I have five or six

24   witnesses.  I don't expect any of my witnesses to be terribly

25   lengthy.

1           THE COURT:  Okay.  All right.  That being the case,

2     that's all we have for now.  The Court will be in touch with

3     you as things evolve, and I'm sure they will evolve.  But if

4     you do not wish to see this judge again on this case, that's

5     fine.  You know what that means, don't you?  If you decide

6     that you do not want to come to trial, you can work on other

7     things, and that's fine.

8           All right.  Hearing nothing else, the Court will be

9     in recess until further notice.

10          (Proceedings adjourned at 12:12 p.m.)

11

12                        CERTIFICATION

13

14      I certify that the foregoing is a correct transcript

15    from the record of proceedings in the above-entitled matter.

16

17

18    _____/s/_____

19                    Carol L. Naughton

20                    October 27, 2022

21

22

23

24

25